# **Exhibit L**

Motion by Dominion Voting Systems Corporation and Dominion Voting Systems, Inc. to Withdraw the Reference

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) |
| | ) Case No. 10-24238-HRT |
| SVS HOLDINGS, INC. | ) |
| | ) Chapter 7 |
| Debtor. | ) |
| | ) |
| TOM H. CONNOLLY, CHAPTER 7 TRUSTEE, | ) Adversary Proceeding No. 12-01757-HRT |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DOMINION VOTING SYSTEMS CORPORATION; DOMINION VOTING SYSTEMS, INC. | ) |
| | ) |
| Defendant. | ) |

## MOTION BY DOMINION VOTING SYSTEMS CORPORATION AND DOMINION VOTING SYSTEMS, INC., TO WITHDRAW THE REFERENCE

Dominion Voting Systems Corporation and Dominion Voting Systems, Inc. (collectively, "Dominion"), the Defendants in the above-captioned adversary proceeding, respectfully move the Court for an Order withdrawing the automatic reference, under D. C. Colo. L. Civ. R. 84.1(A), to this Court, of this action as set forth in the Complaint filed by Tom H. Connolly, as Chapter 7 Trustee (the "SVS Trustee") for the Debtor, SVS Holdings, Inc.

The grounds for Dominion's Motion are set forth in the Memorandum of Law in Support of Motion by Dominion Voting Systems Corporation and Dominion Voting Systems, Inc., to Withdraw the Reference (the "Memorandum"), filed simultaneously herewith, which Memorandum is hereby incorporated by reference into this Motion. As required by L.B.R. 5011-1(a), the portions of the record in this case and the Debtor's bankruptcy case that are necessary for consideration of this Motion are attached as exhibits to the Memorandum.

In summary, the reference of this adversary proceeding should be withdrawn from the Bankruptcy Court for three reasons. First, the automatic reference of this adversary proceeding to the Bankruptcy Court is constitutionally impermissible, based upon the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011). Second, withdrawal of the reference is mandatory under 28 U.S.C. § 157(d), because the Bankruptcy Court cannot determine the SVS Trustee's claims against Dominion without substantial consideration and interpretation of issues of federal non-bankruptcy law. Third, the District Court should exercise its discretion to

withdraw the reference of this adversary proceeding "for cause shown" under 28 U.S.C. § 157(d), for reasons including, without limitation, Dominion's demand for, and incontrovertible right to, a jury trial of the SVS Trustee's claims.

WHEREFORE, based upon the legal and factual arguments set forth in the Memorandum, Dominion respectfully requests that the Court enter an order withdrawing the reference of this action to the Bankruptcy Court.

Dated this 27th day of December, 2012.


BRYAN CAVE HRO


*/s/ Eric E. Johnson*
Eric E. Johnson
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203-4541
Telephone: (303) 861-7000
Facsimile: (303) 866-0200
E-Mail: eric.johnson@bryancave.com

- and -

WILMER, CUTLER, PICKERING, HALE AND DORR LLP
Richard Johnston
60 State Street
Boston, MA 02109
Tel: 617-526-6282
Email: Richard.Johnston@wilmerhale.com

Attorneys for DOMINION VOTING SYSTEMS INC. and DOMINION VOTING SYSTEMS CORPORATION

<u>CERTIFICATE OF SERVICE</u>

     The undersigned hereby certifies that on this 27th day of December, 2012, a true and correct copy of the foregoing **MOTION BY DOMINION VOTING SYSTEMS CORPORATION AND DOMINION VOTING SYSTEMS, INC., TO WITHDRAW THE REFERENCE** was filed using the CM/ECF and served by U.S. mail, postage prepaid, as follows:

Brent R. Cohen
Chad S. Caby
Kristin M. Bronson
Rothgerber Johnson & Lyons LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO  80202-5885

United States Trustee
999 18th Street
Suite 1551
Denver, CO 80202-2415

Kevin S. Nieman
1660 Lincoln Street, Suite 1900
Denver, CO  80264

SVS Holdings, Inc.
PO Box 815
Broomfield, CO 80038

                             */s/ Alicia Berry*
                             Alicia Berry

HRODEN\1638028.1

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 10-24238 HRT |
| SVS HOLDINGS, INC., | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| ——————————————— | ) | |
| | ) | |
| TOM H. CONNOLLY, | ) | |
| CHAPTER 7 TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 12-01757 HRT |
| | ) | |
| DOMINION VOTING SYSTEMS | ) | |
| CORPORATION and DOMINION | ) | |
| VOTING SYSTEMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY DOMINION VOTING SYSTEMS CORPORATION AND DOMINION VOTING SYSTEMS, INC., TO WITHDRAW THE REFERENCE

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND .........................................................................................................3

ARGUMENT ...............................................................................................................6

I.     REFERENCE OF THIS ACTION TO THE BANKRUPTCY COURT IS
NOT WARRANTED BECAUSE THE BANKRUPTCY COURT
CANNOT ENTER FINAL JUDGMENT ON THE TYPES OF CLAIMS
ASSERTED BY THE SVS TRUSTEE ...............................................................6

     A.     The Bankruptcy Court May Not Enter Final Judgment on the SVS Trustee's
Claims ........................................................................................................7

           1.     Fraudulent Transfer Claims ...............................................................9

           2.     Substantive Consolidation Claims .....................................................11

II.     WITHDRAWAL OF THE REFERENCE IS MANDATORY BECAUSE
RESOLUTION OF THE ADVERSARY PROCEEDING REQUIRES
SIGNIFICANT INTERPRETATION OF FEDERAL NON-
BANKRUPTCY LAW ...................................................................................14

     A.     The SVS Trustee's Claim for Substantive Consolidation Requires Significant
Interpretation of the Fifth Amendment's Guarantee of Due Process .............15

     B.     The SVS Trustee's Claims Require Significant Consideration of Important
Federal Statutes and Regulations Governing Interstate Commerce ...............17

III.     The District Court Should Grant Permissive Withdrawal of the Reference
To Enhance Judicial Efficiency and Uniformity .....................................................19

     A.     Dominion Has a Right to a Trial by Jury and the Bankruptcy Court May Not
Conduct a Jury Trial..................................................................................19

     B.     After Stern, the Bankruptcy Court Lacks Authority to Enter a Final Judgment
and, Possibly, to Adjudicate This Action at All.............................................21

     C.     Because of the Inability of the Bankruptcy Court to Conduct a Jury Trial and
the Limitations on the Bankruptcy Court's Authority After Stern, Efficiency
and Uniformity are Served by Withdrawal of the Reference ..........................21

CONCLUSION...........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adelphia Recovery Trust v. FLP Grp., Inc.*,
No. 11 Civ. 6847(PAC), 2012 WL 264180 (S.D.N.Y. Jan. 30, 2012) ...................................10

*Anthony v. Baker (In re Baker)*,
86 B.R. 234 (D. Colo. 1988) .................................................................................................14

*AT&T Co. v. Chateaugay Corp.*,
88 B.R. 581 (S.D.N.Y. 1988) ...............................................................................................14

*Celotex v. Edwards*,
514 U.S. 300 (1995) ..............................................................................................................21

*Centrix Fin. Liquidating Trust v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. (In re Centrix Fin., LLC)*,
No. 09 Civ. 01542, 2011 WL 63505 (D. Colo. Jan. 7, 2011) .................................................19

*Chemtura Corp. v. United States*,
No. 10 Civ. 503, 2010 WL 1379752 (S.D.N.Y. Mar. 26, 2010) ...........................................18

*City of New York v. Exxon Corp.*,
932 F.2d 1020 (2d Cir. 1991) ................................................................................................15

*Connolly v. Phillips (In re Phillips)*,
139 P.3d 639 (Colo. 2006) .....................................................................................................13

*Crowell v. Benson*,
285 U.S. 22 (1932) ...................................................................................................................8

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
462 B.R. 457 (S.D.N.Y. 2011) .........................................................................................22, 23

*DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas., Co.*,
464 B.R. 587 (S.D.N.Y. 2012) ..............................................................................................22

*Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.)*,
No. 04 Civ. 8177 (RCC), 2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004)...............................15

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989) ....................................................................................................... passim

*Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*,
343 B.R. 63, 67 (S.D.N.Y. 2006).............................................................................................19

*Heller Ehrman LLP v. Arnold & Porter, LLP (In re Heller Ehrman LLP)*,
464 B.R. 348 (N.D. Cal. 2011) ...................................................................................11

*In re Bellingham Ins. Agency, Inc.*,
Case No. 11-35162, 2012 WL 6013836 (9th Cir. Dec. 4, 2012) ............................10

*In re Dana Corp.*,
379 B.R. 449 (S.D.N.Y. 2007) ...................................................................................18

*In re Horsley S.S.N.*,
2001 WL 1682013 (Bankr. D. Utah Aug. 17, 2001) .............................................13

*In re LLS America, LLC*,
No. 09-06194, 2012 WL 4005447 (Bankr. E.D. Wash. Sept. 8, 2011) ..................14

*In re Owens Corning*,
419 F.3d 195 (3d Cir. 2005) ......................................................................................12

*In re Reserve Capital Corp.*,
No. 03-60071, 2007 WL 880600 (Bankr. N.D.N.Y. Mar. 21, 2007) .....................17

*Kaiser Steel Co. v. Frates (In re Kaiser Steel Corp.)*,
911 F.2d 380 (10th Cir. 1990) .............................................................................3, 20

*Lewis v. Ko (In re Richardson)*,
No. 12 Civ. 0911-WYD, 2012 WL 5458860 (D. Colo. Nov. 8, 2012) ..................11

*Meoli v. Huntington Nat'l Bank (In re Teleservices Group, Inc.)*,
456 B.R. 318 (Bankr. W.D. Mich. 2011) .................................................................11

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
59 U.S. 272 (1855) ......................................................................................................8

*Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*,
458 U.S. 50 (1982) ......................................................................................................9

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
4 F.3d 1095 (2d Cir. 1993) ........................................................................................19

*Ortiz v. Aurora Healthcare, Inc. (In re Ortiz)*,
665 F.3d 906 (7th Cir. 2011) ....................................................................................21

*Paolian v. Amer. Express Co. (In re Canopy Fin., Inc.)*,
464 B.R. 770 (N.D. Ill. 2011) ...................................................................................11

*Petrino v. Eley*,
146 B.R. 267 (D. Colo. 1992) ...................................................................................20

iii

Schoenthal v. Irving Trust Co.,
    287 U.S. 92 (1932)..............................................................20

Stern v. Marshall,
    131 S. Ct. 2594 (2011) ............................................... passim

U.S. v. AAPC, Inc. (In re AAPC, Inc.),
    277 B.R. 785 (Bankr. D. Utah 2002) ...........................15, 16

U.S.v. Lenard (In re Lenard),
    124 B.R. 101 (D. Colo. 1991).....................................14, 15

Weisfelner v. Blavatnik (In re Lyondell Chem. Co.),
    467 B.R. 712 (S.D.N.Y. 2012)........................................10

**STATUTES**

28 U.S.C. § 157.....................................................................7

28 U.S.C. § 157(b).................................................................21

28 U.S.C. § 157(d)......................................................... passim

28 U.S.C. § 157(e).................................................................20

28 U.S.C. § 1334(b)................................................................7

50 U.S.C. App. § 2170(a)(3)....................................................18

50 U.S.C. App. § 2170(b).......................................................18

50 U.S.C. App. § 2170(h).......................................................18

Defense Production Act of 1950, 50 U.S.C. App. § 2601, et seq. ...................2

Foreign Investment and National Security Act of 2007
    50 U.S.C. App. § 2601, et seq..................................................3

**RULES**

D.C. Colo. LCivR 84.1(A)...................................................1, 7

Fed. R. Bankr. P. 7019..........................................................16

Fed. R. Civ. P. 19(a)(1)(A) ...................................................16

Fed. R. Civ. P. 19(a)(1)(B) ...................................................16

Fed. R. Civ. P. 38(b)(1)........................................................20

iv

# OTHER AUTHORITIES

31 C.F.R. § 800.101, *et. seq.*.................................................................................2

31 C.F.R. § 800.207 ..........................................................................................18

31 C.F.R. § 800.303 ..........................................................................................18

Greg W. Kuney, *Stern v. Marshall: A Likely Return to the Bankruptcy Act's
Summary/Plenary Distinction in Article III Terms*, 21 J. Bankr. L. & Prac. 1 Art. 1
(Jan. 2012)..........................................................................................................13

1 *Collier on Bankruptcy* ¶ 3.01, at 3-53 (15th ed. 1986) .............................................15

HRODEN\1638267.2

Defendants Dominion Voting Systems Corporation ("Dominion Canada") and Dominion

Voting Systems, Inc. ("Dominion US") (collectively, "Dominion"), respectfully submit this

memorandum of law in support of their motion to the United States District Court for the District

of Colorado (the "District Court" or the "Court") for an order withdrawing the automatic

reference, under D.C. Colo. LCivR 84.1(a), to the United States Bankruptcy Court for the

District of Colorado (the "Bankruptcy Court"), of this action filed by Tom H. Connolly (the

"SVS Trustee"), as Chapter 7 Trustee for SVS Holdings, Inc. ("SVS").[1]

## PRELIMINARY STATEMENT

The Court should withdraw the reference of this adversary proceeding from the

Bankruptcy Court for three reasons.

First, as a threshold matter, the automatic reference of this adversary proceeding to the

Bankruptcy Court is constitutionally impermissible and should be withdrawn, based upon the

Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011).  Following *Stern*, it is

clear that the Bankruptcy Court lacks the constitutional authority to enter final judgments with

respect to the central substantive consolidation and fraudulent transfer claims at issue in this

proceeding.[2]

Second, even if the constitutional grounds articulated in *Stern* did not require withdrawal

of the reference to the Bankruptcy Court, withdrawal is nevertheless mandatory under the second

sentence of 28 U.S.C. § 157(d), for the independent reason that the Bankruptcy Court cannot

determine the SVS Trustee's claims against Dominion without substantial consideration and

---

[1]  A copy of the SVS Trustee's complaint (the "Complaint") commencing this action is attached as Exhibit A hereto.

[2]  The remaining counts, seeking disallowance of any claims of Dominion US and Dominion Canada pursuant to
Section 502(d) of the Bankruptcy Code, are moot, or at least premature, because neither Dominion US nor
Dominion Canada has filed any proof of claim, or otherwise asserted any claim, against SVS in its bankruptcy
case.

interpretation of two significant issues of federal non-bankruptcy law.  One of these issues, the

SVS Trustee's attempt to substantively consolidate a debtor entity with a non-debtor entity,

without providing notice to the respective creditors of either such entity, will require the

presiding court to engage in significant consideration of the Fifth Amendment's due process

protections, as applied to requests for substantive consolidation.  As to the other of these issues,

the resolution of this action will require the presiding court to engage in significant consideration

and interpretation of federal non-bankruptcy law relating to the acquisition and foreign control of

a business engaged in interstate commerce in the United States.

      The assets at issue in the SVS Trustee's fraudulent transfer claims are contracts,

equipment, and technology relating to the recording and tabulation of votes in federal, state, and

local elections, referred to generally as "voting systems technology" (the "Purchased Assets").

The Purchased Assets and Smartmatic USA Corporation[3], which is funding the SVS Trustee's

pursuit of this action, have been subject to a prior investigative process under the Defense

Production Act of 1950, 50 U.S.C. App. § 2601, *et seq.*, and the federal regulations applicable to

the Committee on Foreign Investment in the United States ("CFIUS"), 31 C.F.R. § 800.101, *et*

*seq.*  That process resulted in Smartmatic's divestiture of its ownership interest in Sequoia

Voting Systems, Inc. ("Sequoia"), which owned the Purchased Assets, pursuant to an agreement

with the U.S. government.  In this action, the SVS Trustee, with the financial backing of

Smartmatic, has alleged claims that could, if successful, claw back the Purchased Assets from

Dominion and merge those assets with SVS for the benefit of SVS's creditors, dominated by

Smartmatic.  Whether and how such a bankruptcy mechanism for regaining control of the

Purchased Assets is subject to the Foreign Investment and National Security Act of 2007

---

[3]  Smartmatic USA Corporation is the apparent successor in interest to Smartmatic Corporation.  Smartmatic USA
Corporation and Smartmatic Corporation are referred to herein collectively as "Smartmatic."

("FINSA"), 50 U.S.C. App. § 2170, which amended the Defense Production Act, and the CFIUS regulations, will require the consideration and interpretation of complex non-bankruptcy laws and regulations.

Third, even putting aside the conclusion that withdrawal of the reference in this action is mandatory, the Court has discretion to withdraw the reference "for cause shown." 28 U.S.C. § 157(d). Dominion has an unequivocal right to a jury trial of the SVS Trustee's fraudulent transfer claims, and Dominion plans to exercise that right. The Bankruptcy Court may not conduct the jury trial. *See Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 911 F.2d 380, 392 (10th Cir. 1990). In addition, following *Stern v. Marshall*, even assuming withdrawal of the reference is not required for all aspects of this action, it is beyond doubt that the Bankruptcy Court may not enter a final judgment in this action.[4] It would be highly inefficient for the Bankruptcy Court to hear this action in the first instance, even if the Bankruptcy Court were permitted to do so—because each element of the action would be heard again in the District Court in any event, either at or before trial. Therefore, based on considerations of judicial efficiency, and after proper consideration of the other factors employed by courts in evaluating requests for permissive withdrawal, this Court should withdraw the reference in this action.

## BACKGROUND

In September 2012, Smartmatic, which is the largest of SVS's general unsecured creditors (holding more than 80% of all general unsecured claims against SVS, according to SVS's bankruptcy schedules[5]), sought permission from the Bankruptcy Court to pursue this

---

[4] Some courts have read *Stern* to go so far as to preclude bankruptcy courts from proposing findings of fact and conclusions of law to the district court concerning the types of claims asserted here. Under this view, the arguments for permissive withdrawal in this Memorandum are even stronger, and indeed transform permissive withdrawal effectively into mandatory withdrawal.

[5] *See* Schedule F – Creditors Holding Unsecured Nonpriority Claims, Case No. 10-24238, Docket No. 18 (June 22, 2010) (copy attached as Exhibit B hereto).

litigation on behalf of SVS.[6]  Shortly thereafter, the Bankruptcy Court denied Smartmatic's motion, but converted SVS's bankruptcy case from chapter 11 to chapter 7 and appointed the SVS Trustee.  On December 7, 2012, the SVS Trustee commenced the instant adversary proceeding by filing the Complaint.  As discussed in more detail below, Smartmatic is funding the SVS Trustee's pursuit of this action.  The SVS Trustee seeks to recover from Dominion, under Sections 544, 548 and 550 of the Bankruptcy Code and analogous sections of Colorado and Delaware state law, on account of alleged constructively fraudulent transfers received by Dominion from Sequoia. Sequoia is **not a debtor in any case under the Bankruptcy Code**, and its assets are not currently at issue in the bankruptcy of SVS or subject to the Bankruptcy Court's jurisdiction.  In an attempt to sidestep this obvious defect in its action—namely, the inability of the SVS Trustee to sue to recover assets its estate never had—the SVS Trustee also asserts a claim seeking to "substantively consolidate" SVS and Sequoia, that is, to force a judicial merger of SVS and Sequoia.

The SVS Trustee's claims stem from a pair of transactions between Sequoia, on the one hand, and Dominion Canada and Dominion US, on the other hand, that occurred in 2009 and 2010.  In 2009, Sequoia, a voting equipment and technology provider experiencing apparent financial difficulties, sought to sell certain of its contracts with governmental entities to conduct elections in New York state (the "NY Contracts").  (Complaint ¶¶ 20, 21-22.)  Dominion Canada was effectively the only bidder for the purchase of the NY Contracts.  On July 15, 2009, Sequoia and Dominion Canada entered into an Asset Purchase Agreement for the sale of Sequoia's rights and obligations under the NY Contracts in exchange for $2,366,000 in cash and contingent

---

[6]  *See* Smartmatic Corporation's Motion for Authority and Standing to Prosecute Causes of Action on Behalf of the Debtor or, in the Alternative, for Appointment of a Trustee, Case No. 10-24238, Docket No. 106 (Sept. 21, 2012) (copy attached as Exhibit C hereto).

HRODEN\1638267.2

payments.  (Complaint ¶ 22.)  But that influx of cash failed to solve Sequoia's financial difficulties.  (Complaint ¶ 26.)

Following the 2009 Asset Purchase Agreement with Dominion Canada, Sequoia continued to lose money and began looking for someone to buy its remaining business as a whole.  (Complaint ¶ 26.)  In response to proposals by Sequoia, Dominion US offered to purchase substantially all of Sequoia's remaining assets in March 2010.  The only other bidder for Sequoia's assets abandoned the bidding process.  Negotiations continued between Dominion US and Sequoia until June 4, 2010, when they entered into an Asset Purchase Agreement whereby Dominion US purchased the remainder of Sequoia's assets for approximately $3 million plus an additional $4.5 million in potential contingent payments, thereby providing substantial value to Sequoia and its creditors.  (Complaint ¶ 30.)

The SVS Trustee makes one central allegation in the Complaint: that the Sequoia assets sold under the 2009 and 2010 transactions—the Purchased Assets—were worth more than the consideration paid by Dominion Canada and Dominion US, respectively.  It is remarkable that the SVS Trustee is pursuing this undervalued transaction argument with respect to assets of Sequoia, an entity for which he does not serve as trustee and the assets of which are not part of the SVS bankruptcy or subject to the Bankruptcy Court's jurisdiction.  To understand this unusual action, it is necessary to realize that the SVS Trustee's pursuit of this action is being funded by Smartmatic.  *See* Trustee's Motion for Approval of Funding Agreement with Smartmatic USA Corporation, Case No. 10-24238, Docket No. 139 (Nov. 14, 2012) (copy attached as Exhibit D hereto).  Until 2007, Smartmatic owned Sequoia.  Dominion understands that because Smartmatic was affiliated with a Venezuelan company, the United States Government, and specifically CFIUS, undertook an investigation of Smartmatic's 2005

acquisition of Sequoia under FINSA and other applicable federal laws. During the pendency of this investigation, Smartmatic entered into a written agreement in 2006 with the U.S. government, pursuant to which it agreed to divest itself of its interest in Sequoia. Smartmatic subsequently accomplished this divestiture by selling its stock in Sequoia to SVS, which was at the time a new holding company formed by Sequoia management. SVS, after acquiring Sequoia, did not make all of the payments on the seller promissory note to Smartmatic arising out of the divestiture transaction. Smartmatic is SVS's largest creditor, a competitor of Dominion, and a plaintiff in a recently-filed lawsuit against Dominion in the Delaware Court of Chancery. Smartmatic is funding this litigation in the hope that it can avoid the sale of the Purchased Assets to Dominion, force a judicial merger of SVS and Sequoia, and thereby regain control over Sequoia's assets, or at least their value, through its bankruptcy claims against SVS.

## ARGUMENT

After *Stern v. Marshall*, the District Court may not properly refer this proceeding to the Bankruptcy Court, and any reference must be withdrawn. Regardless of the justification for withdrawal on the constitutional grounds described in *Stern*, this case satisfies the standards for both mandatory and permissive withdrawal under 28 U.S.C. § 157(d).

**I.      REFERENCE OF THIS ACTION TO THE BANKRUPTCY COURT IS NOT WARRANTED BECAUSE THE BANKRUPTCY COURT CANNOT ENTER FINAL JUDGMENT ON THE TYPES OF CLAIMS ASSERTED BY THE SVS TRUSTEE**

After the Supreme Court's decision in *Stern v. Marshall*, it is clear that a bankruptcy court, as a non-Article III court, does not have constitutional authority to issue a final judgment on the types of claims brought by the SVS Trustee in this adversary proceeding. Accordingly, the District Court must withdraw the automatic reference of this action to the Bankruptcy Court.

HRODEN\1638267.2

District courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Bankruptcy court jurisdiction is granted through the district courts under Section 157(a) of title 28, which permits the district courts to refer actions within their bankruptcy jurisdiction to the bankruptcy judges of those courts. 28 U.S.C. § 157. The District Court's local rules, specifically D.C. Colo. LCivR 84.1(A), automatically refer to the Bankruptcy Court all title 11 cases and proceedings commenced in this District. However, where the bankruptcy court does not have constitutional authority to exercise the power granted to it under Section 157 of title 28, the automatic reference to the bankruptcy court does not comport with the constitutional grant of authority to the district courts and, therefore, the automatic reference must be withdrawn from the bankruptcy court.

**A.    The Bankruptcy Court May Not Enter Final Judgment on the SVS Trustee's Claims.**

The Supreme Court in *Stern* clarified that bankruptcy courts are not constitutionally permitted to enter final judgments with respect to private law claims asserted against parties like Dominion, which have not filed claims against the debtor's estate.[7] In *Stern*, the Supreme Court held that Congress had improperly granted to non-Article III bankruptcy courts the authority to enter final judgment on state law counterclaims asserted by debtors, where such claims would not be resolved in ruling on creditors' proofs of claim and did not fall within the limited "public rights" doctrine. *Stern*, 131 S. Ct. at 2620. This is true even though the claims would be considered "core" proceedings under 28 U.S.C. § 157(b). According to the Supreme Court in *Stern*, the determination of whether a claim is core or non-core does not dictate whether a

---

[7] Whether *Stern* is a "watershed" decision that changed the landscape of the bankruptcy courts' constitutional authority, or whether *Stern* merely clarified the Supreme Court's earlier jurisprudence regarding such authority, need not be decided for the purposes of this Motion. In either case, *Stern* clearly leads to the conclusion that the Bankruptcy Court lacks constitutional authority to adjudicate the SVS Trustee's claims.

7

bankruptcy court has constitutional authority to enter a final judgment on that claim.  *Stern*, 131 S. Ct. at 2608 (while "§ 157(b)(2)(C) permits the Bankruptcy Court to enter final judgment on [the] counterclaim, Article III of the Constitution does not.").  Rather, this determination derives from whether the claim falls within the limited "public rights" exception, or whether it constitutes a private right that is not necessarily fully disposed of in the claims allowance process.

In *Stern*, the Supreme Court explained that while Congress can create public rights and remove those from the purview of Article III judges, it may not "'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at common law,'" or "matters 'of private right, that is, of the liability of one individual to another under the law as defined.'"  *Stern*, 131 S. Ct. at 2612 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1855), and *Crowell v. Benson*, 285 U.S. 22, 51 (1932)).

Public rights are those "in which the claim derives from a federal regulatory scheme, or in which resolution of the claim by an expert governmental agency is deemed essential to a limited regulatory objective within the agency's authority."  *Stern*, 131 S. Ct. at 2613.  Such claims may be resolved by non-Article III courts created by Congress for that purpose.

Private rights, on the other hand, are claims that do not depend on regulatory or administrative objectives for their existence.  These claims can only be heard by bankruptcy courts when they are a necessary part of determining allowance or disallowance of a creditor's claim against the bankruptcy estate.  *Stern*, 131 S. Ct. at 2618.  When litigation claims are not intertwined with creditor claims, and where the litigation claims instead seek to "augment the bankruptcy estate," the litigation claims may not be heard by the bankruptcy courts.  *Id.* at 2616.

8

Thus, in *Stern*, the Supreme Court held that a debtor's tortious interference counterclaim did not fall within any of the formulations of the public rights doctrine. The Supreme Court concluded that the claim functioned only to augment the bankruptcy estate, and was independent of the claims allowance process. *Stern*, 131 S. Ct. at 2616-17. The SVS Trustee's claims in this action similarly are private rights, brought only to augment the estate, and are not intertwined with the claims allowance process. Indeed, Dominion has not filed any claims against SVS, and there are therefore no bankruptcy claims to determine.

1.     Fraudulent Transfer Claims.

The SVS Trustee's claims raise fundamentally common law causes of action seeking the avoidance and return of purportedly fraudulent transfers, with the sole purpose of augmenting the bankruptcy estate by forcing a return by Dominion of the Sequoia assets purchased by Dominion in 2009 and 2010. Such causes of action are indisputably private right claims, unrelated to the claims allowance process. The Supreme Court in *Granfinanciera, S.A. v. Nordberg* held that fraudulent transfer claims "constitute no part of the proceedings in bankruptcy but concern controversies arising out of it." 492 U.S. 33, 56 (1989) (citation omitted). As the Supreme Court explained in its earlier decision in *Northern Pipeline*, they are the "stuff of traditional actions at common law tried by the courts at Westminster in 1789." *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 90 (1982); *see Granfinanciera*, 492 U.S. at 43. Thus, they are "quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankruptcy corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Granfinanciera*, 492 U.S. at 56. As a result, the Supreme Court concluded that such claims are "more accurately characterized as a private rather than a public right." *Id.* at 55.

9

In *Stern*, the Supreme Court clarified that its holding in *Granfinanciera* applies more broadly than in the Seventh Amendment context and that fraudulent transfer avoidance claims cannot be anything other than claims in respect of "private" rights. The Court stated the "counterclaim—*like the fraudulent conveyance claim at issue in Granfinanciera*—does not fall within any of the varied formulations of the public rights exception in this Court's cases." *Stern*, 131 S. Ct. at 2614 (emphasis added). Simply put, *Stern* and *Granfinanciera* are conclusive with respect to the private nature of fraudulent conveyance claims, including those brought by the SVS Trustee pursuant to Sections 544, 548, and 550 of the Bankruptcy Code. *See Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 467 B.R. 712, 720 (S.D.N.Y. 2012) ("Under both *Stern* and *Granfinanciera*, then, it is axiomatic that a fraudulent conveyance claim against a person who has not submitted a claim against a bankruptcy estate, brought solely to augment the bankruptcy estate, is a matter of private right.").

Within the past month, the U.S. Court of Appeals for the Ninth Circuit has again confirmed that bankruptcy courts cannot enter final judgments on fraudulent transfer claims asserted by non-creditors of the bankruptcy estate. *In re Bellingham Ins. Agency, Inc.*, Case No. 11-35162, 2012 WL 6013836, at *9 (9th Cir. Dec. 4, 2012) ("Taken together, *Granfinanciera* and *Stern* settle the question of whether bankruptcy courts have the general authority to enter final judgments on fraudulent conveyance claims asserted against non-creditors to the bankruptcy estate. They do not."). Most district courts that have considered the issue have similarly concluded that bankruptcy courts may not finally adjudicate actions that seek to avoid and recover fraudulent transfers pursuant to Sections 544, 548, and 550 of the Bankruptcy Code, because, as suits traditionally heard in English common law courts in the 18th century, fraudulent transfer claims involve private rights. *See, e.g., Weisfelner*, 467 B.R. at 720; *Adelphia*

*Recovery Trust v. FLP Grp., Inc.*, No. 11 Civ. 6847(PAC), 2012 WL 264180, at *3-5 (S.D.N.Y.

Jan. 30, 2012); *Heller Ehrman LLP v. Arnold & Porter, LLP (In re Heller Ehrman LLP)*, 464

B.R. 348, 354 (N.D. Cal. 2011); *Paolian v. Amer. Express Co. (In re Canopy Fin., Inc.)*, 464

B.R. 770, 773 (N.D. Ill. 2011); *Meoli v. Huntington Nat'l Bank (In re Teleservices Group, Inc.)*,

456 B.R. 318, 338 (Bankr. W.D. Mich. 2011) (finding that the SVS Trustee's application of

Section 550, to recover a fraudulent transfer from a subsequent transferee, "requires the

oversight of a judicial officer" and cannot be adjudicated by a bankruptcy judge).  Consistent

with the majority of courts nationwide, this Court has held that fraudulent transfer avoidance

claims of the type asserted by the SVS Trustee here, against parties that have not filed proofs of

claim, must be adjudicated by an Article III court after *Granfinanciera* and *Stern*.  *See Lewis v.*

*Ko (In re Richardson)*, No. 12 Civ. 0911-WYD, 2012 WL 5458860, at *2 (D. Colo. Nov. 8,

2012).

    The fraudulent transfer claims brought by the SVS Trustee against Dominion, which has

not filed any bankruptcy claims against SVS in its bankruptcy case, cannot and do not have any

connection to the allowance and disallowance of bankruptcy claims.  Rather, the fraudulent

transfer claims serve only as an attempt by the SVS Trustee to force a return by Dominion of the

Sequoia assets purchased by Dominion in 2009 and 2010.  That is insufficient to establish a basis

for final adjudication of a private right by the Bankruptcy Court.  *See Granfinanciera*, 492 U.S.

at 55-56.

## 2.    Substantive Consolidation Claims.

    The SVS Trustee has also asserted a claim for "substantive consolidation" of SVS with

Sequoia, an entity that has not filed any bankruptcy case and is not a debtor in the Bankruptcy

Court, and whose assets are not part of the SVS bankruptcy or subject to the jurisdiction of the

Bankruptcy Court.  Putting aside the merits of whether substantive consolidation of a debtor with

a non-debtor is permissible under applicable law or the facts of this case, and even if it were,

whether the method by which the SVS Trustee has asserted his consolidation claim is

appropriate,[8] the SVS Trustee's claim does not fall within the "public rights" exception. Like the

fraudulent transfer claims, the substantive consolidation claim seeks only to augment SVS's

bankruptcy estate by adding to the SVS estate the assets of Sequoia (including the assets sought

to be clawed back from Dominion). Therefore, as with the fraudulent transfer claims, *Stern*

instructs that the Bankruptcy Court may not enter a final judgment on the SVS Trustee's

substantive consolidation claim.

  The doctrine of substantive consolidation, like its sister common law doctrines of

corporate "alter ego" and "veil piercing," permits a forced judicial merger of the assets and

liabilities of one entity with another, creating one common pool consisting of assets and

liabilities, and a single body of creditors, in a bankruptcy. In a leading decision, the Third

Circuit Court of Appeals described the concept as follows:

> Substantive consolidation, a construct of federal common law, emanates from
> equity. It treats separate legal entities as if they were merged into a single
> survivor left with all the cumulative assets and liabilities (save for inter-entity
> liabilities, which are erased). The result is that claims of creditors against
> separate debtors morph to claims against the consolidated survivor.
> Consolidation restructures (and thus revalues) rights of creditors and for certain
> creditors this may result in significantly less recovery.

*In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005) (internal quotations and citations

omitted).

  Substantive consolidation does not fall within the public rights exception, because it does

"not flow from a federal statutory scheme," nor is it "'completely dependent upon adjudication

---

[8] As discussed further below, the Complaint was filed against and, Dominion understands, was served upon only
Dominion, despite the fact that it seeks a consolidation of the assets and liabilities of SVS and Sequoia. Sequoia,
and the respective creditors of SVS and Sequoia, would be significantly affected by such a consolidation, but
apparently have not been served in this action.

of a claim created by federal law," since it is not a "claim" at all, but an equitable remedy.  *See*
*Stern*, 131 S. Ct. at 2614.  To the extent it can be pled as a "claim" against Dominion at all (a
point which Dominion does not concede), it is a claim that is in no way dependent on any
regulatory or administrative law or objective for its existence.[9]  *See id.*

    Attempted substantive consolidation of the assets of a debtor and a non-debtor, as
compared to the assets of two debtors that are both already in bankruptcy, makes this point more
clear.  A forced judicial merger of non-debtor assets with debtor assets is no different in result
than a clawback of assets from a non-debtor to a debtor through the fraudulent transfer doctrine.
This is in contrast to consolidation of the assets of two debtors, where all such assets are already
subject to adjudication and disposition in the bankruptcy process.  Because substantive
consolidation of a debtor's and a non-debtor's assets is akin to a fraudulent transfer clawback,
substantive consolidation claims of this type follow the withdrawal of reference analysis
applicable to fraudulent transfer claims, described above.  *Stern*, 131 S. Ct. at 2616 (claims that
simply attempt to augment the bankruptcy estate are "the very type of claim that [the Supreme
Court] held in *Northern Pipeline* and *Granfinanciera* must be decided by an Article III court.").
On this basis, this Court should withdraw the reference of this action.[10]

---

[9]  Unlike fraudulent transfer claims, which are fundamentally common law claims notwithstanding their codification
in the Bankruptcy Code, substantive consolidation claims were not even accorded the status of Bankruptcy Code
codification.  Substantive consolidation is judge-made law.  *See In re Horsley S.S.N.*, No. 99-30458 (JAB), 2001
WL 1682013, at *3 (Bankr. D. Utah Aug. 17, 2001).  Indeed, the Bankruptcy Act of 1898 "contained no express
authority for the practice" and substantive consolidation "escaped codification in the Bankruptcy Reform Acts of
1978 and 1994."  *Id.* at *4.  It is notable that in a 2006 case, Mr. Connolly, who is the SVS Trustee, as the trustee
in another bankruptcy case, attempted to use the doctrine of "reverse veil piercing" to expand a fraudulent transfer
claim and seek additional sources of recovery, similar to the manner in which he is attempting to use the sister
doctrine of substantive consolidation here. *See Connolly v. Phillips (In re Phillips)*, 139 P.3d 639 (Colo. 2006).
The consideration of reverse veil piercing under state common law by the Colorado Supreme Court in that
analogous context supports the conclusion that substantive consolidation is, like reverse veil piercing, also a claim
involving "private rights" under a *Stern* analysis.

[10]  *See* Greg W. Kuney, *Stern v. Marshall: A Likely Return to the Bankruptcy Act's Summary/Plenary Distinction in
Article III Terms*, 21 J. Bankr. L. & Prac. 1 Art. 1 (Jan. 2012), at n.73 ("[S]ince substantive consolidation
effectively adds a party liable on a claim, it may be enough of a legal action to augment the estate that it would
have been within the bankruptcy courts' plenary jurisdiction under the Bankruptcy Act and also within the sole

## II. WITHDRAWAL OF THE REFERENCE IS MANDATORY BECAUSE RESOLUTION OF THE ADVERSARY PROCEEDING REQUIRES SIGNIFICANT INTERPRETATION OF FEDERAL NON-BANKRUPTCY LAW

In addition to being mandatory under the *Stern* analysis, withdrawal of the reference is also mandatory on the separate and independent basis that the court presiding over this action will be required to interpret significant issues of federal non-bankruptcy law.

28 U.S.C. § 157(d) provides that the reference of a matter must be withdrawn from the bankruptcy court to the district court when the "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).

In order to determine whether to withdraw the reference in a particular case, it is sufficient for the court to determine that the proceeding will involve substantial and material consideration of federal non-bankruptcy law that is outside the scope of a bankruptcy court's expertise. *U.S. v. Lenard (In re Lenard)*, 124 B.R. 101, 102 (D. Colo. 1991); *Anthony v. Baker (In re Baker)*, 86 B.R. 234, 237 (D. Colo. 1988); *see also AT&T Co. v. Chateaugay Corp.*, 88 B.R. 581, 583-84 (S.D.N.Y. 1988).

Mandatory withdrawal is grounded in Congress' determination that "specialized courts should be limited in their control over matters outside their areas of expertise" and that litigants should be assured that "their assertion of a federally created right will be considered outside the narrow confines of a bankruptcy court proceeding by a district court," which will be "better equipped" than a bankruptcy court to determine such rights. *Chateaugay*, 88 B.R. at 583

---

province of an Article III or state court as the final adjudicator under *Stern v. Marshall*."). The only case Dominion has found addressing this issue, though it was decided contrary to the Kuney article, does not fully address the public right/private right distinction or consider that the non-debtor's assets are not subject to bankruptcy court jurisdiction, or that substantive consolidation in this scenario is akin to a fraudulent transfer action, that the entire doctrine of substantive consolidation is analogous to the doctrine of veil piercing. Therefore, that decision is inapplicable to Dominion's arguments in favor of withdrawal of the reference in this action. *See In re LLS America, LLC*, No. 09-06194, 2011 WL 4005447 (Bankr. E.D. Wash. Sept. 8, 2011).

14

(quoting 1 *Collier on Bankruptcy* ¶ 3.01, at 3-53 (15th ed. 1986)). While routine application of federal non-bankruptcy law is insufficient to mandate withdrawal, withdrawal is mandatory where a significant interpretation of such laws is required. *See In re Lenard*, 124 B.R. at 102; *Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.)*, No. 04 Civ. 8177 (RCC), 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004) (Section 157(d) is meant to "assure that an Article III judge decides issues calling for more than routine application of [federal laws] outside the Bankruptcy Code") (internal quotation marks and citation omitted); *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) (withdrawal is mandatory where, absent the withdrawal, the bankruptcy judge would be obliged "to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes."). Even cases involving matters within the "core" jurisdiction of the bankruptcy court are subject to mandatory withdrawal when consideration of federal non-bankruptcy law is required. *Exxon*, 932 F.2d at 1026.

A.    **The SVS Trustee's Claim for Substantive Consolidation Requires Significant Interpretation of the Fifth Amendment's Guarantee of Due Process.**

The SVS Trustee's attempt to substantively consolidate a debtor and a non-debtor, without providing notice to either party's creditors, requires the presiding court to engage in significant consideration and interpretation of important issues of due process under the Fifth Amendment of the United States Constitution. In the Complaint, the Trustee has asserted against Dominion a claim for substantive consolidation of SVS with Sequoia. As described above, substantive consolidation involves the pooling of assets and liabilities of related entities—in this case, the assets of the debtor, SVS, with the assets of Sequoia, a non-debtor, within SVS's bankruptcy case. Substantive consolidation "has the potential to dramatically affect the rights of the [consolidated] entities' creditors." *U.S. v. AAPC, Inc. (In re AAPC, Inc.)*, 277 B.R. 785, 789

HRODEN\1638267.2

(Bankr. D. Utah 2002). Because of this potential effect on creditors, substantive consolidation "should be ordered reluctantly and only after affording notice and an opportunity to be heard to all those whose rights may be affected . . . ." *Id.* The failure of the Trustee to provide notice to creditors, especially creditors of the non-debtor Sequoia, "would deny creditors their right to due process." *Id.*

If Sequoia's assets and liabilities were substantively consolidated with those of SVS in SVS's bankruptcy case, Sequoia's many creditors would then be barred by the bankruptcy automatic stay, 11 U.S.C. § 362(a), from enforcing their state-law rights to enforce and collect on their claims against Sequoia's assets. Additionally, Sequoia's creditors would find their recovery rights diluted, through no action on their part or any ability to object, by having Sequoia's assets brought within the Bankruptcy Court's jurisdiction and subjected to the claims of SVS's creditors (led by Smartmatic). Under the SVS Trustee's claims, Sequoia's creditors would be deprived of their state-law collection remedies and source of recovery without any opportunity to be heard, or even any notice that the deprivation of their rights was afoot.

Nevertheless, it appears that the SVS Trustee intends to rely on the Complaint, which was filed against and apparently served upon only Dominion, to effect a substantive consolidation of SVS and Sequoia.[11] The SVS Trustee's attempt to achieve the drastic remedy of substantive consolidation in this manner raises a serious due process concern that will require substantial consideration of federal non-bankruptcy law and, therefore, mandates withdrawal of the reference.[12]

---

[11] For the SVS Trustee to proceed with substantive consolidation in this unconventional manner, he would, at a minimum, have to join all creditors of both SVS and Sequoia to this action, as required by Fed. R. Civ. P. 19 (made applicable to this action by Fed. R. Bankr. P. 7019). No court can afford the relief requested by the SVS Trustee without those creditors, and proceeding to adjudicate this action without them could adversely affect their interests. *See* Fed. R. Civ. P. 19(a)(1)(A), (B).

HRODEN\1638267.2

**B.      The SVS Trustee's Claims Require Significant Consideration of Important Federal Statutes and Regulations Governing Interstate Commerce.**

The SVS Trustee's claims, together with Smartmatic's status as an apparently foreign entity and the largest creditor of SVS, require substantial and material consideration and significant interpretation of complex non-bankruptcy issues relating to the acquisition and foreign control of a business engaged in interstate commerce in the United States under FINSA and the CFIUS regulations.  As discussed above, the SVS Trustee, funded by Smartmatic, is attempting to claw back assets primarily for the benefit of Smartmatic, which Dominion understands has foreign ties.  First, the SVS Trustee has sought to bring non-debtor Sequoia's assets into SVS's bankruptcy case by asserting a claim for substantive consolidation of SVS with Sequoia.  Second, the SVS Trustee has asserted avoidance claims to claw back the Purchased Assets.  If the SVS Trustee were successful, the usual bankruptcy process for the disposition of assets could result in SVS's creditors—dominated by Smartmatic—being the new controlling parties with respect to those assets.[13]  The resolution of the SVS Trustee's claims, therefore, requires a determination, in the first instance, of whether such avoidance, consolidation, and disposition, taken together or alone, will constitute a "covered transaction" within the meaning of FINSA and the CFIUS regulations.  If this question is answered in the affirmative, the court would then have to determine whether such avoidance, recovery, and disposition could result in impermissible foreign control of the Purchased Assets.

---

[12] Dominion intends to raise these due process concerns as a defense to the SVS Trustee's claims, and in any event, the presiding court has an independent obligation to examine the SVS Trustee's request for substantive consolidation.  *See In re Reserve Capital Corp.*, No. 03-60071, 2007 WL 880600, at *3 n.4 (Bankr. N.D.N.Y. Mar. 21, 2007).

[13] For example, Smartmatic, as the largest creditor of SVS, could attempt a forced sale of those assets to it through a "credit bid" mechanism, or, once populated with assets, SVS could reconvert its bankruptcy to a chapter 11 reorganization and distribute new SVS equity to Smartmatic and other creditors.

FINSA, which amended the Defense Production Act of 1950, authorizes the review of, and the CFIUS regulations that govern, "covered transactions." *See* 50 U.S.C. App. §§ 2170(b), (h). FINSA and the CFIUS regulations define a "covered transaction" as one where a "foreign person" could obtain "control" of a U.S. business. *See* 50 U.S.C. App. § 2170(a)(3); 31 C.F.R. § 800.207. Dominion plans to raise, and the presiding court will have to determine, whether (a) Smartmatic is a "foreign person" within the meaning of FINSA and the CFIUS regulations, and (b) the avoidance, consolidation and disposition of the Purchased Assets could result in Smartmatic's obtaining "control" over such assets within the meaning of FINSA and the CFIUS regulations. The guidance issued under the CFIUS regulations makes clear that the exercise of creditor remedies that could lead to control may be an event subject to CFIUS review. *See* 31 C.F.R. § 800.303. Smartmatic's funding of the SVS Trustee's litigation efforts, which could lead, through the exercise of creditor remedies, to Smartmatic's acquisition or control of assets that are recovered by the SVS Trustee, could itself be determined a transaction subject to investigation under the CFIUS regulations.

While the SVS Trustee may dispute either the applicability of, or the outcome of these issues under, FINSA and the CFIUS regulations, that potential dispute is not a bar to withdrawal of the reference. The fact is that, regardless of the ultimate outcome, if this action were to proceed in the Bankruptcy Court, it would "require 'the bankruptcy court to engage itself in the intricacies' of non-Bankruptcy law, as opposed to the 'routine application' of that law." *In re Dana Corp.*, 379 B.R. 449, 453 (S.D.N.Y. 2007) (internal citation omitted). Because the consideration of FINSA and CFIUS regulations in the context of voting systems and technology is an issue of first impression, not only in this circuit, but apparently in any court, the case for mandatory withdrawal on this basis is especially strong. *See Chemtura Corp. v. United States*,

No. 10 Civ. 503, 2010 WL 1379752, at *1 (S.D.N.Y. Mar. 26, 2010) (quoting *Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*, 343 B.R. 63, 67 (S.D.N.Y. 2006)) ("'Where matters of first impression are concerned, the burden of establishing a right to mandatory withdrawal is more easily met.'").  Therefore, on this basis also, withdrawal of the reference is required.

## III.  THE DISTRICT COURT SHOULD GRANT PERMISSIVE WITHDRAWAL OF THE REFERENCE TO ENHANCE JUDICIAL EFFICIENCY AND UNIFORMITY.

Even ignoring mandatory withdrawal, this Court has discretion to, and should, withdraw the reference "for cause shown."  To determine whether to permissively withdraw the reference, district courts consider various factors (customarily referred to as the "*Orion* Factors"), including (1) whether the claims are legal or equitable; (2) judicial efficiency; (3) prevention of forum shopping; and (4) uniformity in the administration of bankruptcy law.  *See Centrix Fin. Liquidating Trust v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. (In re Centrix Fin., LLC)*, No. 09 Civ. 01542, 2011 WL 63505, at *6 (D. Colo. Jan. 7, 2011) (citing *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993)).

Because the Bankruptcy Court will not be able to conduct a jury trial in this action, or enter a final judgment, the District Court will eventually adjudicate all or a significant portion of this action.  To permit the Bankruptcy Court to hear some issues first, even assuming it has the power to enter proposed findings of fact and conclusions of law, will only give rise to duplicative litigation.  Withdrawal of the reference, on the other hand, will promote judicial efficiency.

### A.  Dominion Has a Right to a Trial by Jury and the Bankruptcy Court May Not Conduct a Jury Trial.

Dominion's right to a jury trial on the SVS Trustee's claims, and the Bankruptcy Court's inability to conduct such a trial, constitutes "cause" for withdrawal of the reference, especially in

light of the Bankruptcy Court's inability to enter a final judgment on the SVS Trustee's claims. Consideration of a party's right to a jury trial is an important factor in determining whether to withdraw the reference.  To determine whether the Seventh Amendment provides a right to a trial by jury, courts must analyze the underlying nature of the claim without regard to Congress' designation of that claim as core.  *Petrino v. Eley*, 146 B.R. 267, 268 (D. Colo. 1992).  The court's inquiry should move in two steps.  First, a determination must be made as to whether the action would have been deemed legal or equitable in 18th century England.  *Id.*  Second, the Court must "examine the remedy sought and determine whether it is legal or equitable in nature." *Id*. (internal citations omitted).

In this case, it is indisputable that the SVS Trustee's action against Dominion would have been deemed legal in 18th century England.  *Granfinanciera*, 492 U.S. at 43.  Moreover, the remedy sought by the SVS Trustee is purely a legal one.  *Id.* at 48-49; *see Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 95-96 (1932) (holding that a bankruptcy trustee had an adequate remedy at law for the return of alleged preferential payments and thus the defendants had a right to a trial by jury).  Because this adversary proceeding does not call upon the equitable jurisdiction of the Bankruptcy Court, and the SVS Trustee only seeks a legal remedy, Dominion has a Seventh Amendment right to a trial by jury.

A bankruptcy judge can only conduct a jury trial if the parties consent.  28 U.S.C. § 157(e); *In re Kaiser Steel Corp.*, 911 F.2d at 389.  Dominion has not consented and will not consent.  To avoid doubt, to the extent necessary to preserve the right to a jury trial, and without the waiver of any defense, Dominion hereby asserts its right to a jury trial in this action, in accordance with Fed. R. Civ. P. 38(b)(1).

HRODEN\1638267.2

**B.**     **After *Stern*, the Bankruptcy Court Lacks Authority to Enter a Final Judgment and, Possibly, to Adjudicate This Action at All.**

As discussed above, after *Stern v. Marshall*, the Bankruptcy Court, as a non-Article III court, does not have the constitutional authority to issue a final judgment on the types of claims brought by the SVS Trustee here.  Indeed, after *Stern*, the Bankruptcy Court may not be able to adjudicate any portion of this action, even by proposing findings of fact and conclusions of law.  Courts cannot act without an express statutory grant of constitutionally valid authority.  This is true of bankruptcy courts as well as Article III courts.  *See Celotex v. Edwards*, 514 U.S. 300, 307 (1995) ("The jurisdiction of the bankruptcy courts, like that of other federal courts, is ground in, and limited by, statute.").  The language of 28 U.S.C. § 157 is unambiguous:  in a core proceeding, a bankruptcy court has the authority to enter "orders and judgments, subject to review under section 158 of [title 28]."  28 U.S.C. § 157(b).  The statute *does not* grant bankruptcy courts the authority to propose findings of fact or conclusions of law or to enter anything other than final orders and judgments.  One appellate court has endorsed this reading of the statute's plain language.  *Ortiz v. Aurora Healthcare, Inc. (In re Ortiz)*, 665 F.3d 906, 915 (7th Cir. 2011).  Indeed, this is the only plausible reading of the governing statute that is consistent with, and is not contrary to, its plain language.  But at most, even for courts not following *Ortiz*, a bankruptcy court would only be permitted to enter proposed findings of fact and conclusions of law.

**C.**     **Because of the Inability of the Bankruptcy Court to Conduct a Jury Trial and the Limitations on the Bankruptcy Court's Authority After *Stern*, Efficiency and Uniformity are Served by Withdrawal of the Reference.**

In this case, the *Orion* Factors are served by withdrawal, because either the Bankruptcy Court may not hear any portion of this action, or any adjudication by the Bankruptcy Court will need to be revisited by the District Court.  First, in light of Dominion's right to a jury trial, which

21

must take place in the District Court, withdrawal at this stage will conserve judicial resources and foster uniformity by keeping the proceedings in one court: the District Court. That will permit the District Court to become familiar with this action and its dispositive issues.

Second, if the Bankruptcy Court cannot render proposed findings of fact and conclusions of law, the District Court should hear all aspects of this case. Any other result would cause a meaningless initial round of proceedings before the Bankruptcy Court. Moreover, even if the Bankruptcy Court can render proposed findings of fact and conclusions of law, the reference should be withdrawn because, after both *Granfinanciera* and *Stern*, there is no advantage in allowing the SVS Trustee's claims—as matters of private right—to be heard in the Bankruptcy Court. *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 467 (S.D.N.Y. 2011) (stating that if the Bankruptcy Court does not have the power to enter final judgment, "there will be no advantage to allowing the matter to be heard in Bankruptcy Court"). Any proposed findings of fact and conclusions of law issued by the Bankruptcy Court and any decision by the Bankruptcy Court will be subject to *de novo* review. *See id.* Accordingly, to prevent duplicative review by both the District Court and the Bankruptcy Court, the *Orion* Factors assessing concerns of judicial efficiency and uniformity point toward withdrawal. *Id.* at 472-73; *see DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas., Co.*, 464 B.R. 587, 593 (S.D.N.Y. 2012) (finding that duplicative review by both the bankruptcy and district courts is "costly and time-consuming, and unnecessarily expend[s] judicial resources").

These considerations of judicial efficiency and uniformity are particularly strong in this action, which is in its infancy. No discovery or other proceedings have taken place—indeed, Dominion received service of the Complaint only three weeks before the filing of this Memorandum, and no responsive pleading has yet been filed. Therefore, withdrawal of the

reference is timely and will not cause undue delay or duplication of effort. *See Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. at 472 (finding withdrawal would "not cause undue delay or require any duplication of effort" because no discovery nor other proceedings had occurred).

Since withdrawal of the reference will conserve judicial resources, the District Court should withdraw the reference from the Bankruptcy Court.[14]

[Remainder of this page intentionally left blank]

---

[14] Even if the Court determines, notwithstanding Dominion's arguments to the contrary in the Motion, that withdrawal of the reference is not mandatory or appropriate at this time, Dominion reserves the right to seek withdrawal of the reference of this action, or of any issue in this action, at a later date or dates.

HRODEN\1638267.2

**CONCLUSION**

For the reasons set forth above, Dominion respectfully requests that the Court enter an

order withdrawing the reference of this action to the Bankruptcy Court.

Dated this 27th day of December, 2012.

BRYAN CAVE HRO
*/s/ Eric E. Johnson*
Eric E. Johnson
David B. Wilson
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203-4541
Telephone:     (303) 861-7000
Facsimile:     (303) 866-0200
Email: eric.johnson@bryancave.com
Email: david.wilson@bryancave.com

- and -

WILMER, CUTLER, PICKERING, HALE
AND DORR LLP
Richard Johnston
60 State Street
Boston, MA 02109
Tel: 617-526-6282
Email: Richard.Johnston@wilmerhale.com

Attorneys for DOMINION VOTING
SYSTEMS INC. and DOMINION VOTING
SYSTEMS CORPORATION

HRODEN\1638267.2

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 27th day of December, 2012, a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY DOMINION VOTING SYSTEMS CORPORATION AND DOMINION VOTING SYSTEMS, INC., TO WITHDRAW THE REFERENCE** was filed using the CM/ECF and served by U.S. mail, postage prepaid, as follows:

Brent R. Cohen
Chad S. Caby
Kristin M. Bronson
Rothgerber Johnson & Lyons LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO  80202-5885

United States Trustee
999 18th Street
Suite 1551
Denver, CO 80202-2415

Kevin S. Nieman
1660 Lincoln Street, Suite 1900
Denver, CO  80264

SVS Holdings, Inc.
PO Box 815
Broomfield, CO 80038


*/s/ Alicia Berry*
Alicia Berry