# **Exhibit O**

Motion by Dominion Voting Systems Corporation and Dominion Voting Systems, Inc. to Dismiss the Complaint

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br>SVS HOLDINGS, INC.<br><br>       Debtor. | Case No. 10-24238-HRT<br><br>Chapter 7 |
| TOM H. CONNOLLY, CHAPTER 7<br>TRUSTEE,<br><br>       Plaintiff,<br><br>v.<br><br>DOMINION VOTING SYSTEMS<br>CORPORATION; DOMINION VOTING<br>SYSTEMS, INC.<br><br>       Defendants. | Adversary Proceeding No. 12-01757-HRT<br><br><br>(U.S. Dist. Ct., District of Colorado,<br>Civil Action No. 13-cv-00169-REB) |

## MOTION BY DOMINION VOTING SYSTEMS CORPORATION AND DOMINION VOTING SYSTEMS, INC., TO DISMISS THE COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND FACTS.......................................................................................................2

LEGAL STANDARD.............................................................................................................6

SUMMARY OF ARGUMENT ..............................................................................................6

ARGUMENT ..........................................................................................................................8

I.      COUNT I MUST BE DISMISSED BECAUSE THERE IS NO LEGAL
BASIS FOR SUBSTANTIVE CONSOLIDATION OF SVS WITH
SEQUOIA ..............................................................................................................8

     A.     The Assets and Liabilities of the Debtor, SVS, Cannot be Substantively
Consolidated With Those of a Non-Debtor, Sequoia. ......................................8

          1.     Numerous courts have held that substantive consolidation of a debtor with
a non-debtor is prohibited as a matter of law.............................................8

          2.     Substantive consolidation of SVS with Sequoia would in any event be an
inequitable application of an equitable doctrine. ......................................15

     B.     The SVS Trustee's Tactic of Seeking Substantive Consolidation of Sequoia,
Through His Complaint Against Only Dominion, Violates Constitutional
Guarantees of Due Process and is Inconsistent With the Federal Rules of Civil
Procedure. .....................................................................................................18

          1.     The SVS Trustee's claim for substantive consolidation violates due
process.....................................................................................................18

          2.     The SVS Trustee's request for substantive consolidation is inconsistent
with the protections afforded by the Federal Rules of Civil Procedure.....19

     C.     The Allegations of the Complaint do Not Justify Substantive Consolidation
Under any of the Applicable Legal Standards. ...............................................20

          1.     The tests for invoking the extraordinary remedy of substantive
consolidation are rigorous and exacting. ..................................................21

          2.     The SVS Trustee has not established a *prima facie* basis for substantive
consolidation under any test......................................................................24

II.     COUNTS II, III, VII, AND VIII MUST BE DISMISSED BECAUSE
        THE SVS TRUSTEE FAILS TO ALLEGE, AND CANNOT ALLEGE,
        THAT ANY PROPERTY OF SVS WAS TRANSFERRED TO
        DOMINION. ....................................................................................................30

        A.      The SVS Trustee Cannot Avoid the Sale of the Purchased Assets Under the
                Bankruptcy Code, Because They Were Not SVS's Property When They Were
                Sold to Dominion. ..........................................................................................30

        B.      Any Substantive Consolidation Order Would Apply Only Prospectively, and
                Would Not Change the Ownership of the Purchased Assets on the Dates They
                Were Transferred. ...........................................................................................30

III.    COUNTS IV AND IX MUST BE DISMISSED BECAUSE SVS
        CONSENTED TO OR RATIFIED THE ALLEGEDLY FRAUDULENT
        TRANSFERS, AND IS ESTOPPED FROM CHALLENGING THEM...............32

        A.      In Pursuing SVS's Direct State-Law Claims as a Creditor of Sequoia, the SVS
                Trustee Stands in the Shoes of SVS and is Subject to All Defenses Applicable
                to SVS. ...........................................................................................................32

        B.      A Creditor That Consented to or Ratified a Purportedly Fraudulent Transfer is
                Estopped From Seeking to Avoid it. ...............................................................34

        C.      SVS, and Therefore the SVS Trustee, is Estopped From Seeking to Avoid the
                Sales of the Purchased Assets to Dominion, Because SVS Consented to and
                Ratified Those Sales. ......................................................................................35

IV.     COUNTS IV AND IX MUST BE DISMISSED TO THE EXTENT THEY
        SEEK TO RECOVER MORE THAN THE AMOUNT OF ANY VALID
        SVS CLAIMS THAT THE SVS TRUSTEE IS ABLE TO PROVE
        AGAINST SEQUOIA. ......................................................................................37

V.      COUNTS V AND X MUST BE DISMISSED BECAUSE THEY ARE
        DEPENDENT ON COUNTS II, III, VII, AND VIII, WHICH ARE
        SUBJECT TO DISMISSAL. .............................................................................38

VI.     COUNTS VI AND XI MUST BE DISMISSED BECAUSE THEY ARE
        MOOT, PREMATURE, OR OTHERWISE IRRELEVANT................................39

CONCLUSION...............................................................................................................41

# TABLE OF AUTHORITIES

## CASES

*Alpha & Omega Realty, Inc.*,
  36 B.R. 416 (Bankr. D. Idaho 1984) ...................................................................... 18

*Alvarado v. KOB-TV, L.L.C.*,
  493 F.3d 1210 (10th Cir. 2007) ........................................................................... 36

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 6

*Crosby v. Mills*,
  413 F.2d 1273 (10th Cir. 1969) ........................................................................... 31

*Drabkin v. Midland-Ross Corp. (In re Auto-Train Corp., Inc.)*,
  810 F.2d 270 (D.C. Cir. 1987) ........................................................................ 21, 31

*Eberhard v. Marcu*,
  530 F.3d 122 (2d Cir. 2008) ................................................................................ 34

*Edgewater Growth Capital Partners, L.P. v. H.I.G. Capital, Inc.*,
  Case No. 3601-VCS, 2010 WL 720150 (Del. Ch. Mar. 3, 2010) ......................... 32

*F.D.I.C. v. Hogan (In re Gulfco Inv. Corp.)*,
  593 F.2d 921 (10th Cir. 1979) ............................................................... 22, 23, 24, 25

*Fish v. East*,
  114 F.2d 177 (10th Cir. 1940) ............................................................................. 22

*Gandy v. Gandy (In re Gandy)*,
  299 F.3d 489 (5th Cir. 2002) ................................................................................. 9

*Giuliano v. Mitsubishi Digital Electronics Am., Inc. (In re Ultimate Acquisition Partners, LP)*,
  Adv. No. 11-52663, 2012 WL 1556098 (Bankr. D. Del. May 1, 2012) ................. 39

*Helena Chem. Co. v. Circle Land and Cattle Corp. (In re Circle Land and Cattle Corp.)*,
  213 B.R. 870 (Bankr. D. Kan. 1997) ............................................................... passim

*Hill v. Gibson Dunn & Crutcher, LLP (In re MS55, Inc.)*,
  Case No. 06-cv-01233-EWN, 2007 WL 2669150 (D. Colo. Sept. 6, 2007) ..... 33, 34

*In re Adelphia Recovery Trust*,
   634 F.3d 678 (2d Cir. 2011) ............................................................... 34, 35

*In re Castle Arch Real Estate Inv. Co., LLC*,
   No. 11-35082, 2013 WL 492369 (Bankr. D. Utah Feb. 8, 2013) ............................................. 31

*In re Dreier LLP*,
   429 B.R. 112 (Bankr. S.D.N.Y. 2010) ............................................................... 30

*In re DRW Prop. Co. 82*,
   54 B.R. 489 (Bankr. N.D. Tex. 1985) ............................................................... 10

*In re Dunn*,
   Nos. CC-05-1406, CC-06-1046, 2006 WL 6810930 (B.A.P. 9th Cir. Oct. 31, 2006) ....... 34, 35

*In re Gledhill*,
   76 F.3d 1070 (10th Cir. 1996) ............................................................... 12

*In re Horsley S.S.N.*,
   No. 99-30458, 2001 WL 1682013 (Bankr. D. Utah Aug. 17, 2001) ................................. passim

*In re Jacksen*,
   105 B.R. 542 (B.A.P. 9th Cir. 1989) ............................................................... 10

*In re Owens Corning*,
   419 F.3d 195 (3d Cir. 2005) ............................................................... passim

*In re Pearlman*,
   462 B.R. 849 (Bankr. M.D. Fla. 2012) ............................................................... 9, 10, 12

*In re Riviera Drilling & Exploration Co.*,
   Case No. 10-11902, 2012 WL 6719591 (Bankr. D. Colo. Dec. 19, 2012) ............................ 23

*In re Schupbach Invs., LLC*,
   Case Nos. 11-11425, 11-13633, 2012 WL 3564159 (Bankr. D. Kan. Aug. 17, 2012) ............... 8

*In re Third Avenue Transit Corp.*,
   222 F.2d 466 (2d Cir. 1955) ............................................................... 26

*Leverage Leasing Co. v. Smith*,
   143 P.3d 1164 (Colo. App. 2006) ............................................................... 32

*Morse Operations, Inc. v. Robins Le-Cocq, Inc. (In re Lease-A-Fleet, Inc.)*,
   141 B.R. 869 (Bankr. E.D. Pa. 1992) ............................................................... passim

*Northern Arapaho Tribe v. Harnsberger*,
   697 F.3d 1272 (10th Cir. 2012) ............................................................... 19

*Official Comm. of Unsecured Creds. of M. Fabrikant & Sons, Inc. v. JP Morgan Chase Bank,*
   *N.A. (In re M. Fabrikant & Sons, Inc.),* 394 B.R. 721 (Bankr. S.D.N.Y. 2008) ...................... 39

*Raslavich v. Ira S. Davis Storage Co., Inc. (In re Ira S. Davis, Inc.),*
   Adv. No. 93-0530S, 1993 WL 384501 (Bankr. E.D. Pa. Sept. 22, 1993) ......................... 13, 28

*Robbins v. Oklahoma,*
   519 F.3d 1242 (10th Cir. 2008) ................................................................................................ 6

*Sender v. Porter (In re Porter McLeod, Inc.),*
   231 B.R. 786 (D. Colo. 1999) ........................................................................................... 33, 34

*Sender v. Simon,*
   84 F.3d 1299 (10th Cir. 1996) .......................................................................................... 32, 33

*Simon v. ASIMCO Techs., Inc. (In re Amer. Camshaft Specialties, Inc.),*
   410 B.R. 765 (Bankr. E.D. Mich. 2009) ...................................................................... 21, 25, 27

*St. Louis Baptist Temple, Inc. v. FDIC,*
   605 F.2d 1169 (10th Cir.1979) ................................................................................................ 3

*Summers v. Perkins,*
   81 P.3d 1141 (Colo. App. 2003) ........................................................................................... 37

*U.S. v. AAPC, Inc. (In re AAPC, Inc.),*
   277 B.R. 785 (Bankr. D. Utah 2002) ............................................................................. passim

*U.S. v. Envirocare of Utah, Inc.,*
   614 F.3d 1163 (10th Cir. 2010) ......................................................................................... 6, 25

*Union Savings Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co., Ltd.),*
   860 F.2d 515 (2d Cir. 1988) .......................................................................................... passim

*Vaughn v. Comet Consol. Min. Co.,*
   39 P 422 (Colo. 1894) ...................................................................................................... 34, 35

*W.N.J. v. Yocom,*
   257 F.3d 1171 (10th Cir. 2001) ............................................................................................ 31

*Weinman v. Hamilton Props. Corp. (In re Hamilton),*
   186 B.R. 991 (Bankr. D. Colo. 1995) ................................................................................ 11, 18

**STATUTES**

11 U.S.C. § 105(a) .......................................................................................................................... 8

11 U.S.C. § 303(b)(1) ................................................................................................................... 12

11 U.S.C. § 303(h)(1) ................................................................................................................... 12

11 U.S.C. § 303(i)(1) ............................................................................ 12

11 U.S.C. § 303(i)(2) ............................................................................ 12

11 U.S.C. § 502(d) ............................................................................... 39

11 U.S.C. § 544(b) ........................................................................... 20, 33

11 U.S.C. § 544(b)(1) ........................................................................... 30

11 U.S.C. § 547 ................................................................................... 20

11 U.S.C. § 548 ................................................................................... 20

11 U.S.C. § 548(a)(1) ........................................................................... 30

11 U.S.C. § 549 ................................................................................... 20

11 U.S.C. § 550 ................................................................................... 38

C.R.S. § 38-8-108(1)(a) ......................................................................... 37

C.R.S. § 38-8-109(2) ............................................................................ 37

Del. Code tit. 6, § 1307(a)(1) ................................................................. 37

Del. Code tit. 6, § 1308(b) ..................................................................... 37

Del. Code tit. 8, § 271 .......................................................................... 36

## RULES

Fed. R. Bankr. P. 2002 ......................................................................... 15

Fed. R. Civ. P. 9(b) ............................................................................... 6

Fed. R. Civ. P. 19 ................................................................................ 19

Fed. R. Civ. P. 19(a)(1)(A) ..................................................................... 19

Fed. R. Civ. P. 19(a)(1)(B)(i) .................................................................. 19

## TREATISES

5 Collier on Bankruptcy ¶ 1100.06, at 1100-48 (15th ed. 1992) ......................... 18

## PRELIMINARY STATEMENT

Defendants Dominion Voting Systems Corporation ("Dominion Canada") and Dominion Voting Systems, Inc. ("Dominion US") (collectively, "Dominion") respectfully submit this Motion, pursuant to Fed. R. Civ. P. 8, 9(b) and 12(b)(6), to dismiss the Complaint (the "Complaint") filed by Tom H. Connolly, as Chapter 7 Trustee (the "SVS Trustee") for SVS Holdings, Inc. ("SVS").[1]

The SVS Trustee's eleven-count Complaint seeks one ultimate remedy: the clawback of property (the "Purchased Assets") sold by Sequoia Voting Systems, Inc. ("Sequoia") to Dominion Canada and Dominion US in 2009 and 2010, respectively, because the Purchased Assets were allegedly worth more than Dominion paid for them. The Complaint must be dismissed because the SVS Trustee's claims are based on a flawed legal foundation—in that the Purchased Assets were owned and sold by Sequoia, not by SVS—and because the Complaint fails to provide the Court with any valid legal grounds to override that critical deficiency.

SVS never owned the Purchased Assets, including on the dates they were sold to Dominion. It is black-letter law that the SVS Trustee cannot use the Bankruptcy Code's avoidance provisions to recover property that never belonged to SVS in the first place.

In an attempt to sidestep this obvious defect, the SVS Trustee also asserts a claim seeking to "substantively consolidate" SVS and Sequoia, that is, to force a judicial merger of SVS and Sequoia. But, as Dominion demonstrates below, the extraordinary remedy of substantive consolidation cannot be ordered here. Without substantive consolidation, most of the SVS

---

[1] In respect of a number of the grounds for dismissal contained herein, Dominion has asserted that withdrawal of the reference is required pursuant to 28 U.S.C. § 157(d). *See* Memorandum of Law in Support of the Motion by Dominion to Withdraw the Reference, Docket No. 12 (Dec. 27, 2012). Notwithstanding the District Court's determination that pretrial matters, including the motion to dismiss corresponding hereto, may be heard in the first instance by the Bankruptcy Court, *See* Order, Docket No. 27 (June 11, 2013), Dominion asserts that any determination of such grounds by the Bankruptcy Court must be treated as a report and recommendation by, and must be reviewed *de novo* by, the District Court, and nothing herein shall be construed as a waiver by Dominion pursuant to 28 U.S.C. § 157(d) or otherwise.

Trustee's remaining claims also fail. The only claims that do not rely on substantive consolidation are Counts IV and IX. The SVS Trustee brings Counts IV and IX on behalf of SVS rather than on behalf of SVS's creditors. Counts IV and IX fail for the alternative reason that SVS—into whose shoes the SVS Trustee is stepping—consented to and ratified the sale of the Purchased Assets to Dominion; thus, the SVS Trustee cannot now avoid that sale for SVS's benefit.

### BACKGROUND FACTS[2]

The SVS Trustee seeks to recover from Dominion, under Sections 544, 548, and 550 of the Bankruptcy Code and analogous sections of Colorado and Delaware state law, alleged constructively fraudulent transfers from *Sequoia* to Dominion.

The SVS Trustee's claims stem from a pair of transactions between Sequoia, on the one hand, and Dominion Canada and Dominion US, on the other hand, that occurred in 2009 and 2010, when the SVS Trustee alleges that SVS was the controlling shareholder of Sequoia. In 2009, Sequoia, a voting equipment and voting systems technology provider, was experiencing financial difficulties. (Complaint ¶ 20.) To alleviate its financial distress and assist in the payment of creditors, Sequoia sought to sell its contract with the State of New York Executive Department, Office of General Services (the "NY Contract"). (Complaint ¶¶ 20-22.) Dominion Canada was effectively the only bidder for the purchase of the NY Contract. (Complaint ¶ 25.) On July 15, 2009, Sequoia and Dominion Canada entered into an Asset Purchase Agreement for the sale of Sequoia's rights and obligations under the NY Contract in exchange for $2,366,000 in cash and contingent payments. (Complaint ¶ 22.) But that influx of cash failed to solve fully Sequoia's financial difficulties. (Complaint ¶ 26.)

---

[2] For the purposes of its motion to dismiss, Dominion accepts the facts as alleged in the Complaint as true, while reserving its rights to contest them at a later time.

2

Following the 2009 Asset Purchase Agreement with Dominion Canada, Sequoia continued to lose money and began looking for someone to buy its remaining business as a whole. (Complaint ¶ 26.) In response to proposals by Sequoia, Dominion US offered to purchase substantially all of Sequoia's remaining assets in March 2010. Negotiations continued between Dominion US and Sequoia until June 4, 2010, when they entered into an Asset Purchase Agreement whereby Dominion US purchased the remainder of Sequoia's assets for approximately $3 million plus an additional $4.5 million in potential contingent payments, thereby providing substantial additional value to Sequoia and its creditors, above the value already provided by Dominion Canada in 2009. (Complaint ¶ 30.)

The SVS Trustee makes one central allegation in the Complaint: the Purchased Assets that Sequoia sold in the 2009 and 2010 transactions were worth more than the purchase price paid by Dominion Canada and Dominion US, respectively.

The SVS Trustee is the trustee of the bankruptcy estate of SVS alone. SVS does not own and never owned any of the Purchased Assets that the SVS Trustee is seeking to recover. Rather, the Purchased Assets were at all times prior to their sale owned by Sequoia. The SVS Trustee is not the trustee for Sequoia. Indeed, Sequoia is **not a debtor in any bankruptcy case**, and its property is not, and never was, subject to the Court's jurisdiction. According to the SVS Trustee earlier this year, Sequoia had approximately $600,000 in its own bank account and various creditors of its own, who would be prejudiced if Sequoia's assets were consolidated with SVS's, and subject to the additional claims of SVS's creditors. *See* Trustee's Motion for Approval of Settlement with Jack Blaine, Case No. 10-24238, Docket No. 159 (Feb. 20, 2013) ("Blaine Settlement Motion") (copy attached hereto as Exhibit A) ¶ 8.[3]

---

[3] The Court can take judicial notice of the filings in SVS's main case. *See St. Louis Baptist Temple, Inc. v. FDIC*,

The SVS Trustee cannot attempt to recover the Purchased Assets under the Bankruptcy Code, unless he establishes that the Purchased Assets were property of SVS on the relevant dates. Because the SVS Trustee concedes that the Purchased Assets were at all times owned by Sequoia, he is attempting to rewrite the Purchased Assets' ownership history after the fact by seeking substantive consolidation now. To support his request for substantive consolidation, the SVS Trustee sets forth a handful of naked assertions regarding the relationship between SVS and Sequoia. (Complaint ¶¶ 14-19.) Apart from the insufficiency of the substantive consolidation allegations on their face, the Trustee's own pleadings in the SVS bankruptcy contradict those allegations.

The Blaine Settlement Motion, which was allowed by the Court on March 29, 2013, is at odds with the SVS Trustee's request for substantive consolidation in the Complaint. The Blaine Settlement Motion addresses claims that the SVS Trustee asserted against the former CEO of SVS, Jack Blaine, to avoid and recover transfers allegedly made by SVS to Blaine, and a "new value" defense (under Section 547(c)(4) of the Bankruptcy Code) that Blaine asserted, based on loans that he made to SVS after SVS's payments to him. The SVS Trustee asserts in the Blaine Settlement Motion that his "investigation showed that the new loans were to Sequoia and thus could not be offset against the [transfers from SVS to Blaine]." (Blaine Settlement Motion, Exh. A, ¶ 6.) The SVS Trustee's avoidance claims against Blaine, and the Blaine Settlement Motion, are predicated on the separate existence of SVS and Sequoia.[4]

---

605 F.2d 1169, 1172 (10th Cir.1979) (court properly may take judicial notice of its own records and those of other courts).

[4] In response to the Blaine Settlement Motion, Dominion filed a Statement of Reservation of Rights regarding the proposed settlement, any approval thereof, or the effects (if any) thereof in this adversary proceeding or in respect of any claims that may be brought against Dominion in this adversary proceeding by or on behalf of SVS, the SVS Trustee, Sequoia, or otherwise. *See* Statement of Reservation of Rights, Case No. 10-24238, Docket No. 161 (March 13, 2013) (copy attached as Exhibit B hereto). The SVS Trustee acknowledged Dominion's Reservation

The SVS Trustee's pursuit of this litigation is being funded by Smartmatic USA Corporation.[5]  *See* Trustee's Motion for Approval of Funding Agreement with Smartmatic USA Corporation, Case No. 10-24238, Docket No. 139 (Nov. 14, 2012) (copy attached as Exhibit E hereto).  Smartmatic is SVS's largest creditor (holding more than 80% of all general unsecured claims against SVS), according to SVS's bankruptcy schedules.  *See* Schedule F – Creditors Holding Unsecured Nonpriority Claims, Case No. 10-24238, Docket No. 18 (June 22, 2010) (copy attached as Exhibit F hereto).  Smartmatic is also one of a small number of Dominion's competitors in the voting systems technology industry.  Smartmatic initially sought permission from the Court to pursue this litigation itself, but its request was denied.[6]  *See* Smartmatic Standing Motion, Exh. D; Objection of Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation to Smartmatic USA Corporation and Smartmatic Corporation's Motion for Authority and Standing to Prosecute Causes of Action on Behalf of the Debtor or, in the Alternative, for Appointment of a Trustee, Case No. 10-2438, Docket No. 112 (Oct. 5, 2012) (copy attached hereto as Exhibit G); Order on Motion to Convert and Motion for Authority and Standing, or in the Alternative, for Appointment of Trustee, Case No. 10-2438, Docket No. 118 (Oct. 16, 2012) (copy attached hereto as Exhibit H).  Smartmatic would be the primary beneficiary of substantive consolidation of SVS and Sequoia, because Sequoia's assets would

---

of Rights.  *See* Movant's Certificate of Non-Contested Matter and Request for Entry of Order, Case No. 10-24238, Docket No. 162 (March 27, 2013) (copy attached as Exhibit C hereto).

[5]  Smartmatic USA Corporation is the apparent successor in interest to Smartmatic Corporation.  Smartmatic USA Corporation and Smartmatic Corporation are referred to herein collectively as "Smartmatic."  *See* Smartmatic Corporation's Motion for Authority and Standing to Prosecute Causes of Action on Behalf of the Debtor or, in the Alternative, for Appointment of a Trustee, Case No. 10-24238, Docket No. 106 (Sept. 21, 2012) ("Smartmatic Standing Motion") (copy attached as Exhibit D hereto).

[6]  As the Motion of Dominion to Withdraw the Reference mentions, shortly before seeking authority to sue Dominion in SVS's bankruptcy case, Smartmatic and several affiliates filed suit against Dominion in the Delaware Court of Chancery with respect to a license agreement. *See* Memorandum of Law in Support of the Motion by Dominion to Withdraw the Reference, Docket No. 12 (Dec. 27, 2012), at 6.

become available to satisfy Smartmatic's large alleged claim against SVS, through a claim against one of Smartmatic's primary competitors, Dominion.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 695 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that contains "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice. *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). The plausibility requirement serves "to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success." *Id.* at 1248. The "degree of specificity necessary to establish plausibility . . . depends on context." *Id.*

In addition, based on the Tenth Circuit precedent described below, because the SVS Trustee's substantive consolidation claim in Count I of the Complaint requires a showing of fraud or similar injustice, the SVS Trustee is required to comply with Fed. R. Civ. P. 9(b). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This language has been interpreted to require a plaintiff to identify the "time, place, content, and consequences of the fraudulent conduct." *U.S. v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010).

## SUMMARY OF ARGUMENT

In an attempt to cure the obvious and fatal defect to its clawback action—namely, the inability of the SVS Trustee to recover assets SVS never owned—the SVS Trustee asks the

Court in Count I of the Complaint to apply the extraordinary doctrine of substantive consolidation.

The SVS Trustee's attempt to consolidate SVS and Sequoia must fail, and Count I must be dismissed, for three reasons. First, the SVS Trustee cannot substantively consolidate a debtor, SVS, with a non-debtor, Sequoia. Second, even if substantive consolidation of a debtor and a non-debtor were permitted, it cannot be ordered here because the SVS Trustee has pursued it in a manner that violates constitutional guarantees of due process and is inconsistent with the Federal Rules of Civil Procedure. Third, Count I must be dismissed because the allegations in the Complaint do not state a plausible claim for substantive consolidation under any of the potentially applicable legal standards.

If Count I is dismissed for any of the foregoing reasons, as it must be, then Counts II, III, V, VI, VII, VIII, X, and XI must be dismissed as well, because they all rely upon Count I for their very existence. Without substantive consolidation, the *SVS* Trustee has no basis to avoid an alleged fraudulent transfer of *Sequoia's* assets under Sections 544 or 548 of the Bankruptcy Code or to pursue recovery of the assets or their value under Section 550 of the Bankruptcy Code, or disallowance of Dominion's (nonexistent) claim under Section 502 of the Bankruptcy Code.

Finally, the remaining counts, Counts IV and IX, must be dismissed because the SVS Trustee, suing in the distinct capacity of SVS and therefore standing in SVS's shoes as an alleged creditor of Sequoia, cannot avoid the same transfers of the Purchased Assets that SVS, as Sequoia's sole shareholder, consented to or ratified at the time they occurred. Moreover, to the extent that Counts IV and IX are permitted to proceed, any potential recovery by the SVS Trustee on those counts must be limited to the actual amount of SVS's claims against Sequoia— as yet undetermined, but asserted by the SVS Trustee to be, at most, $1.3 million.

# ARGUMENT

## I. COUNT I MUST BE DISMISSED BECAUSE THERE IS NO LEGAL BASIS FOR SUBSTANTIVE CONSOLIDATION OF SVS WITH SEQUOIA

### A. The Assets and Liabilities of the Debtor, SVS, Cannot be Substantively Consolidated With Those of a Non-Debtor, Sequoia.

#### 1. Numerous courts have held that substantive consolidation of a debtor with a non-debtor is prohibited as a matter of law.

The relief that the SVS Trustee seeks in Count I of the Complaint may not be granted as a matter of law. Substantive consolidation is a judicially-created doctrine, for which judges have drawn authority from the general equitable powers granted to the bankruptcy courts by Section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *Union Savings Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co., Ltd.)*, 860 F.2d 515, 518 (2d Cir. 1988). Substantive consolidation functions to effect a judicial merger of two corporations: it combines the assets and liabilities of separate and distinct entities. *Id.* The consolidated assets create a single fund from which all claims against the consolidated entities are satisfied. *Id.* Substantive consolidation is an extreme remedy, with the potential to "vitally affect[]" substantive rights. *Id.* Accordingly, courts have uniformly cautioned that it should be "used sparingly" and consistent with the equitable nature of the doctrine. *Id.* (internal citation and quotations omitted); *In re Schupbach Invs., LLC*, Case Nos. 11-11425, 11-13633, 2012 WL 3564159, at *4 (Bankr. D. Kan. Aug. 17, 2012).

In the rare case when it is used, substantive consolidation is employed to combine the estates of two entities that are debtors in bankruptcy. Substantive consolidation of one debtor with another debtor, both subject to the bankruptcy court's jurisdiction, is an "extreme and

8

unusual" remedy, and, as noted above, courts have uniformly held that it should be rarely used. *See Gandy v. Gandy (In re Gandy)*, 299 F.3d 489, 499 (5th Cir. 2002).

In this case, the SVS Trustee seeks to use a substantive consolidation doctrine that is rarely used—even to consolidate two debtors—to do something even more extraordinary: to sweep the assets and liabilities of non-debtor Sequoia into SVS's bankruptcy case involuntarily. The relief requested by the SVS Trustee both exceeds the bounds of the Court's jurisdiction and transgresses all normal statutory mechanisms for placing an entity into bankruptcy. On this basis, in the majority of cases where courts in the Tenth Circuit have considered the issue of whether a debtor and non-debtor may be substantively consolidated, the courts have held that they may not. *See, e.g., In re Horsley S.S.N.*, No. 99-30458, 2001 WL 1682013, at *7-8 (Bankr. D. Utah Aug. 17, 2001); *Helena Chem. Co. v. Circle Land and Cattle Corp. (In re Circle Land and Cattle Corp.)*, 213 B.R. 870, 877 (Bankr. D. Kan. 1997). Accordingly, Count I of the Complaint fails to state a claim upon which relief can be granted.

> (a) The Court may not substantively consolidate Sequoia with SVS because it lacks jurisdiction over Sequoia and its property.

The Court does not have subject matter jurisdiction over a non-debtor that has not been brought within the Court's jurisdiction by the filing of a voluntary or involuntary bankruptcy petition. *See Horsley*, 2001 WL 1682013, at *7 ("As a court of limited jurisdiction, this Court only obtains jurisdiction over an entity by the filing of a petition, either voluntarily or involuntarily, pursuant to 11 U.S.C. §§ 301 or 303."); *In re Pearlman*, 462 B.R. 849, 854 (Bankr. M.D. Fla. 2012) ("[S]ubstantive consolidation is purely a bankruptcy remedy and does not extend to the assets and affairs of a non-debtor."). Neither the grant of bankruptcy jurisdiction to the federal courts under 28 U.S.C. § 1334, nor the Bankruptcy Code, contains any provision that grants jurisdiction over a non-debtor entity. *See Circle Land*, 213 B.R. at 877.

Here, the SVS Trustee appears to base his argument that the Court has jurisdiction over Sequoia solely on Section 105 of the Bankruptcy Code, the section relied upon by bankruptcy courts when granting substantive consolidation over two debtors. (Complaint ¶ 4.) But Section 105 only authorizes a court to order relief in respect of those entities over which it has jurisdiction. *Circle Land*, 213 B.R. at 877. Section 105 of the Bankruptcy Code is not a jurisdictional grant and cannot serve as a bootstrap for otherwise absent jurisdiction. *Id. See also In re Jacksen*, 105 B.R. 542, 544 (B.A.P. 9th Cir. 1989) ("Section 105(a) does not, however, broaden the bankruptcy court's jurisdiction, which must be established separately under 28 U.S.C. Sections 157 and 1334.").

Thus, as numerous courts have recognized, the Court does not have jurisdiction over the non-debtor Sequoia or its assets and may not substantively consolidate Sequoia with SVS. *See, e.g., Circle Land*, 213 B.R. at 877; *Horsley*, 2001 WL 1682013, at *7; *In re DRW Prop. Co. 82*, 54 B.R. 489, 497 (Bankr. N.D. Tex. 1985); *Pearlman*, 462 B.R. at 854 ("Bankruptcy courts cannot and should not simply drag unwilling entities that never chose to file for bankruptcy into a bankruptcy forum simply because it is expedient and will help one party or another."). Because the Court may not grant the relief requested by the SVS Trustee in Count I of the Complaint, Count I must be dismissed.

                        (b)      Permitting the SVS Trustee to substantively consolidate SVS and Sequoia would impermissibly circumvent the statutory procedure for placing a non-debtor into bankruptcy.

In addition, the SVS Trustee may not use a request for substantive consolidation under Section 105 of the Bankruptcy Code to "end-run" the proper, existing statutory mechanism for placing a non-debtor into bankruptcy, either involuntarily or voluntarily, under the Bankruptcy Code. As an equitable doctrine, substantive consolidation may only be used when other

remedies are unavailable. *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005) (instructing

that the remedy of substantive consolidation is "rare and, in any event, one of last resort after

considering and rejecting other remedies (for example, the possibility of more precise remedies

conferred by the Bankruptcy Code).").

In *Weinman v. Hamilton Props. Corp. (In re Hamilton)*, 186 B.R. 991 (Bankr. D. Colo.

1995), the Court declined to permit a bankruptcy trustee to use the state-law remedy of "reverse

veil piercing," which is similar in purpose to substantive consolidation, because it was an

equitable remedy that could be used "only when there is no adequate remedy at law." 186 B.R.

at 1000. The trustee in *Weinman* had available to it other remedies that would have provided

procedural and substantive protections to creditors of the entity whose assets were to be

subsumed into the debtor for the benefit of the debtor's creditors. *Id.* Thus, the court would not

permit the trustee in that case to bypass conventional legal mechanisms of reaching the

corporation and its assets. *Id.*

Like the trustee in *Weinman*, the SVS Trustee has other potential options available to him

to attempt to bring Sequoia into bankruptcy. Unlike substantive consolidation, these other

options would require the SVS Trustee to comply with express provisions of the Bankruptcy

Code that provide procedural and substantive protections to non-debtors and their creditors. The

Court should not allow the SVS Trustee to circumvent these other options, and the procedural

and substantive protections they provide, by permitting a substantive consolidation of SVS and

Sequoia.

                     (i)      The SVS Trustee could pursue an involuntary
                                      bankruptcy of Sequoia.

If the SVS Trustee is correct that SVS is a substantial unsecured creditor of Sequoia, the

SVS Trustee could seek to join in an involuntary petition to force the non-debtor Sequoia into an

involuntary bankruptcy case, subject to the specific requirements of Section 303 of the

Bankruptcy Code. However, the SVS Trustee should not be permitted to use the general

equitable powers of the Court to circumvent these requirements. *See In re Gledhill*, 76 F.3d

1070, 1078 (10th Cir. 1996) (recognizing the "fundamental tenet of statutory construction that a

court should not construe a general statute to eviscerate a statute of specific effect."); *Pearlman*,

462 B.R. at 854-55 (Section 105 "certainly does not and should not allow a bankruptcy court to

circumvent statutory protections built into the [Bankruptcy Code].").

      Section 303 authorizes the filing of an involuntary petition in respect of a non-debtor,

provided specific rules are followed to protect the non-debtor's rights. For example, if a putative

involuntary debtor has more than twelve creditors, the filing of an involuntary petition requires

three or more creditors to join in the filing of the petition. 11 U.S.C. § 303(b)(1). Those

creditors must hold non-contingent, non-disputed claims against the putative debtor that in the

aggregate satisfy a minimum dollar threshold. *Id.* If the petitioning creditors clear this first

hurdle, the putative debtor is then afforded the opportunity to contest the petition, in which case

the petitioners bear the burden of showing that the debtor is insolvent. 11 U.S.C. § 303(h)(1).

These stringent requirements exist to prevent would-be petitioners from seeking to commence an

involuntary case against an entity for the wrong reasons. If the petitioners are unsuccessful

because the protective requirements of Section 303 are not met, they are generally held liable for

the putative debtor's costs incurred in contesting the petition, and, if the involuntary petition is

found to have been filed in "bad faith," they also may be liable for actual and punitive damages.

11 U.S.C. § 303(i)(1), (2). As such, "the stakes of hastily forcing a party into involuntary

bankruptcy are high." *Pearlman*, 462 B.R. at 855.

Because substantive consolidation does not afford non-debtors (or any of their creditors who do not want a bankruptcy filed) similar protections as Section 303, attempting to "forc[e] a non-debtor into bankruptcy via substantive consolidation circumvents these strict requirements and is in contravention of 11 U.S.C. § 303." *Raslavich v. Ira S. Davis Storage Co., Inc. (In re Ira S. Davis, Inc.)*, Adv. No. 93-0530S, 1993 WL 384501, at *7 (Bankr. E.D. Pa. Sept. 22, 1993). *See also Circle Land*, 213 B.R. at 876 ("[U]se of the court's equitable powers to force a non-debtor into bankruptcy without § 303 protection for involuntary petitions conflicts with the express requirements of the Code."); *Morse Operations, Inc. v. Robins Le-Cocq, Inc. (In re Lease-A-Fleet, Inc.)*, 141 B.R. 869, 873 (Bankr. E.D. Pa. 1992) ("An attempt to involuntarily consolidate a non-debtor with a debtor end runs all of the foregoing stringent requirements and rather harsh consequences provided in § 303 in connection with the filing of an involuntary petition.").

In *Horsley*, the court recognized that permitting substantive consolidation of a non-debtor would constitute an "end run" around the requirements and consequences of Section 303. 2001 WL 1682013, at *7. The court further held that even when the goal of the party seeking consolidation of a non-debtor with a debtor is to enhance assets of the debtor's estate, this is insufficient to allow equity to defeat the statutory jurisdiction and limitations of the Bankruptcy Code. *Id.* On this basis, the court denied consolidation. Regardless of his stated purpose, the SVS Trustee should not be permitted to end-run the Bankruptcy Code's mandatory and specific mechanisms for placing a non-debtor entity into bankruptcy involuntarily. On this basis, Count I of the Complaint must be dismissed.

(ii) The SVS Trustee could pursue a voluntary
bankruptcy of Sequoia.

As an alternative to filing an involuntary bankruptcy petition for Sequoia, the SVS

Trustee could seek to commence a voluntary bankruptcy case for Sequoia. According to the

SVS Trustee, SVS is the controlling equity holder of Sequoia. (Complaint ¶ 14.) The SVS

Trustee states in the Blaine Settlement Motion that "[a]s the sole shareholder of Sequoia, the

Estate, via the Trustee, controls the subsidiary . . . ." (Blaine Settlement Motion, Exh. A, ¶ 8.)[7]

Thus, as the trustee in charge of SVS's affairs, the SVS Trustee could seek to direct Sequoia's

actions. In this capacity, the SVS Trustee could seek to cause Sequoia to commence a voluntary

bankruptcy case, since Sequoia, a Delaware corporation, is certainly "an entity that may be a

debtor" under Section 301 of the Bankruptcy Code and meets the requirements for eligibility to

be a "debtor" under Section 109(a) and (d) of the Bankruptcy Code. Unless there are some

exceptional and presently-unknown limitations on the corporate authority of SVS over Sequoia,

there is no apparent barrier to the SVS Trustee causing Sequoia to enter bankruptcy through

normal and proper channels, upon notice to all parties in interest. Even if the SVS Trustee were

unable to force an involuntary bankruptcy upon Sequoia under Section 303 of the Bankruptcy

Code, it could in all likelihood pursue a voluntary bankruptcy of Sequoia under Section 301 of

the Bankruptcy Code. Again, the SVS Trustee should not be permitted to use substantive

consolidation to circumvent the statutory voluntary and involuntary bankruptcy processes and

their corollary protections for other non-parties.

---

[7] As an example of the SVS Trustee's control over Sequoia, a key element of the consideration that the SVS estate is receiving in the Blaine Settlement Motion is the SVS Trustee's waiver and release, *on behalf of Sequoia*, of Sequoia's claims and defenses against Blaine. (*Id.*, Ex. 1, ¶ 7.) In addition, Dominion understands that the SVS Trustee recently removed Sequoia's directors. *See* Foster Graham Milstein & Calisher LLP's First Interim Application for Allowance of Fees and Expenses for the Period from November 7, 2012 Through April 30, 2013, Case No. 10-24238, Docket No. 165 (May 9, 2013), at 14 (copy attached as Exhibit I hereto).

The filing of a voluntary bankruptcy of Sequoia under Section 301 of the Bankruptcy Code would trigger the notice requirements of the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 2002. This would result in all creditors of Sequoia receiving notice of, and an opportunity to participate in, or even to contest the commencement of, a bankruptcy case of Sequoia.[8] As demonstrated by the absence of notice provided by the SVS Trustee in this case to creditors of Sequoia, his attempt to substantively consolidate SVS with Sequoia does not bear the same, or any, procedural protections for the many parties who will be affected by the remedy that he seeks. The SVS Trustee should not be permitted to circumvent the potentially available mechanism of filing a voluntary bankruptcy for Sequoia, and the attendant notice and other protective requirements that come along with it. On this basis alone, Count I of the Complaint must be dismissed.

>    2.    Substantive consolidation of SVS with Sequoia would in any event be an inequitable application of an equitable doctrine.

The absence of jurisdiction over a non-debtor and the availability of alternatives to substantive consolidation preclude the substantive consolidation of a debtor and a non-debtor under any circumstances. In addition to those barriers to the SVS Trustee's chosen remedy, permitting the SVS Trustee to invoke substantive consolidation here would contradict the equitable nature of the doctrine.[9]

---

[8]   A Sequoia creditor's right to participate in a Sequoia bankruptcy would include, for example, the right to notice of and an opportunity to object to the Blaine Settlement Motion, which, although it seeks to release Sequoia's claims and defenses against Blaine, does not indicate the economic value or effect of such a release on the SVS estate, Sequoia, or Sequoia's creditors.

[9]   Dominion recognizes that some courts have permitted substantive consolidation of a debtor with a non-debtor in certain circumstances. While Dominion disagrees with those courts' conclusions for the jurisdictional and statutory reasons discussed above, even those few courts that have permitted substantive consolidation of a debtor and a non-debtor have recognized that they must do so only after applying an even higher level of scrutiny than that employed when determining whether to substantively consolidate two debtors. *See Lease-A-Fleet,* 141 B.R at 872 ("[A]s careful as the courts must be in allowing substantive consolidation of *debtors* to occur . . . the caution must be multiplied exponentially in a situation where a consolidation of a debtor's case with a non-debtor is attempted. . .") (emphasis in original).

Despite the availability of alternative avenues for placing Sequoia into bankruptcy, the SVS Trustee has done nothing to bring Sequoia and its assets within this Court's jurisdiction or to properly commence a Sequoia bankruptcy. To understand why the SVS Trustee is pursuing the unusual remedy of substantive consolidation, rather than following the conventional procedure for bringing an entity into bankruptcy and filing a fraudulent transfer action to augment its estate, one must realize that the SVS Trustee's pursuit of this action is being funded by Smartmatic. Smartmatic owned Sequoia until 2007, at which point it sold its stock in Sequoia to SVS in exchange for a promissory note. (Complaint ¶ 13.) Smartmatic allegedly has a claim against SVS on account of unpaid amounts due under that promissory note. Smartmatic is now trying to use its alleged claim of nearly $9.7 million against SVS to regain control over Sequoia's assets, or at least their value, through the SVS Trustee's action against Dominion.[10] Because Smartmatic's claim is against only SVS, and not Sequoia, the only way Smartmatic can effectively recover from Sequoia on its claim is if SVS and Sequoia are substantively consolidated. Consolidation, if permitted, would effectively give Smartmatic recourse against the assets of both entities. It would be inequitable to permit the SVS Trustee to use substantive consolidation as a means to circumvent the requirements of the Bankruptcy Code in an attempt to benefit Smartmatic at the expense of other parties in interest, such as Sequoia's legitimate creditors.

Effectively, the SVS Trustee is attempting to use substantive consolidation offensively against Dominion, as a sword rather than as a shield. This tactic is improper. Substantive

---

[10] It is not clear that Smartmatic would be permitted to regain control of the Purchased Assets, even in its capacity as a creditor of SVS. As described in the Memorandum of Law in Support of the Motion by Dominion to Withdraw the Reference, Docket No. 12 (Dec. 27, 2012), any claim by Smartmatic to the Purchased Assets would involve consideration of the Foreign Investment and National Security Act of 2007 and the regulations applicable to the Committee on Foreign Investment in the United States. In any event, dismissal of the SVS Trustee's request for substantive consolidation in Count I of the Complaint would obviate the need for the Court to consider these significant issues of federal non-bankruptcy law.

consolidation may only be used "defensively to remedy identifiable harms caused by entangled affairs." *Owens Corning*, 419 F.3d at 211. For the reasons discussed in Section I.C.2(b) of this Motion, the SVS Trustee is not basing his claims on any alleged entanglement of SVS's and Sequoia's affairs. Rather, he is attempting to craft a unique and improper form of relief, because existing and proper forms of relief will not provide Smartmatic with any potential recovery. It would defy equity to permit the SVS Trustee to proceed in this manner.

Moreover, substantive consolidation may only be applied in furtherance of its primary goal, which "is to ensure the equitable treatment of all creditors." *Augie/Restivo,* 860 F.2d at 518. *Cf. Owens Corning*, 419 F.3d at 211 (stating that corporate separateness is a "fundamental ground rule" that must be respected "absent compelling circumstances calling equity . . . into play."). The SVS Trustee has not alleged how or why substantive consolidation would result in the equitable treatment of any creditor, let alone the equitable treatment of all creditors of SVS and Sequoia. As discussed below, the SVS Trustee has not even notified Sequoia creditors of his attempt at substantive consolidation.

Substantive consolidation of SVS and Sequoia would also give rise to unnecessary practical difficulties in implementing a consolidation order. For example, it is unclear whether Sequoia would have its own bankruptcy case before the Court, or whether and how it would be integrated within SVS's case (a scenario not addressed in the Bankruptcy Code). *See Lease-A-Fleet,* 141 B.R at 873-74. It is also unclear whether the rights and protections normally available to debtors in bankruptcy, for example, the automatic stay, would apply to Sequoia. *See id.*; *Horsley*, 2001 WL 1682013, at *7. Forcing the creditors of Sequoia, the Court, or any other party to suffer these practical quandaries when the SVS Trustee has other methods available to seek the relief he requests would be inequitable.

Because the SVS Trustee is seeking to use substantive consolidation improperly, for offensive and tactical purposes, with the purpose of avoiding the restrictions imposed by the appropriate sections of the Bankruptcy Code, his request for substantive consolidation must be denied as inconsistent with the equitable nature of the doctrine. Accordingly, Count I of the Complaint must be dismissed.

> **B.** **The SVS Trustee's Tactic of Seeking Substantive Consolidation of Sequoia, Through His Complaint Against Only Dominion, Violates Constitutional Guarantees of Due Process and is Inconsistent With the Federal Rules of Civil Procedure.**
>
> > 1. The SVS Trustee's claim for substantive consolidation violates due process.

Substantive consolidation "has the potential to dramatically affect the rights" of the creditors of both SVS and Sequoia. *U.S. v. AAPC, Inc. (In re AAPC, Inc.)*, 277 B.R. 785, 789 (Bankr. D. Utah 2002). Because of the potential effects on creditors, substantive consolidation "should be ordered reluctantly and only after affording notice and an opportunity to be heard to all those whose rights may be affected." *Id. See also Alpha & Omega Realty, Inc.*, 36 B.R. 416, 417 (Bankr. D. Idaho 1984) (substantive consolidation requires "strict attention to the concept of due process"); *Lease-a-Fleet,* 141 B.R. at 873 (citing 5 Collier on Bankruptcy ¶ 1100.06, at 1100-48 (15th ed. 1992) (emphasizing the need for notice to all of the creditors of the non-debtor entity, which creditors could be significantly affected by any consolidation with the debtor)). Nevertheless, the SVS Trustee has not provided the numerous parties, whose substantial rights would be affected by a consolidation of Sequoia with the bankrupt SVS, with notice or an opportunity to be heard concerning his attempted substantive consolidation.

The failure of the SVS Trustee to provide notice to all affected creditors, especially creditors of the non-debtor Sequoia, "would deny creditors their right to due process." *AAPC,* 277 B.R at 789. *See also Weinman,* 186 B.R. at 1000. The SVS Trustee's attempt to

substantively consolidate a debtor with a non-debtor, without providing notice to either party's creditors, must fail, and Count I of the Complaint must be dismissed.

   2. <u>The SVS Trustee's request for substantive consolidation is inconsistent with the protections afforded by the Federal Rules of Civil Procedure.</u>

  The relief requested by the SVS Trustee may not be granted without first joining Sequoia and all creditors of both Sequoia and SVS as required parties to this action under Fed. R. Civ. P. 19. Rule 19(a) enumerates certain categories of prospective parties that are "required to be joined" in order for an action to proceed. Fed. R. Civ. P. 19; *see Northern Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1278-79 (10th Cir. 2012). If the court cannot accord the requested relief without the joinder of a particular person or entity, that person or entity must be joined to the proceeding, pursuant to Rule 19(a). Fed. R. Civ. P. 19(a)(1)(A).

  Here, it is impossible for the Court to grant the relief requested by the SVS Trustee—the consolidation of the assets and liabilities of Sequoia and SVS—without at least joining Sequoia as a party to the proceeding. Rule 19(a) also requires the joinder of a person or entity with an "interest relating to the subject of the action," when the absence of that person may "as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i); *see Harnsberger,* 697 F.3d at 1278.

  Substantive consolidation has the potential to impair Sequoia's rights by making it an unwilling participant in a bankruptcy proceeding and exposing it to claims of creditors of SVS with whom it had no relationship. In addition, because substantive consolidation would result in the pooling of Sequoia's and SVS's assets and liabilities, it has the potential to have profound, direct, and immediate effects on the rights of creditors that have claims against the respective discrete assets of those entities. For example, substantive consolidation would likely dilute any recovery by creditors of Sequoia, because they would be forced to share the pool of Sequoia

assets available to satisfy those claims ($600,000, according to the SVS Trustee) with Smartmatic and the other creditors of SVS, which is less solvent than Sequoia.  (Complaint ¶¶ 8, 53; Blaine Settlement Motion, Exh. A, ¶ 8.)  Smartmatic alone has a claim against SVS of nearly $9.7 million, according to SVS's bankruptcy schedules.  In addition, placing Sequoia into "quasi-bankruptcy" has the potential to expose at least some creditors and counterparties to clawback actions that could have adverse financial consequences for those creditors.  *See* 11 U.S.C. §§ 544(b), 547, 548, and 549.[11]  To the extent that the SVS Trustee refuses or otherwise fails to join Sequoia and all creditors of both SVS and Sequoia, or to the extent it is not feasible to do so, the Court should not, in equity and good conscience, permit Count I to proceed among the existing parties.  In that event, the court must dismiss Count I pursuant to Fed. R. Civ. P. 12(b)(7) and 19(b).

Apart from the SVS Trustee's failure to respect the due process and procedural rights of creditors of SVS and Sequoia, as described above, his request for substantive consolidation ignores the fundamental tenet of substantive consolidation: the equitable treatment of all creditors.  It is inherently inequitable to seek to affect creditors' substantive rights, without providing them with adequate notice and an opportunity to be heard.

### C. The Allegations of the Complaint do Not Justify Substantive Consolidation Under any of the Applicable Legal Standards.

The Court must also dismiss Count I of the Complaint because the SVS Trustee's bald allegations regarding the relationship between SVS and Sequoia, even if accepted as true, fail to establish a *prima facie* basis for substantive consolidation of a debtor with another debtor under

---

[11] For example, companies other than Dominion that purchased assets from Sequoia, such as the company that purchased Sequoia's print business in between the 2009 and 2010 Dominion asset purchases, might be subject to a fraudulent transfer claim under 11 U.S.C. §§ 544 or 548.  In addition, companies receiving payments from Sequoia after the effective consolidation date, but before any actual bankruptcy filing of Sequoia, might be retroactively subject to liability under 11 U.S.C. § 549.

Tenth Circuit case law or under any of the tests adopted by the other federal circuit courts. Moreover, the SVS Trustee's allegations certainly fail to meet the much higher standard for consolidation applied by those few courts that permit consolidation of a debtor with a non-debtor at all. *See Lease-A-Fleet*, 141 B.R at 876 (a proponent of substantive consolidation of a debtor with a non-debtor should be required to put forth an "extremely strong showing of 'unusual circumstances.'").

<blockquote>1.    <u>The tests for invoking the extraordinary remedy of substantive consolidation are rigorous and exacting.</u></blockquote>

As an initial matter, corporate separateness is a fundamental rule that should not be easily disregarded. *Owens Corning*, 419 F.3d at 211 ("[E]ntity separateness is a 'fundamental ground rule.' As a result . . . courts respect entity separateness absent compelling circumstances calling equity (and then even only possibly substantive consolidation) into play.") (internal citation omitted). Substantive consolidation undermines this central principle, and as a result has been described as "extreme," "imprecise," and a "rough-justice" remedy. *Id*. Substantive consolidation has the potential to dramatically affect the rights of creditors, because it can force creditors of one entity to "share on a parity with creditors of a less solvent debtor." *Augie/Restivo*, 860 F.2d at 518; *accord Drabkin v. Midland-Ross Corp. (In re Auto-Train Corp., Inc.)*, 810 F.2d 270, 276 (D.C. Cir. 1987) ("[B]ecause every entity is likely to have a different debt-to-asset ratio, consolidation almost invariably redistributes wealth among the creditors of the various entities."). Because the stakes are high, the standards for substantive consolidation are equally high and exacting. Courts have not hesitated to dismiss complaints requesting substantive consolidation at the pleading stage when they fail to establish a colorable claim for relief under the appropriate standard. *See, e.g., Circle Land*, 213 B.R. at 876; *Simon v. ASIMCO*

*Techs., Inc. (In re Amer. Camshaft Specialties, Inc.)*, 410 B.R. 765, 792 (Bankr. E.D. Mich. 2009).

Some background on the various tests applied and factors considered by courts in this circuit and around the country may be helpful to provide a framework for the Court's review of the sufficiency of the SVS Trustee's allegations in support of his request for substantive consolidation. The Court need not determine in this case which of the varying formulations is most appropriate, because the Complaint fails to meet any of them.

> (a)    *The Tenth Circuit requires a showing of three categories of factors, including fraud, to warrant substantive consolidation.*

The Tenth Circuit in *F.D.I.C. v. Hogan (In re Gulfco Inv. Corp.)*, 593 F.2d 921 (10th Cir. 1979), set forth the limited circumstances under which substantive consolidation of two entities might be permitted. In that decision, the Tenth Circuit adopted a ten-factor test described in one of its earlier cases, *Fish v. East*, 114 F.2d 177 (10th Cir. 1940).[12] Those ten factors can be distilled into two fundamental requirements: "(1) the extent to which the entity to be substantively consolidated was managed or controlled by the debtor, and (2) whether the entity to be substantively consolidated had an economic existence independent from the debtor." *Horsley*, 2001 WL 1682013, at *4.

As a third fundamental requirement, the Tenth Circuit in *Gulfco* also held that substantive consolidation may only be used for a compelling reason, such as "when necessary to avoid fraud or injustice. . . ." 593 F.2d at 928. This third requirement is conjunctive with the other two, because absent circumstances like fraud, the mere interconnectedness and common control of

---

[12] Although these factors may be helpful in evaluating the extent to which the entities disregarded corporate separateness, they should not be viewed as determinative. Since *Fish v. East* and *In re Gulfco*, courts have increasingly departed from relying on "factors in a checklist," which can "fail to separate the unimportant from the important, or even set out a standard to make an attempt." *Owens Corning*, 419 F.3d at 210.

two entities do not warrant substantive consolidation. *Id.* Indeed, the Tenth Circuit in *Gulfco* refused to permit consolidation in part because the entities to be consolidated were not "organized fraudulently." *Id.* at 929. In reaching its decision in *Gulfco*, the Tenth Circuit drew a distinction between the entities in *Fish v. East*, which were organized to "hinder and delay creditors," and those at issue in *Gulfco*, which were not. *Id.* at 928.

Accordingly, to adequately plead substantive consolidation in the Tenth Circuit, the SVS Trustee must allege and establish that SVS and Sequoia were separately maintained for the purpose of fraudulent activity or to perpetuate a similar injustice. *See Horsley*, 2001 WL 1682013, at *5 (denying a motion for substantive consolidation because there was insufficient evidence that the entity to be consolidated existed "only in furtherance of [the debtor's] improper financial dealings").

(b) <em>The tests applied by other circuits are equally strict</em>.

In addition to following the *Gulfco* analysis, courts in the Tenth Circuit routinely borrow from the tests applied by other courts. Other courts have applied a number of tests to determine when substantive consolidation of two debtors is appropriate. In a recent decision, the Court reduced the predominant tests to a few common elements, concluding that substantive consolidation should be granted if:

> (i) the debtor's financial affairs are so intertwined with the other entities' that it is either impossible or costly to untangle them;
>
> (ii) creditors have dealt with the various entities as a single unit; or
>
> (iii) there is a substantial identity between the entities and consolidation is necessary to avoid some harm or realize some benefit.

*In re Riviera Drilling & Exploration Co.*, Case No. 10-11902, 2012 WL 6719591, at *9 (Bankr. D. Colo. Dec. 19, 2012).

23

2.    The SVS Trustee has not established a *prima facie* basis for
substantive consolidation under any test.

On the basis of *Gulfco* and *Riviera*, there is no clearly defined test that has been

definitively adopted as controlling precedent in the Tenth Circuit.  However, combining the tests

applied in *Gulfco* and *Riviera*, there are four requirements comprising a substantive

consolidation inquiry: (1) fraud or similar injustice, **plus** at least one of the following—(2)

excessive entanglement of financial affairs, (3) creditors dealt with the entities proposed to be

consolidated as a single unit, or (4) substantial identity between the entities and the necessity of

consolidation to avoid some harm or realize some benefit.  However these four requirements are

applied, the SVS Trustee's attempt to justify substantive consolidation must fail, because the

allegations of the Complaint are insufficient to meet any test for substantive consolidation.

(a)    The SVS Trustee has not alleged any fraudulent or unjust
purpose behind the separateness of SVS and Sequoia, let
alone pleaded facts sufficient to meet the heightened
pleading requirements for fraud, under Fed. R. Civ. P. 9(b).

The SVS Trustee has not alleged that substantive consolidation of SVS and Sequoia is

"necessary to avoid fraud or injustice."  *See Gulfco*, 593 F.2d at 928.  The nature of substantive

consolidation in the Tenth Circuit—as a measure to avoid fraud or injustice—requires the Court

to apply the heightened pleading requirements of Fed. R. Civ. P. 9(b) in evaluating the

Complaint.  *See AAPC,* 277 B.R at 790 (dismissing complaint because it "lack[ed] the specificity

and breadth of factual allegations necessary for a court to base an order" of substantive

consolidation).  Indeed, "where the factual allegations found in the [complaint] provide the only

link to [the court's] jurisdiction over [] non-debtor defendants, the requirements of Rule 9(b) are

particularly important."  *Id.*  Rule 9(b) requires that the circumstances constituting fraud be

pleaded with particularity.  *Id.* at 790 n.3.  Specifically, Rule 9(b) requires a plaintiff to "identify

24

the time, place, content, and consequences of the fraudulent conduct." *Envirocare of Utah,* 614
F.3d at 1171. The SVS Trustee has not done so in the Complaint.

The Complaint is devoid of any allegations of fraud or wrongdoing between SVS and
Sequoia, or among SVS, Sequoia and Dominion, or any other parties with whom they dealt.
Indeed, this makes sense, because the SVS Trustee's claims are not rooted in fraud. The sole
basis for the SVS Trustee's claims against Dominion is that Sequoia received insufficient
consideration for the Purchased Assets, not that Sequoia somehow acted with the intent to
hinder, delay, or defraud its creditors. Such allegations are insufficient to satisfy Rule 9(b) and
warrant substantive consolidation of SVS with Sequoia. Thus, even if the SVS Trustee were
able to satisfy one of the other tests for substantive consolidation, which he cannot, absent a
showing of fraud he is not entitled to relief on Count I. The SVS Trustee has not even pleaded
the existence of fraud, let alone pleaded it with "particularity." For this reason, under the Tenth
Circuit's rationale in *Gulfco,* Count I must be dismissed. *See Horsley,* 2001 WL 1682013, at *5.

> (b)     The SVS Trustee has not alleged that the financial affairs of
>          SVS and Sequoia were entangled or commingled
>          unreasonably.

For substantive consolidation to be appropriate under the entanglement test, there must
be a supportable allegation that the assets of the relevant entities were "hopelessly commingled."
*Gulfco,* 593 F.2d at 929. The SVS Trustee has made only a single, conclusory, unsupported
allegation that SVS and Sequoia "commingled assets and affairs." (Complaint ¶ 18(b).) This
statement comes nowhere close to alleging the hopeless commingling necessary to justify
substantive consolidation. To even approach the level of commingling required to justify
substantive consolidation, assets must be "so hopelessly scrambled and commingled that it is
impossible to separate them and tell them apart thereby resulting in harm to all creditors" *Amer.
Camshaft,* 410 B.R. at 787. Even then, commingling can justify substantive consolidation "only

25

where the time and expense necessary to even attempt to unscramble them [is] so substantial as

to threaten the realization of any net assets for all the creditors." *Augie/Restivo*, 860 F.2d at 519

(internal citation and quotations omitted). The SVS Trustee has not alleged that it would be

unreasonably difficult or expensive to separate the assets and liabilities of SVS and Sequoia. In

*Owens Corning*, the Third Circuit explained the deficiencies in the SVS Trustee's allegations and

underlying theory:

> As we have explained, commingling justifies consolidation only when separately
> accounting for the assets and liabilities of the distinct entities will reduce the
> recovery of *every* creditor—that is, when every creditor will benefit from the
> consolidation. Moreover, the benefit to creditors should be from cost savings that
> make assets available rather than from the shifting of assets to benefit one group
> of creditors at the expense of another. Mere benefit to some creditors, or
> administrative benefit to the Court, falls far short.

419 F.3d at 214 (emphasis in original).

Indeed, the Complaint concedes the opposite of what is necessary to justify substantive

consolidation—that the assets and liabilities of SVS and Sequoia have been and continue to be

separate—by setting forth the individual assets and liabilities of SVS and Sequoia at various

points in time. (Complaint ¶¶ 8, 53, 80.) *See Owens Corning*, 419 F.3d at 214 ("hopeless

commingling" necessary to support substantive consolidation not shown where "there is no

question which entity owns which principal assets and has which material liabilities"). The SVS

Trustee has filed schedules on behalf of SVS alone, identifying SVS's separate assets and

liabilities. (*Id.* ¶ 8.) The SVS Trustee also alleges that SVS is itself a creditor of Sequoia,

(Complaint ¶¶ 52, 79), which would not be possible if the two entities were treated as one. *See*

*In re Third Avenue Transit Corp.*, 222 F.2d 466, 469 (2d Cir. 1955) (recognizing the unassailable

principle that one "cannot owe himself money"). More recently, the SVS Trustee filed the

Blaine Settlement Motion, which further highlights the separateness of SVS and Sequoia. In the

Blaine Settlement Motion, the SVS Trustee separately identifies assets of Sequoia (¶ 8),

acknowledges that Sequoia has its own creditors (*id.*), acknowledges and places value on claims

by SVS against Sequoia (¶¶ 8-10), and states his position that amounts owing by Sequoia on

loans extended to it by Jack Blaine may not be set off against amounts allegedly owing by Blaine

to SVS (¶ 6). The SVS Trustee has also stated that he is "acting in his capacity as the Debtor's

representative to its wholly-owned subsidiary Sequoia" in attempts to settle claims against

Sequoia by its creditors. (*Id*. at ¶ 8.) Not only have SVS and Sequoia been treated as separate

entities historically, but the SVS Trustee continues to treat them separately. Indeed, the primary

consideration flowing to the SVS estate in the Blaine settlement — namely, assignment to the

SVS Trustee of Blaine's claims against Sequoia, free from any claims or defenses by Sequoia —

would disappear in the event of a consolidation of SVS and Sequoia. The SVS Trustee has never

alleged that separately identifying the assets and liabilities would harm creditors by reducing

their recovery, and he is acting contrary to such a theory currently.

   In *Amer. Camshaft*, the court dismissed the plaintiff's substantive consolidation

complaint because the plaintiff's allegations regarding the commingling of assets, which were far

more detailed than the allegations in the SVS Trustee's Complaint, were insufficient to justify

substantive consolidation. 410 B.R. at 790-91. Accordingly, the SVS Trustee fails to justify his

request for substantive consolidation on the basis of "excessive entanglement."

        (c) The SVS Trustee has not adequately alleged that creditors
           dealt with SVS and Sequoia as a single unit.

   Some courts apply a test for substantive consolidation, based on whether creditors relied

on the separate existence of the affiliated entities or if they treated them as a single entity.

According to the Third Circuit, a *prima facie* case for substantive consolidation may exist when,

"based on the parties' prepetition dealings, a proponent proves corporate disregard creating

contractual expectations of creditors that they were dealing with debtors as one indistinguishable entity." *Owens Corning*, 419 F.3d at 212.  Here, the SVS Trustee would have to allege that creditors of both SVS and Sequoia dealt with both entities as a single unit at the time of the sale of the Purchased Assets in 2009 and 2010.  The SVS Trustee's simple recitation of this test in the Complaint (Complaint ¶ 18(c)) is insufficient to support his request for substantive consolidation.  The SVS Trustee has not even alleged the existence of creditors of Sequoia other than the SVS Trustee, let alone that those creditors dealt with SVS and Sequoia as a single enterprise.  Indeed, it is telling that no other creditor of SVS or Sequoia has sought to substantively consolidate the two entities, despite the pendency of SVS's bankruptcy case for nearly three years.  *See, e.g., Lease-A-Fleet*, 141 B.R at 872 (noting that extra caution must be used in evaluating a request for substantive consolidation attempted by a single party, whose efforts are not joined by any other interested parties).  To overcome a motion to dismiss, the SVS Trustee would, at a minimum, have to allege facts making his threadbare, conclusory statements regarding reliance plausible.  *See Ira S. Davis, Inc.*, 1993 WL 384501, at *6 (dismissing complaint for substantive consolidation based on conclusory nature of allegations).[13]  This he has not done.  Thus, the SVS Trustee fails to justify his request for substantive consolidation on this basis.

---

[13] The SVS Trustee's attempt to rest his claims on conclusory statements reciting the requirements for substantive consolidation applied by various courts highlights the unconventional and inappropriate manner in which the SVS Trustee is seeking relief in the first place.  If the SVS Trustee had followed the conventional procedure of seeking substantive consolidation through a motion in SVS's bankruptcy case to consolidate two entities that were already debtors in pending bankruptcy cases, that approach not only would have mitigated the lack of notice described above (since notice would have been required to be sent to all creditors of SVS and Sequoia in their respective bankruptcy cases), but almost certainly would also have required the SVS Trustee to put forth *some* evidence in support of his claims.  The SVS Trustee should not be permitted to select a less rigorous method of requesting relief, and then benefit from that method by merely reciting the elements that he will be forced to prove at a later date.  This cannot, and does not, satisfy the pleading requirements of Fed. R. Civ. P. 8.

        (d)     The SVS Trustee has not adequately alleged a substantial identity between SVS and Sequoia or that consolidation is necessary to avoid harm or realize a benefit.

The SVS Trustee has not adequately alleged that there was at the time of the sale of the Purchased Assets, and that there still is today, a substantial identity between SVS and Sequoia. In determining whether there is a substantial identity between two entities, courts often look to factors similar to those articulated by the Tenth Circuit in *Fish v. East*. As with the SVS Trustee's claims that creditors of SVS and Sequoia did not rely on the separateness of the two entities, the SVS Trustee's allegations merely parrot the elements of the "substantial identity" test. This cannot satisfy the Rule 8 pleading standard.

In addition, even if the SVS Trustee were able to establish a substantial identity between SVS and Sequoia, he has not articulated the benefit realized or harm to be avoided by consolidation in this case. In fact, the face of the Complaint makes clear that granting the relief requested by the SVS Trustee will actually cause harm to the creditors of Sequoia, because they, as creditors of a more solvent entity than SVS, would be forced to share their potential recovery with creditors of SVS, in particular Smartmatic, with its almost $9.7 million claim. Indeed, the potential for adverse effects on creditors of Sequoia amplifies the need for notice to all creditors and highlights the disregard for those creditors' due process rights under the SVS Trustee's current approach. The SVS Trustee has been pursuing settlements between Sequoia and its creditors that presumably would need to be unwound or avoided under Chapter 5 of the Bankruptcy Code if any consolidation occurred, causing potential harm to the settling creditors, and potentially others who receive secondary transfers of property from those creditors. (Blaine Settlement Motion, Exh. A, ¶8.) In any event, "absent [] allegations of benefit or harm to general creditors of both corporations, [the proponent] cannot be said to have stated a claim upon which relief can be granted." *Circle Land*, 213 B.R. at 876.

Case 1:13-cv-05349-KBF Document 5-15 Filed 08/01/13 Page 38 of 49

## II.   COUNTS II, III, VII, AND VIII MUST BE DISMISSED BECAUSE THE SVS TRUSTEE FAILS TO ALLEGE, AND CANNOT ALLEGE, THAT ANY PROPERTY OF SVS WAS TRANSFERRED TO DOMINION.

### A.   The SVS Trustee Cannot Avoid the Sale of the Purchased Assets Under the Bankruptcy Code, Because They Were Not SVS's Property When They Were Sold to Dominion.

The SVS Trustee's Bankruptcy Code avoidance claims must be dismissed because, absent the improper substantive consolidation of SVS and Sequoia, the SVS Trustee cannot allege that any property of SVS was transferred to Dominion. Both Sections 548 and 544, on which the SVS Trustee relies, permit a bankruptcy trustee to avoid only transfers of property *of the debtor*. 11 U.S.C. § 544(b)(1) ("[T]he trustee may avoid any transfer *of an interest of the debtor in property* . . .") (emphasis added); 11 U.S.C. § 548(a)(1) ("The trustee may avoid any transfer . . . *of an interest of the debtor in property* . . .") (emphasis added); *In re Dreier LLP*, 429 B.R. 112, 125 (Bankr. S.D.N.Y. 2010) ("If the transfer did not involve property of the debtor under non-bankruptcy law, the trustee cannot avoid and recover the transfer or its value.").

The SVS Trustee acknowledges that the Purchased Assets were owned by Sequoia (and not SVS) when they were sold to Dominion in 2009 and 2010. Because SVS and Sequoia have not been, and cannot be, substantively consolidated, and because no property of SVS was ever transferred, the SVS Trustee cannot maintain his fraudulent transfer claims. Therefore, Counts II, III, VII, and VIII must be dismissed.

### B.   Any Substantive Consolidation Order Would Apply Only Prospectively, and Would Not Change the Ownership of the Purchased Assets on the Dates They Were Transferred.

Even if the SVS Trustee were able to overcome the substantive and procedural legal barriers to substantive consolidation of SVS with Sequoia (which he cannot), and even if the Complaint contained sufficient allegations to state a plausible claim for substantive consolidation (which it does not), the SVS Trustee cannot rescue his Bankruptcy Code fraudulent transfer

claims because he is powerless to alter time. Substantive consolidation of SVS and Sequoia could be effective only upon the entry of an order directing the consolidation of their assets and liabilities. Such an order, entered at the conclusion of this litigation at the earliest,[14] could not change the fact that the Purchased Assets were property of Sequoia (not SVS) at the time they were sold to Dominion in 2009 and 2010. Indeed, there is no provision of the Bankruptcy Code that would even permit an entity to become a debtor in either a voluntary or involuntary bankruptcy case retroactively, before any such case was actually filed by or against the debtor, let alone allow retroactive consolidation of that entity's assets and liabilities with another entity's.

The SVS Trustee has not requested that any order granting substantive consolidation be given retroactive effect to the time of the transfers of the Purchased Assets. But even if he had made such a request, a *nunc pro tunc* order cannot be used to reflect something that did not occur, it can only correct or recognize a mistake, error or action that occurred while a particular legal action was already pending. *Crosby v. Mills*, 413 F.2d 1273, 1277 (10th Cir. 1969). Nor can an order entered *nunc pro tunc* cure retroactively the Court's lack of jurisdiction over Sequoia. *AAPC*, 277 B.R at 789 (citing *W.N.J. v. Yocom*, 257 F.3d 1171 (10th Cir. 2001)). On this basis, courts within this circuit have declined to order substantive consolidation on a retroactive basis. *See Horsley*, 2001 WL 1682013, at *6; *AAPC*, 277 B.R. at 789.[15]

---

[14] Any such an order could only be entered, if at all, upon the rendering of a final judgment in respect of Count I of the Complaint, following the jury trial that Dominion has demanded. *See* Dominion Voting Systems Corporation's and Dominion Voting Systems, Inc.'s Notice of Jury Demand, Docket No. 21 (Jan. 15, 2012).

[15] The SVS Trustee has not requested retroactive consolidation, and, in the event he does, Dominion reserves all rights and defenses in respect of such a request. In particular, Dominion asserts that retroactive consolidation is inappropriate for the reasons discussed above, and because the SVS Trustee fails to meet the standard for retroactive consolidation applied by those few courts that have permitted it. *See Auto-Train*, 810 F.2d at 277 (*Nunc pro tunc* substantive consolidation is only appropriate when it yields a greater benefit than the harm it inflicts). Although the U.S. Bankruptcy Court for the District of Utah recently entered findings of fact and conclusions of law authorizing a *nunc pro tunc* consolidation, the request for retroactive consolidation in that case was unopposed and therefore the decision is of no precedential or persuasive value with respect to this case. *See*

III.     **COUNTS IV AND IX MUST BE DISMISSED BECAUSE SVS CONSENTED TO OR RATIFIED THE ALLEGEDLY FRAUDULENT TRANSFERS, AND IS ESTOPPED FROM CHALLENGING THEM.**

The SVS Trustee's direct state-law claim, asserted on behalf of SVS as a creditor of Sequoia under Colorado or Delaware fraudulent transfer law[16] must be dismissed because SVS, as Sequoia's sole shareholder, consented to and ratified the sales of the Purchased Assets to Dominion. Thus, standing in the shoes of SVS, which was effectively a party to the purported fraudulent transfers, the SVS Trustee is therefore estopped or otherwise barred from avoiding those sales, and the Court must leave the parties to the transaction as it found them.

A.     **In Pursuing SVS's Direct State-Law Claims as a Creditor of Sequoia, the SVS Trustee Stands in the Shoes of SVS and is Subject to All Defenses Applicable to SVS.**

The SVS Trustee's state-law fraudulent transfer claims set forth in Counts IV and IX of the Complaint (the "Direct State-Law Claims") are fundamentally different, and brought in a different capacity, from his state-law claims set forth in Counts III and VIII (the "Derivative State-Law Claims"). The Direct State-Law Claims are state-law fraudulent transfer claims that SVS allegedly held against Dominion, based on SVS's status as a creditor of Sequoia, prior to SVS's bankruptcy filing. To the extent those claims are valid, they became part of the SVS bankruptcy estate by operation of Section 541 of the Bankruptcy Code.[17] The Direct State-Law

---

*In re Castle Arch Real Estate Inv. Co., LLC,* No. 11-35082, 2013 WL 492369, at *17 (Bankr. D. Utah Feb. 8, 2013).

[16] Although the SVS Trustee purports to bring Counts IV and IX under both Colorado and Delaware law, only one state's law can apply. Dominion does not address which state's fraudulent transfer statute is appropriate, because both Colorado's and Delaware's statutes are based on the Uniform Fraudulent Transfer Act and are substantially identical. *See Leverage Leasing Co. v. Smith,* 143 P.3d 1164, 1166 (Colo. App. 2006); *Edgewater Growth Capital Partners, L.P. v. H.I.G. Capital, Inc.,* Case No. 3601-VCS, 2010 WL 720150, at *2 (Del. Ch. Mar. 3, 2010). In any event, even if the SVS Trustee were to prevail on his avoidance claims, he would only be entitled to a single satisfaction.

[17] The definition of property of the estate under Section 541 of the Bankruptcy Code includes "all legal or equitable interests in property as of the commencement of the case" and encompasses causes of action belonging to the debtor at the commencement of the case. 11 U.S.C. § 541. *See Sender v. Simon,* 84 F.3d 1299, 1304-05 (10th Cir. 1996) (internal citation omitted).

32

Claims rely on a theory that SVS itself, as an alleged inter-company creditor of Sequoia, was damaged by the sales of the Purchased Assets to Dominion.

By contrast, the Derivative State-Law Claims do not involve any alleged rights of SVS itself. The Derivative State-Law Claims are alleged pursuant to Section 544 of the Bankruptcy Code. Section 544 permits the SVS Trustee to pursue, on behalf of all SVS creditors, state-law claims that a creditor of SVS could hypothetically have brought against Dominion as of the date of the SVS bankruptcy filing. 11 U.S.C. § 544(b). As such, where Section 544 may provide the SVS Trustee the right to bring claims *of an SVS creditor*, Section 541 may provide the SVS Trustee the right to bring claims only *of SVS itself*. *See generally Hill v. Gibson Dunn & Crutcher, LLP (In re MS55, Inc.),* Case No. 06-cv-01233-EWN, 2007 WL 2669150, at *10 (D. Colo. Sept. 6, 2007); *Sender v. Porter (In re Porter McLeod, Inc.)*, 231 B.R. 786, 791-92 (D. Colo. 1999) (describing the distinction between a bankruptcy trustee suing directly on behalf of the debtor, under Section 541, as opposed to suing derivatively on behalf of creditors of the debtor, under Section 544, and the defenses that may be asserted against a trustee in each capacity).

This fundamental difference is crucial. When asserting a claim under Section 541, the trustee "stands in the shoes of the debtor and can take no greater rights than the debtor himself had." *Sender v. Simon*, 84 F.3d at 1305 (internal citation and quotations omitted). "This means that the trustee is subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor." *Id.* (internal citation and quotations omitted). Therefore, in respect of the Direct State-Law Claims, the SVS Trustee stands in the shoes of SVS and is subject to all defenses that Dominion would have had against SVS absent an SVS bankruptcy filing.

### B.    A Creditor That Consented to or Ratified a Purportedly Fraudulent Transfer is Estopped From Seeking to Avoid it.

The SVS Trustee, standing in the shoes of SVS, may not recover from Dominion on account of transactions that SVS consented to, acquiesced in, or ratified (whether expressly or impliedly).  Fraudulent transfer law protects *innocent* creditors from their debtor's attempt to evade payment by transferring away the assets the creditors could have expected to look to for repayment of their claims.  *See, e.g., Eberhard v. Marcu*, 530 F.3d 122, 131 (2d Cir. 2008) (declaring that the "object" of fraudulent transfer law "is to enable a creditor to obtain his due despite efforts on the part of a debtor to elude payment.").  But where the creditor seeking to avoid a transfer of assets consented to and acquiesced in the transfer, that creditor could not have been looking to those assets for repayment, and was in no way defrauded by the transfer.

Accordingly, a creditor who approves, participates or acquiesces in, or ratifies a transfer cannot invoke fraudulent transfer law to invalidate that transaction.  *In re Adelphia Recovery Trust*, 634 F.3d 678, 691 (2d Cir. 2011) ("A fraudulent transfer is not void, but voidable; thus, it can be ratified by a creditor who is then estopped from seeking its avoidance."); *In re Dunn*, Nos. CC-05-1406, CC-06-1046, 2006 WL 6810930, at *8 (B.A.P. 9th Cir. Oct. 31, 2006) ("A creditor who ratifies or participates in a fraudulent transfer may be estopped from attacking the transfer."); *Vaughn v. Comet Consol. Min. Co.*, 39 P 422, 424 (Colo. 1894) ("A creditor, by consenting to the transfer, or by such acquiescence therein as induced others to deal with the [transferee] under the belief that he had ratified the transaction and assented to the transfer, will be estopped from afterwards asserting his claim, to their prejudice.").[18]

---

[18] This defense is closely related to the defense of *in pari delicto*, which is "based on the principle that when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another participant in that conduct, the parties are deemed *in pari delicto*, and the law will aid neither, but rather, will leave them where it finds them." *Porter McLeod*, 231 B.R. at 794; *accord MS55*, 2007 WL 2669150, at *15.  "In bankruptcy, the [*in pari delicto*] doctrine applies only to the trustee in his 'debtor' status, not as 'creditor.'" *Porter McLeod*, 231 B.R. at

In *In re Dunn*, a panel of three bankruptcy judges affirmed the dismissal of a fraudulent transfer claim. The court reasoned that "to the extent [the plaintiff] is acting as a creditor of [the debtor] in seeking to invalidate the purported fraudulent transfer, [plaintiff] cannot do so because he executed the Resolution giving rise to the transfer," authorizing "the proceeds of the Note [to] be used to fund agreed to bonus payments to [the defendant]." 2006 WL 6810930 at *1, *7-8 (holding that plaintiff could not bring a fraudulent transfer claim, either on behalf of debtor or as its creditor, because he was "a participant in the purported fraudulent transfer").

Ratification need not be evidenced by participation in the transaction or express consent, it may be "implied, or may result from silence or inaction." *Adelphia Recovery Trust*, 634 F.3d at 691. In *Vaughn v. Comet Consol. Min. Co.*, the Colorado Supreme Court refused to permit a creditor that stood by while the transfer occurred to later challenge the transaction as fraudulent. 39 P at 424.

### C.    SVS, and Therefore the SVS Trustee, is Estopped From Seeking to Avoid the Sales of the Purchased Assets to Dominion, Because SVS Consented to and Ratified Those Sales.

SVS consented to and ratified the transfers of the Purchased Assets to Dominion. In the Complaint, the SVS Trustee has alleged that SVS was the sole shareholder of Sequoia when Dominion bought the Purchased Assets. (Complaint ¶ 14.) Yet SVS took no action to disapprove or prevent the sales of the Purchased Assets to Dominion from occurring.

Rather, the opposite is true. From the face of the 2010 Asset Purchase Agreement, a redacted copy of which is attached hereto as Exhibit J, it is clear that the parties contemplated and required that Sequoia obtain shareholder approval of the sale from SVS. (2010 Asset

---

794. Thus, the *in pari delicto* doctrine, and Dominion's ability to assert this defense against the SVS Trustee, applies to the Direct State-Law Claims that the SVS Trustee asserts on behalf of SVS.

Purchase Agreement, Exh. J, §§ 2.3, 4.3.)[19]  Such a shareholder approval requirement is

customary for the type of transaction contemplated by the 2010 Asset Purchase Agreement.  The

requirement is consistent with Delaware General Corporation Law ("DGCL").  Section 271(a) of

the DGCL provides that a corporation may "sell, lease or exchange all or substantially all of its

property and assets . . . when and as authorized by a resolution adopted by the holders of a

majority of the outstanding stock of the corporation entitled to vote thereon[.]"  Del. Code tit. 8,

§ 271.  Moreover, the 2010 transaction was approved by the board of directors of Sequoia,

which, according to the SVS Trustee, shared substantially the same members as the board of

SVS.  (Exh. J, § 2.3; Complaint ¶18(a).)

The earlier 2009 Asset Purchase Agreement involved the sale of the New York Contracts

and not substantially all of Sequoia's assets. Still, although no formal shareholder approval was

required by the terms of the 2009 Asset Purchase Agreement or by statute, SVS ratified the 2009

transaction by acquiescing in the sale to Dominion at the time.   In any event, it is not plausible

that SVS could have approved the 2010 transaction without knowledge of the 2009 transaction.

Thus, SVS's consent to the 2010 transaction also constituted a ratification of the 2009

transaction.

Because the SVS Trustee is standing in the shoes of, and subject to the same defenses as,

SVS, and because SVS at the very least ratified the transfers of the Purchased Assets to

---

[19] "Notwithstanding the usual rule that a court should consider no evidence beyond the pleadings in a Rule 12(b)(6) motion to dismiss, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal citation and quotations omitted).  Here, the 2010 Asset Purchase Agreement is referred to in the Complaint, is the operative document for one of the transfers that the SVS Trustee seeks to avoid, and is central to the SVS Trustee's claims.

Dominion, the SVS Trustee is estopped from seeking to avoid those transfers.[20]  Accordingly,

Counts IV and IX of the Complaint must be dismissed.[21]

## IV.    COUNTS IV AND IX MUST BE DISMISSED TO THE EXTENT THEY SEEK TO RECOVER MORE THAN THE AMOUNT OF ANY VALID SVS CLAIMS THAT THE SVS TRUSTEE IS ABLE TO PROVE AGAINST SEQUOIA.

Counts IV and IX must fail because the SVS Trustee is estopped from asserting those

claims, as described above.  But even if Counts IV and IX are allowed to proceed in part, they

must be dismissed to the extent the SVS Trustee seeks a *recovery* beyond any *bona fide* amount

that the SVS Trustee may establish is owed to SVS by Sequoia as of the dates of the challenged

sales.  It must be emphasized that the SVS Trustee brings Counts IV and IX on behalf of SVS, as

an alleged creditor of Sequoia.  Both the Colorado and Delaware statutes on which the SVS

Trustee relies provide that a creditor may seek to avoid a transfer, or recover the value of any

avoided transfer, only "***to the extent necessary to satisfy the creditor's claim***."  C.R.S. §§ 38-8-

108(1)(a), 38-8-109(2); Del. Code tit. 6, §§ 1307(a)(1); 1308(b) (emphasis added); *see Summers*

*v. Perkins*, 81 P.3d 1141, 1143 (Colo. App. 2003) (holding that a "creditor's recovery in an

action to avoid a fraudulent transfer is limited to the lesser of the adjusted value of the

transferred asset or the amount of the creditor's claim").  Although the SVS Trustee alleges that,

as of the dates of the 2009 and 2010 sales, SVS had an inter-company claim against Sequoia in

---

[20] In addition, because the SVS Trustee continues to treat SVS and Sequoia as separate entities, the SVS Trustee is estopped from seeking to substantively consolidate SVS and Sequoia.  As demonstrated by the statements of the SVS Trustee in the Blaine Settlement Motion, the SVS Trustee is presently involved in settlements between Sequoia and its creditors.  (Blaine Settlement Motion, Exh. A, ¶ 8.)  It is unclear how Sequoia can settle those claims now as a separate entity, and later be consolidated with SVS, without an unwinding of the settlements and disgorgement of any settlement proceeds, or how the SVS Trustee can participate in those settlement negotiations of Sequoia as a separate entity without being estopped from later seeking consolidation.

[21] Notably, the core allegation behind Counts IV and IX, that Sequoia owes an inter-company debt to SVS, is directly contrary to the SVS Trustee's substantive consolidation claim. *See Augie/Restivo*, 860 F.2d at 518 (explaining that substantive consolidation results in "eliminating inter-company claims"); *Horsley*, 2001 WL 1682013, at * 4 (same).  The two theories are inconsistent and incompatible, meaning that both types of claims cannot stand.  Thus, although Counts IV and IX fail for the independent reason of estoppel, they also highlight the separateness of SVS and Sequoia and undermine the SVS Trustee's request for substantive consolidation in Count I of the Complaint.

the amount of approximately $1.3 million, he has not made any allegations to substantiate the amount, basis, or validity of such a claim. Furthermore, the amount or validity of any claim by SVS against Sequoia has not yet been determined by any court. Thus, the SVS Trustee is trying to avoid a transfer by Sequoia that purportedly prevented SVS from recovering on its claim against Sequoia, before any court has determined that Sequoia ever owed SVS *anything*.[22]

Therefore, if the Complaint is allowed to proceed in respect of Counts IV and IX alone (which Dominion asserts it cannot, on the basis of estoppel as described above), it must be limited to a potential recovery capped at the actual, valid, proven claim of SVS against Sequoia at the time of the 2009 and 2010 sales. That amount may be as high as the $1.3 million that the SVS Trustee alleges, or it may be something substantially less, depending on any defenses that Sequoia might have against that claim if Sequoia were permitted to defend against the SVS Trustee's claims.

## V.  COUNTS V AND X MUST BE DISMISSED BECAUSE THEY ARE DEPENDENT ON COUNTS II, III, VII, AND VIII, WHICH ARE SUBJECT TO DISMISSAL.

The SVS Trustee's claims for recovery of the Purchased Assets under Section 550 of the Bankruptcy Code are entirely dependent on his claims under Sections 548 and 544 of the Bankruptcy Code, and therefore must be dismissed along with those claims. Avoidance of a transfer under one of the Bankruptcy Code's avoidance sections is a predicate to recovery of that transfer under Section 550. 11 U.S.C. § 550 ("***to the extent that*** a transfer is avoided under section 544 [or] 548 . . . of this title, the trustee may recover, for the benefit of the estate, the

---

[22] The SVS Trustee is seeking to satisfy a purported claim of SVS against Sequoia through an attempted recovery of an alleged fraudulent transfer of Sequoia's property before there has been (and without seeking, as to Sequoia) any determination of the validity of SVS's purported claim against Sequoia. Sequoia would have an interest in defending against the SVS Trustee's efforts to saddle it with liability, yet the SVS Trustee has not joined Sequoia as a party to this action. Therefore, in addition to the grounds set forth above, the SVS Trustee's Direct State-Law Claims to recover fraudulent transfers should be dismissed due to lack of ripeness, failure to join an indispensable party, and lack of constitutional due process as to Sequoia.

property transferred . . .") (emphasis added); *Official Comm. of Unsecured Creds. of M. Fabrikant & Sons, Inc. v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 743 (Bankr. S.D.N.Y. 2008) ("[Section] 550 plainly limits recovery to the extent that the transfer is actually avoided . . ."). Because, for the reasons discussed above, the sale of the Purchased Assets to Dominion cannot be avoided under the Bankruptcy Code, there can be no recovery based on any avoidance. Counts V and X of the Complaint must therefore be dismissed.

## VI.    COUNTS VI AND XI MUST BE DISMISSED BECAUSE THEY ARE MOOT, PREMATURE, OR OTHERWISE IRRELEVANT.

Counts VI and XI of the Complaint, seeking disallowance of any claims of Dominion US or Dominion Canada pursuant to Section 502(d) of the Bankruptcy Code, must be dismissed as moot, premature, or otherwise irrelevant. Section 502(d) states that "the court shall disallow any claim of any entity from which property is recoverable [under the Bankruptcy Code's avoidance sections], unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable." 11 U.S.C. § 502(d).

Neither Dominion US nor Dominion Canada has filed any proof of claim, or otherwise asserted any claim, against SVS in its bankruptcy case that could be the subject of disallowance.[23] It is axiomatic that a claim must be filed before it can be objected to and disallowed. Moreover, the SVS Trustee would have to prevail on his avoidance claims before seeking to disallow any claims of Dominion against SVS. *See Giuliano v. Mitsubishi Digital Electronics Am., Inc. (In re Ultimate Acquisition Partners, LP)*, Adv. No. 11-52663, 2012 WL 1556098, at *3 (Bankr. D. Del. May 1, 2012) (dismissing request for disallowance under Section

---

[23] Dominion nevertheless reserves its rights to file claims against SVS, Sequoia, or any other person or entity, in these proceedings or other proceedings, including without limitation in the event that all or a portion of the SVS Trustee's claims against Dominion are ultimately successful and Dominion is entitled to liens or claims under Sections 548(c) or 502(h) of the Bankruptcy Code, or otherwise.

502(d) because the trustee had not first obtained any judicial determination of the defendant's liability under the Bankruptcy Code's avoidance sections).  Thus, Counts VI and XI are, at best, premature.  Indeed, because the SVS Trustee's avoidance claims must be dismissed for the reasons set forth above, he will not be able to obtain a judgment of avoidance against Dominion and, therefore, his disallowance claims must fail for that reason as well.  Accordingly, Counts VI and XI must be dismissed.

[Remainder of page intentionally left blank]

## CONCLUSION

For the reasons set forth above, Dominion respectfully requests that the Court enter an order dismissing the Complaint or, if Counts IV and IX are permitted to proceed at all, limiting the SVS Trustee to a maximum potential recovery of $1,280,385.92, without duplication, on Counts IV and IX.

Dated this 19th day of June, 2013.


SHERMAN & HOWARD L.L.C.

*/s/ Eric E. Johnson*
Eric E. Johnson
David B. Wilson
633 Seventeenth Street, Suite 3000
Denver, Colorado  80202
Telephone:      (303) 297-2900
Facsimile:      (303) 298-0940
Email: ejohnson@shermanhoward.com
Email: dwilson@shermanhoward.com

- and -

WILMER CUTLER PICKERING HALE AND DORR LLP
Richard A. Johnston
60 State Street
Boston, MA 02109
Tel:  617-526-6282
Email: Richard.Johnston@wilmerhale.com

Attorneys for DOMINION VOTING SYSTEMS CORPORATION and DOMINION VOTING SYSTEMS, INC.