# **Exhibit C**

Amended Ex Parte Motion for Order to Conduct Rule 2004 Examination of Dominion Voting Systems Corporation and Dominion Voting Systems, Inc.

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) |
| | )    Case No. 10-24238 HRT |
| SVS HOLDINGS, INC., | ) |
| | )    Chapter 11 |
| Debtor. | ) |

## <u>AMENDED</u> EX PARTE MOTION FOR ORDER TO CONDUCT RULE 2004 EXAMINATION OF DOMINION VOTING SYSTEMS CORPORATION AND DOMINION VOTING SYSTEMS, INC.

Smartmatic Corporation ("Smartmatic"), a creditor in the above-captioned bankruptcy case, files its Amended Ex Parte Motion for Authorization to Conduct Rule 2004 Examination of Dominion Voting Systems Corporation, Dominion Voting Systems, Inc., and certain affiliated entities (the "Motion") and states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Chapter 11 case pursuant to 28 U.S.C. §§ 157(a) and (b) and 1334(a) and (b). This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), as this matter concerns the administration of a debtor's estate.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

### INTRODUCTORY STATEMENT

3.      On June 8, 2010, (the "Petition Date") SVS Holdings, Inc. ("SVS Holdings" or the "Debtor") filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor currently operates as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

4.      As described in more detail below, the Debtor is a holding company that owns and controls a single asset: the shareholdings of Sequoia Voting Systems, Inc. ("Sequoia"), its wholly owned subsidiary. Shareholders of the Debtor serve as the officers and directors of both the Debtor and Sequoia, and similarly manage the affairs of both entities. Several days prior to the bankruptcy filing, the Debtor sold Sequoia's assets to Dominion Voting Systems, Inc., an affiliate of Dominion Voting Corporation (collectively "Dominion").

5.      Smartmatic's claim arises out of a Note Purchase Agreement (the "Note Agreement") with the Debtor. The terms of the Note Agreement are confidential and cannot be disclosed to the public. Generally speaking, the Debtor is obligated to make certain payments to Smartmatic as a consequence of the sale of Sequoia's assets. According to the List of 20 Largest

Creditors Holding Unsecured Claims (Docket No. 4) filed by the Debtor, Smartmatic is owed $8 million. In reality, Smartmatic's claim is significantly larger.

6.      Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, an examination is warranted of Dominion. This includes the production of documents specified on the attached Document Request, **Exhibit A**. The requested information directly relates to the property, conduct, liabilities and financial condition of the Debtor, and other matters affecting the administration of the Debtor's estate. In this regard, the transactions conducted by Sequoia and Dominion are highly probative in circumstances where, as here, Sequoia is the Debtor's only asset of significant value, the Debtor wholly controls Sequoia through common senior management and the obligations of the Debtor to Smartmatic under the Note Agreement are conditioned upon the performance and transactions undertaken by Sequoia, including the sale of substantially all of its assets to Dominion Voting Systems, Inc. Thus, it is important to determine whether Sequoia's sale of assets to Dominion Voting Systems, Inc. gives rise to various legal remedies under the Bankruptcy Code and/or applicable state law.

## FACTUAL BACKGROUND

7.      Prior to 2007, Smartmatic owned Sequoia, a Delaware corporation that designs, sells and services election voting equipment and related systems. Sequoia has generated significant revenues through sales of such equipment in recent years.

8.      In 2007, pursuant to an agreement with the United States government, Smartmatic and its ultimate shareholders agreed to sell all of its equity interests in Sequoia to the Debtor under a Stock Purchase Agreement (the "Stock Agreement" and, collectively with the Note Agreement, the "Agreements"). The Debtor was created by Sequoia's management team for the sole purpose of purchasing Sequoia and otherwise has no other business purpose or operations other than holding its shareholdings in Sequoia. All issued shares of the Debtor are owned by Sequoia management officials.

9.      As consideration for its sale of Sequoia to the Debtor, Smartmatic received an Unsecured Promissory Note (the "Note") and other non-cash consideration in the form of earn-outs that would be paid upon the occurrence of certain events. The transaction was structured in this manner using non-cash consideration, because the Debtor, its shareholders, and the management of Sequoia all lacked the necessary funds to make a cash payment for Sequoia.

10.     The Stock Agreement permitted Smartmatic to sell the Note to a third party, subject to the right of first refusal by the Debtor. In 2008, Smartmatic negotiated an agreement to sell the Note to a third party; however, the Debtor exercised its right of first refusal. Accordingly, Smartmatic and the Debtor entered into the Note Agreement.

11.     As indicated above, the terms of the Note Agreement are confidential. However, the sale of all of Sequoia's assets triggers certain obligations on the part of the Debtor.

12.     In the days immediately preceding the Debtor's bankruptcy filing, the Debtor consummated a transaction (the "Dominion Sale") under which it sold substantially all of Sequoia's assets to Dominion Voting Systems, Inc.  This transaction occurred in the context of two earlier sales in 2009 of yet other Sequoia assets (in one transaction, to Dominion, and in another, to ProDocumentSolutions, Inc.).

13.     The Dominion Sale came as a surprise to Smartmatic, which had been engaged in a series of legal actions to remedy breaches of the Note Agreement by the Debtor.  These include an action in the Delaware Chancery Court and an arbitration proceeding.

14.     In addition to the Debtor's breach of the Note Agreement, the Debtor's conduct raises issues that may impact the administration of the Debtor's bankruptcy estate, including, but not limited to:

(a)     the propriety of the Dominion Sale, and whether that transaction constituted a fraudulent conveyance under state law or the U.S. Bankruptcy Code;

(b)     whether any of the shareholders, officers, directors or employees of the Debtor or Sequoia, or relatives or affiliated entities thereof, have received any form of *quid pro quo* from Dominion as part of the Dominion Sale or the earlier 2009 sales of certain other Sequoia assets to Dominion or ProDocumentSolutions, Inc.;

(c)     the extent to which the Debtor and Sequoia have been operated as separate and distinct legal entities;

(d)     whether certain actions of the Debtor and Sequoia, contrary to the covenants in the Note Agreement, have improperly devalued Sequoia to the detriment of its creditors; and

(e)     whether certain instances of purported debt should more properly be recharacterized as equity.

## RELIEF REQUESTED

15.     Pursuant to Rule 2004 of the Bankruptcy Rules, Smartmatic seeks authorization to obtain documents and oral testimony from Dominion.

16.     Smartmatic seeks specific documents and testimony relating to the property, conduct, liabilities and financial condition of the Debtor, and other matters affecting the administration of the Debtor's estate.  Sequoia is the Debtor's only significant asset.  Information concerning the sale of Sequoia's assets to Dominion Voting Systems, Inc. and any related transactions with officers, directors or employees of Sequoia will be highly probative of its value and, hence, the value of the estate.  Such information is also critical to ensuring that the Debtor's assets have not been improperly dissipated.  Smartmatic thus seeks information that may help it protect its financial interests, but which may also protect the bankruptcy estate and its creditors.

17.     During the 2004 examinations of SVS and Sequoia that are presently underway, Smartmatic has learned that a number of highly relevant documents relating to the Dominion Sale are not in the possession or control of SVS and Sequoia. These include, for example, employment agreements with former Sequoia employees who have been hired by Dominion. It also is not clear from the documents produced thus far by SVS and Sequoia whether Dominion has paid or promised to pay other consideration to former officers, directors or employees of Sequoia.

## DISCUSSION

18.     Rule 2004 of the Bankruptcy Rules provides that "[o]n motion of any party in interest, the court may order the examination of any entity" relating "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." FED. R. BANKR. P. 2004(a)-(b).

19.     Rule 2004 "is a basic discovery device used in bankruptcy cases." *In re Blinder, Robinson & Co., Inc.*, 127 B.R. 267, 275 (D. Colo. 1991). Rule 2004 permits the party invoking it to undertake a broad inquiry of the examinee and has been likened to a "fishing expedition," although its use is not unlimited. *See Blinder*, 127 B.R. at 274; *see also In re Valley Forge Plaza Assoc.*, 109 B.R. 669, 674 (E.D. Pa. 1990) ("The scope of a [Rule] 2004 examination is even broader that that of discovery permitted under the F.R.CIV.P., which themselves contemplate broad, easy access to discovery.").

20.     "The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and its whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'" *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (quoting *Cameron v. United States*, 231 U.S. 710, 717 (1914)). The scope of inquiry permitted in a Rule 2004 examination is extremely broad. *See, e.g., In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y.); *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985).

21.     This Motion seeks authorization to conduct an examination of Dominion that falls squarely within the scope of a permissible Rule 2004 examination. As described above, Smartmatic seeks documents and testimony concerning the conduct, property, liabilities and financial condition of the Debtor, as well as certain matters that may affect the administration of the Debtor's bankruptcy estate. Consequently, the documents and examination sought by Smartmatic are within the scope of Rule 2004 of the Bankruptcy Rules. *See* FED R. BANKR. P. 2004(b).

22.     It is important to determine whether the Debtor's course of conduct in relation of the various sales of assets to Dominion, including conduct it directed through its subsidiary Sequoia, gives rise to various legal remedies under the Bankruptcy Code and/or applicable state law. Furthermore, it is uncertain whether any reason exists for the Debtor's bankruptcy case other than to attempt to deprive Smartmatic of the benefits of the Note Agreement.

23.     Therefore, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, an examination is warranted of the Dominion because it directly relates to the property, conduct, liabilities, and financial condition of the Debtor, and other matters affecting the administration of the Debtor's estate.

24.     Smartmatic requests that the Court enter an order: (a) authorizing the issuance of subpoenas to Dominion Voting Systems Corporation and Dominion Voting Systems, Inc. requiring the production of documents specified in the Document Request;  and (b) arrange a date and setting for a deposition of Dominion, through John Poulos, and/or Ian MacVicar to occur at a time mutually agreed to by the parties, but no later than fourteen (14) days after production of such documents.

25.     Smartmatic has made not previously requested a Rule 2004 examination of Dominion.

WHEREFORE, Smartmatic respectfully requests that this Court enter an Order (i) authorizing Smartmatic to serve subpoenas on Dominion Voting Systems Corporation and Dominion Voting Systems, Inc., requiring production of the documents described in the Document Request; (ii) authorizing Smartmatic to take the deposition of Dominion through John Poulos and/or Ian MacVicar at a time to be agreed by the parties, but no later than fourteen (14) days after the production of documents pursuant to the Document Request; and (iii) granting such further relief as the Court deems just.

Respectfully submitted this 5th day of August, 2010.

ROTHGERBER JOHNSON & LYONS LLP

*/s/ Brent R. Cohen*
Brent R. Cohen, No. 11297
Chad S. Caby, No. 30927
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO  80202-5839
Tel:     (303) 623-9000
Fax:     (303) 623-9222
E-mail:  bcohen@rothgeber.com
         ccaby@rothgerber.com
—and—

SUTHERLAND ASBILL & BRENNAN LLP
Jeffrey P. Bialos (*pro hac vice* pending)
Hamilton P. Fox III (*pro hac vice* pending)
1275 Pennsylvania Ave., NW
Washington, DC 20004
Tel:     (202) 383-0100
Fax:     (202) 637-3593
*COUNSEL FOR SMARTMATIC CORPORATION*

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2010, a true and correct copy of the foregoing AMENDED *EX PARTE* MOTION FOR AUTHORIZATION TO CONDUCT RULE 2004 EXAMINATION OF DOMINION VOTING SYSTEMS CORPORATION AND DOMINION VOTING SYSTEMS, INC. was mailed by depositing the same in the United States mail, first-class postage prepaid, addressed to the following:

Kevin S. Neiman
1660 Lincoln Street, Suite 1900
Denver, CO 80264

SVS Holdings, Inc.
717 17th Street, suite 310
Denver, CO 80202

U.S. Trustee
999 18th Street, suite 1551
Denver, CO 80202

*/s/ Carol Ealey*
OF: Rothgerber Johnson & Lyons LLP

# EXHIBIT A
# DOCUMENT REQUEST

## DEFINITIONS

1.      "Smartmatic" refers to Smartmatic Corporation and/or any of its employees, officers, agents, affiliates, representatives (including advisors), attorneys and all persons acting or purporting to act on its behalf.

2.      "SVS Holdings" refers to SVS Holdings, Inc. and/or any of its directors, officers, managers, employees, agents, members, affiliates, representatives (including advisors), consultants, attorneys and all persons acting or purporting to act on its behalf.

3.      "Sequoia" refers to Sequoia Voting Systems, Inc. as an entity separate from SVS Holdings.

4.      "Dominion" refers to Dominion Voting Systems Corporation, Dominion Voting Systems, Inc. and/or their subsidiaries, affiliates, directors, officers, managers, employees, agents, representatives (including advisors), consultants, attorneys, and all persons acting or purporting to act on behalf of any of the above.

5.      "Sequoia Asset Sale" refers to the transaction announced by Dominion in a press release dated June 4, 2010, (**copy attached**) and reflected in the Asset Purchase Agreement of June 4, 2010 entered into between Dominion Voting Systems, Inc., and Sequoia Voting Systems, Inc., under which certain assets of Sequoia were sold or otherwise transferred to Dominion.

6.      "NY Sequoia Asset Sale" refers to the transaction reflected in the Asset Purchase Agreement dated July 15, 2009 entered into between Dominion Voting Systems Corporation and Sequoia Voting Systems, Inc., under which certain contracts and other primarily New York assets of Sequoia were sole or otherwise transferred to Dominion.

7.      "Note Purchase Agreement" refers to the agreement dated May 28, 2008, entered into between Smartmatic, SVS Holdings, and certain U.S. stockholders of SVS Holdings.

8.      "Person" means, without limitation, natural persons and individuals; sole proprietorships; limited liability companies; general and limited partnerships; profit and non-profit corporations; unincorporated associations; or any other legal or governmental entity, organization or body of any type whatsoever; as well as agents, employees, or instrumentalities of such entities.

9.      "Jack Blaine" mean the natural person Jack Blaine, his spouse, children or brothers or sisters, or any other person (other than a natural person) affiliated with Jack Blaine by virtue of ownership, consulting relationship, or any other business or financial relationship, including any person in which Jack Blaine owns an interest.

10.     "Peter McManemy" mean the natural person Peter McManemy, his spouse, parents, children or brothers or sisters, or any other person (other than a natural person) affiliated

with Peter McManemy by virtue of ownership, consulting relationship, or any other business or financial relationship, including any person in which Peter McManemy owns an interest.

11.    "Kevin Hurst" means the natural person Kevin Hurst, his spouse, parents, children or brothers or sisters, or any other person (other than a natural person) affiliated with Kevin Hurst by virtue of ownership, consulting relationship, or any other business or financial relationship, including any person in which Kevin Hurst owns an interest.

12.    "Waldeep Singh" means the natural person Waldeep Singh, his spouse, parents, children or brothers or sisters, or any other person (other than a natural person) affiliated with Waldeep Singh by virtue of ownership, consulting relationship, or any other business or financial relationship, including any person in which Peter Waldep Singh owns an interest.

13.    "Eric Coomer" means the natural person Eric Coomer, his spouse, parents, children or brothers or sisters, or any other person (other than a natural person) affiliated with Eric Coomer by virtue of ownership, consulting relationship, or any other business or financial relationship, including any person in which Eric Coomer owns an interest.

14.    "John Poulos" means the natural person John Poulos, his spouse, parents, children or brothers or sisters, or any other person (other than a natural person) affiliated with John Poulos by virtue of ownership, consulting relationship, or any other business or financial relationship, including any person in which John Poulos owns an interest.

15.    "Agreement" means all oral or written understandings, formal or informal, binding or nonbinding, between more than one party, including written contracts, letter agreements, side agreements, addenda to agreements and any other such understandings however reflected.

16.    "Document" and/or "documents" means any writing or other form of record (including any writing or data stored on electronic storage devices) within the scope of the word "document" as that term is used in Rule 26 of the Federal Rules of Civil Procedure (as incorporated by FED. R. BANKR. P. 7026) and includes (without limitation) all types of written, typed, printed, recorded or graphic material, however produced or reproduced, of any kind and description, and whether an original, master, duplicate or copy, including (but not limited to) papers, notes of conversations, contracts, electronic mail, computer files, agreements, drawings, telegrams, tape recordings, communications, letters, memoranda, handwritten notes, reports, studies, working papers, corporate records, minutes of meetings (including board or committee meetings), notebooks, bank deposit slips, bank checks, canceled checks, diaries, diary entries, appointment books, calendars, photographs, transcriptions or sound recordings of any type of personal or telephone conversations or negotiations, notes or records of meetings or conferences, or things similar to any of the foregoing, including any data, information or statistics contained within any data storage modules, tapes, discs, or other memory device, or other information retrievable from storage systems, including (but not limited) to computer generated reports and print-outs or data compilations from which information can be obtained and translated, if necessary. Any copy containing (or having attached) any alterations, notes, comments, or other materials not included in the originals or copies referred to in the preceding sentence shall be deemed a separate document within the foregoing definition.

17.     "Relating to" or "relate to" means discussing, describing, pertaining to, containing, analyzing, evaluating, studying, recording, memorializing, reporting on, commenting on, reviewed in conjunction with, evidencing, setting forth, considering, recommending, or constituting, in whole or in part.

18.     The term "communication" means, without limitation, any correspondence, memoranda, voice mail, e-mail, contact, discussion, or other kind of written, oral, or electronic exchange between two or more persons, including, but not limited to, all telephone conversations, face-to-face conversations, meetings, visits, and conferences.

19.     The term "SVS Parties" shall mean Sequoia and/or SVS Holdings.

20.     The term "Petition Date" shall mean June 8, 2010.

## INSTRUCTIONS

A.     Each request shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  Any request propounded in the singular shall also be read as if propounded in the plural and vice versa.  Any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa.

B.     The documents responsive to these requests shall be produced as they have been kept in the usual course of business or shall be organized and labeled to correspond with the enumerated categories in this request.  If produced as kept in the usual course of business, all documents (other than electronically stored information) shall be produced with a copy of the file folder (if any) in which the documents are kept or maintained.

C.     If Dominion objects to the production of any document sought by these document requests, whether in whole or in part, on the grounds of the attorney-client privilege, work product immunity, or other privilege or immunity, as much of the document concerned as to which no claim of privilege or immunity is made shall be produced.  With respect to documents or portions of documents for which a claim of privilege or immunity is made, state the following for each document:

(i)      a description of the type of document withheld from production (e.g., memorandum, letter, e-mail);

(ii)     the date shown on the document;

(iii)    the author of the document and, if applicable, the name of the person(s) to whom it was addressed and/or to whom it was copied;

(iv)     a general description of the subject matter of the document that is sufficiently specific to permit a fair evaluation of the merits of Dominion's reasons for not producing the document; and

(v)      the reason the document was withheld from production.

D.      If any document responsive to these requests has been lost, destroyed, or otherwise disposed of, such document is to be identified as completely as possible, including the following information:  contents; author(s); recipient(s); sender(s); copied recipient(s) (indicated or blind); date prepared and received; date of disposal; manner of disposition; person(s) last in possession of the document; and person(s) disposing of the document.

E.      Unless otherwise specified in an individual Document Request, the scope of the documents requested herein shall be limited to the three years preceding the Petition Date.

## DOCUMENT REQUESTS

**Request No. 1:**     All Agreements between any parties, including (without limitation) Dominion, Sequoia, SVS Holdings, one or more shareholders of SVS Holdings, Jack Blaine, Kevin Hurst, Peter McManemy, Eric Coomer, Waldeep Singh, or other past or present officers, directors, employees of the SVS Parties, or any other persons, which relate to or are ancillary to the Sequoia Asset Sale, including but not limited to any employment, non-competition and non-solicitation Agreements.

**Request No. 2:**     All Documents relating to any of the Agreements referred to in request for production number 1 above or the negotiation of or internal consideration by Dominion of such Agreements.

**Request No. 3:**     All Agreements between any parties, including (without limitation) Dominion, Sequoia, SVS Holdings, one or more shareholders of SVS Holdings, Jack Blaine, Kevin Hurst, Peter McManemy, Eric Coomer, Waldeep Singh, or other past or present officers, directors, employees of the SVS Parties, or any other persons, which relate to or are ancillary to the NY Sequoia Asset Sale, including but not limited to any employment, non-competition, and non-solicitation agreements..

**Request No. 4:**     All Documents relating to any of the Agreements referred to in request for production number 3 above or the negotiation of or internal consideration by Dominion of such agreements.

**Request No. 5:**     All Documents or Agreements relating to offers, promises or assurances to pay, whether contingent or noncontingent, or payments made, of money or anything else of value by Dominion since January 1, 2009 or at any time in the future to any current or former shareholders, directors, or employees of the SVS Parties, including but not limited to Jack Blaine, Peter McManemy, Kevin Hurst, Eric Coomer and Waldeep Singh, including but not limited to any employment, non-competition, and non-solicitation agreements, general ledgers, checks and other records of such promises to pay or payments.

**Request No. 6:**     All Documents relating to any Agreements, internal decisions, plans, proposals or discussions, since January 1, 2009, concerning the possible provision at any time since that date or in the future, of any equity interest, option to acquire an equity interest or security, stock appreciation rights, promissory note, earnout, or other contingent or non-contingent economic or financial interest of any nature of any actual or potential value, whether now or in the future, in Dominion, or any other entity with which John Poulos is affiliated in any manner, to any current or former shareholders, directors, or employees of the SVS Parties,

including but not limited to Jack Blaine, Peter McManemy, Kevin Hurst, Eric Coomer and Waldeep Singh.

**Request No. 7:** All Documents relating to any decisions, plans, proposals or discussions concerning the provision of money or anything else of actual or potential value, since January 1, 2009 or at any time in the future in any manner by Dominion or John Poulos to any current or former shareholders, directors, or employees of the SVS Parties, including but not limited to Jack Blaine, Peter McManemy, Kevin Hurst, Eric Coomer and Waldeep Singh.

**Request No. 8:** All general ledgers, accounts payable ledgers, check registers, purchase orders and invoices reflecting payments by Dominion since January 1, 2009 to the SVS Parties, or any shareholders, officers, directors or employees thereof, or Jack Blaine, Peter McManemy, Kevin Hurst, Waldeep Singh or Eric Coomer.

**Request No. 9:** All Documents, relating to the payment of monies or promises to pay monies by Dominion or Poulos on account of claims against Sequoia asserted by Phoenix Graphics, Inc., Harvard Custom Manufacturing, or Jaco or other creditors of Sequoia (collectively, the "Creditors") or the assignment of any debt or agreement of any nature of any of the Creditors, between January 1, 2010 and present.

**Request No. 10:** Any Documents that reflect any communications between Dominion and one or more Creditors concerning amounts owed Sequoia that occurred within one year before the Petition Date.

**Request No. 11:** All Documents relating to Smartmatic, but only if they relate to either the Note Purchase Agreement, the Sequoia Asset Sale, or the NY Sequoia Asset Sale, including but not limited to internal communications at Dominion regarding the potential or actual implications for Smartmatic of the Sequoia Asset Sale or the bankruptcy of SVS.

**Request No. 12:** All Documents relating to the valuation of Sequoia or SVS Holdings or the assets and/or liabilities thereof.

**Request No. 13:** The Confidential Settlement and License Agreement entered into among Sequoia, Dominion and Avante International Technology, Inc. ("Avante") in January, 2010, settling a patent infringement lawsuit previously filed by Avante, along with documents reflecting any payments made by Dominion to Avante under such agreement, and any subsequent agreement relating to such matters entered into after January 27, 2010 between Avante, Sequoia and/or Dominion.

**Request No. 14:** Copies of all corporate books and records of Dominion relating to the Sequoia Asset Sale, the NY Asset Sale, Jack Blaine, Peter McManemy, Kevin Hurst, Waldeep Singh or Eric Coomer, including but not limited to all board of director meeting minutes and resolutions.

**Request No. 15:** All Documents reflecting email communications, including those stored in email accounts of Tom Keeling and Peter McManemy, relating to or reflecting the payment of money or anything else of value since January 1, 2009 or at any time in the future, or offers, promises or assurances to pay, whether contingent or noncontingent, money or anything

else of value since January 1, 2009 or at any time in the future, by SVS Holdings, Sequoia or Dominion to Jack Blaine, Kevin Hurst, Peter McManemy, Waldeep Singh or Eric Coomer.

      **Request No. 16:**   All Documents sufficient to show the total compensation and benefits received by all officers and vice-presidents of Dominion as well as the next ten (10) most highly compensated employees of Dominion for each of the years 2008 and 2009, all documents sufficient to show the discrete amounts provided in each compensation category for each such person (i.e., salary, bonus, stock options or grants, and other compensation), and all documents sufficient to show the position descriptions for all such persons.

**dominion** | VOTING

221 Hopkins Avenue
Jamestown, New York 14701

June 4, 2010
FOR IMMEDIATE RELEASE

For Information Contact:
Dominion Voting Systems
404-955-9799
*media@dominionvoting.com*

## Dominion Voting Systems Corporation
## Acquires Assets of Sequoia Voting Systems

*Transaction Further Expands Dominion's Geographic Reach; Retention of Sequoia Employees
and Acquisition of Facilities Will Assure Seamless Transition for Current Sequoia Customers*

JAMESTOWN, New York .... Dominion Voting Systems Corporation today announced that it has
acquired the assets of Sequoia Voting Systems, a major U.S. provider of voting solutions serving nearly
300 jurisdictions in 16 states. As part of the transaction, Dominion has acquired Sequoia's inventory and
all intellectual property, including software, firmware and hardware, for Sequoia's precinct and central
count optical scan and DRE voting solutions, including BPS, WinEDS, Edge, Edge2, Advantage, Insight,
InsightPlus and 400C systems. Dominion will also retain Sequoia's facilities in Denver, Colorado and San
Leandro, California and will consolidate Sequoia's Jamestown, New York facility with Dominion's existing
Jamestown facility. Dominion has hired Sequoia's customer service and technical personnel to ensure
capable, experienced and responsive customer service for all current Sequoia jurisdictions.

Sequoia's DRE and optical scan election systems serve approximately 26 million U. S. voters, including
the City of Chicago and Cook County, Illinois, the State of Louisiana, the State of Nevada and the
majority of counties in California. The Sequoia acquisition comes on the heels of Dominion's transaction
last month to acquire the primary assets of Premier Election Solutions. Taken together, the two
acquisitions create a stable and diversified election solutions provider offering a complete and innovative
product set and a broad geographic reach to effectively support customers in every region of the United
States. Contemporaneous with the review and approval of the acquisition by Dominion of the Premier
assets, Dominion's acquisition of Sequoia's assets was also reviewed by the U. S. Department of Justice
and nine state attorneys general. The acquisition was also reviewed in detail and received approval by
the Committee of Foreign Investment in the United States (CFIUS).

**dominion** | VOTING

"The acquisition of Sequoia's assets is another important milestone in Dominion's efforts to provide election officials in every region of the United States the widest array of comprehensive and innovative options when it comes to election solutions" said John Poulos, CEO of Dominion. "For several years, Sequoia and Dominion worked in close partnership to certify and deploy a novel voting solution for the State of New York that set new standards for accountability, accessibility and transparency. That experience gives us a deep familiarity with Sequoia's technologies, talent and customer service capabilities. Sequoia associates share Dominion's commitment to excellent customer service, as well as to transparency and active engagement with all stakeholders in the voting process. Combining Sequoia's talents with those of many former Premier associates will capture real and sustainable synergies within our operations, and ensure that jurisdictions operating Dominion, Sequoia and Premier systems can leverage the expertise of experienced personnel. We are intensely focused on supporting our customers and demonstrating our capabilities throughout the remainder of the 2010 election cycle, and for many elections to come," Poulos added.

Beginning immediately, Dominion will work closely with Sequoia customers to ensure elections in the current cycle are successful, and that all requirements of their existing maintenance, support and warranty contracts with Sequoia are fulfilled.

*About Dominion Voting Systems:* Headquartered in Denver, Colorado, with offices in Toronto, Canada, New York and California, Dominion Voting Systems provides comprehensive voting solutions that emphasize security, accessibility and transparency at every step of the elections process. Dominion's solutions are currently in use by over 400 jurisdictions in the U. S. and Canada, including 52 counties in the State of New York. Some 90,000 Dominion ImageCast Precinct Optical Scan Tabulators have been successfully deployed in elections around the world. For additional information visit: **www.dominionvoting.com.**

### 

**dominion** | VOTING

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

In re:                                          )
                                                )       Case No. 10-24238 HRT
SVS HOLDINGS, INC.,                             )
                                                )       Chapter 11
        Debtor.                                 )

---

### ORDER GRANTING *EX PARTE* MOTION FOR ORDER TO CONDUCT
### RULE 2004 EXAMINATION OF DOMINION VOTING SYSTEMS CORPORATION

---

THIS MATTER comes before the Court on the *Ex Parte* Motion for Order to Conduct Rule 2004 Examination of Dominion Voting Systems Corporation (the "Motion") filed by Smartmatic Corporation ("Smartmatic") through Brent Cohen. Having reviewed the Motion and the file and being otherwise advised in the premises, the Court

ORDERS that the Motion shall be, and hereby, is GRANTED.

Dated: August _____, 2010.

_____
Howard R. Tallman,
U.S. Bankruptcy Court, Chief Judge