# **Exhibit E**

Smartmatic Corporation's Motion for Authority and Standing to Prosecute Causes of Action on Behalf of the Debtor or, in the Alternative, for Appointment of a Trustee

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

In re: )
)   Case No. 10-24238 HRT
SVS HOLDINGS, INC., )
)   Chapter 11
     Debtor. )

---

## SMARTMATIC CORPORATION'S MOTION FOR AUTHORITY AND STANDING TO PROSECUTE CAUSES OF ACTION ON BEHALF OF THE DEBTOR OR, IN THE ALTERNATIVE, FOR APPOINTMENT OF A TRUSTEE

---

Smartmatic Corporation, by its successor in interest, Smartmatic USA Corporation (Smartmatic Corporation and Smartmatic USA Corporation are collectively referred to herein as "Smartmatic"), by and through its undersigned attorneys, hereby moves pursuant to sections 1104 and 1109 of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order authorizing Smartmatic to pursue causes of action on behalf of SVS Holdings, Inc. (the "Debtor") or, in the alternative, for appointment of a Chapter 11 trustee, and states as follows[1]:

### PRELIMINARY STATEMENT

1.     Certain insiders of the Debtor and other third parties received potential avoidable preferential transfers and/or fraudulent transfers prior to the commencement of this Chapter 11 case.   Despite filing its Chapter 11 petition more than two years ago, the

---

[1]     Smartmatic is also filing a Motion for Conversion of Chapter 11 Case to Case under Chapter 7 (the "Conversion Motion") together with this Motion.  Smartmatic requests that the Court grant the relief requested in the instant Motion, in which case Smartmatic would withdraw the Conversion Motion without prejudice.  But if the Court is not inclined to grant this Motion, Smartmatic respectfully requests that the Court consider and grant the Conversion Motion.

\\NY - 038124/000002 - 2388754 v7

Debtor has failed to advance this Chapter 11 case in any substantive way. The Debtor has not filed a Plan nor commenced any actions to recover potential avoidable transfers. As discussed in further detail below, because of the Debtor's failure to prosecute such claims and the imminent expiration of the applicable statute of limitations, Smartmatic negotiated and entered into tolling agreements with potential defendants to preserve the estate's claims.

2.       By this Motion, Smartmatic seeks authority and standing to prosecute certain avoidance actions on behalf of the Debtor's estate for the benefit of unsecured creditors. All the requirements for granting Smartmatic derivative standing to pursue these claims are satisfied. Prosecution of these claims is vital in this case where avoidance recoveries are likely to provide the only substantial source of recovery for unsecured creditors. Smartmatic has devoted significant time and resources into investigating potential claims that the Debtor could bring to avoid and recover such transfers. Because no official committee of unsecured creditors has been formed and because of Smartmatic's efforts to date, Smartmatic is the only interested party in a position to pursue the claims. Finally, Smartmatic agrees to fund its costs and expenses in litigating these claims, subject to Bankruptcy Court approved reimbursement from any recoveries on the claims, so the estate will only stand to benefit from such litigation. Accordingly, the Court should granting Smartmatic authorization and standing to prosecute the avoidance actions.

3.　　Alternatively, Smartmatic requests that the Court appoint a Chapter 11 trustee to pursue these avoidance actions and bring this Chapter 11 case to a conclusion.

## JURISDICTION AND VENUE

4.　　This Court has jurisdiction over this Chapter 11 case pursuant to 28 U.S.C. §§ 157(a) and (b) and 1334(a) and (b).  This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), as this matter concerns the administration of the Debtor's estate.

5.　　Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## BACKGROUND

6.　　The Debtor filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code on June 8, 2010 (the "Petition Date").  The Debtor continues to operate its business and possess its property as a debtor-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code.

7.　　No official committee of unsecured creditors has been formed in this case.

8.　　The Debtor's primary asset is its 100% equity interest in non-debtor Sequoia Voting Systems, Inc. ("Sequoia").  Sequoia provided electronic voting systems, election-related technologies and support services to state and local governments in the United States.

9.　　On or about September 18, 2007, the Debtor acquired all of the issued and outstanding shares of capital stock of Sequoia from Smartmatic in exchange for an

Unsecured Promissory Note dated November 5, 2007 in the principal amount of $2 million (the "Note") and certain earn out payments.

10.     Pursuant to a Note Purchase Agreement, dated May 28, 2008, among the Debtor, Smartmatic, and certain other persons party thereto (the "NPA"), and in settlement of certain litigation between the Debtor and Smartmatic concerning the Note, the Debtor acquired the Note from Smartmatic in exchange for certain cash payments and the rights to receive certain earn out payments of not less than $9 million in the aggregate through December 31, 2011.

11.     The Debtor owed Smartmatic not less than $9,619,180.97 under the NPA as of the Petition Date.

## A.     The Dominion Transactions

12.     Sequoia and Dominion Voting Systems Corporation ("Dominion Canada") are parties to an Asset Purchase Agreement dated July 15, 2009 (the "2009 APA"), pursuant to which Sequoia assigned to Dominion Canada its rights and obligations under certain contracts with the State of New York Executive Department, Office of General Services and related leases and accounts receivable.  In exchange, Dominion Canada agreed to pay Sequoia an aggregate of $2,366,000 in cash and certain contingent payments relating to future revenues under potential contracts with Nassau and New York Counties in New York.

13.     On information and belief, based on discovery under Fed. R. Bankr. P. 2004, Sequoia was facing severe cash flow and liquidity problems when it entered into

the 2009 APA.  As a result and on further information and belief, based on discovery

under Fed. R. Bankr. P. 2004, Sequoia sold its most significant and profitable assets at a

discount in order to meet pressing cash flow needs, such as payroll.

14.    Shortly after the closing under the 2009 APA, Sequoia and Dominion

Voting Systems, Inc. ("Dominion US" and together with Dominion Canada, collectively,

"Dominion"), a subsidiary of Dominion Canada, began discussing the possibility of a

larger deal between the two companies.  In a March 5, 2010 letter of intent, Dominion US

proposed to purchase substantially all of the assets of Sequoia (excluding accounts

receivable, cash balances, and tax assets) for an aggregate purchase price of $9.5 million,

consisting of $5 million in cash plus up to $4.5 million in contingent payments.  In term

sheets circulated around this time, Dominion US proposed to employ Blaine for one year

at an annual salary of $120,000 plus $30,000 in other benefits.

15.    After several months of negotiations, Sequoia and Dominion US entered

into an Asset Purchase Agreement dated June 4, 2010 (the "2010 APA").  Under the

2010 APA, Dominion US purchased substantially all of the assets of Sequoia (excluding

accounts receivable, cash balances, and tax assets) for a reduced purchase price

consisting of a cash payment of approximately $3 million plus up to an aggregate of $4.5

million in future payments contingent upon conditions that were unlikely to occur.

16.    At approximately the same time, Dominion Canada and Blaine entered into

an employment agreement on substantially better terms than provided in the March 5,

2010 letter of intent.  The Employment Agreement was for three years and provided

Blaine with an annual salary of $350,000, annual living expenses of more than $50,000, a

percentage of Dominion's revenue from non-US business generated by Blaine, together

with a one-year salary and benefits severance package if he were terminated before the

end of the three year term of the agreement.

17.     During the time of the negotiations with Dominion, Sequoia received an

offer from a prominent company in the elections machine industry to purchase its assets.

Though Sequoia did not pursue this offer, Smartmatic believes that if Sequoia had

pursued such offer, the competition for Sequoia's assets would have provided a safeguard

against a fire sale of Sequoia's assets and would have resulted in a higher purchase price,

including a higher guaranteed cash component of the purchase price.  On information and

belief, some Sequoia management preferred this third-party offer to a sale of Sequoia's

assets to Dominion.

18.     Sequoia has received most of the cash consideration under the 2010 APA

but none of the contingent payments.  It is not expected that the contingent payments will

be paid under the terms of the 2010 APA.

19.     Setting aside the $4.5 million contingent payments proposed by Dominion

(which Plaintiff understands were unlikely to ever be paid), Sequoia sold substantially all

of its assets to Dominion US for $3 million, *i.e.*, $2 million less than the amount

originally proposed by Dominion US and, upon information and belief, substantially less

than a competing offer received from a third party.  In contrast, the employment

agreement with Blaine, who was one of Sequoia's principal negotiators on the 2010

APA, improved substantially: salary from $120,000 to $350,000; annual benefits of $30,000 to more than $50,000; a one-year employment term to a three-year employment term; and the introduction of a one-year severance package. The Debtor did not receive a reasonably equivalent value for the assets sold under the 2010 APA.

20.    The asset sales by Sequoia in the 2009 APA and the 2010 APA may constitute avoidable fraudulent transfers recoverable from Dominion Canada and Dominion US, respectively, under the Bankruptcy Code and applicable state law.

**B.    Transfers to Jack Blaine**

21.    In the two years preceding the Petition Date (the "Insider Period"), Jack Blaine ("Blaine") was an officer and director of both the Debtor and Sequoia. Accordingly, Blaine was an insider of the Debtor under section 101(31) of the Bankruptcy Code.

22.    On information and belief, based on the Statement of Financial Affairs filed by the Debtor on June 22, 2010, the Debtor made prepetition transfers to Blaine during the Insider Period aggregating not less than $303,047. At the time of these transfers, Blaine was purportedly a creditor of the Debtor. In addition, the Debtor did not receive a reasonably equivalent value for these transfers.

23.    Accordingly, the transfers may support causes of action under sections 547, 548, and 550 of the Bankruptcy Code. The existence of such claims against Blaine may justify the disallowance of Blaine's claims against the Debtor's estate pursuant to section 502 of the Bankruptcy Code.

7

## C.    The Debtor's Prosecution of this Case

24.    Other than routine administrative tasks, such as the filing of schedules, statement of financial affairs and monthly operating reports, the Debtor has done little to prosecute this Chapter 11 case.  The Debtor has not proposed a plan of reorganization or taken any other substantive action to administer the Debtor's estate.

25.    In particular, the Debtor has failed to investigate and prosecute causes of action for the benefit of creditors, including the causes of action described above.  The majority of the activity in this case has involved investigation by Smartmatic, the Debtor's largest unsecured creditor, into potential causes of action that the Debtor could pursue for the benefit of creditors.

26.    Certain statutes of limitations under section 546 of the Bankruptcy Code were set to expire on or about June 8, 2012, the second anniversary of the Petition Date, which would have resulted in the loss to the Debtor's estate of valuable causes of action.  In order to avoid a forfeiture of these valuable rights, which represent the principal means of recovery for unsecured creditors in this case, Smartmatic entered into tolling agreements with Dominion, the Debtor, and Blaine.  Upon the filing of this Motion, the tolling period for the prosecution of the claims and causes of action described above will expire on December 9, 2012.

## ARGUMENT

## A.    The Court Should Grant Smartmatic Authority and Standing to Prosecute the Avoidance Actions on Behalf of the Debtor's Estate

27.     Smartmatic seeks authority and standing, on behalf of the Debtor and for the benefit of creditors of the Debtor, to prosecute, negotiate, settle and/or litigate all rights, claims, suits, objections, arguments, counts and causes of action belonging to the Debtor's estate and arising under Chapter 5 of the Bankruptcy Code, including without limitation against insiders, as well as all rights, claims, suits, objections, arguments, counts and causes of action belonging to the Debtor's estate arising under applicable non-bankruptcy law but related by virtue of factual or transactional nexus to the Debtor's chapter 5 claims, including without limitation against insiders (collectively, the "Avoidance Actions").

28.     The Avoidance Actions include, but are not limited to:

a.     Claims against Dominion Canada and Dominion US to avoid and recover fraudulent transfers in connection with the 2009 APA and the 2010 APA.  A draft form of complaint for the Court's review setting forth the proposed claims against Dominion Canada and Dominion US is attached hereto as Exhibit A.  Smartmatic reserves the right to amend, revise, supplement, or modify the draft complaint as necessary, and nothing in the attached form of complaint should be understood to preclude any other claims that Smartmatic may bring, on the Debtor's behalf, against Dominion Canada and/or Dominion US.

9

  b. Claims against Blaine to avoid and recover preferential and/or fraudulent transfers in connection with transfers made by the Debtor during the Insider Period. A draft form of complaint for the Court's review setting forth the proposed claims against Blaine is attached hereto as <u>Exhibit B</u>. Smartmatic reserves the right to amend, revise, supplement, or modify the draft complaint as necessary, and nothing in the attached form of complaint should be understood to preclude any other claims that Smartmatic may bring, on the Debtor's behalf, against Blaine.

29. The Bankruptcy Code does not expressly authorize a creditor to prosecute claims on behalf of the estate. Most courts of appeals do, however, permit a creditors' committee or a creditor the right under certain circumstances to pursue avoidance actions on behalf of the estate. The leading cases for this proposition are the Second Circuit's trilogy of cases in *In re STN Enterprises*, 779 F.2d 901 (2d Cir. 1985); *In re Commodore Int'l Ltd.*, 262 F.3d 96 (2d Cir. 2001); and *In re Housecraft Industries USA, Inc.*, 310 F.3d 64 (2d Cir. 2002). In each case, a creditors' committee or individual creditor sought to bring avoidance actions that the debtor-in-possession or trustee had failed to bring (or had agreed to allow the committee or creditor to bring). The Second Circuit ruled that a creditors' committees enjoys a qualified right to prosecute avoidance actions on behalf of the estate, even where the debtor may not have consented to the committee's actions.

The rulings were clarified in *Housecraft* to apply also to individual creditors. *See id.* at
71 n.7.

30.     Most courts of appeals have reached the same conclusion as the Second
Circuit, allowing a creditor or creditors' committee to file avoidance claims on behalf of
the estate if the debtor unjustifiably refuses to do so. *See, e.g.*, *In re Racing Servs., Inc.*,
540 F.3d 892, 902 (8th Cir. 2008); *In re Cybergenics Corp.*, 330 F.3d 548, 553 (3d Cir.
2003); *In re Sun Cho*, 9 Fed. Appx. 633, 636 (9th Cir. 2001); *Fogel v. Zell*, 221 F.3d 955,
965 (7th Cir. 2000); *In re Gibson Group, Inc.*, 66 F.3d 1436, 1440-46 (6th Cir. 1995).

31.     Although the Tenth Circuit has not been squarely presented with this issue,
it has in prior opinions suggested in dicta that such standing should be available: "[A]
creditors' committee or even an individual creditor may, with leave of the bankruptcy
court, initiate avoidance and other actions when the debtor-in-possession has failed to
so." *Starzynski v. Sequoia Forest Indus.*, 72 F.3d 816, 821 (10th Cir. 1996).  More
recently, the Tenth Circuit commented that it is "among those courts to allow a
committee to bring" an avoidance action, and that "other circuits have continued to allow
committees to bring avoidance actions." *In re MS55, Inc.*, 477 F.3d 1131, 1139 n. 9
(10th Cir. 2007).

32.     Based on these statements, Smartmatic believes the Tenth Circuit would
join its sister circuits in recognizing a qualified right for an unsecured creditor such as
Smartmatic derivative standing to pursue avoidance actions on behalf of the estate. *See*
*Terra Bentley II, LLC*, 2011 WL 808190, *4 (Bankr. D. Kan. Mar. 2, 2011) ("No Circuit

court appears to have concluded derivative standing for creditors is never permissible,
though, and the Court sees no reason to believe the Tenth Circuit would disagree with the
unanimous view of the Circuit that have decided the question.").

33.     To determine whether to authorize a creditor to pursue claims on behalf of
the Debtor, courts in this circuit and elsewhere have generally required the moving party
to show that: (1) the proposed claims are colorable and would benefit the estate if
successful; (2) it has made a demand on the debtor-in-possession or the trustee to pursue
the claims; and (3) the debtor or the trustee has unjustifiably refused.  *See, e.g.*, *See In re
Terra Bentley II, LLC*, 2011 WL 808190, *4-*5 (Bankr. D. Kan. Mar. 2, 2011); *In re
Racing Servs., Inc.*, 540 F.3d 892, 900 (8th Cir. 2008); *In re Gibson Group, Inc.*, 66 F.3d
1436, 1439-40 (6th Cir. 1995).

34.     <u>First</u>, the claims that Smartmatic intends to prosecute on behalf of the
Debtor's estate are colorable under, among other things, sections 544, 547, 548, and 550
of the Bankruptcy Code and applicable state law, such as the Uniform Fraudulent
Transfer Act.  Courts have observed that the colorable claim requirement is a low
standard to satisfy and is easily satisfied unless the claims to be pursued are facially
defective.  *See In re Adelphia Commc'ns Corp.*, 330 B.R. 364, 369 (Bankr. S.D.N.Y.
2005).

35.     The transfers that Smartmatic seeks to avoid and recover for the benefit of
the estate are set forth in the Debtor's Statement of Financial Affairs [D.E. 16] or have
been developed through the course of discovery.  Smartmatic has taken document

discovery and conducted several Rule 2004 examinations of the Debtor's principals and former principals and of the principals of Dominion Canada and Dominion US.

36.     In addition to the presumption of insolvency for the 90-day period preceding the Petition Date under section 547(f) of the Bankruptcy Code, as of the Petition Date, the Debtor had $1,280,485.92 in assets and $11,376,334.52 in liabilities. Upon information and belief, based on a review of the Debtor's financial statements available to Smartmatic, this balance of assets versus liabilities was roughly the same during the years prior to the Petition Date.  Thus, each of the transfers that Smartmatic would challenge occurred at the time of the Debtor's insolvency.

37.     Upon information and belief, based on discovery under Fed. R. Bankr. P. 2004 and as alleged in paragraph 17 above, the Debtor and Sequoia received less than reasonably equivalent value in exchange for the assets sold under the 2009 APA and the 2010 APA.  Alternatively, there is evidence that may support a finding that the Debtor's principals agreed to the asset sales as part of a scheme to hinder, delay or defraud the Debtor's creditors.  On these allegations, it is clear that Smartmatic can articulate a colorable claim for avoidance and recovery from Dominion Canada and Dominion US under the Bankruptcy Code and applicable state law, sufficient to support a grant of derivative standing.

38.     With respect to the proposed claims against Blaine, the transfers to Blaine were made at a time when Blaine was an insider of the Debtor and an alleged creditor of the Debtor.  Upon further investigation, Smartmatic expects that it will be able to

determine whether the Debtor received reasonably equivalent value for such transfers. These allegations demonstrate that Smartmatic has colorable claims, on behalf of the Debtor, to avoid the transfers to Blaine as either preferences or fraudulent transfers under the Bankruptcy Code and applicable state law.

39.     Smartmatic notes that because its investigation is continuing, and Smartmatic cannot be aware of all the relevant facts until discovery in connection with the adversary proceedings occurs, Smartmatic does not propose to identify every claim or cause of action that it might pursue on behalf of the Debtor and every possible defendant. The description above, and the draft complaints attached hereto as <u>Exhibits A</u> and <u>B</u>, are included merely to demonstrate for purposes of this Motion that colorable claims do exist.

40.     There is also no prejudice to the estate and creditors if Smartmatic is permitted to prosecute these causes of action because Smartmatic will bear the costs of litigation.  If successful, the recoveries on the claims, net of reimbursement of Smartmatic's attorney's fees and expenses, will augment the bankruptcy estate for the benefit of creditors.  Smartmatic's attorneys will submit applications to the Bankruptcy Court for approval of the amount of such attorney's fees and expenses in connection with any recoveries on the claims.

41.     <u>Second</u>, through the course of discovery, Smartmatic has made the Debtor aware of the potential claims against Dominion Canada, Dominion US, and Blaine. Although Smartmatic has not formally made a demand on the Debtor to pursue the

Avoidance Actions, such a demand would be futile and unnecessary. *See, e.g.*, *In re Nat'l Forge Co.*, 326 B.R. 532, 545 (W.D. Pa. 2005) (upholding bankruptcy court's excusal of the formal petition requirement based on futility); *In re G-I Holdings, Inc.*, 313 B.R. 612, 630 (Bankr. D.N.J. 2004) (same).

42.     Here, the Debtor has a clear conflict of interest in pursuing the Avoidance Actions. Kevin Hurst, the Debtor's chief executive officer, served as one of Sequoia's key negotiators on the 2010 APA. Serving as the chief executive officer of both the Debtor and Sequoia, Hurst would not want to pursue an action that attacks his own prior decisions, particularly where such actions might set the stage for future claims of breach of fiduciary duty.

43.     Likewise, Hurst and Blaine worked closely while both were employed by the Debtor and Sequoia, including through the negotiation and closing of the 2009 APA and the 2010 APA. Thus, Hurst would have little incentive to litigate against Blaine.

44.     Additionally, the Debtor has demonstrated no interest in litigating the Avoidance Actions. But for Smartmatic's negotiation and execution of tolling agreements with Dominion and Blaine, it is likely that the Avoidance Actions would have become barred by the statute of limitations. Smartmatic has also taken a number of Rule 2004 examinations and propounded document requests as part of an investigation into potential claims and assets of the Debtor's estate. The Debtor has let this case languish to the point that it would have lost valuable rights for the benefit of creditors; such rights

might still be lost if Smartmatic is not authorized and granted standing to prosecute the Avoidance Actions.

45.     On these grounds, the Court should find that Smartmatic has satisfied the demand requirement or excuse such requirement as futile.

46.     Third, recoveries on the Avoidance Actions may be the principal asset of the estate with the ability to provide a meaningful return to unsecured creditors. Nevertheless, as discussed in greater detail above, the Debtor has shown no intention of pursuing the Avoidance Actions.  Accordingly, Smartmatic submits that the Debtor has unjustifiably refused to prosecute the Avoidance Actions.

47.     This Court can and should authorize and grant Smartmatic standing to bring the Avoidance Actions on behalf of the Debtor's estate.

**B.     Alternatively, the Court Should Appoint a Chapter 11 Trustee**

48.     As an alternative to authorizing and granting Smartmatic standing to prosecute the Avoidance Actions, Smartmatic requests that the Court appoint a Chapter 11 trustee to pursue the Avoidance Actions and to bring this Chapter 11 case to a conclusion.

49.     Appointment of a Chapter 11 trustee is appropriate in this case.  Section 1104(a) of the Bankruptcy Code provides two grounds for appointment of a trustee in a Chapter 11 case:

> At any time after the commencement of the case but before confirmation of a plan, . . . . the court shall order the appointment of a trustee—

> (1) for cause, including fraud, dishonesty,
> incompetence, or gross mismanagement of the affairs
> of the debtor by current management, either before or
> after the commencement of the case, or similar cause,
> but not including the number of holders of securities of
> the debtor or the amount of assets or liabilities of the
> debtor; or
>
> (2) if such appointment is in the interests of creditors,
> any equity security holders, and other interests of the
> estate, without regard to the number of holders of
> securities of the debtor or the amount of assets or
> liabilities of the debtor.

11 U.S.C. § 1104(a). If the movant can prove that either ground exists, the statutory

language mandates the appointment of a trustee. *See In re Okla. Refining Co.*, 838 F.2d

1133, 1136 (10th Cir. 1988).

50. <u>First</u>, cause exists in this case to appoint a Chapter 11 trustee. The

enumeration of causes for appointment of a trustee in Bankruptcy Code section

1104(a)(1) is not exclusive, and the Court "need not find any of the enumerated wrongs

in order to find cause for appointing a trustee." *See Okla. Refining*, 838 F.2d at 1136

(*citing In re William H. Vaughn & Co.*, 40 B.R. 524 (Bankr. E.D. Pa. 1984)).

51. Courts have recognized that the appointment of a trustee may be

appropriate where a debtor-in-possession fails to exercise its fiduciary duty to maximize

the value of estate assets for the benefit of creditors, such as a failure to pursue avoidance

actions. *See, e.g.*, *In re Veblen W. Dairy LLP*, 434 B.R. 550, 553 (Bankr. D.S.D. 2010)

(cause under § 1104(a)(1) includes the existence of voidable preferences and fraudulent

conveyances); *In re SRJ Enters., Inc.*, 151 B.R. 189, 194-95 (Bankr. N.D. Ill. 1993)

("[C]ause may exist pursuant to § 1104(a)(1) for the appointment of a trustee when the

debtor in possession breaches this duty and unjustifiably fails to institute a suit to recover

a voidable preference."); *see also In re Haugen Constr. Serv., Inc.*, 104 B.R. 233, 240

(Bankr. D.N.D. 1989) (holding that trustee may be removed for cause, including failure

to pursue preferences and other potential claims of the debtor).

52.     Here, as described above in greater detail, the Debtor has failed to

prosecute the Avoidance Actions, which constitute the estate's few significant assets that

could provide a recovery for creditors.  In some cases, the potential claim was disclosed

by the Debtor itself in the Statement of Financial Affairs.  In other cases, Smartmatic's

investigation revealed significant viable claims available for the benefit of the estate.  The

Debtor has knowledge of the existence of such claims but has failed to conduct its own

investigation, much less to bring suit to recover these avoidable transfers.  Adequate

cause exists on this basis alone for appointment of a trustee.

53.     In addition, the Debtor has shown no inclination to bring this Chapter 11

case to a conclusion.  The Debtor has failed to file a plan of reorganization or to pursue

efforts to liquidate its most significant assets, *i.e.*, the Avoidance Actions and the equity

interest in Sequoia.  There is no indication of how the Debtor intends to prosecute this

case in any substantive way.  In *In re Colorado-Ute Electric Association, Inc.*, 120 B.R.

164 (Bankr. D. Colo. 1990), this Court appointed a Chapter 11 trustee where, among

other things, the debtor-in-possession showed no signs of advancing the case toward an

exit from bankruptcy (despite some success in post-petition operations) and any further

deferral of the appointment of a trustee would "only further delay the progress toward the

effective rehabilitation and reorganization of the debtor." *Id.* at 175. Clearly, cause also exists to appoint a Chapter 11 trustee because the Debtor has demonstrated that it lacks a plan for prosecuting this Chapter 11 case.

54.     <u>Second</u>, appointment of a Chapter 11 trustee would also be in the best interests of creditors. In considering appointment of a trustee under Bankruptcy Code section 1104(a)(2), the Court should focus on the practical reality of the situation and look to four factors: (a) the debtor's trustworthiness; (b) the debtor's past and present performance and prospects for rehabilitation; (c) creditors' confidence in present management; and (d) the benefits versus costs of appointment of a trustee. *See Colorado-Ute*, 120 B.R. at 176 (citing *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990)).

55.     Each of the four factors supports appointment of a trustee. The Debtor's trustworthiness has been put into play by the potential conflict of interest demonstrated by the Debtor in entering into the 2009 APA and the 2010 APA, and the Debtor's subsequent decision not to challenge those transfers in the course of this bankruptcy. The Debtor has taken no steps to advance this Chapter 11 case and there are no prospects for rehabilitation. This case is likely to conclude, at best, with a structured liquidation. Smartmatic, by and away the Debtor's largest creditor, has no confidence in current management.

56.     Most importantly, though, the benefits of a Chapter 11 trustee greatly outweigh any potential costs. A trustee would have authority to prosecute the Avoidance

Actions (and may have the benefit of an extended statute of limitations of section
546(a)(1)(B) of the Bankruptcy Code) and would move this bankruptcy case toward a
resolution.  There is no prospect of any recovery for unsecured creditors without putting
in a party independent from the management of the Debtor and Sequoia, such as a
Chapter 11 trustee.

57.     For these reasons, if the Court is not inclined to grant derivative standing to
Smartmatic to pursue the Avoidance Actions, Smartmatic submits that appointment of a
trustee is mandated because of the good cause shown and also because such appointment
would be in the best interests of creditors.

WHEREFORE, Smartmatic respectfully requests that the Court (a) enter an order
authorizing and conferring standing on Smartmatic to prosecute the Avoidance Actions
on behalf of the bankruptcy estate or, in the alternative, appoint a Chapter 11 trustee, and
(b) grant such additional relief as the Court deems appropriate.

DATED:  September 21, 2012

ROTHGERBER JOHNSON & LYONS LLP

*/s/ Brent R. Cohen*
Brent R. Cohen, No. 11297
Chad S. Caby, No. 30927
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO   80202-5855
Tel:     (303) 623-9000
Fax:     (303) 623-9222
E-mail:  bcohen@rothgeber.com
             ccaby@rothgerber.com

—and—

HOGAN LOVELLS US LLP
Ira S. Greene
Khang V. Tran
876 Third Avenue
New York, NY 10022
Tel:    (212) 918-3000
Fax:    (212) 918-3100
Email:  Ira.Greene@hoganlovells.com
             Khang.Tran@hoganlovells.com

*Counsel for Smartmatic*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 10-24238 HRT |
| SVS HOLDINGS, INC., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| SMARTMATIC USA CORPORATION, | ) | |
| ON BEHALF OF THE CHAPTER 11 | ) | |
| ESTATE OF SVS HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. _____ |
| | ) | |
| DOMINION VOTING SYSTEMS | ) | |
| CORPORATION and DOMINION | ) | |
| VOTING SYSTEMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

---

## COMPLAINT

---

For its Complaint against Dominion Voting Systems Corporation ("Dominion Canada") and Dominion Voting Systems, Inc. ("Dominion US" and together with Dominion Canada, each a "Defendant" and collectively, "Dominion" or the "Defendants"), Smartmatic USA Corporation ("Smartmatic"), on behalf of the Chapter 11 estate of SVS Holdings, Inc. (the "Plaintiff"), alleges as follows:

\\NY - 038124/000002 - 2389407 v4

EXHIBIT A

## BACKGROUND

1.      On September [____], 2012, Smartmatic filed its Motion for Authority and Standing to Prosecute Causes of Action on Behalf of the Debtor or, in the Alternative, for Appointment of a Trustee (the "Motion").  The Court entered an order granting the relief requested in the Motion on [_____], 2012, pursuant to which Smartmatic was granted standing and authority, among other things, to prosecute, litigate and compromise causes of action belonging to the bankruptcy estate of SVS Holdings, Inc. (the "Debtor") that arise under Chapter 5 of Title 11 of the United States Code (the "Bankruptcy Code") and other applicable law.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157, 1334, and 1367.

3.      This action is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4.      Venue of this action is proper in this district pursuant to 28 U.S.C. § 1409(a).

5.      The statutory bases for the relief requested in this Complaint are 11 U.S.C. §§ 502(d), 544, 548 and 550 and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure.

## FACTUAL ALLEGATIONS

6.      The Debtor is a Delaware corporation with its principal place of business at 717 17th Street, Suite 310, Denver, Colorado 80202.

7.     On June 8, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, Case No. 10-24238 HRT.

8.     As of the Petition Date, the Debtor had $1,280,485.92 in assets and $11,376,334.52 in liabilities. Upon information and belief, based on a review of the Debtor's financial statements available to Smartmatic, this balance of assets versus liabilities was roughly the same during the two year period prior to the Petition Date.

9.     Dominion Canada is a corporation formed under the laws of Toronto, Ontario with its principal place of business at 215 Spadina Avenue, Suite 200, Toronto, Ontario, Canada.

10.     Dominion US is a Delaware corporation with its principal place of business at 215 Spadina Avenue, Suite 200, Toronto, Ontario, Canada.

**A.     Background on Sequoia Voting Systems, Inc.**

11.     Sequoia Voting Systems, Inc. ("Sequoia") is a Delaware corporation with its principal place of business at 717 17th Street, Suite 310, Denver, Colorado 80202. Sequoia is a wholly-owned subsidiary of the Debtor.

12.     Sequoia was incorporated on December 20, 1990 and was principally engaged in providing electronic voting systems, election technologies, and related support services to state and local governments in the United States.

13.     On September 13, 2007, the management of Sequoia incorporated the Debtor for the purpose of acquiring the equity interests in Sequoia from Smartmatic. Pursuant to the terms of the Stock Purchase Agreement, dated September 18, 2007, among Smartmatic, the Debtor, Sequoia, and the U.S. Stockholders named therein, the

Debtor acquired all of the issued and outstanding capital stock of Sequoia from Smartmatic.

14.    The Debtor is a corporate shell and had no revenue and, other than its ownership of the equity interests in Sequoia, conducted no business in the two years preceding the Petition Date.

15.    On information and belief, based on discovery under Fed. R. Bankr. P. 2004, at all times relevant to this Complaint, the Debtor and Sequoia shared the same or substantially the same officers and board of directors.  The Debtor and Sequoia also shared a single business location and address, operated out of the same bank accounts, commingled assets and affairs, and did not hold themselves out to the public as separate entities.

16.    Upon information and belief, based on discovery under Fed. R. Bankr. P. 2004, the Debtor and Sequoia are alter egos of one another.

**B.    The 2009 Asset Purchase Agreement**

17.    In 2009, Sequoia began experiencing cash flow challenges, including difficulties in meeting payroll.  This led Sequoia management to investigate potential purchasers or investors in Sequoia.

18.    Sequoia and the State of New York Executive Department, Office of General Services are parties to Comptroller's Contract No. PC63813 for Voting Systems and Related Services and Ballot Marking or Other Voting Devices Accessible to Individuals with Disabilities (as amended from time to time, the "NY Contract").  Pursuant to the NY Contract, for the period from January 23, 2008 through January 31,

2013, counties in New York could purchase electronic voting machines and other related goods and services from Sequoia through a requisition process under the terms and conditions set forth in the NY Contract.

19.     In April 2009, Sequoia approached Dominion Canada about a possible transaction involving the NY Contract.  Sequoia and Dominion Canada entered into an Asset Purchase Agreement, dated July 15, 2009 (the "2009 APA"), pursuant to which Dominion Canada acquired the NY Contract and Sequoia's rights under a related lease. In exchange, Dominion Canada agreed to pay Sequoia an aggregate of $2.366 million in cash and a percentage of any Qualified NYS Order or NYC Order (each as defined in the 2009 APA) in 2009 or 2010.

20.     On information and belief, based on discovery under Fed. R. Bankr. P. 2004, Dominion Canada paid Sequoia the $2.366 million in cash consideration under the 2009 APA, but there were no Qualified NYS Order or NYC Order so no additional consideration was paid to Sequoia.

21.     On information and belief, based on discovery under Fed. R. Bankr. P. 2004, the NY Contract and the individual contracts with New York counties entered into under this master agreement constituted some of Sequoia's most valuable and most profitable assets.

22.     Sequoia neither marketed the NY Contract to any party other than Dominion Canada nor shopped the offer from Dominion Canada to any other party.  On information and belief, based on discovery under Fed. R. Bankr. P. 2004, the assets sold under the 2009 APA were worth more than the consideration paid by Dominion Canada.

## C.     The 2010 Asset Purchase Agreement

23.     The 2009 APA did not resolve Sequoia's cash flow difficulties, and within months after the closing of the 2009 APA, Sequoia began investigating the possibility of locating a potential purchaser.

24.     In January 2010, Sequoia and Dominion opened discussions on a larger transaction between the two, and in February 2010, Sequoia and Dominion exchanged term sheets describing a potential transaction.

25.     In term sheets circulated on or about February 11, 16, and 18, 2010, the parties discussed a purchase by Dominion of 90-98% of the equity interests in Sequoia (presumably from the Debtor) for a price to be determined.  In connection with this deal, Dominion would enter into a one-year employment contract with Jack Blaine, Sequoia's chief executive officer, at an annual salary of $120,000 plus $30,000 in other benefits.

26.     In a March 5, 2010 letter of intent, Dominion US proposed to purchase substantially all of the assets of Sequoia (excluding accounts receivable, cash balances, and tax assets) for an aggregate purchase price of $9.5 million, consisting of $5 million in cash plus up to $4.5 million in contingent payments.

27.     On June 4, 2010, Sequoia and Dominion US entered into an Asset Purchase Agreement (the "2010 APA").  Under the 2010 APA, Dominion US purchased from Sequoia substantially all of the assets of Sequoia (again, excluding accounts receivable, cash balances, and tax assets) for an aggregate of $7.5 million, consisting of approximately $3 million in cash plus up to an aggregate of $4.5 million in contingent payments.

28.     At approximately the same time, Dominion Canada and Blaine entered into an employment agreement on substantially better terms than provided in the March 5, 2010 letter of intent.  The Employment Agreement was for three years and provided Blaine with an annual salary of $350,000, annual living expenses of more than $50,000, a percentage of Dominion's revenue from non-US business generated by Blaine, together with a one-year salary and benefits severance package if he were terminated before the end of the three year term of the agreement.

29.     During the time of the negotiations with Dominion, Sequoia received an offer from a prominent company in the elections machine industry to purchase its assets. Though Sequoia did not pursue this offer, Smartmatic believes that if Sequoia had pursued such offer, the competition for Sequoia's assets would have provided a safeguard against a fire sale of Sequoia's assets and would have resulted in a higher purchase price, including a higher guaranteed cash component of the purchase price.  On information and belief, some Sequoia management preferred this third-party offer to a sale of Sequoia's assets to Dominion.

30.     Upon information and belief, based on discovery under Fed. R. Bankr. P. 2004, Sequoia has received the cash consideration from Dominion US under the 2010 APA but none of the contingent payments.  It is not expected that the contingent payments will be paid under the terms of the 2010 APA.

31.     Setting aside the $4.5 million contingent payments proposed by Dominion (which Plaintiff understands were unlikely to ever be paid), Sequoia sold substantially all of its assets to Dominion US for $3 million, *i.e.*, $2 million less than the amount

originally proposed by Dominion US and, upon information and belief, substantially less than a competing offer received from a third party. In contrast, the employment agreement with Blaine, who was one of Sequoia's principal negotiators on the 2010 APA, improved substantially: salary from $120,000 to $350,000; annual benefits of $30,000 to more than $50,000; a one-year employment term to a three-year employment term; and the introduction of a one-year severance package.

## COUNT I
## AVOIDANCE OF FRAUDULENT TRANSFER – 11 U.S.C. § 548
### (*Against Dominion Canada*)

32. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 31 above, as though fully set forth at length herein.

33. The transfer of the NY Contract and the other assets to Dominion Canada under the 2009 APA (the "2009 Transfer") was made within two years before the Petition Date.

34. The 2009 Transfer was a transfer of property, or an interest in property, of the Debtor.

35. The Debtor received less than a reasonably equivalent value in exchange for the 2009 Transfer.

36. The 2009 Transfer was made (a) at a time when the Debtor was engaged or was about to engage in a business and transactions for which the remaining assets of the Debtor were unreasonably small in relation to the business and transactions, (b) at a time when the Debtor intended to incur, or believed or should reasonably have believed that it would incur, debts beyond its ability to pay as they became due, (c) at a time when the

Debtor was insolvent or (d) with the result that the Debtor became insolvent as a result of the 2009 Transfer.

37.     Accordingly, the 2009 Transfer should be avoided and set aside as fraudulent under 11 U.S.C. § 548.

**COUNT II**
**AVOIDANCE OF FRAUDULENT TRANSFERS –**
**UNIFORM FRAUDULENT TRANSFER ACT AND 11 U.S.C. § 544**
***(Against Dominion Canada)***

38.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 37 above, as though fully set forth at length herein.

39.     The Debtor received less than a reasonably equivalent value in exchange for the 2009 Transfer.

40.     The 2009 Transfer was made (a) at a time when the Debtor was engaged or was about to engage in a business and transactions for which the remaining assets of the Debtor were unreasonably small in relation to the business and transactions, (b) at a time when the Debtor intended to incur, or believed or should reasonably have believed that it would incur, debts beyond its ability to pay as they became due, (c) at a time when the Debtor was insolvent or (d) with the result that the Debtor became insolvent as a result of the 2009 Transfer.

41.     At all times relevant to this Complaint, there were actual creditors of the Debtor with allowable unsecured claims who could avoid the 2009 Transfer under applicable state law.

42.     Accordingly, the 2009 Transfer should be avoided and set aside as fraudulent under 11 U.S.C. § 544(b)(1) and applicable law, including but not limited to C.R.S. §§ 38-8-105 and 106 and/or Delaware Code tit. 6, §§ 1304 and 1305.

## COUNT III
## AVOIDANCE OF FRAUDULENT TRANSFER –
## UNIFORM FRAUDULENT TRANSER ACT
### (*Against Dominion Canada*)

43.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 42 above, as though fully set forth at length herein.

44.     As of the date of the 2009 Transfer, Sequoia was indebted to the Debtor in an amount not less than $1,280,385.92.

45.     As of the date of the 2009 Transfer, Sequoia had approximately $56,326,444 in assets and approximately $73,289,567 in liabilities.

46.     Sequoia received less than a reasonably equivalent value in exchange for the 2009 Transfer.

47.     The 2009 Transfer was made (a) at a time when Sequoia was engaged or was about to engage in a business or a transactions for which the remaining assets of Sequoia were unreasonably small in relation to the business or transactions, (b) at a time when Sequoia intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, (c) at a time when Sequoia was insolvent; or (d) with the result that Sequoia became insolvent as a result of the transfer or obligation.

48.     Accordingly, the 2009 Transfer should be avoided and set aside as a
fraudulent transfer under C.R.S. §§ 38-8-105 and 106 and/or Delaware Code tit. 6,
§§ 1304 and 1305.

### COUNT IV
### FOR RECOVERY OF PROPERTY - 11 U.S.C. § 550
### (*Against Dominion Canada*)

49.     Plaintiff repeats and realleges the allegations contained in paragraphs 1
through 48 above, as though fully set forth at length herein.

50.     Plaintiff is entitled to avoid 2009 Transfer pursuant to 11 U.S.C. §§ 544,
548, and/or applicable non-bankruptcy law.

51.     Dominion Canada was the initial transferee of the 2009 Transfer, the
intermediate or mediate transferee of the initial transferee of the 2009 Transfer, or the
person for whose benefit the 2009 Transfer was made.

52.     Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover from
Dominion Canada an amount to be determined at trial that is not less than the sum of the
2009 Transfer, plus interest to the date of payment and the costs of this action.

### COUNT V
### DISALLOWANCE OF CLAIM - 11 U.S.C. § 502(d)
### (*Against Dominion Canada*)

53.     Plaintiff repeats and realleges the allegations contained in paragraphs 1
through 52 above, as though fully set forth at length herein.

54.     Dominion Canada is the transferee of the 2009 Transfer, which is avoidable
under 11 U.S.C. §§ 544, 548 and/or applicable non-bankruptcy law and which is
recoverable from Dominion Canada under 11 U.S.C. § 550.

55.     Pursuant to 11 U.S.C. § 502(d), in the event that Dominion Canada is liable for any avoidable transfers, any claims held by Dominion Canada against the Debtor must be disallowed unless Dominion Canada pays the amount of the such transfers and recoverable property to Plaintiff.

### COUNT VI
### AVOIDANCE OF FRAUDULENT TRANSFER – 11 U.S.C. § 548
### (*Against Dominion US*)

56.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 55 above, as though fully set forth at length herein.

57.     The transfer of the assets to Dominion US under the 2010 APA (the "2010 Transfer") was made within two years before the Petition Date.

58.     The 2010 Transfer was a transfer of property, or an interest in property, of the Debtor.

59.     The Debtor received less than a reasonably equivalent value in exchange for the 2010 Transfer.

60.     The 2010 Transfer was made (a) at a time when the Debtor was engaged or was about to engage in a business and transactions for which the remaining assets of the Debtor were unreasonably small in relation to the business and transactions, (b) at a time when the Debtor intended to incur, or believed or should reasonably have believed that it would incur, debts beyond its ability to pay as they became due, (c) at a time when the Debtor was insolvent or (d) with the result that the Debtor became insolvent as a result of the 2010 Transfer.

61.     Accordingly, the 2010 Transfer should be avoided and set aside as fraudulent under 11 U.S.C. § 548.

## COUNT VII
## AVOIDANCE OF FRAUDULENT TRANSFERS –
## UNIFORM FRAUDULENT TRANSFER ACT AND 11 U.S.C. § 544
### (*Against Dominion US*)

62.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 61 above, as though fully set forth at length herein.

63.     The Debtor received less than a reasonably equivalent value in exchange for the 2010 Transfer.

64.     The 2010 Transfer was made (a) at a time when the Debtor was engaged or was about to engage in a business and transactions for which the remaining assets of the Debtor were unreasonably small in relation to the business and transactions, (b) at a time when the Debtor intended to incur, or believed or should reasonably have believed that it would incur, debts beyond its ability to pay as they became due, (c) at a time when the Debtor was insolvent or (d) with the result that the Debtor became insolvent as a result of the 2010 Transfer.

65.     At all times relevant to this Complaint, there were actual creditors of the Debtor with allowable unsecured claims who could avoid the 2010 Transfer under applicable state law.

66.     Accordingly, each of the Transfers should be avoided and set aside as fraudulent under 11 U.S.C. § 544(b)(1) and applicable law, including but not limited to C.R.S. §§ 38-8-105 and 106 and/or Delaware Code tit. 6, §§ 1304 and 1305.

## COUNT VIII
## AVOIDANCE OF FRAUDULENT TRANSFER -
## UNIFORM FRAUDULENT TRANSFER ACT
## (*Against Dominion US*)

67.     Plaintiff repeats and realleges the allegations contained in paragraphs 1
through 66 above, as though fully set forth at length herein.

68.     As of the date of the 2010 Transfer, Sequoia was indebted to the Debtor in
an amount not less than $1,280,385.92.

69.     As of the date of the 2010 Transfer, Sequoia had approximately
$16,737,187 in assets and approximately $24,828,004 in liabilities.

70.     Sequoia received less than a reasonably equivalent value in exchange for
the 2010 Transfer.

71.     The 2010 Transfer was made (a) at a time when Sequoia was engaged or
was about to engage in a business or a transactions for which the remaining assets of
Sequoia were unreasonably small in relation to the business or transactions, (b) at a time
when Sequoia intended to incur, or believed or reasonably should have believed that it
would incur, debts beyond its ability to pay as they became due, (c) at a time when
Sequoia was insolvent; or (d) with the result that Sequoia became insolvent as a result of
the transfer or obligation.

72.     Accordingly, the 2010 Transfer should be avoided and set aside as a
fraudulent transfer under C.R.S. §§ 38-8-105 and 106 and/or Delaware Code tit. 6,
§§ 1304 and 1305.

## COUNT IX
## FOR RECOVERY OF PROPERTY - 11 U.S.C. § 550
### (*Against Dominion US*)

73.     Plaintiff repeats and realleges the allegations contained in paragraphs 1

through 72 above, as though fully set forth at length herein.

74.     Plaintiff is entitled to avoid 2010 Transfer pursuant to 11 U.S.C. §§ 544,

548, and/or applicable non-bankruptcy law.

75.     Dominion US was the initial transferee of the 2010 Transfer, the

intermediate or mediate transferee of the initial transferee of the 2010 Transfer, or the

person for whose benefit the 2010 Transfer was made.

76.     Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover from

Dominion US an amount to be determined at trial that is not less than the sum of the 2010

Transfer, plus interest to the date of payment and the costs of this action.

## COUNT X
## DISALLOWANCE OF CLAIM - 11 U.S.C. § 502(D)
### (*Against Dominion US*)

77.     Plaintiff repeats and realleges the allegations contained in paragraphs 1

through 76 above, as though fully set forth at length herein.

78.     Dominion US is the transferee of the 2010 Transfer, which is avoidable

under 11 U.S.C. §§ 544, 548 and/or applicable non-bankruptcy law and which is

recoverable from Dominion US under 11 U.S.C. § 550.

79.     Pursuant to 11 U.S.C. § 502(d), in the event that Dominion US is liable for

any avoidable transfers, any claims held by Dominion US against the Debtor must be

disallowed unless Dominion US pays the amount of the transfers and recoverable

property to Plaintiff.

## RESERVATION OF RIGHTS

80.     Plaintiff reserves the right to bring all other claims or causes of action that

Plaintiff might have against Dominion Canada or Dominion US, on any and all grounds,

as allowed under the law or in equity.

WHEREFORE, Plaintiff requests entry of a judgment in its favor against

Dominion Canada and Dominion US as follows:

(a)     For avoidance and recovery of the 2009 Transfer and the 2010 Transfer, or

the value thereof;

(b)     For disallowance of Dominion Canada's claims pursuant to 11 U.S.C.

§ 502(d) unless the amount of the judgments for avoidance of the 2009 Transfer are paid

to Plaintiff;

(c)     For disallowance of Dominion US's claims pursuant to 11 U.S.C. § 502(d)

unless the amount of the judgments for avoidance of the 2010 Transfer are paid to

Plaintiff;

(d)     For pre- and post-petition interest on the amounts owed Dominion Canada

and Dominion US to the full extent allowed under applicable law at the highest legal rate;

(e)     For all costs under applicable law; and

(f)     For such other and further relief as is just and proper.

DATED: _____, 2012

ROTHGERBER JOHNSON & LYONS LLP

_____

Brent R. Cohen, No. 11297
Chad S. Caby, No. 30927
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO  80202-5855
Tel:     (303) 623-9000
Fax:     (303) 623-9222
E-mail:  bcohen@rothgeber.com
              ccaby@rothgeber.com

—and—

HOGAN LOVELLS US LLP
Ira S. Greene
Khang V. Tran
876 Third Avenue
New York, NY 10022
Tel:    (212) 918-3000
Fax:    (212) 918-3100
Email:  Ira.Greene@hoganlovells.com
              Khang.Tran@hoganlovells.com

*Counsel for Smartmatic USA Corporation*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

In re:                                          )
                                                )     Case No. 10-24238 HRT
SVS HOLDINGS, INC.,                             )
                                                )     Chapter 11
      Debtor.               )
_____)
                                                )
SMARTMATIC USA CORPORATION,)
ON BEHALF OF THE CHAPTER 11     )
ESTATE OF SVS HOLDINGS, INC.,   )
                                                )
      Plaintiff,            )
                                                )
v.                                              )     Adversary Proceeding No. _____
                                                )
JACK BLAINE,                                    )
                                                )
      Defendant.            )
_____)

---

## COMPLAINT

---

For its Complaint against Jack Blaine (the "Defendant"), Smartmatic USA

Corporation ("Smartmatic"), on behalf of the Chapter 11 estate of SVS Holdings, Inc.

(the "Plaintiff"), alleges as follows:

### BACKGROUND

1.      On September [____], 2012, Smartmatic filed its Motion for Authority and

Standing to Prosecute Causes of Action on Behalf of the Debtor or, in the Alternative, for

Appointment of a Trustee (the "Motion"). The Court entered an order granting the relief

requested in the Motion on [_____], 2012, pursuant to which Smartmatic was

-1-

EXHIBIT B

granted standing and authority, among other things, to prosecute, litigate and compromise

causes of action belonging to the bankruptcy estate of SVS Holdings, Inc. (the "Debtor")

that arise under Chapter 5 of Title 11 of the United States Code (the "Bankruptcy Code")

and other applicable law.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the parties and the subject matter of this

proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3.      This action is a core proceeding within the meaning of 28 U.S.C. §

157(b)(2).

4.      Venue of this action is proper in this district pursuant to 28 U.S.C. §

1409(a).

5.      The statutory bases for the relief requested in this Complaint are 11 U.S.C.

§§ 502(d), 544, 547, 548 and 550 and Rules 3007 and 7001 of the Federal Rules of

Bankruptcy Procedure.

## FACTUAL ALLEGATIONS

6.      On June 8, 2010 (the "Petition Date"), the Debtor filed a voluntary petition

for relief under Chapter 11 of the Bankruptcy Code, Case No. 10-24238 HRT.

7.      Defendant is a resident of Florida, with an address of 920 Greensward

Lane, Delray Beach, Florida 33445.  From time to time, Defendant also resides in

Colorado at 475 West 12th Avenue, Unit 7A, Denver, Colorado 80204.

- 2 -

8.      At all times relevant to this Complaint, Defendant was an officer and director of the Debtor.  As such, Defendant was an "insider" of the Debtor under section 101(31)(B) of the Bankruptcy Code.

9.      On or within one year before the Petition Date (the "Preference Period"), the Debtor made one or more transfers of an interest in the Debtor's property totaling not less than the amounts set forth on Exhibit 1, or $306,047.00 in the aggregate, consisting of the payments to or for the benefit of Defendant on the dates and in the amounts set forth on Exhibit 1 (the transfers identified on Exhibit 1, together with all other transfers to or for the benefit of Defendant of property in which the Debtor has or had an interest are collectively referred to as the "Transfers").[1]

### COUNT I
### AVOIDANCE OF PREFERENTIAL TRANSFERS – 11 U.S.C. § 547

10.      Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 9 above, as though fully set forth at length herein.

11.      All of the Transfers were transfers of property, or an interest in property, of the Debtor.

12.      The Transfers were made by the Debtor to or for the benefit of the Defendant.

13.      The Transfers were made on or within one year before the Petition Date.

---

[1]      Exhibit 1 reflects Plaintiff's current knowledge of the transfers made to Defendant during the Preference Period.  During the course of this proceeding, Plaintiff may learn, through discovery or otherwise, of additional transfers made to Defendant during the Preference Period.  It is Plaintiff's intention to avoid and recover all Transfers, whether identified on Exhibit 1 or not.

- 3 -

14.     Defendant was a creditor of the Debtor at the time of each of the Transfers. At the time of each of the Transfers, Defendant had a right to payment on account of an obligation owed to Defendant by the Debtor.

15.     The Transfers were each made for or on account of an antecedent debt owed by the Debtor to the Defendant before each of the Transfers were made.

16.     The Transfers were made while the Debtor was insolvent.  During the Preference Period, the sum of Debtor's debts exceeded the value of its assets.  Pursuant to 11 U.S.C. § 547(f), the Debtor is presumed to be insolvent during the 90 days preceding Petition Date.

17.     As of the Petition Date, the Debtor had $1,280,485.92 in assets and $11,376,334.52 in liabilities. Upon information and belief, based on a review of the Debtor's financial statements available to Smartmatic, this balance of assets versus liabilities was roughly the same during the Preference Period.

18.     The Transfers enabled the Defendant to receive more than the Defendant would have received if: (a) the Debtor's Chapter 11 case was a case under Chapter 7 of the Bankruptcy Code, (b) the Transfers had not been made and (c) the Defendant had received payment of his debt to the extent provided by the provisions of the Bankruptcy Code.

19.     Each of the Transfers constitutes an avoidable preference within the meaning of 11 U.S.C. § 547.

20.     Accordingly, each of the Transfers should be avoided and set aside as preferential transfers under 11 U.S.C. § 547.

-4-

## COUNT II
## AVOIDANCE OF FRAUDULENT TRANSFERS – 11 U.S.C. § 548

21.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 20 above, as though fully set forth at length herein.

22.    Each of the Transfers was made within two years before the Petition Date.

23.    The Debtor received less than a reasonably equivalent value in exchange for each Transfer.

24.    The Transfers were made (a) at a time when the Debtor was engaged or was about to engage in a business and transactions for which the remaining assets of the Debtor were unreasonably small in relation to the business and transactions, (b) at a time when the Debtor intended to incur, or believed or should reasonably have believed that it would incur, debts beyond its ability to pay as they became due, (c) at a time when the Debtor was insolvent or (d) with the result that the Debtor became insolvent as a result of such Transfer(s).

25.    Accordingly, each of the Transfers should be avoided and set aside as fraudulent under 11 U.S.C. § 548.

## COUNT III
## AVOIDANCE OF FRAUDULENT TRANSFERS –
## UNIFORM FRAUDULENT TRANSFER ACT AND 11 U.S.C. § 544

26.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 25 above, as though fully set forth at length herein.

27.    The Debtor received less than a reasonably equivalent value in exchange for each Transfer.

- 5 -

28.     The Transfers were made (a) at a time when the Debtor was engaged or was about to engage in a business and transactions for which the remaining assets of the Debtor were unreasonably small in relation to the business and transactions, (b) at a time when the Debtor intended to incur, or believed or should reasonably have believed that it would incur, debts beyond their ability to pay as they became due, (c) at a time when the Debtor was insolvent or (d) with the result that the Debtor became insolvent as a result of such Transfer(s).

29.     At all times relevant to this Complaint, there were actual creditors of the Debtor with allowable unsecured claims who could avoid the Transfers under applicable state law.

30.     Accordingly, each of the Transfers should be avoided and set aside as fraudulent under 11 U.S.C. § 544(b)(1) and applicable law, including but not limited to C.R.S. §§ 38-8-105 and 106 and/or Delaware Code tit. 6, §§ 1304 and 1305.

## COUNT IV
## FOR RECOVERY OF PROPERTY - 11 U.S.C. § 550

31.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 30 above, as though fully set forth at length herein.

32.     Plaintiff is entitled to avoid the Transfers described above and on <u>Exhibit 1</u> pursuant to 11 U.S.C. §§ 544, 547, 548, and/or applicable non-bankruptcy law.

33.     The Defendant was the initial transferee of the Transfers, the intermediate or mediate transferee of the initial transferee of the Transfers, or the person for whose benefit the Transfers were made.

- 6 -

34.     Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover from Defendant an amount to be determined at trial that is not less than the sum of the Transfers, plus interest to the date of payment and the costs of this action.

## COUNT V
## DISALLOWANCE OF CLAIM - 11 U.S.C. § 502(d)

35.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 34 above, as though fully set forth at length herein.

36.     Defendant is the transferee of Transfers by the Debtor avoidable under 11 U.S.C. §§ 544, 547, 548 and/or applicable non-bankruptcy law, which are recoverable from Defendant under 11 U.S.C. § 550.

37.     Pursuant to 11 U.S.C. § 502(d), in the event that Defendant is liable for any avoidable Transfers, any claims held by the Defendant against the Debtor must be disallowed unless Defendant pays the amount of the Transfers and recoverable property to Plaintiff.

## RESERVATION OF RIGHTS

38.     Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff might have against Defendant, on any and all grounds, as allowed under the law or in equity.

WHEREFORE, Plaintiff requests entry of a judgment in its favor against Defendant as follows:

(a)     For avoidance and recovery of the Transfers, or the value thereof;

- 7 -

(b)     For disallowance of Defendant's Claims pursuant to 11 U.S.C. § 502(d) unless the amount of the judgments for avoidance of Transfers are paid to Plaintiff;

(c)     For pre- and post-petition interest on the amounts owed by Defendant to the full extent allowed under applicable law at the highest legal rate;

(d)     For all costs under applicable law; and

(e)     For such other and further relief as is just and proper.

DATED: _____, 2012

ROTHGERBER JOHNSON & LYONS LLP

_____

Brent R. Cohen, No. 11297
Chad S. Caby, No. 30927
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO   80202-5855
Tel:     (303) 623-9000
Fax:     (303) 623-9222
E-mail:  bcohen@rothgeber.com
         ccaby@rothgerber.com
—and—

HOGAN LOVELLS US LLP
Ira S. Greene
Khang V. Tran
876 Third Avenue
New York, NY 10022
Tel:    (212) 918-3000
Fax:    (212) 918-3100
Email:  Ira.Greene@hoganlovells.com
        Khang.Tran@hoganlovells.com

*Counsel for Smartmatic USA Corporation*

**EXHIBIT 1**

| <u>Date</u> | <u>Amount of Transfer</u> |
|---|---|
| June 2, 2009 | $6,000.00 |
| July 2, 2009 | $6,000.00 |
| August 3, 2009 | $6,000.00 |
| September 2, 2009 | $6,000.00 |
| October 23, 2009 | $30,000.00 |
| October 23, 2009 | $252,047.00 |

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 10-24238 HRT |
| SVS HOLDINGS, INC., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

---

## ORDER GRANTING SMARTMATIC CORPORATION'S MOTION FOR AUTHORITY AND STANDING TO PROSECUTE CAUSES OF ACTION ON BEHALF OF THE DEBTOR OR, IN THE ALTERNATIVE, FOR APPOINTMENT OF A TRUSTEE

---

The above-entitled matter having come before the Court on Smartmatic's Motion for Authority and Standing to Prosecute Causes of Action on Behalf of the Debtor or, in the Alternative, for Appointment of a Trustee ("Motion"); the Court, having reviewed the pleadings filed herein and being otherwise fully advised in the premises, it is hereby

ORDERED that the Motion shall be, and hereby is, GRANTED;

IT IS FURTHER ORDERED that Smartmatic USA Corporation shall be, and here is, granted standing and authority to prosecute actions arising under Chapter 5, Title 11 of the United States Code on behalf of SVS Holdings, Inc. and its bankruptcy estate against any party.

DATED this ____ day of _____, 2012.

BY THE COURT:


_____
Howard R. Tallman, Chief Judge