# **Exhibit K**

Colorado Complaint, Adv. Pro. No. 12-01757

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | Case No. 10-24238 HRT |
| SVS HOLDINGS, INC., ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| TOM H. CONNOLLY, ) | |
| CHAPTER 7 TRUSTEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary Proceeding No. _____ |
| ) | |
| DOMINION VOTING SYSTEMS ) | |
| CORPORATION and DOMINION ) | |
| VOTING SYSTEMS, INC., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## COMPLAINT

For his Complaint against Dominion Voting Systems Corporation ("Dominion Canada") and Dominion Voting Systems, Inc. ("Dominion US" and together with Dominion Canada, each a "Defendant" and collectively, "Dominion" or the "Defendants"), Tom H. Connolly, Chapter 7 Trustee (the "Trustee" or the "Plaintiff") for the bankruptcy case of SVS Holdings, Inc. (the "Debtor"), alleges as follows:

### JURISDICTION AND VENUE

1.   This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157, 1334, and 1367.

2003963756_1.doc

2. This action is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. Venue of this action is proper in this district pursuant to 28 U.S.C. § 1409(a).

4. The statutory bases for the relief requested in this Complaint are 11 U.S.C. §§ 105, 502(d), 544, 548 and 550 and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure.

## FACTUAL ALLEGATIONS

5. The Debtor is a Delaware corporation with its principal place of business at 717 17th Street, Suite 310, Denver, Colorado 80202.

6. On June 8, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the of Title 11 of the United States Code (the "Bankruptcy Code"), Case No. 10-24238 HRT.

7. On October 16, 2012, the Court entered its Order converting the case to a Chapter 7 proceeding. Thereafter, the Trustee was appointed as interim trustee.

8. As set forth in the Debtor's Schedules of Assets and Liabilities, the Debtor had not more than $1,280,485.92 in assets and $11,376,334.52 in liabilities as of the Petition Date. Upon information and belief, based on a review of the Debtor's financial statements available to the Plaintiff, this balance of assets versus liabilities was roughly the same during the two year period prior to the Petition Date.

9. Dominion Canada is a corporation formed under the laws of Toronto, Ontario with its principal place of business at 215 Spadina Avenue, Suite 200, Toronto, Ontario, Canada.

10. Dominion US is a Delaware corporation with its principal place of business at 215 Spadina Avenue, Suite 200, Toronto, Ontario, Canada.

**A.  Background on Sequoia Voting Systems, Inc.**

11. Sequoia Voting Systems, Inc. ("Sequoia") is a Delaware corporation with its principal place of business at 717 17th Street, Suite 310, Denver, Colorado 80202. Sequoia is a wholly-owned subsidiary of the Debtor.

12. Sequoia was incorporated on December 20, 1990 and was principally engaged in providing electronic voting systems, election technologies, and related support services to state and local governments in the United States.

13. On September 13, 2007, the management of Sequoia incorporated the Debtor for the purpose of acquiring the equity interests in Sequoia from Smartmatic Corporation n/k/a Smartmatic USA Corporation ("Smartmatic"). Pursuant to the terms of the Stock Purchase Agreement, dated September 18, 2007, among Smartmatic, the Debtor, Sequoia, and the U.S. Stockholders named therein, the Debtor acquired all of the issued and outstanding capital stock of Sequoia from Smartmatic.

14. The Debtor was and is the sole shareholder of Sequoia.

15. The Debtor was created, owned, controlled and completely dominated by the management of Sequoia.

2003963756_1.doc                                   3

16. The Debtor had no business, revenue operations, function, capitalization, or material assets other than its equity interest in Sequoia.

17. The Debtor financed Sequoia through intercompany loans, and on information and belief, there are no documents to support such loans.

18. On information and belief, based on discovery under Fed. R. Bankr. P. 2004, at all times relevant to this Complaint:

    (a) The Debtor and Sequoia shared the same or substantially the same officers and board of directors. The Debtor's and Sequoia's common officers and directors did not act independently and in the best interests of each entity.

    (b) The Debtor and Sequoia also shared a single business location and address, operated out of the same bank accounts, and commingled assets and affairs.

    (c) The Debtor and Sequoia did not hold themselves out to the public as separate entities, and creditors and other parties did not distinguish between the Debtor and the Sequoia and did not rely on their separate identities in dealing with the Debtor and/or Sequoia and in extending credit.

19. Upon information and belief, based on discovery under Fed. R. Bankr. P. 2004, the Debtor and Sequoia are alter egos of one another.

**B.  The 2009 Asset Purchase Agreement**

20.  In 2009, Sequoia began experiencing cash flow challenges, including difficulties in meeting payroll.  This led Sequoia management to investigate potential purchasers or investors in Sequoia.

21.  Sequoia and the State of New York Executive Department, Office of General Services are parties to Comptroller's Contract No. PC63813 for Voting Systems and Related Services and Ballot Marking or Other Voting Devices Accessible to Individuals with Disabilities (as amended from time to time, the "NY Contract").  Pursuant to the NY Contract, for the period from January 23, 2008 through January 31, 2013, counties in New York could purchase electronic voting machines and other related goods and services from Sequoia through a requisition process under the terms and conditions set forth in the NY Contract.

22.  In April 2009, Sequoia approached Dominion Canada about a possible transaction involving the NY Contract.  Sequoia and Dominion Canada entered into an Asset Purchase Agreement, dated July 15, 2009 (the "2009 APA"), pursuant to which Dominion Canada acquired the NY Contract and Sequoia's rights under a related lease.  In exchange, Dominion Canada agreed to pay Sequoia an aggregate of $2.366 million in cash and a percentage of any Qualified NYS Order or NYC Order (each as defined in the 2009 APA) in 2009 or 2010.

23.  On information and belief, based on discovery under Fed. R. Bankr. P. 2004, Dominion Canada paid Sequoia the $2.366 million in cash consideration under the

2003963756_1.doc                    5

2009 APA, but there were no Qualified NYS Order or NYC Order so no additional consideration was paid to Sequoia.

24. On information and belief, based on discovery under Fed. R. Bankr. P. 2004, the NY Contract and the individual contracts with New York counties entered into under this master agreement constituted some of Sequoia's most valuable and most profitable assets.

25. Sequoia neither marketed the NY Contract to any party other than Dominion Canada nor shopped the offer from Dominion Canada to any other party. On information and belief, based on discovery under Fed. R. Bankr. P. 2004, the assets sold under the 2009 APA were worth more than the consideration paid by Dominion Canada.

**C.     The 2010 Asset Purchase Agreement**

26. The 2009 APA did not resolve Sequoia's cash flow difficulties, and within months after the closing of the 2009 APA, Sequoia began investigating the possibility of locating a potential purchaser.

27. In January 2010, Sequoia and Dominion opened discussions on a larger transaction between the two, and in February 2010, Sequoia and Dominion exchanged term sheets describing a potential transaction.

28. In term sheets circulated on or about February 11, 16, and 18, 2010, the parties discussed a purchase by Dominion of 90-98% of the equity interests in Sequoia (presumably from the Debtor) for a price to be determined. In connection with this deal, Dominion would enter into a one-year employment contract with Jack Blaine, Sequoia's chief executive officer, at an annual salary of $120,000 plus $30,000 in other benefits.

29. In a March 5, 2010 letter of intent, Dominion US proposed to purchase substantially all of the assets of Sequoia (excluding accounts receivable, cash balances, and tax assets) for an aggregate purchase price of $9.5 million, consisting of $5 million in cash plus up to $4.5 million in contingent payments.

30. On June 4, 2010, Sequoia and Dominion US entered into an Asset Purchase Agreement (the "2010 APA"). Under the 2010 APA, Dominion US purchased from Sequoia substantially all of the assets of Sequoia (again, excluding accounts receivable, cash balances, and tax assets) for an aggregate of $7.5 million, consisting of approximately $3 million in cash plus up to an aggregate of $4.5 million in contingent payments.

31. At approximately the same time, Dominion Canada and Blaine entered into an employment agreement on substantially better terms than provided in the March 5, 2010 letter of intent. The Employment Agreement was for three years and provided Blaine with an annual salary of $350,000, annual living expenses of more than $50,000, a percentage of Dominion's revenue from non-US business generated by Blaine, together with a one-year salary and benefits severance package if he were terminated before the end of the three year term of the agreement.

32. During the time of the negotiations with Dominion, Sequoia received an offer from a prominent company in the elections machine industry to purchase its assets. Though Sequoia did not pursue this offer, the Plaintiff believes that if Sequoia had pursued such offer, the competition for Sequoia's assets would have provided a safeguard against a fire sale of Sequoia's assets and would have resulted in a higher purchase price,

including a higher guaranteed cash component of the purchase price. On information and belief, some Sequoia management preferred this third-party offer to a sale of Sequoia's assets to Dominion.

33. Upon information and belief, based on discovery under Fed. R. Bankr. P. 2004, Sequoia has received the cash consideration from Dominion US under the 2010 APA but none of the contingent payments. It is not expected that the contingent payments will be paid under the terms of the 2010 APA.

34. Setting aside the $4.5 million contingent payments proposed by Dominion (which Plaintiff understands were unlikely to ever be paid), Sequoia sold substantially all of its assets to Dominion US for $3 million, *i.e.*, $2 million less than the amount originally proposed by Dominion US and, upon information and belief, substantially less than a competing offer received from a third party. In contrast, the employment agreement with Blaine, who was one of Sequoia's principal negotiators on the 2010 APA, improved substantially: salary from $120,000 to $350,000; annual benefits of $30,000 to more than $50,000; a one-year employment term to a three-year employment term; and the introduction of a one-year severance package.

## COUNT I
## SUBSTANTIVE CONSOLIDATION
### (*Against Dominion Canada and Dominion US*)

35. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 34 above, as though fully set forth at length herein.

36. Substantive consolidation is required to avoid harm to the creditors of both the Debtor and Sequoia.

37. Accordingly, the Plaintiff requests that the Court substantively consolidate the Debtor and Sequoia.

## COUNT II
### AVOIDANCE OF FRAUDULENT TRANSFER – 11 U.S.C. § 548
(*Against Dominion Canada*)

38. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 37 above, as though fully set forth at length herein.

39. The transfer of the NY Contract and the other assets to Dominion Canada under the 2009 APA (the "2009 Transfer") was made within two years before the Petition Date.

40. The 2009 Transfer was a transfer of property, or an interest in property, of the Debtor.

41. The Debtor received less than a reasonably equivalent value in exchange for the 2009 Transfer.

42. The 2009 Transfer was made (a) at a time when the Debtor was engaged or was about to engage in a business and transactions for which the remaining assets of the Debtor were unreasonably small in relation to the business and transactions, (b) at a time when the Debtor intended to incur, or believed or should reasonably have believed that it would incur, debts beyond its ability to pay as they became due, (c) at a time when the Debtor was insolvent or (d) with the result that the Debtor became insolvent as a result of the 2009 Transfer.

43. Dominion Canada did not give value to the Debtor in exchange for the 2009 Transfer and did not enter into the 2009 Transfer in good faith.

44. Accordingly, the 2009 Transfer should be avoided and set aside as fraudulent under 11 U.S.C. § 548.

## COUNT III
### AVOIDANCE OF FRAUDULENT TRANSFERS – UNIFORM FRAUDULENT TRANSFER ACT AND 11 U.S.C. § 544
(*Against Dominion Canada*)

45. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 44 above, as though fully set forth at length herein.

46. The Debtor received less than a reasonably equivalent value in exchange for the 2009 Transfer.

47. The 2009 Transfer was made (a) at a time when the Debtor was engaged or was about to engage in a business and transactions for which the remaining assets of the Debtor were unreasonably small in relation to the business and transactions, (b) at a time when the Debtor intended to incur, or believed or should reasonably have believed that it would incur, debts beyond its ability to pay as they became due, (c) at a time when the Debtor was insolvent or (d) with the result that the Debtor became insolvent as a result of the 2009 Transfer.

48. At all times relevant to this Complaint, there were actual creditors of the Debtor with allowable unsecured claims who could avoid the 2009 Transfer under applicable state law.

49. Dominion Canada did not give value to the Debtor in exchange for the 2009 Transfer and did not enter into the 2009 Transfer in good faith.

50. Accordingly, the 2009 Transfer should be avoided and set aside as fraudulent under 11 U.S.C. § 544(b)(1) and applicable law, including but not limited to C.R.S. §§ 38-8-105 and 106 and/or Delaware Code tit. 6, §§ 1304 and 1305.

## COUNT IV
## AVOIDANCE OF FRAUDULENT TRANSFER – UNIFORM FRAUDULENT TRANSER ACT
### (*Against Dominion Canada*)

51. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 50 above, as though fully set forth at length herein.

52. As of the date of the 2009 Transfer, Sequoia was indebted to the Debtor in an amount not less than $1,280,385.92.

53. As of the date of the 2009 Transfer, Sequoia had approximately $56,326,444 in assets and approximately $73,289,567 in liabilities.

54. Sequoia received less than a reasonably equivalent value in exchange for the 2009 Transfer.

55. The 2009 Transfer was made (a) at a time when Sequoia was engaged or was about to engage in a business or transactions for which the remaining assets of Sequoia were unreasonably small in relation to the business or transactions, (b) at a time when Sequoia intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, (c) at a time when Sequoia was insolvent; or (d) with the result that Sequoia became insolvent as a result of the transfer or obligation.

56. Dominion Canada did not give value to the Debtor in exchange for the 2009 Transfer and did not enter into the 2009 Transfer in good faith.

57. Accordingly, the 2009 Transfer should be avoided and set aside as a fraudulent transfer under C.R.S. §§ 38-8-105 and 106 and/or Delaware Code tit. 6, §§ 1304 and 1305.

## COUNT V
### FOR RECOVERY OF PROPERTY - 11 U.S.C. § 550
### (*Against Dominion Canada*)

58. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 57 above, as though fully set forth at length herein.

59. Plaintiff is entitled to avoid the 2009 Transfer pursuant to 11 U.S.C. §§ 544, 548, and/or applicable non-bankruptcy law.

60. Dominion Canada was the initial transferee of the 2009 Transfer, the intermediate or mediate transferee of the initial transferee of the 2009 Transfer, or the person for whose benefit the 2009 Transfer was made.

61. Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover from Dominion Canada an amount to be determined at trial that is not less than the sum of the value of the 2009 Transfer, plus interest to the date of payment and the costs of this action.

## COUNT VI
### DISALLOWANCE OF CLAIM - 11 U.S.C. § 502(d)
### (*Against Dominion Canada*)

62. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 61 above, as though fully set forth at length herein.

63. Dominion Canada is the transferee of the 2009 Transfer, which is avoidable under 11 U.S.C. §§ 544, 548 and/or applicable non-bankruptcy law and which is recoverable from Dominion Canada under 11 U.S.C. § 550.

64. Pursuant to 11 U.S.C. § 502(d), in the event that Dominion Canada is liable for any avoidable transfers, any claims held by Dominion Canada against the Debtor must be disallowed unless Dominion Canada pays the amount of the such transfers and recoverable property to Plaintiff.

## COUNT VII
## AVOIDANCE OF FRAUDULENT TRANSFER – 11 U.S.C. § 548
### (*Against Dominion US*)

65. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 64 above, as though fully set forth at length herein.

66. The transfer of the assets to Dominion US under the 2010 APA (the "2010 Transfer") was made within two years before the Petition Date.

67. The 2010 Transfer was a transfer of property, or an interest in property, of the Debtor.

68. The Debtor received less than a reasonably equivalent value in exchange for the 2010 Transfer.

69. The 2010 Transfer was made (a) at a time when the Debtor was engaged or was about to engage in a business and transactions for which the remaining assets of the Debtor were unreasonably small in relation to the business and transactions, (b) at a time when the Debtor intended to incur, or believed or should reasonably have believed that it would incur, debts beyond its ability to pay as they became due, (c) at a time when the

Debtor was insolvent or (d) with the result that the Debtor became insolvent as a result of the 2010 Transfer.

70. Dominion US did not give value to the Debtor in exchange for the 2010 Transfer and did not enter into the 2010 Transfer in good faith.

71. Accordingly, the 2010 Transfer should be avoided and set aside as fraudulent under 11 U.S.C. § 548.

### COUNT VIII
### AVOIDANCE OF FRAUDULENT TRANSFERS –
### UNIFORM FRAUDULENT TRANSFER ACT AND 11 U.S.C. § 544
### (*Against Dominion US*)

72. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 71 above, as though fully set forth at length herein.

73. The Debtor received less than a reasonably equivalent value in exchange for the 2010 Transfer.

74. The 2010 Transfer was made (a) at a time when the Debtor was engaged or was about to engage in a business and transactions for which the remaining assets of the Debtor were unreasonably small in relation to the business and transactions, (b) at a time when the Debtor intended to incur, or believed or should reasonably have believed that it would incur, debts beyond its ability to pay as they became due, (c) at a time when the Debtor was insolvent or (d) with the result that the Debtor became insolvent as a result of the 2010 Transfer.

75. At all times relevant to this Complaint, there were actual creditors of the Debtor with allowable unsecured claims who could avoid the 2010 Transfer under applicable state law.

76. Dominion US did not give value to the Debtor in exchange for the 2010 Transfer and did not enter into the 2010 Transfer in good faith.

77. Accordingly, each of the Transfers should be avoided and set aside as fraudulent under 11 U.S.C. § 544(b)(1) and applicable law, including but not limited to C.R.S. §§ 38-8-105 and 106 and/or Delaware Code tit. 6, §§ 1304 and 1305.

## COUNT IX
## AVOIDANCE OF FRAUDULENT TRANSFER -
## UNIFORM FRAUDULENT TRANSFER ACT
### (*Against Dominion US*)

78. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 77 above, as though fully set forth at length herein.

79. As of the date of the 2010 Transfer, Sequoia was indebted to the Debtor in an amount not less than $1,280,385.92.

80. As of the date of the 2010 Transfer, Sequoia had approximately $16,737,187 in assets and approximately $24,828,004 in liabilities.

81. Sequoia received less than a reasonably equivalent value in exchange for the 2010 Transfer.

82. The 2010 Transfer was made (a) at a time when Sequoia was engaged or was about to engage in a business or a transactions for which the remaining assets of Sequoia were unreasonably small in relation to the business or transactions, (b) at a time when Sequoia intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, (c) at a time when Sequoia was insolvent; or (d) with the result that Sequoia became insolvent as a result of the transfer or obligation.

2003963756_1.doc

15

83. Dominion US did not give value to the Debtor in exchange for the 2010 Transfer and did not enter into the 2010 Transfer in good faith.

84. Accordingly, the 2010 Transfer should be avoided and set aside as a fraudulent transfer under C.R.S. §§ 38-8-105 and 106 and/or Delaware Code tit. 6, §§ 1304 and 1305.

## COUNT X
## FOR RECOVERY OF PROPERTY - 11 U.S.C. § 550
### (*Against Dominion US*)

85. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 84 above, as though fully set forth at length herein.

86. Plaintiff is entitled to avoid the 2010 Transfer pursuant to 11 U.S.C. §§ 544, 548, and/or applicable non-bankruptcy law.

87. Dominion US was the initial transferee of the 2010 Transfer, the intermediate or mediate transferee of the initial transferee of the 2010 Transfer, or the person for whose benefit the 2010 Transfer was made.

88. Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover from Dominion US an amount to be determined at trial that is not less than the value of the sum of the 2010 Transfer, plus interest to the date of payment and the costs of this action.

## COUNT XI
## DISALLOWANCE OF CLAIM - 11 U.S.C. § 502(D)
### (*Against Dominion US*)

89. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 88 above, as though fully set forth at length herein.

90. Dominion US is the transferee of the 2010 Transfer, which is avoidable under 11 U.S.C. §§ 544, 548 and/or applicable non-bankruptcy law and which is recoverable from Dominion US under 11 U.S.C. § 550.

91. Pursuant to 11 U.S.C. § 502(d), in the event that Dominion US is liable for any avoidable transfers, any claims held by Dominion US against the Debtor must be disallowed unless Dominion US pays the amount of the transfers and recoverable property to Plaintiff.

## RESERVATION OF RIGHTS

92. Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff might have against Dominion Canada or Dominion US, on any and all grounds, as allowed under the law or in equity.

WHEREFORE, Plaintiff requests entry of a judgment in its favor against Dominion Canada and Dominion US as follows:

(a) For the substantive consolidation of the Debtor and Sequoia Voting Systems, Inc.;

(b) For avoidance and recovery of the 2009 Transfer and the 2010 Transfer, or the value thereof;

(c) For disallowance of Dominion Canada's claims pursuant to 11 U.S.C. § 502(d) unless the amount of the judgments for avoidance of the 2009 Transfer are paid to Plaintiff;

(d) For disallowance of Dominion US's claims pursuant to 11 U.S.C. § 502(d) unless the amount of the judgments for avoidance of the 2010 Transfer are paid to Plaintiff;

(e) For pre- and post-petition interest on the amounts owed Dominion Canada and Dominion US to the full extent allowed under applicable law at the highest legal rate;

(f) For all costs under applicable law; and

(g) For such other and further relief as is just and proper.

DATED: December 7, 2012

ROTHGERBER JOHNSON & LYONS LLP

*s/ Brent R. Cohen*
Brent R. Cohen, No. 11297
Chad S. Caby, No. 30927
Kristin M. Bronson, No. 40358
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO   80202-5855
Tel:      (303) 623-9000
Fax:     (303) 623-9222
E-mail:  bcohen@rothgeber.com
            ccaby@rothgerber.com
            kbronson@rothgerber.com

*Special Counsel for Tom H. Connolly, Chapter 7 Trustee*