# **EXHIBIT B**

OFFICE COPY

JUDGE FORREST UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**13 CV 5349**

SMARTMATIC USA CORPORATION, )
SMARTMATIC INTERNATIONAL )
CORPORATION, and SMARTMATIC )
SERVICES CORPORATION )
                          )     Civ. 13-_____
        Plaintiffs, )
                          )
         -v- )
                          )
DOMINION VOTING SYSTEMS )
CORPORATION and DOMINION VOTING )
SYSTEMS, INC., )
                          )
        Defendants. )



### NOTICE OF REMOVAL

**TO THE CLERK OF THE COURT:**

    **PLEASE TAKE NOTICE** that defendants Dominion Voting Systems Corporation ("Dominion Canada") and Dominion Voting Systems, Inc. ("Dominion US") (collectively, "Dominion"), by their undersigned counsel, file this Notice of Removal, pursuant to 28 U.S.C. § 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure, removing this action, commenced by the complaint (the "New York Complaint") in this action captioned *Smartmatic USA Corporation, Smartmatic International Corporation, and Smartmatic Services Corporation v. Dominion Voting Systems Corporation and Dominion Voting Systems, Inc.*, Index No. 652308/2013 (the "New York Action"), from the Supreme Court of the State of New York, County of New York (the "New York State Court"), to the U.S. District Court for the Southern District of New York ("New York Federal Court"). The New York Federal Court has original jurisdiction over the New York Action under 28 U.S.C. § 1334(b).

1

Concurrently with the filing of this Notice of Removal, Dominion is filing a Motion to Transfer Venue of the New York Action to the U.S. District Court for the District of Colorado (the "Colorado District Court"), where, as described in more detail herein, a lawsuit identical to the New York Action (the "Colorado Action") is currently underway. The Colorado District Court has directed that certain pre-trial matters in the Colorado Action be heard in the first instance in the U.S. Bankruptcy Court for the District of Colorado (the "Colorado Bankruptcy Court," and, together with the Colorado District Court, the "Colorado Federal Courts"). Upon transfer of venue, Dominion anticipates that, to the extent that portions of the Colorado Action are properly heard in the first instance by the Colorado Bankruptcy Court, the analogous portions of the New York Action would also be heard in the first instance by the Colorado Bankruptcy Court.

The basis for this Notice of Removal, briefly stated, is this: (a) the New York Action alleges that transfers of assets by Sequoia Voting Systems, Inc. ("Sequoia") to Dominion in 2009 and 2010 were constructively fraudulent transfers, (b) Sequoia's parent and sole shareholder, SVS Holdings, Inc. ("SVS"), is a debtor in a chapter 7 bankruptcy case pending in the Colorado Bankruptcy Court, (c) the chapter 7 trustee for SVS (the "SVS Trustee") has brought the Colorado Action, also against Dominion, that also alleges that the same transfers of assets by Sequoia to Dominion in 2009 and 2010 were constructively fraudulent transfers, and (d) because the Colorado Action either subsumes and precludes, or otherwise is in conflict with, the New York Action, the New York Action falls within the bankruptcy jurisdiction of the federal courts.

In support of this Notice of Removal, Dominion further states as follows:

2

## I.   BACKGROUND[1]

### A.   Dominion's Purchase of Assets from Sequoia

1.   In 2009 and 2010, Dominion Canada and Dominion US, respectively, purchased certain assets (the "Purchased Assets") from Sequoia—a company that was, until 2007, directly owned by New York Action plaintiff Smartmatic USA Corporation ("Smartmatic USA").[2] Declaration of George W. Shuster, Jr., dated July 31, 2013 ("Shuster Decl.") Ex. A ¶¶ 12, 17, 28.

### B.   The SVS Bankruptcy

2.   On June 8, 2010, SVS filed a chapter 11 petition in the Colorado Bankruptcy Court. *See In re SVS Holdings, Inc.*, Case No. 10-24328 (Bankr. D. Colo.). SVS is the parent and sole shareholder of Sequoia, and Smartmatic USA is, according to the claim schedules filed in the SVS bankruptcy, SVS's largest creditor. *See* Shuster Decl. Ex. B.

3.   In September 2012, Smartmatic USA sought permission from the Colorado Bankruptcy Court to pursue litigation against Dominion in SVS's chapter 11 case. *See* Shuster Decl. Ex. E.[3] Specifically, Smartmatic USA asked for leave to bring federal and state law fraudulent transfer claims to avoid the sale of the Purchased Assets to Dominion. *Id.* In the alternative, Smartmatic USA asked the Colorado Bankruptcy Court to convert the SVS bankruptcy case to a chapter 7 case and appoint a chapter 7 bankruptcy trustee to administer SVS's affairs. *See* Shuster Decl. Ex. F. Smartmatic USA represented to the Colorado Bankruptcy Court that it would withdraw its request for conversion of SVS's bankruptcy case to chapter 7 if its motion for derivative standing was granted. *See id.*

---

[1]   For the purposes of this Notice of Removal, Dominion accepts the facts as alleged in the New York Complaint as true, while reserving its right to contest them at a later time.

[2]   Smartmatic USA (including its predecessor in interest, Smartmatic Corporation), Smartmatic International Corporation, and Smartmatic Services Corporation collectively are referred to herein as "Smartmatic."

[3]   In its motion for derivative standing, Smartmatic USA also sought the appointment of a chapter 11 trustee.

4.      On October 16, 2012, the Colorado Bankruptcy Court denied Smartmatic USA's request for standing and converted SVS' chapter 11 case to a case under chapter 7. *See* Shuster Decl. Ex. G.

5.      On October 17, 2012, the Colorado Bankruptcy Court appointed Tom H. Connolly as chapter 7 trustee of SVS (the "SVS Trustee"). *See* Shuster Decl. Ex. H..

6.      On November 14, 2012, the SVS Trustee sought Colorado Bankruptcy Court approval for Smartmatic USA to fund the SVS Trustee's pursuit against Dominion of substantially the same claims that Smartmatic USA had been denied derivative standing to bring on its own. *See* Shuster Decl. Ex. I. The Colorado Bankruptcy Court approved the funding arrangement on December 4, 2012. *See* Shuster Decl. Ex. J.

**C.      The Colorado Action**

7.      On December 7, 2012, the SVS Trustee, funded by Smartmatic USA, filed a complaint (the "Colorado Complaint"),[4] commencing the Colorado Action against Dominion in the Colorado Bankruptcy Court.[5] Through the Colorado Action, the SVS Trustee seeks to avoid the sale of the Purchased Assets to Dominion, on the basis that Sequoia allegedly did not receive sufficient consideration for the sale of the Purchased Assets to Dominion in 2009 or 2010.[6]

8.      Specifically, in the Colorado Complaint the SVS Trustee asserts constructive fraudulent transfer claims on three alleged statutory grounds: (1) Section 548 of the Bankruptcy

---

[4]   The Colorado Complaint is substantially identical to the form of complaint Smartmatic USA proposed to file if it had been allowed to pursue claims against Dominion. *See* Shuster Decl. Ex. E.

[5]   On December 27, 2012, Dominion moved the Colorado District Court to withdraw its reference of jurisdiction for the Colorado Action to the Colorado Bankruptcy Court, so that the Colorado Action would be determined by the Colorado District Court. *See* Shuster Decl. Ex. L. The Colorado District Court granted Dominion's withdrawal motion on June 11, 2013, but referred all pretrial matters to the Colorado Bankruptcy Court. *See* Shuster Decl. Ex. M. A jury trial of the claims in the Colorado Action will proceed in the Colorado District Court, and that trial is currently scheduled for August 2014. *See id.;* Shuster Decl. Ex. N.

[6]   Dominion has raised legal defenses to the Colorado Action and has moved to dismiss the Colorado Complaint on the basis of some of these defenses; its motion is pending in the Colorado Bankruptcy Court. *See* Shuster Decl. Ex. O. Nothing herein shall be construed as a waiver of any such defense by Dominion, and Dominion expressly reserves all such defenses, including those set forth in its motion to dismiss.

4

Code (the "Section 548 Claims"), (2) Section 544(b) of the Bankruptcy Code (the "Section 544 Claims," and together with the Section 548 Claims, the "Federal Claims"), and (3) Delaware and Colorado law (the "State Law Claims"). *See* Shuster Decl. Ex. K.

9.     The SVS Trustee's Federal Claims and State Law Claims are based on mutually exclusive theories.  The Federal Claims can only be brought by the trustee of a debtor that, when the alleged fraudulent transfers were made, owned the assets in question.  Because Sequoia, not SVS, transferred the Purchased Assets to Dominion, the SVS Trustee included in the Colorado Complaint a claim for "substantive consolidation" of SVS with Sequoia.  Substantive consolidation is a bankruptcy concept that would, if successful, judicially merge SVS and Sequoia to create one bankrupt entity with all assets and liabilities of both SVS and Sequoia. Substantive consolidation is the vehicle by which the SVS Trustee seeks standing to pursue the Federal Claims against Dominion for assets sold by Sequoia—a non-debtor.[7]  Without substantive consolidation, the Federal Claims cannot survive.

10.     The State Law claims, on the other hand, do not rely on a theory that SVS can be deemed the owner of the Purchased Assets through substantive consolidation.  Rather, they rely exclusively on the SVS Trustee's assertion that SVS is a creditor of Sequoia.  Because an entity cannot be a creditor of itself, the State Law Claims can only exist if there is no substantive consolidation and SVS and Sequoia remain separate.

11.     The SVS Trustee continues to pursue these alternative, mutually exclusive paths in the Colorado Action.  Removal of the New York Action is appropriate, as described below, whether or not the SVS Trustee prevails on substantive consolidation.

---

[7]     Dominion asserts that even if there were substantive consolidation, the SVS Trustee still cannot prevail on the Federal Claims related to assets owned by Sequoia at the time of the transfers.

**D.    The New York Action**

12.    On June 28, 2013, Smartmatic, while continuing to fund the SVS Trustee's pursuit of fraudulent transfer claims against Dominion in the Colorado Action, commenced the New York Action to assert nearly identical fraudulent transfer claims against Dominion. Smartmatic brings its claims in the New York Action under New York fraudulent conveyance law and as a purported creditor of Sequoia (the "New York Claims") and seeks to avoid the sale of the Purchased Assets by Sequoia to Dominion—just as the SVS Trustee is seeking in the Colorado Action. Thus, the transfers Smartmatic is seeking to avoid and recover in the New York Action are the exact same transfers the SVS Trustee is seeking to avoid in the Colorado Action, which is being funded by Smartmatic USA.

**E.    The Colorado Action and the New York Action Assert Effectively the Same Claims**

13.    Smartmatic's theory as to why the sales of the Purchased Assets are avoidable through the New York Action is the same legal theory put forth by the SVS Trustee in the Colorado Action—and also the same legal theory initially articulated by Smartmatic USA in its failed motion for authority to commence litigation against Dominion. Specifically, both the SVS Trustee (in the Colorado Action) and Smartmatic (in the New York Action) assert that Sequoia received insufficient consideration in exchange for the Purchased Assets. Accordingly, the major issue that will be in dispute in both actions is the value of the Purchased Assets at the time they were sold. The only substantive difference between the prior claims asserted by the SVS Trustee in the Colorado Action and the claims asserted by Smartmatic in the New York Action is that in the Colorado Action, the SVS Trustee (funded by Smartmatic USA) relies on federal, Colorado, and Delaware fraudulent transfer statutes, while in the New York Action, Smartmatic relies on New York and Delaware fraudulent transfer statutes. There do not appear to be any

6

material differences among the various fraudulent transfer statutes relied upon by the SVS Trustee, as financed by Smartmatic USA, on the one hand, and Smartmatic, in its own name, on the other hand.

## II.  GROUNDS FOR REMOVAL

14.  Removal is appropriate under Section 1452(a) of the Judicial Code, which provides that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a).  Under Section 1334, the New York Federal Court has jurisdiction to hear "all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

15.  Removal is appropriate here because the claims in the New York Action (1) "arise under" the Bankruptcy Code and "arise in" the SVS bankruptcy case and (2) "relate to" the SVS bankruptcy case.  First, claims that "arise under" the Bankruptcy Code or "arise in" a bankruptcy case are referred to as "core proceedings" 28 U.S.C. § 157(b)(1); *see In re DPH Holdings Corp.*, 448 F. App'x 134, 136 (2d Cir. 2011) ("A core proceeding is one that arises under [the Bankruptcy Code] or arises in a case under [the Bankruptcy Code].").  The claims in the New York Action are "core proceedings" because they are subsumed within, or at least precluded by, the SVS Trustee's Section 544 Claims.  Second, the claims in the New York Action "relate to" the SVS bankruptcy case, because they either are barred by, or are at least in direct competition with, the SVS Trustee's claims in the Colorado Action and therefore will necessarily have an effect on the administration of the SVS Bankruptcy estate.

7

### A. "ARISING UNDER" OR "ARISING IN" JURISDICTION

16.    If the SVS Trustee prevails on its substantive consolidation claims in the Colorado Action, then black-letter law would vest in the SVS Trustee the exclusive right to bring fraudulent transfer actions related to assets of Sequoia, and the claims in the New York Action would be incorporated in and/or precluded by the Federal Claims in the Colorado Action.

17.    In the Colorado Action, the SVS Trustee asserts the Federal Claims on behalf of all Sequoia creditors—including, if Smartmatic's allegations in the New York Complaint are true, Smartmatic. Outside of bankruptcy, individual creditors can sue transferees for fraudulent transfers under state law. But inside bankruptcy, Section 544 essentially aggregates any such state-law causes of action and, by statute, makes them derivative claims of the bankruptcy estate. *See Lippe v. Bairnco Corp.*, 225 B.R. 846, 852 (S.D.N.Y. 1998).

18.    If the Colorado Federal Courts were to accept the substantive consolidation theory and permit the SVS Trustee to pursue the Section 544 Claims related to Sequoia assets, then the right of the SVS Trustee to do so would be exclusive of the rights of any individual creditors of Sequoia to bring such actions. *In re Berg*, 376 B.R. 303, 311 (Bankr. D. Kan. 2007 ("When there is at least one unsecured creditor holding an allowed claim and avoidance rights, the Trustee is vested with the *exclusive right* to pursue that claim.") (emphasis added); *In re Tessmer*, 329 B.R. 776, 780 (Bankr. M.D. Ga. 2005) ("Once the Trustee acts under § 544(b), the rights of all other parties to bring a suit based on the same transaction are fully and permanently cut off . . . . [The individual creditor] is permanently enjoined from taking any steps to further prosecute her state law fraudulent conveyance claims against the [transferees].").  As a result, if it is determined in the Colorado Action that, through substantive consolidation of SVS and Sequoia, the SVS Trustee has standing to bring fraudulent transfer claims related to Sequoia

8

assets, then Smartmatic's claims in the New York Action will necessarily be subsumed into, and/or precluded by, the Section 544 Claims already asserted by the SVS Trustee in the Colorado Action.

19. The Section 544(b) Claims are unquestionably "core" claims, as they are codified in the Bankruptcy Code and are only available to a bankruptcy debtor or trustee. *See* 28 U.S.C. § 157(b)(2)(H); *Official Comm. of Asbestos Claimants of G-I Holdings, Inc. v. Heyman,* 306 B.R. 746, 749 (S.D.N.Y. 2004) (holding that a fraudulent transfer claim brought under Section 544(b) of the Bankruptcy Code is a core proceeding); *Archangel Diamond Corp. v. Oao Lukoil (In re Archangel Diamond Corp),* Adv. No. 09-1755, 2010 WL 4386808, at *5 (Bankr. D. Colo. Oct. 28, 2010) ("Proceedings arising under the Bankruptcy Code assert causes of action created by the Code, such as avoidance actions under 11 U.S.C. § 544 . . . .").

20. Accordingly, under the legal theory underlying the Colorado Action, the claims asserted in the New York Action (which are under that Colorado theory subsumed within the "core" Section 544(b) claims) necessarily fall within the New York Federal Court's jurisdiction pursuant to 28 U.S.C. § 1334(b).[8]

**B. "RELATED TO" JURISDICTION**

21. Dominion has challenged the SVS Trustee's attempt to substantively consolidate SVS and Sequoia in the Colorado Action, and does not believe substantive consolidation is lawful or appropriate. But whether or not the Colorado Federal Courts agree to substantively consolidate SVS and Sequoia, Smartmatic's claims in the New York Action are nevertheless

---

[8] Dominion does not consent to the entry of final judgments in the New York Action by a bankruptcy court. If and to the extent the New York Action is referred to a bankruptcy court, Dominion reserves the right to seek withdrawal of the reference of the New York Action, or of any issue in the New York Action, including on the bases set forth in its motion to withdraw the reference of the Colorado Action, as well as any additional bases appropriate to the New York Action. *See, supra* n.5; *see Stern v. Marshall,* 131 S. Ct. 2594 (2011); Fed. R. Bankr. P. 9027. In addition, to the extent necessary to preserve the right to a jury trial in the New York Action, and without waiving any defenses, Dominion hereby asserts its right to a jury trial in the New York Action, in accordance with Fed. R. Civ. P. 38(b)(1), and does not consent to the conduct of a jury trial by any bankruptcy court.

9

"related to" the SVS bankruptcy case, and, on that independent basis, removal of the New York Action is also proper.

22.     A proceeding is "related to" a bankruptcy—and thus federal jurisdiction exists—when "the outcome of that proceeding could conceivably have any effect on the estate being administered" in the bankruptcy case. *In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir. 1984); *see also In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir.1992) (citing *Pacor* with approval); *In re WorldCom, Inc. Secs. Litig.*, 293 B.R. 308, 317 (S.D.N.Y. 2003) (noting that "[t]he dominant standard for 'related to' jurisdiction is that set forth by the Third Circuit in *In re Pacor, Inc.*").

23.     The courts have read the "any conceivable effect" test broadly, finding that jurisdiction exists over lawsuits in which the debtor is neither a plaintiff nor a defendant, but the lawsuit nevertheless could conceivably affect the debtor's bankruptcy estate. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.5 (1995) ("Proceedings 'related to' the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate.").

24.     If the SVS Trustee were to prevail on his substantive consolidation theory, the New York Federal Court would have "related to" jurisdiction over the New York Action.  The New York Action would be "related to" the SVS bankruptcy case, because, as described above, upon consolidation, the claims asserted by Smartmatic would belong exclusively to the SVS Trustee. *See In re Moore*, 608 F.3d 253, 261 (5th Cir. 2010) ("The right to recoup a fraudulent conveyance, which outside of bankruptcy may be invoked by a creditor, is property of the estate that only a trustee or debtor in possession may pursue once a bankruptcy is under way.") (internal citation omitted).  Thus, the New York Action would be "related to" the SVS

10

Bankruptcy in the most intimate of ways, because it would be property of the SVS bankruptcy estate. *See Celotex*, 514 U.S. at 308 n.5.  In addition, any attempt by Smartmatic to pursue the New York Action notwithstanding the SVS Trustee's exclusive right to do so would be an attempt by Smartmatic to obtain property of the SVS bankruptcy estate, would violate bankruptcy's "automatic stay" under 11 U.S.C. § 362, and would necessarily affect the administration of the SVS Bankruptcy case. *See In re Zwirn*, 362 B.R. 536, 539 (Bankr. S.D. Fla. 2007) ("[A]ll courts appear to agree that commencing a bankruptcy case stays any state court fraudulent conveyance actions by a creditor. . . .").

25.     But even if SVS and Sequoia are not consolidated, Smartmatic's claims in the New York Action would meet the test of having at least a "conceivable effect" on the SVS bankruptcy estate.  As noted above, if the SVS Trustee's substantive consolidation claim fails, he will be left with, at most, the State Law Claims.

26.     In the New York Action, Smartmatic's claims against Dominion are nearly identical to the SVS Trustee's State Law claims in the Colorado Action.  As to these claims, the SVS Trustee and Smartmatic are two alleged creditors of Sequoia, each suing the same defendants—Dominion Canada and Dominion US—and each seeking to recover the same assets—the Purchased Assets.  The only difference is that Smartmatic can only recover, if at all, an amount up to the value of any valid claims it has against Sequoia, and that the SVS Trustee can only recover, if at all, up to the value of any valid claims of SVS against Sequoia.  Those potential recoveries would also be collectively limited to any amount by which Dominion is adjudicated to have "underpaid" for the Purchased Assets, and Dominion would only be subject to a single satisfaction for judgments in any such amount.  Accordingly, the New York Action will, if permitted to proceed, place Smartmatic and the SVS Trustee in direct competition against

ActiveUS 113436728v.1

one another for a limited potential recovery, and, by restricting the recovery of the SVS Trustee, may therefore affect the amount potentially available for distribution to creditors of SVS through the SVS bankruptcy case. Additionally, any adjudication of liability of Dominion, or lack thereof, in the New York Action could be inconsistent with (and would certainly be a duplication of) any adjudication of liability of Dominion on the State Law Claims in the Colorado Action.

27.    The adverse effects such a scenario would pose for the SVS bankruptcy estate are more than sufficient to satisfy the "any conceivable effects" test. *See, e.g., In re WorldCom, Inc. Secs. Litig.*, 293 B.R. at 308 (noting that "the potential alteration of the liabilities of the estate and change in the amount available for distribution to other creditors is sufficient to find that litigation among non-debtors is 'related to' the bankruptcy proceeding"); *American Int'l Specialty Lines Ins. Co. v. Towers Fin. Corp.*, 198 B.R. 55, 58 (S.D.N.Y. 1996).

28.    For these reasons, the claims asserted by Smartmatic in the New York Action are, regardless of the alternative theory ultimately pursued by the SVS Trustee, at least "related to" the SVS bankruptcy case and fall within the New York Federal Court's jurisdiction under 28 U.S.C. § 1334(b).

### III.    TIMELINESS

29.    In accordance with Rule 9027 of the Federal Rules of Bankruptcy Procedure, Dominion has timely filed this Notice of Removal within 30 days after receipt, through service or otherwise, of the New York Complaint and a summons (the "New York Summons").[9]

30.    Pursuant to Rule 9027 of the Federal Rules of Bankruptcy Procedures, true and correct copies of the New York Complaint and New York Summons are attached to this Notice of Removal as Exhibits A and B, respectively.

---

[9]    Smartmatic purported to serve the New York Complaint and New York Summons on Dominion through Dominion's agent for service of process on July 1, 2013.

12

31.     Dominion will promptly serve a copy of this Notice of Removal on counsel for

Smartmatic and file a copy of this Notice of Removal with the Clerk of the New York State

Court in accordance with the terms of Rule 9027 of the Federal Rules of Bankruptcy Procedure.

A true and correct copy of the Certificate of Service for this Notice of Removal is attached to this

Notice of Removal as Exhibit C.

Dated:  July 31, 2013

WILMER CUTLER PICKERING
  HALE AND DORR LLP

By: _____
George W. Shuster, Jr.
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel:  (212) 230-8800

Richard A. Johnston
60 State Street
Boston, MA 02109
Tel:  (617) 526-6282

*Counsel for Defendants Dominion Voting
Systems Corporation and Dominion Voting
Systems, Inc.*

# Exhibit A

Complaint (N.Y. Sup. Ct.)

FILED: NEW YORK COUNTY CLERK 06/28/2013

NYSCEF DOC. NO. 2

INDEX NO. 652308/2013

RECEIVED NYSCEF: 06/28/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------X
                                         :

SMARTMATIC USA CORPORATION,           :
SMARTMATIC INTERNATIONAL
CORPORATION and SMARTMATIC SERVICES :
CORPORATION,                                    :     Index No. _____

                               Plaintiffs,      :     **COMPLAINT**
                                                 :

     – against –                            :

DOMINION VOTING SYSTEMS            :
CORPORATION and DOMINION VOTING
SYSTEMS. INC.,                            :

                               Defendants.
-------------------------------------------------------------X

        For their Complaint against Dominion Voting Systems Corporation ("Dominion

Canada") and Dominion Voting Systems, Inc. ("Dominion US" and together with

Dominion Canada, each a "Defendant" and collectively, "Dominion" or the

"Defendants"), Smartmatic USA Corporation ("Smartmatic USA"), Smartmatic

International Corporation ("Smartmatic International") and Smartmatic Services

Corporation ("Smartmatic Services" and together with Smartmatic USA and Smartmatic

International, each a "Plaintiff" and collectively. "Smartmatic" or the "Plaintiffs"), allege

as follows:

### NATURE OF THE ACTION

        1.     This is an action by Smartmatic USA, Smartmatic International and

Smartmatic Services, each creditors of Sequoia Voting Systems, Inc. ("Sequoia"), to

avoid and recover fraudulent transfers made by Sequoia to the Defendants in 2009 and 2010.

2.     On information and belief, Sequoia was grossly underpaid for the assets it conveyed to the Defendants in 2009 and 2010, at a time when Sequoia was insolvent. Accordingly, Plaintiffs bring this action for fraudulent transfer under applicable law seeking avoidance of the fraudulent transfers and damages.

## PARTIES

3.     Plaintiff Smartmatic USA is a corporation formed under the laws of the State of Delaware with its principal place of business in Boca Raton, Florida. Smartmatic USA is the successor-in-interest to Smartmatic Corporation ("Smartmatic Corp.").

4.     Plaintiff Smartmatic International is a corporation formed under the laws of Barbados with its principal place of business in St. Michael, Barbados.

5.     Plaintiff Smartmatic Services is a corporation formed under the laws of Barbados with its principal place of business in St. Michael, Barbados.

6.     Defendant Dominion Canada is a corporation formed under the laws of Toronto, Ontario with its principal place of business in Toronto, Ontario, Canada. This Court has personal jurisdiction over Dominion Canada because it is registered as a foreign corporation in the State of New York and has appointed a registered agent to receive service of process in New York County, New York.

7.     Dominion US is a corporation formed under the laws of Delaware with its principal place of business in Denver, Colorado. This Court has personal jurisdiction over Dominion US because it is registered as a foreign corporation in the State of New

York and has appointed a registered agent to receive service of process in New York County, New York.

## JURISDICTION AND VENUE

8.     The Supreme Court of the State of New York has jurisdiction over this proceeding pursuant to New York Civil Practice Law and Rule ("CPLR") §§ 302 and 311 because, on information and belief, Defendants transact business in New York and Defendants have each appointed an authorized agent to receive service in New York State.

9.     Venue in New York County is proper pursuant to CPLR § 503(a) because none of the parties currently resides in the state, and therefore venue is proper in any county designated by Plaintiffs.

## STATEMENT OF FACTS

**A.     Background on Sequoia Voting Systems, Inc.**

10.     Sequoia is a corporation formed under the laws of Delaware with its principal place of business in Denver, Colorado.

11.     Sequoia was incorporated on December 20, 1990 and was principally engaged in providing electronic voting systems, election technologies, and related support services to state and local governments in the United States. Among other things, Sequoia provided voting systems and related services to multiple counties in New York State.

12.     Smartmatic Corp., as predecessor-in-interest to Smartmatic USA, was the former parent of Sequoia. In connection with the Smartmatic Corp.'s divestiture of

Sequoia in 2007, Smartmatic Corp. retained all tax benefits of Sequoia accruing on or prior to November 5, 2007. At all times relevant to this Complaint, including at the time of each of the 2009 Transfer and the 2010 Transfer (as defined below), Sequoia was indebted to Smartmatic USA, as successor to Smartmatic Corp., in the aggregate amount of not less than $1,314,636.00 for such tax benefits.

13.    Smartmatic International provided goods and services to Sequoia for which it has not been paid in full. At all times relevant to this Complaint, including at the time of each of the 2009 Transfer and the 2010 Transfer (as defined below), Sequoia was indebted to Smartmatic International for such goods and services in an amount not less than $45,342.09. On information and belief, the total amount of the debt owed by Sequoia to Smartmatic International, at all times relevant to this Complaint, may be $1,110,775.09.

14.    Smartmatic Services provided goods and services to Sequoia for which it has not been paid in full. At all times relevant to this Complaint, including at the time of each of the 2009 Transfer and the 2010 Transfer (as defined below), Sequoia was indebted to Smartmatic Services in the aggregate amount of not less than $199,997.03.

**B.    The 2009 Asset Purchase Agreement**

15.    In 2009, Sequoia began experiencing cash flow challenges, including difficulties in meeting payroll. This led Sequoia management to investigate potential purchasers or investors in Sequoia.

16.    Sequoia and the State of New York Executive Department, Office of General Services were parties to Comptroller's Contract No. PC63813 for Voting

Systems and Related Services and Ballot Marking or Other Voting Devices Accessible to Individuals with Disabilities (as amended from time to time, the "NY Contract"). Pursuant to the NY Contract, for the period from January 23, 2008 through January 31, 2013, counties in New York could purchase electronic voting machines and other related goods and services from Sequoia through a requisition process under the terms and conditions set forth in the NY Contract.

17.    In April 2009, Sequoia approached Dominion Canada about a possible transaction involving the NY Contract.  Sequoia and Dominion Canada entered into an Asset Purchase Agreement, dated July 15, 2009 (the "2009 APA"), pursuant to which Dominion Canada acquired the NY Contract and Sequoia's rights under a related lease. In exchange, Dominion Canada agreed to pay Sequoia an aggregate of $2.366 million in cash and a percentage of any Qualified NYS Order or NYC Order (each as defined in the 2009 APA) in 2009 or 2010 (the "2009 Transfer").

18.    On information and belief, numerous NY counties had already entered into individual contracts and/or placed orders with Sequoia under the umbrella of the NY Contract, and Sequoia had started to receive significant revenue for the sale of goods and the provisions of services under the NY Contract at the time of the 2009 Transfer.

19.    On information and belief, the expected profit to Sequoia under the NY Contract would have been as high as $30 to $40 million for the sale of voting equipment plus substantial additional revenue for warranty and support services and ancillary products.

20. On information and belief, Dominion Canada paid Sequoia the $2.366 million in cash consideration under the 2009 APA, but there were no Qualified NYS Orders or NYC Orders so no additional consideration was paid to Sequoia.

21. On information and belief, the NY Contract and the individual contracts with New York counties entered into under the NY Contract constituted some of Sequoia's most valuable and most profitable assets.

22. Sequoia neither marketed the NY Contract to any party other than Dominion Canada nor shopped the offer from Dominion Canada to any other party. On information and belief, the assets sold under the 2009 APA were worth more than the consideration paid by Dominion Canada.

23. On information and belief, at the time of the 2009 Transfer, Sequoia had assets of approximately $56.3 million and liabilities of approximately $73.3 million. Accordingly, Sequoia was insolvent at the time of the 2009 Transfer.

## C.   The 2010 Asset Purchase Agreement

24. The 2009 APA did not resolve Sequoia's cash flow difficulties, and within months after the closing of the 2009 APA, Sequoia began investigating the possibility of locating a potential purchaser.

25. In January 2010, Sequoia and Dominion opened discussions on a larger transaction between the two, and in February 2010, Sequoia and Dominion exchanged term sheets describing a potential transaction.

26. In term sheets circulated on or about February 11, 16, and 18, 2010, the parties discussed a purchase by Dominion of 90-98% of the equity interests in Sequoia

for a price to be determined. In connection with this deal, Dominion would enter into a

one-year employment contract with Jack Blaine, Sequoia's chief executive officer, at an

annual salary of $120,000 plus $30,000 in other benefits.

27.     In a March 5, 2010 letter of intent, Dominion US proposed to purchase

substantially all of the assets of Sequoia (excluding accounts receivable, cash balances,

and tax assets) for an aggregate purchase price of $9.5 million, consisting of $5 million in

cash plus up to $4.5 million in contingent payments.

28.     On June 4, 2010, Sequoia and Dominion US entered into an Asset Purchase

Agreement (the "2010 APA"). Under the 2010 APA, Dominion US purchased from

Sequoia substantially all of the assets of Sequoia (again, excluding accounts receivable,

cash balances, and tax assets) for an aggregate of $7.5 million, consisting of

approximately $3 million in cash plus up to an aggregate of $4.5 million in contingent

payments (the "2010 Transfer").

29.     At approximately the same time, Dominion Canada and Blaine entered into

an employment agreement on substantially better terms than provided in the March 5,

2010 letter of intent. The Employment Agreement was for three years and provided

Blaine with an annual salary of $350,000, annual living expenses of more than $50,000, a

percentage of Dominion's revenue from non-US business generated by Blaine, together

with a one-year salary and benefits severance package if he were terminated before the

end of the three year term of the agreement.

30.     During the time of the negotiations with Dominion, Sequoia received at

least one offer from a prominent company in the elections industry to purchase Sequoia's

assets and made an offer to another prominent company. Though Sequoia did not pursue these offers, Plaintiffs believe that if Sequoia had pursued such offers, the competition for Sequoia's assets would have provided a safeguard against a fire sale of Sequoia's assets and would have resulted in a higher purchase price, including a higher guaranteed cash component of the purchase price. On information and belief, some Sequoia management preferred one of these third-party offers to a sale of Sequoia's assets to Dominion.

31.     Upon information and belief, Sequoia has received the cash consideration from Dominion US under the 2010 APA but none of the contingent payments. It is not expected that the contingent payments will be paid under the terms of the 2010 APA.

32.     Setting aside the $4.5 million contingent payments proposed by Dominion (which Plaintiffs understand were unlikely to ever be paid), Sequoia sold substantially all of its assets to Dominion US for $3 million, *i.e.*, $2 million less than the amount originally proposed by Dominion US and, upon information and belief, substantially less than a competing offer received from a third party. In contrast, the employment agreement with Blaine, who was one of Sequoia's principal negotiators on the 2010 APA, improved substantially: salary from $120,000 to $350,000; annual benefits of $30,000 to more than $50,000; a one-year employment term to a three-year employment term; and the introduction of a one-year severance package.

33.     On information and belief, at the time of the 2010 Transfer, Sequoia had assets of approximately $16.7 million and liabilities of approximately $24.8 million. Accordingly, Sequoia was insolvent at the time of the 2010 Transfer.

## COUNT I
## FRAUDULENT TRANSFER
### *(Against Dominion Canada)*

34.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 33 above, as though fully set forth at length herein.

35.     Sequoia received less than a reasonably equivalent value and less than fair consideration in exchange for the 2009 Transfer.

36.     The 2009 Transfer was made (a) at a time when Sequoia was engaged or was about to engage in business activities and transactions for which the remaining assets of Sequoia were unreasonably small in relation to the business and transactions, (b) at a time when Sequoia intended to incur, or believed or should reasonably have believed that it would incur, debts beyond its ability to pay as they became due, (c) at a time when Sequoia was insolvent and/or (d) with the result that Sequoia became insolvent as a result of the 2009 Transfer.

37.     At the time of the 2009 Transfer, Smartmatic International and Smartmatic Services were creditors of Sequoia.

38.     Dominion Canada did not give reasonably equivalent value or fair consideration to Sequoia in exchange for the 2009 Transfer and did not enter into the 2009 Transfer in good faith.

39.     Accordingly, the 2009 Transfer should be avoided and set aside as fraudulent under applicable law, including but not limited to N.Y. Debt. & Cred. Law §§ 273, 274 and 275; C.R.S. §§ 38-8-105 and 106; and/or Delaware Code tit. 6. §§ 1304 and 1305.

## COUNT II
## FRAUDULENT TRANSFER
### (Against Dominion US)

40.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 39 above, as though fully set forth at length herein.

41.     Sequoia received less than a reasonably equivalent value and less than fair consideration in exchange for the 2010 Transfer.

42.     The 2010 Transfer was made (a) at a time when Sequoia was engaged or was about to engage in business activities and transactions for which the remaining assets of Sequoia were unreasonably small in relation to the business and transactions, (b) at a time when Sequoia intended to incur, or believed or should reasonably have believed that it would incur, debts beyond its ability to pay as they became due, (c) at a time when Sequoia was insolvent and/or (d) with the result that Sequoia became insolvent as a result of the 2010 Transfer.

43.     At the time of the 2010 Transfer, Smartmatic International and Smartmatic Services were creditors of Sequoia.

44.     Dominion US did not give reasonably equivalent value or fair consideration to Sequoia in exchange for the 2010 Transfer and did not enter into the 2010 Transfer in good faith.

45.     Accordingly, the 2010 Transfer should be avoided and set aside as fraudulent under applicable law, including but not limited to N.Y. Debt. & Cred. Law §§ 273, 274 and 275; C.R.S. §§ 38-8-105 and 106 and/or Delaware Code tit. 6. §§ 1304 and 1305.

WHEREFORE, Plaintiffs request entry of a judgment in their favor against Defendants as follows:

(a) For avoidance and recovery of the 2009 Transfer and the 2010 Transfer, or the value thereof;

(b) For interest on the amounts owed by Defendants to the full extent allowed under applicable law at the highest legal rate;

(c) For all attorneys' fees and costs under applicable law; and

(d) For such other and further relief as is just and proper.

Dated: New York, New York
June 28, 2013

**HOGAN LOVELLS US LLP**

By: _____

Ira S. Greene
Khang V. Tran
David R. Michaeli
875 Third Avenue
New York, NY 10022
Tel: (212) 918-3000
Fax: (212) 918-3100
Email: Ira.Greene@hoganlovells.com
       Khang.Tran@hoganlovells.com
       David.Michaeli@hoganlovells.com

*Counsel for Smartmatic USA Corporation,*
*Smartmatic International Corporation and*
*Smartmatic Services Corporation*

# **Exhibit B**

Summons (N.Y. Sup. Ct.)

FILED: NEW YORK COUNTY CLERK 06/28/2013

NYSCEF DOC. NO. 1

INDEX NO. 652308/2013

RECEIVED NYSCEF: 06/28/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------X
                                                        :
SMARTMATIC USA CORPORATION,                             :
SMARTMATIC INTERNATIONAL                                :
CORPORATION and SMARTMATIC SERVICES                     :
CORPORATION,                                            :    Index No. _____
                                                        :
                              Plaintiffs,               :    **SUMMONS**
                                                        :
           – against –                                  :
                                                        :
DOMINION VOTING SYSTEMS                                 :
CORPORATION and DOMINION VOTING                         :
SYSTEMS, INC.,                                          :
                                                        :
                              Defendants.               :
--------------------------------------------------------X


TO:    DOMINION VOTING SYSTEMS CORPORATION
       C/O CT Corporation System
       111 Eighth Avenue
       New York, New York 10011


              -and-

       DOMINION VOTING SYSTEMS, INC.
       C/O CT Corporation System
       111 Eighth Avenue
       New York, New York 10011

       **YOU ARE HEREBY SUMMONED** and required to answer the complaint in this action

and to serve a copy of your answer upon the plaintiffs' attorneys within twenty (20) days after

service of this summons, exclusive of the date of service, or within thirty (30) days after service

is complete if this summons is not personally delivered to you within the State of New York.  In

NY - 938124/000092 - 2245632.v1

case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Plaintiff designates New York County as the place of trial. The basis of venue is pursuant to Section 503 of the New York Civil Practice Law and Rules as set forth in paragraph eighteen of the complaint.

Dated:    New York, New York
          June 28, 2013

                        **HOGAN LOVELLS US LLP**

                    By: _____
                    Ira S. Greene
                    Khang V. Tran
                    David R. Michaeli
                    875 Third Avenue
                    New York, NY 10022
                    Tel:   (212) 918-3000
                    Fax:  (212) 918-3100
                    Email:  Ira.Greene@hoganlovells.com
                                Khang.Tran@hoganlovells.com
                                David.Michaeli@hoganlovells.com

                    *Counsel for Smartmatic USA Corporation,*
                    *Smartmatic International Corporation and*
                    *Smartmatic Services Corporation*

Case 1:13-cv-08349-RBF Document 1-2 Filed 08/30/13 Page 30 of 32

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

SMARTMATIC USA CORPORATION, et al.,

Index No.: 652308/2013

**Plaintiff**

- against -

DOMINION VOTING SYSTEMS CORPORATION and DOMINION VOTING
SYSTEMS, INC.,

**Defendant**

## AFFIDAVIT OF SERVICE

State of New York }
County of New York } ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in Rye Brook, New York

That on **7/1/2013** at **2:26 PM** at **111 Eighth Avenue, 13th Fl., New York, NY 10011**

deponent served a(n) **Notice of Commencement of Action Subject to Mandatory Electronic Filing, Summons and Complaint**

on **Dominion Voting Systems, Inc. c/o CT Corporation System**, a domestic corporation,

by delivering thereat a true copy of each to **Mara Velasco** personally,

deponent knew said corporation so served to be the corporation described in said documents as said defendant and knew said individual to be **Authorized Agent** thereof.

Description of Person Served:
Gender : Female
Skin : Brown
Hair : Brown
Age : 36 - 50 Yrs.
Height : 5' 4" - 5' 8"
Weight :131-160 Lbs.
Other : Glasses

Sworn to before me this
2nd day of July, 2013

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2015

Nicholas DiCanio
License No.1422308

# **Exhibit C**

Certificate of Service

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SMARTMATIC USA CORPORATION, SMARTMATIC INTERNATIONAL CORPORATION, and SMARTMATIC SERVICES CORPORATION | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| -v- | ) ) |
| DOMINION VOTING SYSTEMS CORPORATION and DOMINION VOTING SYSTEMS, INC., | ) ) ) ) |
| Defendants. | ) ) ) |

Civ. 13-_____

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 31st day of July, 2013, a true and correct copy of the **NOTICE OF REMOVAL** was filed and served by U.S. mail, postage prepaid as follows:

Ira S. Greene
Khang V. Tran
David R. Michaeli
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022

Dated: New York, New York
July 31, 2013

George W. Shuster, Jr.
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8800

*Counsel for Defendants Dominion Voting Systems Corporation and Dominion Voting Systems, Inc.*

ActiveUS 113440097v.1