# **EXHIBIT C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

SMARTMATIC USA CORPORATION,
SMARTMATIC INTERNATIONAL
CORPORATION, and SMARTMATIC
SERVICES CORPORATION

              Plaintiffs,

              -v-

DOMINION VOTING SYSTEMS
CORPORATION and DOMINION VOTING
SYSTEMS, INC.,

              Defendants.

_____

Civ. 13-05349 (KBF)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DOMINION VOTING
SYSTEMS CORPORATION AND DOMINION VOTING SYSTEMS, INC.
TO DISMISS THE COMPLAINT, OR, IN THE ALTERNATIVE,
<u>TO STAY THIS ACTION</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT ....................................... 1

STATEMENT OF FACTS .................................................................................................... 3

     A.    Dominion's Purchase of Assets from Sequoia ........................................................ 3

     B.    The SVS Bankruptcy and Smartmatic's Involvement ............................................ 4

     C.    The Colorado Action .............................................................................................. 6

     D.    The New York Action .............................................................................................. 7

ARGUMENT .................................................................................................................... 8

I.    UNDER THE CENTRAL THEORY IN THE Smartmatic-funded
    COLORADO ACTION, THE SVS TRUSTEE—AND NOT
    SMARTMATIC—IS THE ONLY PERSON WHO CAN PURSUE
    FRAUDULENT TRANSFER CLAIMS AGAINST DOMINION
    REGARDING THE PURCHASED ASSETS ................................................................. 8

     A.    The SVS Trustee's Exclusive Standing to Bring State Law Fraudulent
        Transfer Claims Under Section 544(b) of the Bankruptcy Code
        Deprives Smartmatic of Standing to Bring the New York Claims ......................... 9

     B.    The Bankruptcy Code's Automatic Stay Also Precludes Smartmatic's
        Standing to Bring the New York Claims ............................................................... 13

II.    SMARTMATIC'S NEW YORK CLAIMS MUST BE DISMISSED
    BECAUSE SMARTMATIC FAILS TO ALLEGE ANY CURRENT, VALID,
    AND ENFORCEABLE CLAIMS AGAINST SEQUOIA ................................................ 15

III.    IF THE COURT DOES NOT TRANSFER THE NEW YORK ACTION OR
    DISMISS THE NEW YORK COMPLAINT AT THIS STAGE, THE COURT
    SHOULD STAY THE NEW YORK ACTION PENDING RESOLUTION OF
    THE substantive consolidation CLAIM IN THE COLORADO ACTION ...................... 18

CONCLUSION ................................................................................................................ 22

## TABLE OF AUTHORITIES

<u>Cases</u>

*Allard v. DeLorean*,
    884 F.2d 464 (9th Cir. 1989) ............................................................................... 16

*Amer. Shipping Line, Inc. v. Massan Shipping Indus.*,
    885 F. Supp. 499 (S.D.N.Y. 1995) ...................................................................... 19

*AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*,
    117 B.R. 789 (Bankr. S.D.N.Y. 1990) ............................................................... 15

*Bartang Bank & Trust Co. v. Caiola*,
    04 CIV. 2402 (DAB), 2006 WL 2708453 (S.D.N.Y. Sept. 18, 2006) ................. 2

*Best Mfg., Inc. v. White Plains Coat & Apron Co. (In re Daniele Laundries, Inc.)*,
    40 B.R. 404 (Bankr. S.D.N.Y. 1984) ................................................................. 11

*Burns v. Grupo Mexico S.A. de C.V.*,
    No. 07 Civ. 3496 (WHP), 2007 WL 4046762 (S.D.N.Y. Nov. 16, 2007) ........ 10

*Cadle Co. v. Mims (In re Moore)*,
    608 F.3d 253 (5th Cir. 2010) .............................................................................. 10

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. EPA*,
    630 F. Supp. 2d 295 (S.D.N.Y. 2009) ............................................................... 22

*Delgado Oil Co., Inc. v. Torres*,
    785 F.2d 857 (10th Cir. 1986) ........................................................................... 10

*Estate of Heiser v. Deutsche Bank Trust Co. Am.*,
    No. 11 Civ. 1608 (AJN)(MHD), 2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012) ........ 21, 22

*FDIC v. Hirsch (In re Colonial Realty Co.)*,
    980 F.2d 125 (2d Cir. 1992)........................................................................... 14, 15

*Finn v. Barney*,
    No. 08 Civ. 2975 (LTS)(KNF), 2008 WL 5215699 (S.D.N.Y. Dec. 8, 2008) .......... 21, 22

*Flip Mortgage Corp. v. McElhone*,
    841 F.2d 531 (4th Cir. 1988) ............................................................................. 10

*Fox v. Picard (In re Madoff)*,
    848 F. Supp. 2d 469 (S.D.N.Y. 2012) ............................................................... 13

*Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*,
    No. 11 Civ. 4141 (BSJ), 2012 WL 252139 (S.D.N.Y. Jan. 25, 2012) .......... 20, 21

ii

*Hughes v. BCI Int'l. Holdings, Inc.*,
    452 F.Supp.2d 290, 316 (S.D.N.Y.  2006) ................................................... 20

*In re Berg*,
    376 B.R. 303 (Bankr. D. Kan. 2007) ......................................................... 10

*In re Colonial Realty Co.*,
    No. 3:91-200X(JAC), 1991 WL 487192 (D. Conn. Dec. 30, 1991)................................ 15

*In re Dreier LLP*,
    429 B.R. 112 (Bankr. S.D.N.Y. 2010 ............................................................. 6

*In re Literary Works in Electronic Databases Copyright Litigation*,
    No. M-21-90 GBD, MDL 1379, 2001 WL 204212 (S.D.N.Y. Mar. 1, 2001)................. 21

*In re PWS Holding Corp.*,
    303 F.3d 308 (3d Cir. 2002)................................................................ 12

*In re Stein*,
    314 B.R. 306 (D.N.J. 2004) ............................................................... 10

*In re Tessmer*,
    329 B.R. 776 (Bankr. M.D. Ga. 2005).................................................... 11, 12

*In re Zwirn*,
    362 B.R. 536 (Bankr. S.D. Fla. 2007).................................................... 13, 15

*K.D. Homes, Inc. v. Fritz (In re Fritz)*,
    88 B.R. 434 (Bankr. S.D. Fla. 1988)...................................................... 11

*Kappel v. Comfort*,
    914 F. Supp. 1056 (S.D.N.Y. 1996)....................................................... 19

*Landis v. North Am. Co.*,
    299 U.S. 248 (1936)...................................................................... 19

*Liddle & Robinson, L.L.P. v. Daley (In re Daley)*,
    224 B.R. 307 (Bankr. S.D.N.Y. 1998)..................................................... 11

*Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*,
    187 F.3d 439 (4th Cir. 1999) ............................................................ 11

*Nat'l Tax Credit Partners, L.P. v. Havlik*,
    20 F.3d 705 (7th Cir.1994) .............................................................. 10

*Official Comm. Unsecured Creditors of Color Tile, Inc. v. Blackstone Family Inv. P'ship, L.P.*
    (*In re Color Tile, Inc)*,

ActiveUS 114880909v.1

Nos. 96-76 (HSB), 96-80 (HSB), Civ.A. 98-358-SLR, A-98-90-77 (HSB), 96-78 (HSB), 96-79 (HSB), 2000 WL 152129 (D. Del. Feb. 9, 2000) .................................................. 16

*Ostashko v. Ostashko*,
00-CV-7162 (ARR), 2002 WL 32068357 (E.D.N.Y. Dec. 12, 2002) ............................ 15

*Picard v. Maxam Absolute Return Fund, L.P. (SIPC v. Bernard L. Madoff Inv. Sec., LLC)*,
460 B.R. 106 (Bankr. S.D.N.Y. 2011) ..................................................... 13, 15

*Rent Stabilization Assoc. of City of New York v. Dinkins*,
5 F.3d 591 (2d Cir. 1993) ................................................................... 2

*SST Global Tech., LLC v. Chapman*,
270 F. Supp. 2d 444 (S.D.N.Y. 2003) ....................................................... 20

*State of Rio De Janeiro v. E.H. Rollins & Sons, Inc.*,
299 N.Y. 363 (1949) ........................................................................ 16

*Summers v Perkins*,
81 P.3d 1141 (Colo. App. 2003) ............................................................ 16

*Wanger v. Primack (In re Primack)*,
81 B.R. 711 (Bankr. S.D. Fla 1987) ........................................................ 11

*Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory. Co.*,
No. 01 Civ. 1044 (RJH)(HBP), 2005 WL 912184 (S.D.N.Y. Apr. 19, 2005) ................. 20

Statutes

11 U.S.C. § 362(a)(1) ...................................................................... 13

11 U.S.C. § 362(a)(3) ...................................................................... 14

11 U.S.C. § 544(b) .......................................................................... 9

C.R.S. § 38-8-108(1)(a) .................................................................... 15

C.R.S. § 38-8-109(2) ....................................................................... 15

Del. Code tit. 6 § 1307(a)(1) .............................................................. 15

Del. Code tit. 6 § 1308(b) ................................................................. 15

N.Y. Debt. & Cred. Law § 278 .............................................................. 15

Treatises

5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1360 .................... 20

## PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

Defendants Dominion Voting Systems Corporation ("Dominion Canada") and Dominion Voting Systems, Inc. ("Dominion US") (collectively, "Dominion") respectfully submit this memorandum of law in support of their motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the Complaint (the "New York Complaint")[1] filed by Smartmatic USA Corporation, Smartmatic International Corporation, and Smartmatic Services Corporation (collectively, "Smartmatic") in this action (the "New York Action").

Dominion's motion to transfer the New York Action to the U.S. District Court for the District of Colorado is already pending before this Court.  As argued there, venue should be transferred so that the New York Action can be consolidated with a nearly identical fraudulent transfer action (the "Colorado Action") that a bankruptcy trustee filed against Dominion in December 2012 in the context of a bankruptcy case currently before the U.S. Bankruptcy Court for the District of Colorado (the "Colorado Bankruptcy Court").

Smartmatic is funding the Colorado Action and stands to be the primary beneficiary of any recovery against Dominion in the Colorado Action.  Smartmatic caused the Colorado Action to be filed against Dominion before Smartmatic filed its own New York Action.  Because the New York Action is based on the same facts alleged in the Colorado Action and seeks to avoid as constructively fraudulent the exact same transactions that are at issue in the Colorado Action—the sale of assets from Sequoia Voting Systems, Inc. ("Sequoia") to Dominion—the Court should transfer the New York Action to Colorado.

Ultimately, the New York Complaint should be dismissed—either by this Court (if the New York Action remains here) or by the court in the Colorado Action (if venue is transferred).

---

[1]    The New York Complaint is attached to Dominion's Notice of Removal [Docket No. 1] as Exhibit A and to the Declaration of George W. Shuster, Jr., dated August 16, 2013 ("Shuster Decl.") as Exhibit A.

The plaintiff in the Colorado Action is the chapter 7 bankruptcy trustee of Sequoia's parent and sole shareholder, SVS Holdings, Inc. (the "SVS Trustee" and "SVS").  The central theory underlying the Colorado Action is that SVS and Sequoia are one and the same—that all assets of each entity should be "substantively consolidated" with those of the other entity.  Dominion vehemently disagrees with the SVS Trustee's substantive consolidation theory,[2] but if the SVS Trustee is correct, then the SVS Trustee has the sole and exclusive right (exclusive of Smartmatic's right) under Section 544 of the Bankruptcy Code to bring claims to recover the assets that Dominion purchased, and any action by Smartmatic to pursue those claims would violate the automatic stay under Section 362 of the Bankruptcy Code.  Thus, according to the purported logic of the Smartmatic-funded claims in the Colorado Action, Smartmatic lacks standing in the New York Action, and the New York Complaint must be dismissed.[3]

Even ignoring the pendency of the SVS Trustee's Smartmatic-funded claims in the Colorado Action, the New York Complaint also should be dismissed because Smartmatic has failed to plead facts establishing that Smartmatic *currently* has valid, enforceable claims against Sequoia—a requirement for maintaining a fraudulent transfer action against Dominion to satisfy Smartmatic's alleged claims against Sequoia.

For the reasons described above, the Court should transfer the New York Action or dismiss the New York Complaint.  If the Court declines to do so at this stage, the Court nevertheless should stay the New York Action from proceeding on the merits until the central

---

[2]   Dominion has raised legal defenses to the Colorado Action and has moved to dismiss the Colorado Action on the basis of some of these defenses.  Nothing herein shall be construed as a waiver of any such defense by Dominion, and Dominion expressly reserves all such defenses, including those set forth in its motion to dismiss the Colorado Action.

[3]   *See Rent Stabilization Assoc. of City of New York v. Dinkins,* 5 F.3d 591, 594, 597 (2d Cir. 1993) (noting that dismissals for lack of standing may be made under either Fed. R. Civ. P 12(b)(1) or 12(b)(6) and affirming dismissal of action for lack of standing); *see also Bartang Bank & Trust Co. v. Caiola,* 04 CIV. 2402 (DAB), 2006 WL 2708453, at *4 (S.D.N.Y. Sept. 18, 2006) (same).

substantive consolidation claim in the Colorado Action, which will determine whether Smartmatic has standing to bring the New York Action, is resolved.  Dominion should not be forced to defend against the same claims twice and at the same time.  If Smartmatic were a stranger to the Colorado Action and the SVS Trustee's claims, the equities might be somewhat different—but they are not, as Smartmatic formulated and funded the SVS Trustee's claims against Dominion.  Without dismissal or stay, Dominion unfairly would be subject to a multiplicity of actions, forced to take contradictory positions and exposed to the risk of inconsistent results if the SVS Trustee and Smartmatic were allowed simultaneously to proceed in the Colorado Action and the NewYork Action.[4]  Smartmatic chose to assert its fraudulent transfer claims against Dominion through its proxy of the SVS Trustee, and its New York Action should be subject to the consequences of that choice.

## STATEMENT OF FACTS[5]

### A.      Dominion's Purchase of Assets from Sequoia

In 2009 and 2010, Dominion Canada and Dominion US, respectively, purchased certain assets (the "Purchased Assets") from Sequoia—a company that until 2007, plaintiff Smartmatic USA Corporation ("Smartmatic USA") directly owned.  Shuster Decl. Ex. A ¶¶ 12, 17, 28.

In 2009, Sequoia, a voting equipment and voting systems technology provider, was experiencing financial difficulties.  Shuster Decl. Ex. A ¶ 15.  To alleviate its financial distress and help to pay its creditors, Sequoia sought to sell its contract with the State of New York Executive Department, Office of General Services (the "NY Contract").  Shuster Decl. Ex. A ¶ 17.  On July 15, 2009, Sequoia and Dominion Canada entered into an Asset Purchase Agreement

---

[4]     Before filing its motion to dismiss the New York Action, Dominion proposed to Smartmatic that the New York Action be stayed pending resolution of Dominion's motion to dismiss the Colorado Action.  Smartmatic refused.  Thus, to ensure that its motion to dismiss the New York Complaint is timely, Dominion filed it now.

[5]     For the purposes of its motion to dismiss, Dominion accepts the facts as alleged in the New York Complaint as true, while reserving its rights to contest them at a later time.

for the sale of Sequoia's rights and obligations under the NY Contract in exchange for $2,366,000 in cash and contingent payments. *Id.* But that influx of cash failed fully to solve Sequoia's financial difficulties. Shuster Decl. Ex. A ¶ 24.

After the 2009 Asset Purchase Agreement with Dominion Canada, Sequoia continued to lose money and began looking for someone to buy its remaining business. *Id.* In response to Sequoia's proposals, Dominion US offered to purchase substantially all of Sequoia's remaining assets in March 2010. After negotiations, Dominion US and Sequoia entered into the June 4, 2010 Asset Purchase Agreement whereby Dominion US purchased the remainder of Sequoia's assets for approximately $3 million plus an additional $4.5 million in potential contingent payments, which provided substantial additional value to Sequoia and its creditors, above the value already provided by Dominion Canada in 2009. Shuster Decl. Ex. A ¶ 28.

### B.     The SVS Bankruptcy and Smartmatic's Involvement

On June 8, 2010, SVS, Sequoia's parent and sole shareholder, filed a chapter 11 petition in the Colorado Bankruptcy Court. *See In re SVS Holdings, Inc.*, Case No. 10-24328 (Bankr. D. Colo.). Smartmatic has been involved in SVS's bankruptcy case from the beginning. According to the claim schedules filed in the SVS bankruptcy, Smartmatic USA is SVS's largest creditor. *See* Shuster Decl. Ex. B. Thus, Smartmatic, as a creditor of SVS, would be the primary beneficiary of the SVS Trustee's recovery, if any, of the Purchased Assets or their value from Dominion in the Colorado Action.

Within weeks after the second of the two transfers was completed, Smartmatic began investigating the sale of the Purchased Assets from Sequoia to Dominion—the same transactions that are now being challenged in the Colorado Action and the New York Action. In August 2010, Smartmatic USA obtained Colorado Bankruptcy Court permission to request documents

from and conduct Rule 2004 examinations of Sequoia and Dominion regarding the transfers of the Purchased Assets.  *See* Shuster Decl. Ex. C; Ex. D.  Dominion provided documents to Smartmatic, and Dominion's representatives sat for Rule 2004 examinations.

But not until September 2012 did Smartmatic USA seek permission from the Colorado Bankruptcy Court to pursue litigation against Dominion in SVS's chapter 11 case. *See* Shuster Decl. Ex. E.  Specifically, Smartmatic USA asked for leave to bring federal and state law fraudulent transfer claims to avoid the sale of the Purchased Assets to Dominion.  *Id.*  In the alternative, Smartmatic USA asked the Colorado Bankruptcy Court to convert the SVS bankruptcy case to a chapter 7 case and appoint a chapter 7 bankruptcy trustee to administer SVS's affairs.  *See* Shuster Decl. Ex. F.  Smartmatic USA represented to the Colorado Bankruptcy Court that it would withdraw its request for conversion of SVS's bankruptcy case to chapter 7 and appointment of a trustee if its motion for derivative standing to sue Dominion was granted.  *See id.*  Notably, at no time during the two years following SVS's bankruptcy filing did Smartmatic take any action to bring Sequoia into bankruptcy involuntarily or cause SVS to put Sequoia (its wholly-owned subsidiary) into bankruptcy.

On October 16, 2012, the Colorado Bankruptcy Court denied Smartmatic USA's request for derivative standing and converted SVS' chapter 11 case to a case under chapter 7.  *See* Shuster Decl. Ex. G.   On October 17, 2012, the Colorado Bankruptcy Court appointed Tom H. Connolly as chapter 7 trustee of SVS—the SVS Trustee.  *See* Shuster Decl. Ex. H.

On November 14, 2012, the SVS Trustee sought Colorado Bankruptcy Court approval for Smartmatic USA to fund the SVS Trustee's pursuit against Dominion of substantially the same claims that Smartmatic USA had been denied derivative standing to bring on its own.  *See*

Shuster Decl. Ex. I.  The Colorado Bankruptcy Court approved the funding arrangement on December 4, 2012.  *See* Shuster Decl. Ex. J.

### C.      The Colorado Action

On December 7, 2012, the SVS Trustee, funded by Smartmatic USA, commenced the Colorado Action against Dominion by filing the "Colorado Complaint"[6] in the Colorado Bankruptcy Court.  Through the Colorado Action, the SVS Trustee seeks to avoid the sale of the Purchased Assets to Dominion, on the basis that Dominion underpaid Sequoia when Dominion bought those assets in 2009 or 2010.

Specifically, the SVS Trustee asserts constructive fraudulent transfer claims on three statutory grounds: (1) Section 548 of the Bankruptcy Code (the "Section 548 Colorado Claims"), (2) Section 544(b) of the Bankruptcy Code (the "Section 544 Colorado Claims") (collectively, the "Colorado Federal Claims"), and (3) Delaware and Colorado law (the "Colorado State Law Claims").  *See* Shuster Decl. Ex. K.

The Colorado Federal Claims can only be brought by the trustee of a debtor that, when the alleged fraudulent transfers were made, owned the assets in question.  *See In re Dreier LLP*, 429 B.R. 112, 115 (Bankr. S.D.N.Y. 2010 ("If the transfer did not involve property of the debtor under non-bankruptcy law, the trustee cannot avoid and recover the transfer or its value.").  Because Sequoia, not SVS, transferred the Purchased Assets to Dominion, the SVS Trustee's claims hinge on his attempt to "substantively consolidate" SVS with Sequoia, thereby making Sequoia's assets SVS's assets.  Substantive consolidation is a bankruptcy concept that would, if successful, judicially merge SVS and Sequoia to create one bankrupt entity encompassing all assets and liabilities of both SVS and Sequoia.  Substantive consolidation is the vehicle by which

---

[6]      The Colorado Complaint is substantially identical to the form of complaint Smartmatic USA proposed to file if it had been allowed to pursue claims against Dominion.  S*ee* Shuster Decl. Ex. E.

the SVS Trustee claims standing to pursue the Colorado Federal Claims against Dominion for assets sold by Sequoia—a non-debtor.  Without substantive consolidation, the Colorado Federal Claims cannot survive.

In the Colorado Bankruptcy Court, Dominion has moved to dismiss the Colorado Action for the primary reason that the SVS Trustee has not provided any valid legal ground for substantive consolidation of SVS and Sequoia.  *See* Shuster Decl. Ex. L.  Dominion's motion to dismiss the Colorado Action has been fully briefed, and the Colorado Bankruptcy Court has scheduled argument on the motion for September 26, 2013.

### D.     The New York Action

On June 28, 2013, Smartmatic, while continuing to fund the SVS Trustee's pursuit of fraudulent transfer claims against Dominion in the Colorado Action, commenced the New York Action to assert nearly identical fraudulent transfer claims (the "New York Claims") against Dominion under New York, Colorado, and Delaware fraudulent transfer laws.

In the New York Complaint, Smartmatic claims that it was a creditor of Sequoia based on a series of questionable debts allegedly owed to Smartmatic by Sequoia at various times.  Using these alleged debts to claim creditor status, Smartmatic brings its fraudulent transfer claims against Dominion, to collect on the debts that Sequoia supposedly owed to Smartmatic.

First, Smartmatic alleges that, in connection with Smartmatic USA's 2007 divestiture of Sequoia, Sequoia was indebted to Smartmatic USA for certain tax benefits accruing on or before November 2007—two or three years before Dominion bought the Purchased Assets.  Shuster Decl. Ex. A ¶ 12.  Second, Smartmatic alleges that Sequoia was indebted to Smartmatic International Corporation ("Smartmatic International") and Smartmatic Services Corporation ("Smartmatic Services") for goods and services received by Sequoia at various times.  *Id.* ¶¶ 13-

14.  In the New York Action, Smartmatic seeks to compel Dominion to satisfy these alleged debts of Sequoia to Smartmatic from Dominion's alleged underpayment to Sequoia for the Purchased Assets.

The asset purchases at issue in the New York Action are the same asset purchases at issue in the Smartmatic-funded Colorado Action.  The alleged basis for Smartmatic's claims in the New York Action—Dominion's alleged underpayment for those assets—is the same basis that SVS Trustee asserts in the Colorado Action.  It was also the basis that Smartmatic articulated in its failed bid for leave from the Colorado Bankruptcy Court to bring claims against Dominion in Colorado.  Attached hereto as Annex 1 is a table comparing the allegations of the Colorado Complaint to those in the New York Complaint.  As is evident from the comparison, the New York Complaint is substantially identical to the Colorado Complaint.

As described above, Dominion has removed the New York Action to this Court and is seeking to transfer venue of the New York Action to the Colorado federal courts so that the duplicative claims in the New York Action and in the Colorado Action can be addressed in the same forum.  To the extent that the New York Action goes forward, Dominion is filing concurrently with its motion to dismiss a notice of jury demand, asserting its right to, and demanding, a jury trial of all claims in the New York Action.

## ARGUMENT

### I.     UNDER THE CENTRAL THEORY IN THE SMARTMATIC-FUNDED COLORADO ACTION, THE SVS TRUSTEE—AND NOT SMARTMATIC—IS THE ONLY PERSON WHO CAN PURSUE FRAUDULENT TRANSFER CLAIMS AGAINST DOMINION REGARDING THE PURCHASED ASSETS

The SVS Trustee is currently pursuing the Colorado Federal Claims, based on the theory that the assets and liabilities of SVS and Sequoia should be substantively consolidated.  The SVS Trustee takes the position that if SVS and Sequoia are substantively consolidated, he would have

the right to bring the Colorado Federal Claims in respect of Sequoia property, including the

Purchased Assets, because the SVS Trustee apparently believes that the consolidation could

retroactively bring the Purchased Assets, formerly owned by Sequoia, within the control of the

SVS bankruptcy estate.

Dominion vigorously opposes the SVS Trustee's position.  However, if this theory is

accepted, and the SVS Trustee is permitted to pursue the Section 544 Colorado Claims related to

Sequoia's assets, then, under applicable bankruptcy law, the SVS Trustee's right to do is

exclusive of the rights of Smartmatic to bring those claims, and Smartmatic lacks standing to

bring the non-bankruptcy New York Claims.  Sequoia also lacks standing because the New York

Claims would be barred by the Bankruptcy Code's automatic stay.  Thus, if SVS and Sequoia are

substantively consolidated in the Colorado Action, the New York Complaint must be dismissed.

A.   **The SVS Trustee's Exclusive Standing to Bring State Law Fraudulent
     Transfer Claims Under Section 544(b) of the Bankruptcy Code Deprives
     Smartmatic of Standing to Bring the New York Claims**

Section 544(b) of the Bankruptcy Code provides that a bankruptcy trustee "may avoid

any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a

creditor holding an unsecured claim that is allowable. . ."  11 U.S.C. § 544(b).  This provision

"allows a bankruptcy trustee or debtor in possession to assert for the benefit of all creditors the

rights that any individual creditor has under applicable state law to avoid fraudulent transfers

made prior to filing the bankruptcy petition."  *Burns v. Grupo Mexico S.A. de C.V.*, No. 07 Civ.

3496 (WHP), 2007 WL 4046762, at *3 (S.D.N.Y. Nov. 16, 2007) (internal citation and

quotations omitted); *see also In re Stein*, 314 B.R. 306, 311 (D.N.J. 2004) ("Pursuant to 11

U.S.C. §§ 323 and 544(b), the Trustee is conferred with the authority to represent *all* creditors

and the Debtor's estate with the sole responsibility of bringing actions on behalf of the Debtor's

estate and to marshal assets for the estate's creditors.") (emphasis in original).

Given that a bankruptcy trustee brings state law fraudulent transfer claims under Section 544(b) of the Bankruptcy Code for the benefit of all creditors, the trustee's right to bring these claims is exclusive of any creditor's right to do so for its individual benefit.  *See Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 539 (4th Cir. 1988) (affirming dismissal of fraudulent transfer claims brought against transferees by debtor's creditor because only trustee had authority to bring those claims under Section 544(b)); *Delgado Oil Co., Inc. v. Torres*, 785 F.2d 857, 860 (10th Cir. 1986) ("[T]he trustee possesses only those powers conferred upon him by the Code, and he alone can exercise those rights to the exclusion of others."); *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 261 (5th Cir. 2010) ("[t]he right to recoup a fraudulent conveyance, which outside of bankruptcy may be invoked by a creditor, is property of the estate that only a trustee or debtor in possession may pursue once a bankruptcy is under way" (quoting *Nat'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 708-09 (7th Cir.1994))); *In re Berg*, 376 B.R. 303, 311 (Bankr. D. Kan. 2007) ("When there is at least one unsecured creditor holding an allowed claim and avoidance rights, the Trustee is vested with the exclusive right to pursue that claim. The vesting of the right to set aside the transfer in the Trustee suspends the rights of all creditors to pursue the state law claim.").

A creditor lacks standing to assert for itself an avoidance claim that only the trustee can bring on behalf of all creditors.  *See Liddle & Robinson, L.L.P. v. Daley (In re Daley)*, 224 B.R. 307, 310-11 (Bankr. S.D.N.Y. 1998) (only the trustee has standing to bring a fraudulent transfer claim to avoid a debtor's transfer); *Wanger v. Primack (In re Primack)*, 81 B.R. 711, 712 (Bankr. S.D. Fla 1987) (denying creditor leave to amend complaint to add fraudulent transfer claim because "the cause of action is vested in the trustee" and therefore "plaintiff lacks standing"); *K.D. Homes, Inc. v. Fritz (In re Fritz)*, 88 B.R. 434, 436 (Bankr. S.D. Fla. 1988) (plaintiff lacked

10

standing because fraudulent transfer action was "available only to the bankruptcy trustee, not to a creditor."). Consolidating all creditor fraudulent transfer claims in the trustee, for the benefit of all creditors, prevents "piecemeal" litigation that can threaten the bankruptcy process and undermine an orderly distribution of the bankruptcy estate. *See Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441-42 (4th Cir. 1999) ("As a general matter, [t]he trustee's single effort eliminates the many wasteful and competitive suits of individual creditors.") (internal quotations omitted).

In *Best Mfg., Inc. v. White Plains Coat & Apron Co. (In re Daniele Laundries, Inc.)*, 40 B.R. 404 (Bankr. S.D.N.Y. 1984), a bankruptcy debtor's creditor sued prior to the commencement of the bankruptcy to recover assets that the debtor sold to a third party. The court held that the creditor lacked standing after the trustee's appointment because "it is axiomatic that a duly qualified trustee represents the estate and is the only proper party to maintain any action under Code § 544(b) . . ., and that the creditors of the estate have no right to proceed independently in their own names or on behalf of the estate." *Id.* at 408.

In *In re Tessmer*, 329 B.R. 776 (Bankr. M.D. Ga. 2005), an individual creditor attempted to maintain her fraudulent transfer claim in state court even though the bankruptcy court had already approved the trustee's settlement of the right to avoid the same transfer. The bankruptcy court concluded:

> Once the Trustee acts under § 544(b), the rights of all other parties to bring a suit based on the same transaction are fully and permanently cut off unless the Trustee later abandons his claim . . . . [The individual creditor] is permanently enjoined from taking any steps to further prosecute her state law fraudulent conveyance action against the [transferees], and she is permanently enjoined from initiating any other suit that arises from the transfer of property in question.

*Id.* at 780.

In the Smartmatic-funded Colorado Action, the SVS Trustee already is seeking, under Section 544(b) of the Bankruptcy Code (incorporating state fraudulent transfer law), to avoid the same transfers that Smartmatic seeks to avoid under state law in the New York Action.  Indeed, Smartmatic is proceeding in the New York Action on an identical theory, and on substantially the same state fraudulent transfer statutes, as the SVS Trustee in the Colorado Action.[7]  *See* Annex 1.  As a matter of law, Smartmatic cannot usurp the SVS Trustee's exclusive role to assert for Smartmatic's own benefit claims duplicative of those claims that the SVS Trustee previously filed on behalf of all creditors.  *See In re PWS Holding Corp.*, 303 F.3d 308, 314 (3d Cir. 2002) ("to allow a creditor of the bankrupt to pursue his remedy against third parties on a fraudulent transfer theory would undermine the Bankruptcy Code policy of equitable distribution by allowing the creditor to push its way to the front of the line of creditors.") (internal quotations omitted).  Smartmatic previously asked the Colorado Bankruptcy Court to permit Smartmatic to bring on behalf of all creditors the same claims at issue here, or in the alternative to appoint a chapter 7 trustee for SVS to bring those claims.  After having been granted one of its chosen forms of relief, through appointment of the SVS Trustee, and after funding the SVS Trustee's Colorado Action against Dominion, Smartmatic should abide by the results of its choice and the consequences of the substantive consolidation theory in the Colorado Action.  As Smartmatic wished, the SVS Trustee, with funding from Smartmatic, is actively pursuing in the Colorado Action the identical fraudulent transfer claims against Dominion that Smartmatic has asserted here, though on behalf of all creditors, including Smartmatic.

---

[7]   Courts have held that a bankruptcy trustee's exclusive standing under Section 544(b) of the Bankruptcy Code extends to claims that have the same "object and purpose" as the trustee's claims, even when those claims do not contain identical elements.  *See Ruppert*, 187 F.3d at 441-42.

**B.    The Bankruptcy Code's Automatic Stay Also Precludes Smartmatic's Standing to Bring the New York Claims**

If SVS and Sequoia are substantively consolidated in the Colorado Action, as the SVS Trustee is asking, the automatic stay under Section 362 of the Bankruptcy Code would apply to a consolidated bankruptcy estate of SVS and Sequoia, and would therefore preclude Smartmatic's pursuit of the New York Claims.  Section 362(a)(1) prohibits "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding . . . to recover a claim against the debtor that arose before the commencement of the case."  11 U.S.C. § 362(a)(1).  The automatic stay allows a bankruptcy court to "centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas."  *Fox v. Picard (In re Madoff)*, 848 F. Supp. 2d 469, 478 (S.D.N.Y. 2012) (internal citation and quotations omitted).  The automatic stay is "one of the most fundamental bankruptcy protections and applies broadly to . . . prevent creditors from obtain[ing] payment of the[ir] claims in preference to and to the detriment of other creditors." *Picard v. Maxam Absolute Return Fund, L.P. (SIPC v. Bernard L. Madoff Inv. Sec., LLC)*, 460 B.R. 106, 114 (Bankr. S.D.N.Y. 2011) (internal citation and quotations omitted).

Smartmatic's pursuit of the New York Claims would violate the automatic stay and threaten to disrupt the orderly administration of the consolidated SVS and Sequoia bankruptcy estate.  *See In re Zwirn*, 362 B.R. 536, 539 (Bankr. S.D. Fla. 2007) ("[A]ll courts appear to agree that commencing a bankruptcy case stays any state court fraudulent conveyance actions by a creditor").

In *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 132 (2d Cir. 1992), the court held that a state law fraudulent transfer action brought by bankruptcy debtor's creditor against a transferee was subject to the automatic stay.  Specifically, the Second Circuit concluded

that "a third-party action to recover fraudulently transferred property is properly regarded as undertaken 'to recover a claim against the debtor' and subject to the automatic stay pursuant to § 362(a)(1)." *Id.* at 131-32.  The Second Circuit reasoned that without a claim against the debtor, the creditor would not have an independent basis for the fraudulent transfer action against the transferee. *Id.* at 132.  Thus, pursuing an action against a transferee based on a claim against a debtor constitutes an action to recover a claim against the debtor in violation of the automatic stay.

If SVS and Sequoia were combined under the SVS Trustee's substantive consolidation theory, the automatic stay would apply to any actions seeking recoveries on claims against Sequoia.  Because the New York Claims depend on Smartmatic's purported claims against Sequoia, and because the New York Claims assert that Dominion should satisfy those claims from the alleged underpayment by Dominion for the Purchased Assets, Smartmatic's pursuit of those claims would violate the automatic stay under Section 362(a)(1) of the Bankruptcy Code.

Smartmatic's pursuit of the New York Action would also violate the automatic stay under Section 362(a)(3) of the Bankruptcy Code.  Section 362(a)(3) stays "any act to obtain possession of property of the estate from the estate or to exercise any control over property of the estate." 11 U.S.C. § 362(a)(3).  Both the SVS Trustee's Section 544 Colorado Claims and the state-law fraudulent transfer claims on which they are based—including Smartmatic's claims in the New York Action—would be property of the consolidated SVS/Sequoia bankruptcy estate.  *See Maxam Absolute Return Fund*, 460 B.R. at 114 (Section 544(b) claims are property of the estate); *In re Colonial Realty Co.*, No. 3:91-200X(JAC), 1991 WL 487192, at *2 (D. Conn. Dec. 30, 1991) (state law avoidance claims are property of the estate), *aff'd on other grounds*, 980 F.2d 125 (2d Cir. 1992).  Thus, any attempt by Smartmatic to take control over that property,

including by pursuing the New York Claims, would violate the automatic stay under Section 362(a)(3), in addition to Section 362(a)(1).  *See In re Zwirn*, 362 B.R. at 538-39.

Indeed, Smartmatic's continued pursuit of the New York Claims under the circumstances present here would constitute a willful violation of the stay, subjecting Smartmatic to sanctions under Section 362(h) of the Bankruptcy Code, including the payment of Dominion's costs for defending the New York Action.  *See AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*, 117 B.R. 789 (Bankr. S.D.N.Y. 1990) (imposing sanctions on plaintiff for pursuing state fraudulent transfer action against third-party transferees of the debtor despite "well settled" case law that such actions were stayed and the debtor had the exclusive right to bring them).

## II.   SMARTMATIC'S NEW YORK CLAIMS MUST BE DISMISSED BECAUSE SMARTMATIC FAILS TO ALLEGE ANY CURRENT, VALID, AND ENFORCEABLE CLAIMS AGAINST SEQUOIA

Independent of the fundamental conflict between the Colorado Action and the New York Action, the New York Claims also fail on their own.  Each of the state fraudulent transfer statutes on which Smartmatic relies provides that a creditor may seek to avoid a transfer, or recover the value of a transfer, only "*to the extent necessary to satisfy [the creditor's] claim.*" N.Y. Debt. & Cred. Law § 278; C.R.S. §§ 38-8-108(1)(a), 38-8-109(2); Del. Code tit. 6 §§ 1307(a)(1), 1308(b) (emphasis added); *see Ostashko v. Ostashko*, 00-CV-7162 (ARR), 2002 WL 32068357, at *27 (E.D.N.Y. Dec. 12, 2002) (New York Debtor & Creditor Law "only allows the court to set aside a fraudulent transfer to the extent necessary to satisfy a creditor's claim"); *Official Comm. Unsecured Creditors of Color Tile, Inc. v. Blackstone Family Inv. P'ship, L.P. (In re Color Tile, Inc.)*, Nos. 96-76 (HSB), 96-80 (HSB), Civ.A. 98-358-SLR, A-98-90-77 (HSB), 96-78 (HSB), 96-79 (HSB), 2000 WL 152129, at *2 (D. Del. Feb. 9, 2000) (same under

Delaware law); *Summers v Perkins*, 81 P.3d 1141, 1143 (Colo. App. 2003) (same under Colorado law).

Thus, under each of the relevant statutes, Smartmatic can only recover from Dominion's alleged underpayment to Sequoia for the Purchased Assets if Smartmatic currently has a valid and enforceable claim against Sequoia. *See State of Rio De Janeiro v. E.H. Rollins & Sons, Inc.*, 299 N.Y. 363, 366-67 (1949) (holding that a creditor's right to set aside a fraudulent transfer is barred in the absence of "a valid enforcible claim," and that "[a] creditor's bill attacking his debtor's transfer is adjective and ancillary only, to the creditor's right to collect his original debt."). In *E.H. Rollins*, the court held that because the creditor's ability to collect the original debt against the transferor was barred by the statute of limitations, the creditor could not seek to avoid and recover the transfer from the transferee. *Id.*; *see also Allard v. DeLorean*, 884 F.2d 464, 466 (9th Cir. 1989) (where plaintiff is no longer a creditor, plaintiff is not entitled to remedy of setting aside transfers as fraudulent).

Even accepting the facts in the New York Complaint as true for the purposes of a motion to dismiss, Smartmatic has failed adequately to allege that it currently has a valid, enforceable claim against Sequoia sufficient to support its fraudulent transfer claims against Dominion. Smartmatic's status as a purported creditor of Sequoia is based on three separate allegations: (1) a claim by Smartmatic USA for tax benefits allegedly accruing before November 2007 (the "Smartmatic USA Claim"), (2) a claim by Smartmatic International for goods and services allegedly provided to Sequoia (the "Smartmatic International Claim"), and (3) a claim by Smartmatic Services for goods and services allegedly provided to Sequoia (the "Smartmatic Services Claim"). Smartmatic makes no attempt to allege that any of these claims is currently valid and enforceable against Sequoia.

The Smartmatic USA Claim, the largest claim Smartmatic alleges against Sequoia, arises from Smartmatic's divestiture of Sequoia in 2007.  Smartmatic asserts only that Sequoia "*was indebted*" to Smartmatic on account of the Smartmatic USA Claim.  Shuster Decl. Ex. A ¶ 12 (emphasis added).  Smartmatic does not allege that this claim is currently valid and enforceable against Sequoia.  Indeed, Smartmatic fails to allege that the Smartmatic USA Claim was ever valid or enforceable against Sequoia.[8]  While Smartmatic alleges that it "retained all tax benefits of Sequoia accruing on or prior to November 5, 2007," Shuster Decl. Ex. A. ¶ 12, Smartmatic makes no allegation to support its claim that Sequoia was indebted to Smartmatic for these tax benefits.  Accordingly, the Smartmatic USA Claim cannot serve as a basis for the New York Claims against Dominion, and indeed appears to be manufactured *post hoc* for purposes of the New York Action.

Smartmatic also fails to allege that the Smartmatic International Claim or the Smartmatic Services Claim is currently valid and enforceable against Sequoia.  *See* Shuster Decl. Ex. A. ¶¶ 13-14 (alleging that Sequoia "was indebted" to Smartmatic International and Smartmatic Services), 37-43 (alleging that Smartmatic International and Smartmatic Services "were creditors" of Sequoia).  Smartmatic's allegation that it "has not been paid in full" on the Smartmatic International Claim or the Smartmatic Services Claim does nothing to establish that those claims, if they ever existed as valid and enforceable claims against Sequoia, remain valid and enforceable now.[9]

---

[8]  The New York Complaint is internally inconsistent as to whether Sequoia was ever indebted to Smartmatic USA for this amount.  Although Counts I and II of the New York Complaint allege that Sequoia was indebted to Smartmatic International and Smartmatic Services at the time of the transfers to Dominion, they make no mention of the Smartmatic USA Claim.  In any event, only current, valid, and enforceable claims are relevant for the purposes of Smartmatic's ability to pursue the New York Claims against Dominion.

[9]  The New York Complaint is also internally inconsistent with respect to the status and amount of the Smartmatic Services Claim.

Smartmatic has never sued Sequoia to recover on any claims, and thus no court has entered judgment determining the validity of those claims.  The New York Complaint contains no substantiation for any of Smartmatic's supposed claims.  Although Fed. R. Civ. P. 15(b) allows the joinder of a primary claim for recovery with a fraudulent transfer action to collect on the primary claim, Smartmatic has not sought any judicial determination of its primary claims against Sequoia on which it seeks to collect from Dominion.  Smartmatic has not alleged any basis for a finding that Sequoia owes any debt to Smartmatic that Smartmatic can enforce against Dominion through a fraudulent transfer claim.

Accordingly, because Smartmatic has failed to allege that it has a valid, enforceable claim against Sequoia, it may not pursue the New York Claims against Dominion.  Thus, the Court should dismiss the New York Complaint.

## III.   IF THE COURT DOES NOT TRANSFER THE NEW YORK ACTION OR DISMISS THE NEW YORK COMPLAINT AT THIS STAGE, THE COURT SHOULD STAY THE NEW YORK ACTION PENDING RESOLUTION OF THE SUBSTANTIVE CONSOLIDATION CLAIM IN THE COLORADO ACTION

If the central substantive consolidation theory advanced by the SVS Trustee (and by Smartmatic, through its funding the action) in the Colorado Action is accepted, then, as described above, Smartmatic lacks standing to pursue the New York Claims.  Thus, the SVS Trustee's Colorado Action preempts any attempt by Smartmatic to bring the New York Action. If the Court does not transfer the New York Action or dismiss the New York Complaint at this stage, a stay of the New York Action from proceeding on the merits pending a resolution of the SVS Trustee's substantive consolidation claim in the Colorado Action is compelled.[10]  Such a resolution could come as soon as a final ruling on Dominion's motion to dismiss the Colorado

---

[10]   Dominion reserves its rights with respect to consolidation of discovery in the Colorado Action and the New York Action, depending on the outcome of Dominion's motions to dismiss each action.

18

Action.  Staying the New York Action will avoid potentially unnecessary and duplicative

proceedings in Colorado and New York and avoid the risk of inconsistent judgments.  Most

importantly, a stay will prevent Smartmatic from presently pursuing in New York an action

against Dominion that is in fundamental conflict with the action against Dominion that

Smartmatic is funding in Colorado.

 The Court has the power to stay the New York Action.  *See Landis v. North Am. Co.*, 299

U.S. 248, 254 (1936) ("The power to stay proceedings is incidental to the power inherent in

every court to control the disposition of the causes on its own docket with economy of time and

effort for itself, for counsel, and for litigants."); *Amer. Shipping Line, Inc. v. Massan Shipping

Indus.*, 885 F. Supp. 499, 502 (S.D.N.Y. 1995) (whether to issue a stay is a decision "firmly

within a district court's discretion").

 Courts consider five factors when determining whether to grant a stay:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil
> litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the
> private interests of and burden on the defendants; (3) the interests of the courts;
> (4) the interests of persons not parties to the civil litigation; and (5) the public
> interest.

*Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (internal citations and
quotations omitted).

 The *Kappel* factors have been applied "to stay a federal action in light of a concurrently

pending federal action (either because the claim arises from the same nucleus of facts or because

the pending or because the pending action would resolve a controlling point of law)."  *SST

Global Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 455 (S.D.N.Y. 2003);  *Fried v. Lehman

Bros. Real Estate Assocs. III, L.P.*, No. 11 Civ. 4141 (BSJ), 2012 WL 252139, at *5 (S.D.N.Y.

Jan. 25, 2012) (significant overlap is reason for stay); *see also* 5C Charles Alan Wright & Arthur

R. Miller, Fed. Prac. & Proc. § 1360 (a district court may grant a stay "when a similar action is

pending in another court").  Here, each of the five *Kappel* factors favors a stay of the New York

Action pending resolution of the substantive consolidation claim in the Smartmatic-funded

Colorado Action.

First, Smartmatic, the New York Action plaintiff, will not suffer any prejudice if the

New York Action is stayed.  If the outcome of the Colorado Action means that Smartmatic has

standing to maintain the New York Action, Smartmatic may then pursue the New York Claims.

*See Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory. Co.,* No. 01 Civ. 1044 (RJH)(HBP),

2005 WL 912184, at *2-3 (S.D.N.Y. Apr. 19, 2005) (stay pending decision by another court was

appropriate because it was not of indefinite duration).  Smartmatic, through its chosen proxy of

the SVS Trustee, is already effectively pursuing the same state law fraudulent transfer claims in

the Colorado Action, and thus Smartmatic's interests are protected, so it will not be prejudiced if

the New York Action is stayed.[11]  Further, if any real difference or advantage existed for

Smartmatic in pursuing the New York Action instead of the Colorado Action, Smartmatic would

have commenced the New York Action instead of choosing to fund the Colorado Action (or

could have pressed the SVS Trustee to include the New York Claims in the Colorado Action).

Second, if the New York Action proceeds now, Dominion will be forced to defend

identical actions, both driven by Smartmatic.  Doing so would force Dominion to incur

unnecessary expense, and subject Dominion to the risk of inconsistent results.  *See Fried*, 2012

WL 252139, at *5 (granting stay where going forward with lawsuit would "cause both parties to

suffer the extra litigation costs of duplicative suits").  Indeed, if the SVS Trustee prevails on his

---

[11]   The only substantive difference between the SVS Trustee's claims in the Colorado Action and Smartmatic's
claims in the New York Action is that in the Colorado Action, the Smartmatic-funded SVS Trustee relies on
Colorado and Delaware fraudulent transfer statutes, while in the New York Action, Smartmatic relies on New
York, Colorado, and Delaware fraudulent transfer statutes.  The standards are the same under each.  *Hughes v.
BCI Int'l. Holdings, Inc.*, 452 F.Supp.2d 290, 316 (S.D.N.Y.  2006) ("[E]ven if Delaware or Colorado law
would be applicable to plaintiffs' fraudulent transfer claim against Equistar, Delaware and Colorado's relevant
standards appear to be substantively identical to those of New York.").

theory in the Colorado Action, Smartmatic will not have standing to bring the New York Action.

Thus, Dominion will have diverted its resources from defending the Colorado Action to defend

an action that, according to the Smartmatic-funded Colorado Action, will not be able to continue.

*See Estate of Heiser v. Deutsche Bank Trust Co. Am.*, No. 11 Civ. 1608 (AJN)(MHD), 2012 WL

5039065, at *5 (S.D.N.Y. Oct. 17, 2012) (recognizing the defendants' interest in avoiding

litigation that would be rendered moot by resolution of another action).

Third, staying the New York Action is in the interests of the Court because, without a

stay, the Court would have to adjudicate an action that Smartmatic cannot maintain if the SVS

Trustee's substantive consolidation claim goes forward in the Colorado Action.  *See Finn v.*

*Barney*, No. 08 Civ. 2975 (LTS)(KNF), 2008 WL 5215699, at *3 (S.D.N.Y. Dec. 8, 2008) (a

stay may be appropriate when awaiting the outcome of proceedings that bear on the case); *See*

*also In re Literary Works in Electronic Databases Copyright Litigation*, No. M-21-90 GBD,

MDL 1379, 2001 WL 204212, at *2 (S.D.N.Y. Mar. 1, 2001) ("Where it is efficient for a trial

court's docket and the fairest course for the parties, a stay may be proper even when the issues in

the independent proceeding are not necessarily controlling of the action before the court.").  The

Court has an interest in avoiding unnecessary and duplicative proceedings.  *See Finn*, 2008 WL

5215699, at *3 (court has a substantial interest in staying action to avoid maintaining duplicative

proceedings and doubling the amount of time and energy spent on a matter); *Heiser*, 2012 WL

5039065, at *6 (same).

Fourth, the interests of persons not parties to the litigation also counsels in favor of a stay.

Here, creditors of SVS and Sequoia could be adversely affected if the New York Action is

permitted to proceed.  Any inconsistent rulings could affect the outcome of the Colorado Action

and therefore the creditors' potential recovery from a consolidated SVS and Sequoia bankruptcy

estate.  *See* Notice of Removal at 12; *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S.*
*EPA*, 630 F. Supp. 2d 295, 306 (S.D.N.Y. 2009) (minimizing risk of inconsistent judgments is
particularly important).

Fifth, a stay is in the public interest.  Minimizing the risk of inconsistent judgments and
conserving judicial resources also serves the public interest.  *See id.* ("By conserving judicial
resources, a stay will serve not only the interests of the courts, but also the interests of the
Parties, the nonparties, and the public in an orderly and efficient use of judicial resources.")
(internal citation and quotations omitted).  In addition, the public and collective nature of the
bankruptcy proceedings of SVS, to which the Colorado Action is closely related, disfavors the
simultaneous litigation of the same claims in a private, bilateral suit in New York.  For example,
although Dominion asserts that it did not underpay for the Purchased Assets and that all
fraudulent transfer claims against Dominion must be dismissed, only the SVS Trustee in the
Colorado Action would be entitled to seek recovery of the entire amount of any underpayment
necessary to repay valid, enforceable claims of all creditors of SVS and Sequoia.  Smartmatic's
recovery in the New York Action would be limited to only that portion of any underpayment that
corresponds to any current, valid, and enforceable claims that Smartmatic has against Sequoia.
Thus, it is in the public interest to stay the New York Action until it is determined whether the
Colorado Action can proceed.

In summary, for all of these reasons, the New York Action should be stayed if it is not
immediately dismissed.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss the New York Complaint in its
entirety, or, in the alternative, stay the New York Action from proceeding on the merits until the
substantive consolidation claims in the Colorado Action are fully and finally resolved.

Dated:  August 16, 2013

WILMER CUTLER PICKERING
HALE AND DORR LLP


By: /s/ George W. Shuster, Jr.
George W. Shuster, Jr.
Jeremy S. Winer
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel:  (212) 230-8800

Richard A. Johnston
60 State Street
Boston, MA 02109
Tel:  (617) 526-6282

*Counsel for Defendants Dominion Voting
Systems Corporation and Dominion Voting
Systems, Inc.*