# **EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------X
                                                                      :

SMARTMATIC USA CORPORATION,              :
SMARTMATIC INTERNATIONAL                  :
CORPORATION and SMARTMATIC SERVICES :
CORPORATION,                                        :   Index No. _____
                                                               :
                        Plaintiffs,      :   **COMPLAINT**
                                                                 :
    – against –                                                :
                                                                 :
DOMINION VOTING SYSTEMS                  :
CORPORATION and DOMINION VOTING     :
SYSTEMS, INC.,                                     :
                                                Defendants.
------------------------------------------------------------X

For their Complaint against Dominion Voting Systems Corporation ("Dominion Canada") and Dominion Voting Systems, Inc. ("Dominion US" and together with Dominion Canada, each a "Defendant" and collectively, "Dominion" or the "Defendants"), Smartmatic USA Corporation ("Smartmatic USA"), Smartmatic International Corporation ("Smartmatic International") and Smartmatic Services Corporation ("Smartmatic Services" and together with Smartmatic USA and Smartmatic International, each a "Plaintiff" and collectively, "Smartmatic" or the "Plaintiffs"), allege as follows:

## NATURE OF THE ACTION

1.     This is an action by Smartmatic USA, Smartmatic International and Smartmatic Services, each creditors of Sequoia Voting Systems, Inc. ("Sequoia"), to

\\NY - 038124/000002 - 2745763 v1

avoid and recover fraudulent transfers made by Sequoia to the Defendants in 2009 and 2010.

2. On information and belief, Sequoia was grossly underpaid for the assets it conveyed to the Defendants in 2009 and 2010, at a time when Sequoia was insolvent. Accordingly, Plaintiffs bring this action for fraudulent transfer under applicable law seeking avoidance of the fraudulent transfers and damages.

## PARTIES

3. Plaintiff Smartmatic USA is a corporation formed under the laws of the State of Delaware with its principal place of business in Boca Raton, Florida. Smartmatic USA is the successor-in-interest to Smartmatic Corporation ("Smartmatic Corp.").

4. Plaintiff Smartmatic International is a corporation formed under the laws of Barbados with its principal place of business in St. Michael, Barbados.

5. Plaintiff Smartmatic Services is a corporation formed under the laws of Barbados with its principal place of business in St. Michael, Barbados.

6. Defendant Dominion Canada is a corporation formed under the laws of Toronto, Ontario with its principal place of business in Toronto, Ontario, Canada. This Court has personal jurisdiction over Dominion Canada because it is registered as a foreign corporation in the State of New York and has appointed a registered agent to receive service of process in New York County, New York.

7. Dominion US is a corporation formed under the laws of Delaware with its principal place of business in Denver, Colorado. This Court has personal jurisdiction over Dominion US because it is registered as a foreign corporation in the State of New

York and has appointed a registered agent to receive service of process in New York County, New York.

## JURISDICTION AND VENUE

8. The Supreme Court of the State of New York has jurisdiction over this proceeding pursuant to New York Civil Practice Law and Rule ("CPLR") §§ 302 and 311 because, on information and belief, Defendants transact business in New York and Defendants have each appointed an authorized agent to receive service in New York State.

9. Venue in New York County is proper pursuant to CPLR § 503(a) because none of the parties currently resides in the state, and therefore venue is proper in any county designated by Plaintiffs.

## STATEMENT OF FACTS

**A.     Background on Sequoia Voting Systems, Inc.**

10. Sequoia is a corporation formed under the laws of Delaware with its principal place of business in Denver, Colorado.

11. Sequoia was incorporated on December 20, 1990 and was principally engaged in providing electronic voting systems, election technologies, and related support services to state and local governments in the United States. Among other things, Sequoia provided voting systems and related services to multiple counties in New York State.

12. Smartmatic Corp., as predecessor-in-interest to Smartmatic USA, was the former parent of Sequoia. In connection with the Smartmatic Corp.'s divestiture of

Sequoia in 2007, Smartmatic Corp. retained all tax benefits of Sequoia accruing on or prior to November 5, 2007.  At all times relevant to this Complaint, including at the time of each of the 2009 Transfer and the 2010 Transfer (as defined below), Sequoia was indebted to Smartmatic USA, as successor to Smartmatic Corp., in the aggregate amount of not less than $1,314,636.00 for such tax benefits.

13. Smartmatic International provided goods and services to Sequoia for which it has not been paid in full.  At all times relevant to this Complaint, including at the time of each of the 2009 Transfer and the 2010 Transfer (as defined below), Sequoia was indebted to Smartmatic International for such goods and services in an amount not less than $45,342.09.  On information and belief, the total amount of the debt owed by Sequoia to Smartmatic International, at all times relevant to this Complaint, may be $1,110,775.09.

14. Smartmatic Services provided goods and services to Sequoia for which it has not been paid in full.  At all times relevant to this Complaint, including at the time of each of the 2009 Transfer and the 2010 Transfer (as defined below), Sequoia was indebted to Smartmatic Services in the aggregate amount of not less than $199,997.03.

**B.     The 2009 Asset Purchase Agreement**

15. In 2009, Sequoia began experiencing cash flow challenges, including difficulties in meeting payroll.  This led Sequoia management to investigate potential purchasers or investors in Sequoia.

16. Sequoia and the State of New York Executive Department, Office of General Services were parties to Comptroller's Contract No. PC63813 for Voting

Systems and Related Services and Ballot Marking or Other Voting Devices Accessible to Individuals with Disabilities (as amended from time to time, the "NY Contract"). Pursuant to the NY Contract, for the period from January 23, 2008 through January 31, 2013, counties in New York could purchase electronic voting machines and other related goods and services from Sequoia through a requisition process under the terms and conditions set forth in the NY Contract.

17. In April 2009, Sequoia approached Dominion Canada about a possible transaction involving the NY Contract. Sequoia and Dominion Canada entered into an Asset Purchase Agreement, dated July 15, 2009 (the "2009 APA"), pursuant to which Dominion Canada acquired the NY Contract and Sequoia's rights under a related lease. In exchange, Dominion Canada agreed to pay Sequoia an aggregate of $2.366 million in cash and a percentage of any Qualified NYS Order or NYC Order (each as defined in the 2009 APA) in 2009 or 2010 (the "2009 Transfer").

18. On information and belief, numerous NY counties had already entered into individual contracts and/or placed orders with Sequoia under the umbrella of the NY Contract, and Sequoia had started to receive significant revenue for the sale of goods and the provisions of services under the NY Contract at the time of the 2009 Transfer.

19. On information and belief, the expected profit to Sequoia under the NY Contract would have been as high as $30 to $40 million for the sale of voting equipment plus substantial additional revenue for warranty and support services and ancillary products.

20. On information and belief, Dominion Canada paid Sequoia the $2.366 million in cash consideration under the 2009 APA, but there were no Qualified NYS Orders or NYC Orders so no additional consideration was paid to Sequoia.

21. On information and belief, the NY Contract and the individual contracts with New York counties entered into under the NY Contract constituted some of Sequoia's most valuable and most profitable assets.

22. Sequoia neither marketed the NY Contract to any party other than Dominion Canada nor shopped the offer from Dominion Canada to any other party. On information and belief, the assets sold under the 2009 APA were worth more than the consideration paid by Dominion Canada.

23. On information and belief, at the time of the 2009 Transfer, Sequoia had assets of approximately $56.3 million and liabilities of approximately $73.3 million. Accordingly, Sequoia was insolvent at the time of the 2009 Transfer.

C.   The 2010 Asset Purchase Agreement

24. The 2009 APA did not resolve Sequoia's cash flow difficulties, and within months after the closing of the 2009 APA, Sequoia began investigating the possibility of locating a potential purchaser.

25. In January 2010, Sequoia and Dominion opened discussions on a larger transaction between the two, and in February 2010, Sequoia and Dominion exchanged term sheets describing a potential transaction.

26. In term sheets circulated on or about February 11, 16, and 18, 2010, the parties discussed a purchase by Dominion of 90-98% of the equity interests in Sequoia

for a price to be determined. In connection with this deal, Dominion would enter into a one-year employment contract with Jack Blaine, Sequoia's chief executive officer, at an annual salary of $120,000 plus $30,000 in other benefits.

27.     In a March 5, 2010 letter of intent, Dominion US proposed to purchase substantially all of the assets of Sequoia (excluding accounts receivable, cash balances, and tax assets) for an aggregate purchase price of $9.5 million, consisting of $5 million in cash plus up to $4.5 million in contingent payments.

28.     On June 4, 2010, Sequoia and Dominion US entered into an Asset Purchase Agreement (the "2010 APA"). Under the 2010 APA, Dominion US purchased from Sequoia substantially all of the assets of Sequoia (again, excluding accounts receivable, cash balances, and tax assets) for an aggregate of $7.5 million, consisting of approximately $3 million in cash plus up to an aggregate of $4.5 million in contingent payments (the "2010 Transfer").

29.     At approximately the same time, Dominion Canada and Blaine entered into an employment agreement on substantially better terms than provided in the March 5, 2010 letter of intent. The Employment Agreement was for three years and provided Blaine with an annual salary of $350,000, annual living expenses of more than $50,000, a percentage of Dominion's revenue from non-US business generated by Blaine, together with a one-year salary and benefits severance package if he were terminated before the end of the three year term of the agreement.

30.     During the time of the negotiations with Dominion, Sequoia received at least one offer from a prominent company in the elections industry to purchase Sequoia's

assets and made an offer to another prominent company.  Though Sequoia did not pursue these offers, Plaintiffs believe that if Sequoia had pursued such offers, the competition for Sequoia's assets would have provided a safeguard against a fire sale of Sequoia's assets and would have resulted in a higher purchase price, including a higher guaranteed cash component of the purchase price.  On information and belief, some Sequoia management preferred one of these third-party offers to a sale of Sequoia's assets to Dominion.

31. Upon information and belief, Sequoia has received the cash consideration from Dominion US under the 2010 APA but none of the contingent payments.  It is not expected that the contingent payments will be paid under the terms of the 2010 APA.

32. Setting aside the $4.5 million contingent payments proposed by Dominion (which Plaintiffs understand were unlikely to ever be paid), Sequoia sold substantially all of its assets to Dominion US for $3 million, *i.e.*, $2 million less than the amount originally proposed by Dominion US and, upon information and belief, substantially less than a competing offer received from a third party.  In contrast, the employment agreement with Blaine, who was one of Sequoia's principal negotiators on the 2010 APA, improved substantially: salary from $120,000 to $350,000; annual benefits of $30,000 to more than $50,000; a one-year employment term to a three-year employment term; and the introduction of a one-year severance package.

33. On information and belief, at the time of the 2010 Transfer, Sequoia had assets of approximately $16.7 million and liabilities of approximately $24.8 million.  Accordingly, Sequoia was insolvent at the time of the 2010 Transfer.

# COUNT I
# FRAUDULENT TRANSFER
### (*Against Dominion Canada*)

34. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 33 above, as though fully set forth at length herein.

35. Sequoia received less than a reasonably equivalent value and less than fair consideration in exchange for the 2009 Transfer.

36. The 2009 Transfer was made (a) at a time when Sequoia was engaged or was about to engage in business activities and transactions for which the remaining assets of Sequoia were unreasonably small in relation to the business and transactions, (b) at a time when Sequoia intended to incur, or believed or should reasonably have believed that it would incur, debts beyond its ability to pay as they became due, (c) at a time when Sequoia was insolvent and/or (d) with the result that Sequoia became insolvent as a result of the 2009 Transfer.

37. At the time of the 2009 Transfer, Smartmatic International and Smartmatic Services were creditors of Sequoia.

38. Dominion Canada did not give reasonably equivalent value or fair consideration to Sequoia in exchange for the 2009 Transfer and did not enter into the 2009 Transfer in good faith.

39. Accordingly, the 2009 Transfer should be avoided and set aside as fraudulent under applicable law, including but not limited to N.Y. Debt. & Cred. Law §§ 273, 274 and 275; C.R.S. §§ 38-8-105 and 106; and/or Delaware Code tit. 6, §§ 1304 and 1305.

## COUNT II
## FRAUDULENT TRANSFER
### (*Against Dominion US*)

40. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 39 above, as though fully set forth at length herein.

41. Sequoia received less than a reasonably equivalent value and less than fair consideration in exchange for the 2010 Transfer.

42. The 2010 Transfer was made (a) at a time when Sequoia was engaged or was about to engage in business activities and transactions for which the remaining assets of Sequoia were unreasonably small in relation to the business and transactions, (b) at a time when Sequoia intended to incur, or believed or should reasonably have believed that it would incur, debts beyond its ability to pay as they became due, (c) at a time when Sequoia was insolvent and/or (d) with the result that Sequoia became insolvent as a result of the 2010 Transfer.

43. At the time of the 2010 Transfer, Smartmatic International and Smartmatic Services were creditors of Sequoia.

44. Dominion US did not give reasonably equivalent value or fair consideration to Sequoia in exchange for the 2010 Transfer and did not enter into the 2010 Transfer in good faith.

45. Accordingly, the 2010 Transfer should be avoided and set aside as fraudulent under applicable law, including but not limited to N.Y. Debt. & Cred. Law §§ 273, 274 and 275; C.R.S. §§ 38-8-105 and 106 and/or Delaware Code tit. 6, §§ 1304 and 1305.

WHEREFORE, Plaintiffs request entry of a judgment in their favor against Defendants as follows:

(a) For avoidance and recovery of the 2009 Transfer and the 2010 Transfer, or the value thereof;

(b) For interest on the amounts owed by Defendants to the full extent allowed under applicable law at the highest legal rate;

(c) For all attorneys' fees and costs under applicable law; and

(d) For such other and further relief as is just and proper.

Dated:   New York, New York
         June 28, 2013

**HOGAN LOVELLS US LLP**

By: /s/ David Michaeli
Ira S. Greene
Khang V. Tran
David R. Michaeli
875 Third Avenue
New York, NY 10022
Tel:   (212) 918-3000
Fax:   (212) 918-3100
Email:  Ira.Greene@hoganlovells.com
        Khang.Tran@hoganlovells.com
        David.Michaeli@hoganlovells.com

*Counsel for Smartmatic USA Corporation, Smartmatic International Corporation and Smartmatic Services Corporation*