# Exhibit D

Smartmatic Corporation's Motion for Conversion of Chapter 11 Case to Case Under Chapter 7

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 10-24238 HRT |
| SVS HOLDINGS, INC., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

**SMARTMATIC CORPORATION'S MOTION FOR**
**CONVERSION OF CHAPTER 11 CASE TO CASE UNDER CHAPTER 7**

Smartmatic Corporation, by its successor in interest, Smartmatic USA Corporation

(Smartmatic Corporation and Smartmatic USA Corporation are collectively referred to

herein as "Smartmatic"), by and through its undersigned attorneys, hereby moves

pursuant to sections 1112 of title 11 of the United States Code (the "Bankruptcy Code"),

for entry of an order converting this Chapter 11 case to a case under Chapter 7, and states

as follows[1]:

**PRELIMINARY STATEMENT**

1.      Certain insiders of the Debtor and other third parties received potential

avoidable preferential transfers and/or fraudulent transfers prior to the commencement of

this Chapter 11 case.   Despite filing its Chapter 11 petition more than two years ago, the

Debtor has failed to advance this Chapter 11 case in any substantive way.  The Debtor

---

[1]      Smartmatic is also filing a Motion for Authority and Standing to Prosecute Causes of Action on
behalf of the Debtor or, in the Alternative, for Appointment of a Trustee (the "Standing Motion") together
with this Motion.  Smartmatic requests that the Court grant the relief requested in the Standing Motion, in
which case Smartmatic would withdraw the instant Motion without prejudice.  But if the Court is not
inclined to grant the Standing Motion, Smartmatic respectfully requests that the Court convert this
bankruptcy case to a case under Chapter 7.

\\NY - 038124/000002 - 2389536 v5

has not filed a Plan nor commenced any actions to recover potential avoidable transfers. As discussed in further detail below, because of the Debtor's failure to prosecute such claims and the imminent expiration of the applicable statute of limitations, Smartmatic negotiated and entered into tolling agreements with potential defendants to preserve the estate's claims.

2. By this Motion, Smartmatic seeks conversion of this bankruptcy case to a case under Chapter 7 to allow a trustee prosecute the foregoing claims on behalf of the estate.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this Chapter 11 case pursuant to 28 U.S.C. §§ 157(a) and (b) and 1334(a) and (b). This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), as this matter concerns the administration of the Debtor's estate.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## BACKGROUND

5. The Debtor filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code on June 8, 2010 (the "Petition Date"). The Debtor continues to operate its business and possess its property as a debtor-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code.

6. No official committee of unsecured creditors has been formed in this case.

2

7.      The Debtor's primary asset is its 100% equity interest in non-debtor

Sequoia Voting Systems, Inc. ("Sequoia").  Sequoia provides electronic voting systems,

election-related technologies and support services to state and local governments in the

United States.

8.      On or about September 18, 2007, the Debtor acquired all of the issued and

outstanding shares of capital stock of Sequoia from Smartmatic in exchange for an

Unsecured Promissory Note dated November 5, 2007 in the principal amount of $2

million (the "Note") and certain earn out payments.

9.       Pursuant to a Note Purchase Agreement, dated May 28, 2008, among the

Debtor, Smartmatic, and certain other persons party thereto (the "NPA"), and in

settlement of certain litigation between the Debtor and Smartmatic concerning the Note,

the Debtor acquired the Note from Smartmatic in exchange for certain cash payments and

the rights to receive certain earn out payments of not less than $9 million in the aggregate

through December 31, 2011.

10.     The Debtor owed Smartmatic not less than $9,619,180.97 under the NPA as

of the Petition Date.

**A.      The Dominion Transactions**

11.     Sequoia and Dominion Voting Systems Corporation ("Dominion Canada")

are parties to an Asset Purchase Agreement dated July 15, 2009 (the "2009 APA"),

pursuant to which Sequoia assigned to Dominion Canada its rights and obligations under

certain contracts with the State of New York Executive Department, Office of General

3

Services and related leases and accounts receivable. In exchange, Dominion Canada

agreed to pay Sequoia an aggregate of $2,366,000 in cash and certain contingent

payments relating to future revenues under potential contracts with Nassau and New

York Counties in New York.

12.     On information and belief, based on discovery under Fed. R. Bankr. P.

2004, Sequoia was facing severe cash flow and liquidity problems when it entered into

the 2009 APA. As a result and on further information and belief, based on discovery

under Fed. R. Bankr. P. 2004, Sequoia sold its most significant and profitable assets at a

discount in order to meet pressing cash flow needs, such as payroll.

13.     Shortly after the closing under the 2009 APA, Sequoia and Dominion

Voting Systems, Inc. ("Dominion US" and together with Dominion Canada, collectively,

"Dominion"), a subsidiary of Dominion Canada, began discussing the possibility of a

larger deal between the two companies. In a March 5, 2010 letter of intent, Dominion US

proposed to purchase substantially all of the assets of Sequoia (excluding accounts

receivable, cash balances, and tax assets) for an aggregate purchase price of $9.5 million,

consisting of $5 million in cash plus up to $4.5 million in contingent payments. In term

sheets circulated around this time, Dominion US proposed to employ Blaine for one year

at an annual salary of $120,000 plus $30,000 in other benefits.

14.     After several months of negotiations, Sequoia and Dominion US entered

into an Asset Purchase Agreement dated June 4, 2010 (the "2010 APA"). Under the 2010

APA, Dominion US purchased substantially all of the assets of Sequoia (excluding

4

accounts receivable, cash balances, and tax assets) for a reduced purchase price

consisting of a cash payment of approximately $3 million plus up to an aggregate of $4.5

million in future payments contingent upon conditions that were unlikely to occur.

15.     At approximately the same time, Dominion Canada and Blaine entered into

an employment agreement on substantially better terms than provided in the March 5,

2010 letter of intent.  The Employment Agreement was for three years and provided

Blaine with an annual salary of $350,000, annual living expenses of more than $50,000, a

percentage of Dominion's revenue from non-US business generated by Blaine, together

with a one-year salary and benefits severance package if he were terminated before the

end of the three year term of the agreement.

16.     During the time of the negotiations with Dominion, Sequoia received an

offer from a prominent company in the elections machine industry to purchase its assets.

Though Sequoia did not pursue this offer, Smartmatic believes that if Sequoia had

pursued such offer, the competition for Sequoia's assets would have provided a safeguard

against a fire sale of Sequoia's assets and would have resulted in a higher purchase price,

including a higher guaranteed cash component of the purchase price.  On information and

belief, some Sequoia management preferred this third-party offer to a sale of Sequoia's

assets to Dominion.

17.     Sequoia has received most of the cash consideration under the 2010 APA

but none of the contingent payments.  It is not expected that the contingent payments will

be paid under the terms of the 2010 APA.

18.     Setting aside the $4.5 million contingent payments proposed by Dominion

(which Plaintiff understands were unlikely to ever be paid), Sequoia sold substantially all

of its assets to Dominion US for $3 million, i.e., $2 million less than the amount

originally proposed by Dominion US and, upon information and belief, substantially less

than a competing offer received from a third party.  In contrast, the employment

agreement with Blaine, who was one of Sequoia's principal negotiators on the 2010 APA,

improved substantially: salary from $120,000 to $350,000; annual benefits of $30,000 to

more than $50,000; a one-year employment term to a three-year employment term; and

the introduction of a one-year severance package.  The Debtor did not receive a

reasonably equivalent value for the assets sold under the 2010 APA.

19.     The asset sales by Sequoia in the 2009 APA and the 2010 APA may

constitute avoidable fraudulent transfers recoverable from Dominion Canada and

Dominion US, respectively, under the Bankruptcy Code and applicable state law.

**B.      Transfers to Jack Blaine**

20.     In the two years preceding the Petition Date (the "Insider Period"), Jack

Blaine ("Blaine") was an officer and director of both the Debtor and Sequoia.

Accordingly, Blaine was an insider of the Debtor under section 101(31) of the

Bankruptcy Code.

21.     On information and belief, based on the Statement of Financial Affairs filed

by the Debtor on June 22, 2010, the Debtor made prepetition transfers to Blaine during

the Insider Period aggregating not less than $303,047.  At the time of these transfers,

6

Blaine was purportedly a creditor of the Debtor. In addition, the Debtor did not receive a reasonably equivalent value for these transfers.

22.     Accordingly, the transfers may support causes of action under sections 547, 548, and 550 of the Bankruptcy Code. The existence of such claims against Blaine may justify the disallowance of Blaine's claims against the Debtor's estate pursuant to section 502 of the Bankruptcy Code.

**C.     The Debtor's Prosecution of this Case**

23.     Other than routine administrative tasks, such as the filing of schedules, statement of financial affairs and monthly operating reports, the Debtor has done little to prosecute this Chapter 11 case. The Debtor has not proposed a plan of reorganization or taken any other substantive action to administer the Debtor's estate.

24.     In particular, the Debtor has failed to investigate and prosecute causes of action for the benefit of creditors, including the causes of action described above. The majority of the activity in this case has involved investigation by Smartmatic, the Debtor's largest unsecured creditor, into potential causes of action that the Debtor could pursue for the benefit of creditors.

25.     Certain statutes of limitations under section 546 of the Bankruptcy Code were set to expire on or about June 8, 2012, the second anniversary of the Petition Date, which would have resulted in the loss to the Debtor's estate of valuable causes of action. In order to avoid a forfeiture of these valuable rights, which represent the principal means of recovery for unsecured creditors in this case, Smartmatic entered into tolling

agreements with Dominion, the Debtor, and Blaine. As of the date of this Motion, the

tolling period for the prosecution of the claims and causes of action described above will

expire on December 9, 2012.

### ARGUMENT

26.     If the Court does not grant the relief requested in the Standing Motion, *see*

*supra* footnote 1, Smartmatic requests that this Court convert this bankruptcy case to a

Chapter 7 case. An independent trustee in Chapter 7 would have the power to pursue the

Avoidance Actions and also bring this case to a timely resolution.

27.     Under the conversion statute as revised by the Bankruptcy Abuse

Prevention and Consumer Protection Act of 2005, an interested party seeking dismissal

or conversion of a Chapter 11 case to Chapter 7 must show cause. This Court has broad

discretion in assessing if cause to dismiss or convert exists. *See Hall v. Vance*, 887 F.2d

1041, 1044 (10th Cir. 1989). If cause is shown, the debtor can put on evidence of

"unusual circumstances" why dismissal or conversion would not be in the best interests

of creditors. If no such unusual circumstances exist, the court must either dismiss or

convert the case. *See* 11 U.S.C. § 1112(b); *In re ARS Analytical, LLC*, 433 B.R. 848,

861-62 (Bankr. D.N.M. 2010) (reciting process for dismissal or conversion under revised

section 1112(b)).

28.     Multiple causes support the conversion of this bankruptcy case to Chapter

7, including several of the enumerated reasons under section 1112(b)(4). First, according

to the Debtor's statement of financial affairs and the monthly reports filed to date, the

8

Debtor had no income for the two years preceding the Petition Date and has generated no income during the course of this Chapter 11 case. The Debtor has expended more than $26,000 in postpetition attorneys' fees, though there is no reasonable prospect of rehabilitation. *See ARS Analytical*, 433 B.R. at 862 (rehabilitation means more than reorganization and "contemplates the successful maintenance or reestablishment of the debtor's business operations"). Thus, cause exists to convert this case to Chapter 7 under section 1112(b)(4)(A) (for "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation").

29.     Cause also exists under section 1112(b)(4)(B) for the Debtor's gross mismanagement of the estate. The Debtor's near total inactivity during the duration of this case has resulted in the imminent running of the statute of limitations on Chapter 5 claims. Such claims represent the Debtor's principal asset, yet the Debtor has not, to Smartmatic's knowledge, invested any substantive time and attention to investigating and prosecuting these claims.

30.     Lastly, section 1112(b)(4)(J) relating to the debtor's "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court," also provides cause for conversion. The Debtor has failed to file any plan or disclosure statement, despite having had the benefit of Chapter 11 for more than two years. The inability to effectuate a plan is a foregone conclusion where, as is the case here, the debtor is merely a shell corporation. *See, e.g.*, *Hall*, 887 F.2d at 1044 ("[C]ourts have applied this ground [inability to effectuate a plan] where the debtor is a

9

corporate shell."); *In re Economy Cab & Tool Co.*, 44 B.R. 721, 725 (Bankr. D. Minn. 1984) (same).

31.      Because cause exists, the statute mandates dismissal or conversion unless the Debtor can demonstrate unusual circumstances why dismissal or conversion is not in the best interests of creditors.  The Debtor can demonstrate no such unusual circumstances because conversion would be in the best interests of creditors.  Moreover, the Debtor cannot satisfy section 1112(b)(2)(A) because there is no likelihood of plan confirmation within a reasonable period of time.

32.      Having satisfied the requirements for dismissal or conversion, Smartmatic submits that conversion to Chapter 7 is the appropriate remedy in this case.  Courts should consider a number of factors in deciding between dismissing or converting a Chapter 11 case, including the existence of preferential payments available for distribution to creditors; loss of rights occasioned upon dismissal of the case; ability of a Chapter 7 trustee to reach assets for creditors; and the preferences of creditors.  *See In re Gollaher*, 2011 WL 6176074, *3-*4 (10th Cir. B.A.P. 2011).  In this case, these factors support conversion to Chapter 7 where a trustee could pursue the Avoidance Actions for the benefit of creditors.  Smartmatic supports conversion to Chapter 7 instead of dismissal of this case.

WHEREFORE, Smartmatic respectfully requests that the Court (a) convert this case to a case under Chapter 7, and (b) grant such additional relief as the Court deems appropriate.

DATED: September 21, 2012

ROTHGERBER JOHNSON & LYONS LLP

*/s/ Brent R. Cohen*
Brent R. Cohen, No. 11297
Chad S. Caby, No. 30927
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202-5855
Tel: (303) 623-9000
Fax: (303) 623-9222
E-mail: bcohen@rothgeber.com
        ccaby@rothgerber.com

—and—

HOGAN LOVELLS US LLP
Ira S. Greene
Khang V. Tran
876 Third Avenue
New York, NY 10022
Tel: (212) 918-3000
Fax: (212) 918-3100
Email: Ira.Greene@hoganlovells.com
       Khang.Tran@hoganlovells.com

*Counsel for Smartmatic*

Case 1:13-cv-05349-KBF Document 33-4 Filed 09/09/13 Page 13 of 13

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 10-24238 HRT |
| SVS HOLDINGS, INC., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

---

**ORDER GRANTING SMARTMATIC CORPORATION'S MOTION FOR
CONVERSION OF CHAPTER 11 CASE TO CASE UNDER CHAPTER 7**

---

The above-entitled matter having come before the Court on Smartmatic's Motion for Conversion of Chapter 11 Case to Case Under Chapter 7 ("Motion"); the Court, having reviewed the pleadings filed herein and being otherwise fully advised in the premises, it is hereby

ORDERED that the Motion shall be, and hereby is, GRANTED.

DATED this _____ day of _____, 2012.

BY THE COURT:

_____
Howard R. Tallman, Chief Judge

\\NY - 038124/000002 - 2453232 v1