# Exhibit A

Memorandum of Law in Support of Plaintiffs' Motion to Remand and for Abstention

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

SMARTMATIC USA CORPORATION,                 :
SMARTMATIC INTERNATIONAL CORPORATION        :
and SMARTMATIC SERVICES CORPORATION,        :
                                            :
                        Plaintiffs,         :
                                            :
        – against –                         :
                                            :       No. 13-CV-05349 (KBF)
DOMINION VOTING SYSTEMS CORPORATION         :
and DOMINION VOTING SYSTEMS, INC.,          :
                                            :
                        Defendants.         :
                                            :
------------------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION TO REMAND AND FOR ABSTENTION


HOGAN LOVELLS US LLP
Ira S. Greene
Marc J. Gottridge
David R. Michaeli
875 Third Avenue
New York, NY 10022
Tel:    (212) 918-3000
Fax:    (212) 918-3100

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 4

      A.     The Parties to this Action and Sequoia ................................................... 4

      B.     Plaintiffs' Claims – Arising Exclusively Under State Law – in this Action .......... 5

             1.     Overview of Plaintiffs' Causes of Action .................................... 5

             2.     The 2009 Transfer ........................................................... 6

             3.     The 2010 Transfer ........................................................... 7

      C.     The SVS Bankruptcy Case................................................................. 9

      D.     This Action and its Removal.............................................................. 11

ARGUMENT ............................................................................................................ 12

I.     THIS COURT SHOULD REMAND THIS ACTION TO THE STATE  COURT FOR
     LACK OF FEDERAL SUBJECT MATTER JURISDICTION ..................................... 13

      A.     Defendants Bear the Burden of Establishing that Federal Subject Matter
            Jurisdiction Exists Based on the Complaint and the Current State of Facts......... 13

      B.     Plaintiffs' Claims Do Not "Arise Under" Title 11................................... 14

      C.     Plaintiffs' Claims Do Not "Arise In" a Case under Title 11................................. 15

      D.     Plaintiffs' Claims Do Not "Relate To" a Case under Title 11 .............................. 17

II.    EVEN IF **"RELATED TO"** JURISDICTION EXISTED, ABSTENTION IS
    MANDATORY PURSUANT TO 28 U.S.C. **§** 1334(C)(2) ............................................ 22

III.   IN THE ALTERNATIVE, THIS COURT SHOULD EXERCISE PERMISSIVE
    ABSTENTION OR REMAND THIS ACTION ON EQUITABLE GROUNDS ........... 25

CONCLUSION.......................................................................................................... 25

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

C<small>ASES</small>

Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC,
  No. 11 Civ. 2232 (NRB), 2011 WL 4965150 (S.D.N.Y. Oct. 19, 2011) ..........................17, 19

Baker v. Simpson,
  613 F.3d 346 (2d Cir. 2010)...................................................................................................15

Bank of New York v. Bank of Am.,
  861 F. Supp. 225 (S.D.N.Y. 1994) .......................................................................................12

BGC Partners, Inc. v. Avison Young (Canada), Inc.,
  919 F. Supp. 2d 310 (S.D.N.Y. 2013).................................................................................23

Blockbuster, Inc. v. Galeno,
  472 F.3d 53 (2d Cir. 2006)..............................................................................................13, 14

Celotex Corp. v. Edwards,
  514 U.S. 300 (1995)..............................................................................................................17

Fiala v. Met. Life Ins. Co.,
  899 N.Y.S.2d 531 (Sup. Ct. N.Y. Cnty. 2010) ...................................................................21

General Elec. Cap. Corp. v. Pro-Fac Cooperative, Inc.,
  No. 01 CIV. 10215 (LTS), 2002 WL 1300054 (S.D.N.Y. June 11, 2002)............12, 18, 19, 20

Grupo Dataflux v. Atlas Global Group, L.P.,
  541 U.S. 567 (2004)..............................................................................................................14

Herrick Co. v. SCS Commc'ns, Inc.,
  251 F.3d 315 (2d Cir. 2001).................................................................................................21

IIT v. Vencap, Ltd.,
  519 F.2d 1001 (2d Cir. 1975).................................................................................................4

In re Canion,
  196 F.3d 579 (5th Cir. 1999) ...............................................................................................21

In re Cuyahoga Equip. Corp.,
  980 F.2d 110 (2d Cir. 1992).................................................................................................17

In re DPH Holdings Corp.,
  448 Fed. App'x 134 (2d Cir. 2011).......................................................................................16

ii

In re Fairfield Sentry Ltd.,
    458 B.R. 665 (S.D.N.Y. 2011)...............................................................14, 16, 23

In re Leco Enters., Inc.,
    144 B.R. 244 (S.D.N.Y. 1992)...........................................................................23

In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,
    488 F.3d 112 (2d Cir. 2007)..............................................................................14

In re MetLife Demutualization Litig.,
    689 F. Supp. 2d 297 (E.D.N.Y.2010) ...............................................................21

In re NYSE Euronext S'holders/ICE Litig.,
    965 N.Y.S.2d 278 (Sup. Ct. N.Y. Cnty. 2013) .................................................21

In re Rhee,
    Adv. No. 11-03369, 2011 WL 5240152 (Bankr. S.D. Tex. 2011) .........................................21

In re Riverside Nursing Home,
    144 B.R. 951 (S.D.N.Y. 1992)...........................................................................25

In re Wood,
    825 F.2d 90 (5th Cir. 1987) ...............................................................................15

Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.,
    487 B.R. 158 (S.D.N.Y. 2013)...........................................................................14

Mt. McKinley Ins. Co. v. Corning Inc.,
    399 F.3d 436 (2d Cir. 2005)...............................................................................22

New Horizon of NY LLC v. Jacobs,
    231 F.3d 143 (4th Cir. 2000) .............................................................................21

New York v. Grasso,
    350 F. Supp. 2d 498 (S.D.N.Y. 2004).................................................................13

Owen Equip. & Erection Co. v. Kroger,
    437 U.S. 365 (1978)............................................................................................4

Pacor, Inc. v. Higgins,
    743 F.2d 984 (3d Cir. 1984)..............................................................17, 18, 21

Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.,
    639 F.3d 572 (2d Cir. 2011) ("Parmalat I")..................................................23, 24

Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.,
    671 F.3d 261 (2d Cir. 2012) ("Parmalat II") .................................................23, 24

iii

Post Investors LLC v. Gribble,
    No. 12 Civ. 4479 (ALC), 2012 WL 4466619 (S.D.N.Y. Sept. 27, 2012) ..............................23

Pullman Co. v. Jenkins,
    305 U.S. 534 (1939)..........................................................................................................14

Sealink Funding Ltd. v. Bear Stearns & Co.,
    No. 12 Civ. 1397 (LTS), 2012 WL 4794450 (S.D.N.Y. Oct. 9, 2012)............................19, 25

Shipping Fin. Servs. Corp. v. Drakos,
    140 F.3d 129 (2d Cir. 1998)..............................................................................................13

Stahl v. Stahl,
    No. 03 Civ. 0405 (VM), 2003 WL 22595288 (S.D.N.Y. Nov. 7, 2003) .................................12

Stoe v. Flaherty,
    436 F.3d 209 (3d Cir. 2006)..............................................................................................15

Things Remembered, Inc. v. Petrarca,
    516 U.S. 124 (1995)..........................................................................................................17

United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden
    Sq., Inc.,
    30 F.3d 298 (2d Cir. 1994).................................................................................................13

United States v. Town of N. Hempstead,
    610 F.2d 1025 (2d Cir. 1979)............................................................................................22

Vera v. Saks & Co.,
    335 F.3d 109 (2d Cir. 2003)..............................................................................................14

Weiss v. Hager,
    No. 11 CV 2740 (VB), 2011 WL 6425542 (S.D.N.Y. Dec. 19, 2011)............................12, 13

**STATUTES**

11 U.S.C. § 502(d) .............................................................................................................9

11 U.S.C. § 544..............................................................................................................9, 16

11 U.S.C. § 548.................................................................................................................9

11 U.S.C. § 550.................................................................................................................9

28 U.S.C. § 157(a) ............................................................................................................16

28 U.S.C. § 157(b) ............................................................................................................16

iv

28 U.S.C. § 1332(a)(1) ....................................................................................................4

28 U.S.C. § 1334 ....................................................................................................13, 23

28 U.S.C. § 1334(b) ........................................................................................... passim

28 U.S.C. § 1334(c)(1) ...............................................................................1, 13, 25

28 U.S.C. § 1334(c)(2) ....................................................................................... passim

28 U.S.C. § 1452(a) .................................................................................................13

28 U.S.C. § 1452(b) ..............................................................................1, 12, 13, 25

N.Y. C.P.L.R. § 503(a) ...........................................................................................11

Colo. Rev. Stat. § 38-8-105 ..................................................................................5

Colo. Rev. Stat. § 38-8-106 ..................................................................................5

Colo. Rev. Stat. § 38-8-110(a) .............................................................................5

Colo. Rev. Stat. § 38-8-110(b) .............................................................................5

Del. Code tit. 6, § 1304 .........................................................................................5

Del. Code tit. 6, § 1305 .........................................................................................5

Del. Code tit. 6, § 1309(1) ....................................................................................5

Del. Code tit. 6, § 1309(2) ....................................................................................5

N.Y. Debt. & Cred. Law § 273 ............................................................................5

N.Y. Debt. & Cred. Law § 274 ............................................................................5

## OTHER AUTHORITIES

1 Collier on Bankruptcy ¶ 3.01[2][e][iv] ........................................................15

Plaintiffs Smartmatic USA Corporation ("Smartmatic USA"), Smartmatic International Corporation ("Smartmatic International") and Smartmatic Services Corporation ("Smartmatic Services") (collectively, "Plaintiffs") respectfully submit this memorandum of law and the accompanying declaration of Ira S. Greene (the "Greene Decl.") in support of their motion to remand this action, filed in the Supreme Court of the State of New York, New York County (the "State Court"), to the State Court and for abstention, on the grounds that: (i) this Court lacks subject matter jurisdiction over this action; (ii) even if such jurisdiction existed on the theory that this action is "related to" a bankruptcy case, as provided in 28 U.S.C. § 1334(b), this Court would nonetheless be required to abstain from exercising such jurisdiction, as this action undoubtedly was "commenced, and can be timely adjudicated in," the State Court,  28 U.S.C. § 1334(c)(2); and (iii) alternatively, this Court should permissively abstain under 28 U.S.C. § 1334(c)(1) or remand on equitable grounds under 28 U.S.C. § 1452(b).

## PRELIMINARY STATEMENT

Smartmatic commenced this state law action in the State Court, seeking to avoid and recover from Defendants Dominion Voting Systems Corporation ("Dominion Canada") and Dominion Voting Systems, Inc. ("Dominion US") (collectively, "Dominion" or the "Defendants") certain fraudulent transfers that arose out of Dominion's acquisitions, in 2009 and 2010, of the principal assets of Sequoia Voting Systems, Inc. ("Sequoia") for far less than reasonably equivalent value or fair consideration.  Sequoia is, and at all relevant times was, indebted to Smartmatic.  In the two transactions challenged in this action, Sequoia transferred substantially all of its assets to Dominion, abjuring a competitive sale process and shunning other available alternatives that might have realized higher prices and larger cash components; the transfers were also tainted by a "sweetheart" employment contract that Dominion Canada gave to Sequoia's chief executive officer, who was one of Sequoia's chief negotiators with Dominion.

The **only** claims in this action are state law claims, which are asserted outside of any bankruptcy proceeding.  Defendants are not debtors in any bankruptcy proceeding, and neither is Sequoia.   Indeed, Defendants have vehemently objected to a proposed consolidation of Sequoia with the estate of its corporate parent, SVS Holdings, Inc. ("SVS"), as debtor in a pending Chapter 7 bankruptcy proceeding (the "SVS Bankruptcy Case").

Defendants have nonetheless removed the action **solely** on the theory that 28 U.S.C. § 1334(b) (conferring non-exclusive federal jurisdiction over "all civil proceedings arising under title 11 [i.e., the Bankruptcy Code], or arising in or related to cases under title 11") applies, because of certain supposed connections between this action and the SVS Bankruptcy Case.

Defendants' invocation of Section 1334(b) jurisdiction is erroneous as a matter of law.  In their Notice of Removal, they have failed to carry – and they cannot carry – their burden of establishing the existence of federal subject matter jurisdiction.

First, this is self-evidently not an action "arising under title 11," as it arises exclusively under state statutes, not the Bankruptcy Code.

Second, this action does not "arise in" any "case[] under title 11."  Defendants' contention that it does is based entirely on a hypothetical scenario involving the SVS bankruptcy proceedings which has not (and may never) come to pass, and which Defendants are vigorously fighting to prevent from ever occurring.  In their Notice of Removal, Defendants point out that the Trustee, appointed by the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court") in the SVS Bankruptcy Case (the "SVS Trustee"), has commenced an adversary proceeding against them (the "Colorado Action") to avoid the same fraudulent transfers that are at issue in this action; the SVS Trustee's Colorado Action is almost entirely dependent upon the Bankruptcy Court substantively consolidating SVS with its non-debtor

2

subsidiary, Sequoia.  <u>See</u> Greene Decl. Ex. B, ¶¶ 7-13.  Defendants assert that "**if it is**

**determined** in the Colorado Action that, through substantive consolidation of SVS and Sequoia,

the SVS Trustee has standing to bring fraudulent transfer claims related to Sequoia['s] assets,

**then** Smartmatic's claims in [this] Action <u>will</u> necessarily be subsumed into, and/or precluded

by" certain claims the SVS Trustee has asserted in the Colorado Action.  <u>Id.</u> ¶ 18 (emphasis

added).  This argument is purely speculative, based only on what Defendants say **might** happen

**if** the Bankruptcy Court, **after trial**, ultimately determines to consolidate SVS's estate with non-

debtor Sequoia.  Substantive consolidation has not occurred, nor will it occur in the near future

(if ever).  Defendants, moreover, strenuously oppose substantive consolidation, devoting the bulk

of their recently-filed 40 page-long motion to dismiss the SVS Trustee's complaint in the

Colorado Action (Greene Decl. Ex. G) to arguments against such consolidation.

 Whether the Complaint and Notice of Removal justify the conclusion that the claims in

this action **currently** "arise in" any bankruptcy proceeding cannot turn on **what may** (or may

not) happen in the Bankruptcy Court sometime in the distant future.  Such jurisdiction exists only

if Plaintiffs' claims would not exist but for the bankruptcy.  Here, however, Plaintiffs' claims

exist independently of the SVS Bankruptcy Case.  There is no "arising in" jurisdiction.

 <u>Third</u>, Defendants' reliance on the "related to" prong of section 1334(b) likewise fails.

That argument, too, is based principally on the possibility that the Bankruptcy Court may in the

future substantively consolidate the SVS estate with Sequoia – <u>i.e.</u>, "**[i]f** the SVS Trustee **were to**

**prevail** on his substantive consolidation theory, [this] Court **would have** 'related to' jurisdiction

over [this] Action" and in that event this action "**would be** 'related to' the SVS Bankruptcy . . . ."

Greene Decl. Ex. B, ¶ 24 (emphasis added).  Such hypothetical theories are insufficient, and the

supposed connection to the administration of a bankruptcy estate too remote, to support "related

to" jurisdiction.  Moreover, Defendants' alternative argument that, even absent substantive

consolidation, the claims asserted by Plaintiffs would operate to reduce the amount available for

distribution in the SVS bankruptcy proceeding is unavailing, both because that theory fails as a

matter of law and because the facts do not support it.

 Finally, even if "related to" jurisdiction under section 1334(b) existed, 28 U.S.C. §

1334(c)(2) provides that where (as here) there is no other basis for original federal jurisdiction,

the Court "shall abstain from hearing such proceeding if an action is commenced, and can be

timely adjudicated in a State forum of appropriate jurisdiction."  Such abstention is mandatory;

this case was commenced in the State Court and that court unquestionably can "timely

adjudicate" it.  And even if abstention were not mandated, the relevant factors all favor

permissive abstention or equitable remand of this action to the State Court.

 Accordingly, this Court should grant Plaintiffs' motion to remand and for abstention.

## STATEMENT OF FACTS

**A.** **The Parties to this Action and Sequoia**

 Plaintiff Smartmatic USA is a Delaware corporation with its principal place of business

in Florida.  Greene Decl. Ex. A, ¶ 3.  Plaintiffs Smartmatic International and Smartmatic

Services are both Barbados corporations with principal places of business there.  Id. ¶¶ 4, 5.

 Defendant Dominion Canada is a Canadian corporation with its principal place of

business in Canada.  Greene Decl. Ex. A, ¶ 6.  Defendant Dominion US is a Delaware

corporation with its principal place of business in Colorado.  Id. ¶ 7.[1]  Both Defendants are

---

[1] Because there are both Delaware corporations and corporations incorporated in other countries on either side of the caption, there is no diversity jurisdiction.  The diversity statute, 28 U.S.C. § 1332(a)(1), "and its predecessors have consistently been held to require complete diversity of citizenship," so that "diversity jurisdiction does not exist unless each defendant is a citizen of a different state from each plaintiff," Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) (emphasis in original), and such jurisdiction is also "defeated by the presence of aliens both as plaintiffs and as defendants." IIT v. Vencap, Ltd., 519 F.2d 1001, 1015 (2d Cir. 1975).  Not surprisingly, the

registered as foreign corporations in New York and have appointed a registered agent to receive process here.  Id. ¶ 8.

Sequoia, the alleged fraudulent transferor, was in the business of providing electronic voting systems, election technologies and related support services to state and local governments, including – through a contract with the State of New York – to many counties in New York. Greene Decl. Ex. A, ¶ 11.  Smartmatic USA's predecessor in interest formerly owned Sequoia, but divested itself of any interest in Sequoia in 2007; all three Plaintiffs are, however, creditors of Sequoia.  Id. ¶¶ 12-14.  Sequoia is not a debtor in any bankruptcy proceeding.

**B.**     **Plaintiffs' Claims – Arising Exclusively Under State Law – in this Action**

    **1.**     **Overview of Plaintiffs' Causes of Action**

In the Complaint, Plaintiffs assert two causes of action, each seeking to avoid and set aside as fraudulent under applicable state laws – including N.Y. Debt. & Cred. Law §§ 273, 274 and 275, Colo. Rev. Stat. §§ 38-8-105 and 106 and Del. Code tit. 6, §§ 1304 and 1305 – two transfers made by Sequoia: the transfer of certain Sequoia assets to Dominion Canada in 2009 (the "2009 Transfer") and the transfer of most of Sequoia's remaining assets to Dominion US in 2010 (the "2010 Transfer").  See Greene Decl. Ex. A, ¶¶ 34-45.  The limitations period for Plaintiffs' claims under the Delaware and Colorado fraudulent transfer statutes is four years.  See Colo. Rev. Stat. § 38-8-110(a),(b); Del. Code. tit. 6, § 1309(1), (2).  This action was commenced shortly before that period expired with respect to the 2009 Transfer.

Plaintiffs assert no claims under the Bankruptcy Code or any other federal law.

Plaintiffs allege that each of them is, and at all times relevant to the Complaint was, a creditor of Sequoia's.  See Greene Decl. Ex. A, ¶¶ 12-14.  In particular, Sequoia is (and was)

---

Defendants' Notice of Removal does not even refer to diversity jurisdiction, or any basis of federal jurisdiction other than 28 U.S.C. § 1334(b).

indebted to Smartmatic USA in the amount of $1,314,636.00, to Smartmatic International in an amount not less than $45,342.09 (and possibly as high as $1,110,775.09), and to Smartmatic Services in an amount not less than $199,997.03.  Id.  Plaintiffs also allege that, in transactions that closed in July 2009 and June 2010 (described below), Sequoia sold to Defendants substantially all of its assets, including its most valuable contracts with the State of New York, and that those sales, which generated aggregate cash proceeds to Sequoia of approximately $5.366 million, represented a gross undervaluation of Sequoia's assets.  Id. ¶¶ 16-33.  Plaintiffs assert that these asset transfers, for tens of millions of dollars below the reasonably equivalent or fair value, and made when Sequoia was insolvent, are constructively fraudulent as to Smartmatic as a creditor of Sequoia's.  Smartmatic therefore seeks to avoid and recover those transfers (or their value) under applicable state fraudulent transfer law.

### 2.    The 2009 Transfer

In 2009, with Sequoia experiencing cash flow challenges (including difficulties meeting payroll), Sequoia's management commenced investigating potential purchasers or investors. Greene Decl. Ex. A, ¶ 15.  In April 2009, Sequoia approached Dominion Canada about a possible transaction involving Sequoia's contract with the State of New York for certain voting systems and devices, pursuant to which counties in New York could purchase electronic voting machines and related goods and services from Sequoia (the "NY Contract").  Id. ¶¶ 16, 17. Sequoia and Dominion Canada entered into an Asset Purchase Agreement, dated July 15, 2009 (the "2009 APA"), by which Dominion Canada acquired from Sequoia both the NY Contract and Sequoia's rights under a related lease for $2.366 million in cash plus contingent amounts calculated as percentages of certain orders that might be made under the NY Contract.  Id. ¶ 17.

At the time of the 2009 Transfer, many New York counties had already entered into individual contracts, and/or placed orders with, Sequoia under the umbrella of the NY Contract,

and Sequoia had started to receive significant revenue under the NY Contract.  Greene Decl. Ex. A, ¶ 18.  The expected profit to Sequoia under the NY Contract would have been in the range of $30-40 million for the sale of voting equipment plus substantial additional revenue for warranty and support services and ancillary products.  Id. ¶ 19.  Nevertheless, Sequoia made the 2009 Transfer to Dominion Canada – selling some of its most valuable and profitable assets for merely $2.366 million (no additional contingent payments were ever made to Sequoia by Dominion Canada) – without either marketing the NY Contract to any other party or "shopping" Dominion Canada's offer to any other party.  Id. ¶¶ 20-22.

When it made the 2009 Transfer, Sequoia was insolvent, as it had assets of approximately $56.3 million and liabilities of approximately $73.3 million.  Greene Decl. Ex. A, ¶ 23.

### 3.     The 2010 Transfer

Within months of the closing of the transaction under the 2009 APA, and faced with continued cash flow difficulties that were not resolved by the consideration it received in the 2009 Transfer, Sequoia began investigating the possibility of locating a potential purchaser.  Greene Decl. Ex. A, ¶ 24.  In January 2010, Sequoia and Dominion commenced discussions about a larger transaction between them, and in February 2010, they discussed the possible purchase by Dominion of 90% to 98% of the equity interests in Sequoia for a price to be determined; it was also then contemplated that Dominion would employ Sequoia's chief executive officer Jack Blaine ("Blaine") at an annual salary of $120,000 plus $30,000 in other benefits.  Id. ¶¶ 25-26.  After entering into a letter of intent dated March 5, 2010 for a deal that would have been more lucrative for Sequoia,[2] on June 4, 2010 Sequoia and Dominion US entered into an Asset Purchase Agreement (the "2010 APA") pursuant to which Dominion US

---

[2] In that letter of intent, Dominion US proposed to purchase substantially all of Sequoia's assets, excluding accounts receivable, cash balances and tax assets, for an aggregate purchase price of $9.5 million, consisting of $5 million in cash and up to $4.5 million in contingent payments.  Greene Decl. Ex. A, ¶ 27.

purchased from Sequoia substantially all of its remaining assets (excluding accounts receivable, cash balances and tax assets) for the sum of $7.5 million, consisting of approximately $3 million in cash plus up to $4.5 million in contingent payments (the "2010 Transfer").  Id. ¶ 28.

At approximately the same time, Dominion Canada entered into an employment agreement with Blaine (one of Sequoia's principal negotiators on the 2010 APA) on terms substantially more favorable to him than Dominion had offered him previously.  Under that agreement, Blaine became an employee of Dominion Canada for a three-year term, with an annual salary of $350,000, annual living expenses of more than $50,000, the right to a percentage of Dominion's revenue from non-US business generated by Blaine, and – in the event his employment was terminated before the end of the agreed three-year term – one year of salary ($350,000) and a severance package of benefits.  Greene Decl. Ex. A, ¶ 29.

Sequoia received the cash consideration due from Dominion US under the 2010 APA (approximately $3 million) but none of the contingent payments; no contingent payments are expected to be paid.  Greene Decl. Ex. A, ¶ 31.  Sequoia therefore effectively sold all of its assets remaining after the 2009 Transfer to Dominion US for $3 million, which was not only $2 million in cash less than the amount proposed just three months earlier by Dominion, but also substantially less than a competing offer from a third party.  Id. ¶ 32.  Meanwhile, and in contrast, Blaine – while negotiating the deal on behalf of Sequoia – vastly improved his own employment agreement with Dominion, increasing his annual salary from $120,000 to $350,000, sweetening his annual benefits from $30,000 to more than $50,000, lengthening the term of his employment from one year to three years, and obtaining a lucrative severance package.  Id.

While it negotiated the 2010 APA with Dominion US, Sequoia received at least one competing offer from a prominent company in the elections industry to purchase Sequoia's

assets.  Greene Decl. Ex. A, ¶ 30.  Sequoia, however, did not pursue competing offers, even though competition would have prevented a fire sale of substantially all of Sequoia's remaining assets and would have resulted in a higher purchase price (including a higher guaranteed cash component); Sequoia turned its back on competing offers although some members of Sequoia management – other than Blaine, of course – preferred a third-party offer to the sale of Sequoia's remaining assets to Dominion US under the 2010 APA.  Id.

At the time of the 2010 Transfer, as at the time of the 2009 Transfer, Sequoia was insolvent.  In 2010, it had assets of approximately $16.7 million and liabilities of approximately $24.8 million.  Greene Decl. Ex. A, ¶ 33.

## C.  The SVS Bankruptcy Case

On June 8, 2010, just four days after the 2010 APA was executed and the 2010 transfer closed, SVS filed a voluntary petition under Chapter 11 of the Bankruptcy Code, thereby commencing the SVS Bankruptcy Case.  On October 16, 2012, the Bankruptcy Court entered an order converting the SVS Bankruptcy Case to a Chapter 7 proceeding, see Greene Decl., Ex. D, and Tom H. Connolly was appointed as the SVS Trustee.  See Greene Decl., Ex. E.

On December 7, 2012, the SVS Trustee commenced the Colorado Action, as an adversary proceeding within the SVS Bankruptcy Case, against Dominion.  See Greene Decl. Ex. F.  In the first claim of his Complaint, the SVS Trustee seeks the substantive consolidation of SVS and non-debtor Sequoia.  Id. ¶¶ 35-37.  The remaining nine claims asserted by the SVS Trustee, under both the Bankruptcy Code (11 U.S.C. §§ 502(d), 544, 548 and 550) and under the Colorado and Delaware fraudulent transfer statutes, seek avoidance of Sequoia's fraudulent transfers, recovery of their value, and disallowance of Defendants' claims in the SVS Bankruptcy Case as a consequence of their receipt of Sequoia's fraudulent transfers.  Id. ¶¶ 45-91.

9

Of those nine claims, all but two (i.e., Counts IV and IX) are asserted on behalf of Sequoia itself and therefore necessarily flow from, and assume that the Bankruptcy Court will eventually order, substantive consolidation of Sequoia with the SVS estate.  Absent such consolidation, the SVS Trustee could not challenge and seek relief for fraudulent transfers made by Sequoia, which is not a debtor in the SVS Bankruptcy Case.  Unless and until the Bankruptcy Court orders the substantive consolidation of the two entities (i.e., the debtor SVS and the non-debtor Sequoia), Sequoia's assets and liabilities are, and will continue to be, treated as separate and distinct from those of SVS.

The remaining two claims (Counts IV and IX) are asserted on behalf of SVS as a creditor of its subsidiary Sequoia, in an amount not less than $1,280,385.92.  See Greene Decl. Ex. F,  ¶¶ 52, 79.  These are, as Defendants themselves have argued in their motion to dismiss the complaint there, the only claims in the Colorado Action that could survive if substantive consolidation is denied.  See Greene Decl. Ex. G at 2 ("The only claims that do not rely on substantive consolidation are Counts IV and IX.  The SVS Trustee brings Counts IV and IX on behalf of SVS rather than on behalf of SVS's creditors.").

On June 19, 2013, Defendants moved to dismiss the SVS Trustee's complaint in the Colorado Action, arguing principally that "Count I must be dismissed because there is no legal basis for substantive consolidation of SVS with Sequoia."  Greene Decl. Ex. G at 8.  Indeed, Defendants devote 22 of the 40 pages of their motion to dismiss to this argument, arguing that: (a) the assets and liabilities of a debtor under the Bankruptcy Code cannot, as a matter of law, be substantively consolidated with those of a non-debtor (see id. at 8-15); (b) substantive consolidation in the Colorado Action would be contrary to the equitable nature of that doctrine (see id. at 15-18); (c) the SVS Trustee's claim for substantive consolidation deprives Defendants

10

of due process of law (see id. at 18-19); (d) the SVS Trustee's claim for substantive

consolidation violates the Federal Rules of Civil Procedure (see id. at 19-20); and (e) in any

event, "the SVS Trustee's bald allegations regarding the relationship between SVS and Sequoia,

even if accepted as true, fail to establish a prima facie basis for substantive consolidation" (id. at

20; see id. at 20-28).  As Defendants correctly point out in their motion to dismiss the complaint

in the Colorado Action: "Sequoia is **not a debtor in any bankruptcy case**, and its property is

not, and never was, subject to the Court's jurisdiction."  Id. at 3 (emphasis in original).  Without

substantive consolidation, then, all but two of the SVS Trustee's claims fail.[3]

    The SVS Trustee has opposed the motion to dismiss, and oral argument on that motion is

scheduled before the Bankruptcy Court on September 26, 2013.  Greene Decl. ¶ 9.

## D.    This Action and its Removal

    On June 28, 2013, Plaintiffs filed their Complaint in this action in State Court.  Greene

Decl. Ex. A.  Plaintiffs served the Summons and Complaint on Defendants' authorized New

York agents for service of process (see supra pp. 4-5) on July 1, 2013.  Greene Decl. ¶ 3.

    On July 31, 2013, Defendants filed their Notice of Removal, removing this action to this

Court, solely on the basis of alleged federal bankruptcy jurisdiction under 28 U.S.C. § 1334(b).

Greene Decl. Ex. B.  Also on August 1, 2013, Defendants moved to transfer venue to the United

States District Court for the District of Colorado (the "Transfer Motion"); on August 16, 2013,

they moved to dismiss this action or in the alternative to stay it (the "Motion to Dismiss").[4]

Plaintiffs are simultaneously submitting a memorandum of law in opposition to Defendants'

---

[3] Defendants have moved for the dismissal of Counts IV and IX on other grounds.  See Greene Decl. Ex. G at 32-38.

[4] In neither motion do Defendants deny either that they are subject to personal jurisdiction in New York or that venue in New York County, as authorized by N.Y. C.P.L.R. § 503(a) (see Greene Decl. Ex. A,  ¶ 9), is proper.

Motion to Transfer, Greene Decl. ¶ 5, and will later submit their opposition to the Motion to Dismiss.

The Defendants' Transfer Motion and Motion to Dismiss, however, can only be considered **after** the Court determines the instant motion to remand and for abstention – and only **if** this Court denies this motion. This motion, after all, raises only threshold issues: (a) whether federal subject matter jurisdiction exists; and (b) even if it does, whether this Court is nevertheless mandated to abstain from exercising such jurisdiction. If this motion is granted, Defendants' motions would be rendered moot, and this Court could not reach their merits.[5]

## ARGUMENT

This motion should be granted, and the action remanded to the State Court, for any one of three reasons: <u>First</u>, federal subject matter jurisdiction is lacking, because 28 U.S.C. § 1334(b), the only jurisdictional provision on which Defendants rely, does not confer jurisdiction over the action. <u>Second</u>, and in the alternative, even if the Court had subject matter jurisdiction under the "related to cases under title 11" prong of 28 U.S.C. § 1334(b), it nonetheless must abstain from exercising such jurisdiction pursuant to 28 U.S.C. § 1334(c)(2) because the action was filed in

---

[5] <u>See, e.g.</u> <u>Weiss v. Hager</u>, No.11 CV 2740 (VB), 2011 WL 6425542, at *2 (S.D.N.Y. Dec. 19, 2011) ("Because plaintiff's motion to remand challenges the Court's subject matter jurisdiction to hear this case, the Court will address it first"; the Court granted plaintiff's motion to remand and denied as moot defendants' motion to dismiss); <u>General Elec. Cap. Corp. v. Pro-Fac Cooperative, Inc.</u>, No. 01 CIV. 10215 (LTS), 2002 WL 1300054 (S.D.N.Y. June 11, 2002) (granting plaintiff's motion to remand removed action for lack of bankruptcy jurisdiction and for abstention and denying as moot defendants' cross-motion to transfer venue to district where the allegedly related bankruptcy proceeding was pending); <u>Bank of New York v. Bank of Am.</u>, 861 F. Supp. 225, 228-29 (S.D.N.Y. 1994) (motion to remand for lack of subject matter jurisdiction must be "examined before any other matter" because "fundamental principles of American jurisprudence forbid the Court from acting in the absence of subject matter jurisdiction," without which it has "no power but to strike the case from the docket"; plaintiffs' motion to remand granted and defendants' motions, including to dismiss and for a stay, were not addressed) (citations omitted); additional cases cited at pages 3-4 of Plaintiffs' memorandum of law in opposition to the Transfer Motion, filed simultaneously with this motion. Even where (unlike this case), a remand motion is made solely on equitable grounds under 28 U.S.C. § 1452(b) and not for lack of subject matter jurisdiction, courts decide the remand motion before considering motions made by the defendant. <u>See, e.g.</u>, <u>Stahl v. Stahl</u>, No. 03 Civ. 0405 (VM), 2003 WL 22595288 (S.D.N.Y. Nov. 7, 2003) (granting plaintiff's motion to remand action to state court pursuant to 28 U.S.C. § 1452(b) and denying as moot defendant's motion to transfer venue to another district where the allegedly related bankruptcy proceeding was pending).

the State Court, where it "can be timely adjudicated." <u>Third</u>, and also in the alternative, even if subject matter jurisdiction existed and abstention were not mandatory, this court should nevertheless exercise its authority under 28 U.S.C. § 1334(c)(1) to abstain or under 28 U.S.C. § 1452(b) to remand the action on equitable grounds.

## I. THIS COURT SHOULD REMAND THIS ACTION TO THE STATE COURT FOR LACK OF FEDERAL SUBJECT MATTER JURISDICTION

### A. Defendants Bear the Burden of Establishing that Federal Subject Matter Jurisdiction Exists Based on the Complaint and the Current State of Facts

The district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The statute under which Defendants removed the action requires that the "district court has jurisdiction of [the removed] claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). The general rule that the proponent of federal subject matter jurisdiction has the burden of establishing it applies to removed actions. <u>See, e.g.</u>, <u>Blockbuster, Inc. v. Galeno</u>, 472 F.3d 53, 56-58 (2d Cir. 2006). "Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper." <u>United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Sq., Inc.</u>, 30 F.3d 298, 301 (2d Cir. 1994). Moreover, "[w]hen considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff." <u>Weiss v. Hager</u>, No. 11 CV 2740 (VB), 2011 WL 6425542, at *2 (S.D.N.Y. Dec. 19, 2011); <u>see also</u> <u>New York v. Grasso</u>, 350 F. Supp. 2d 498, 508 (S.D.N.Y. 2004) ("In addressing the instant motion to remand, the Court has of necessity treated the allegations of the complaint as true" for "purposes of determining the Court's jurisdiction"); <u>cf.</u> <u>Shipping Fin. Servs. Corp. v. Drakos</u>, 140 F.3d 129, 131 (2d Cir. 1998)

(subject matter "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it").

The subject matter "jurisdiction of the court depends upon the state of things at the time of the action brought." Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570 (2004) (citation and quotation marks omitted). Jurisdictional facts are generally "evaluate[d] . . . on the basis of the pleadings, viewed at the time when [the] defendant files the notice of removal." Blockbuster, 472 F.3d at 56-57; see also Vera v. Saks & Co., 335 F.3d 109, 116 n.2 (2d Cir. 2003) ("we generally evaluate a defendant's right to remove a case to federal court at the time the removal notice is filed") (citing Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939) (defendant's right to remove "was to be determined according to the plaintiffs' pleading at the time of the petition for removal")). Finally, "out of respect for the limited jurisdiction of the federal courts and the rights of the states," any "doubts" must be resolved "against removability." In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007) (citation omitted).

As shown below, Defendants cannot carry their burden of establishing that any of the three species of bankruptcy jurisdiction recognized by 28 U.S.C. § 1334(b) – "arising under," "arising in," or "related to" jurisdiction – exists based on the Complaint, the Notice of Removal and the "state of things at the time of the action brought." Grupo Dataflux, 541 U.S. at 570.

###  B.    Plaintiffs' Claims Do Not "Arise Under" Title 11

"Arising under" jurisdiction exists where a plaintiff's "causes of action [are] created by Title 11." Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P., 487 B.R. 158, 161-62 (S.D.N.Y. 2013); see also id. at 162 ("'Arising under' jurisdiction plainly does not exist in this case: none of plaintiffs' causes of action are asserted under a provision of Title 11 of the Bankruptcy Code."); In re Fairfield Sentry Ltd., 458 B.R. 665, 675 (S.D.N.Y. 2011) ("arising

14

under" jurisdiction was lacking when "[n]either the causes of action nor substantive rights

claimed in these cases are created by the Bankruptcy Code").

     None of the claims asserted by Smartmatic in this action was created by any provision of

Title 11.  Rather, both claims contained in the Complaint are state law statutory causes of action.

Although Defendants, in their Notice of Removal, half-heartedly refer to "arising under"

jurisdiction, see Greene Decl. Ex. B,  ¶ 15, they do not even attempt to explain how Plaintiffs'

claims could "arise under" the Bankruptcy Code.  Such jurisdiction is plainly absent here.

### C.    Plaintiffs' Claims Do Not "Arise In" a Case under Title 11

     Nor do Plaintiffs' claims fall within "arising in" jurisdiction, which "covers claims that

'are not based on any right expressly created by [T]itle 11, but nevertheless, would have no

existence outside of the bankruptcy.'"  Baker v. Simpson, 613 F.3d 346, 351 (2d Cir. 2010)

(alteration in original) (quoting In re Wood, 825 F.2d 90, 97 (5th Cir. 1987)).  The leading

bankruptcy treatise explains that the category of claims which "arise in" a case under Title 11

include "such things as allowance and disallowance of claims, orders in respect of obtaining

credit, determining the dischargeability of debts, discharges, confirmations of plans and like

matters.  In none of these instances is there a 'cause of action' created by statute, nor could any

of the matters illustrated have been the subject of a lawsuit absent the filing of a bankruptcy

case."  1 Collier on Bankruptcy ¶ 3.01[2][e][iv] at 3-21.  See also Stoe v. Flaherty, 436 F.3d 209,

216 (3d Cir. 2006).

     Plaintiffs' fraudulent transfer claims in this action do not "arise in" the SVS Bankruptcy

Case.  Those claims are asserted under state law and are based on transfers made by Sequoia

which – as Defendants themselves have emphasized (see supra p. 11) – is not a debtor in any

bankruptcy case; the transfers also pre-dated the commencement of the SVS Bankruptcy

Case.  Plaintiffs' claims do not owe their existence, either legally or practically, to the existence

15

of the SVS Bankruptcy Case, but are instead, separate from and independent of that case, and therefore fall outside the category of "core" bankruptcy matters that are within the "arising under" jurisdiction of 28 U.S.C. § 1334(b).[6]

Defendants' contrary contention is based almost entirely on a hypothetical set of facts that do not now exist and may never exist – i.e., a scenario in which the Bankruptcy Court, overruling Defendants' own virulent objections, may ultimately determine to substantively consolidate the estate of SVS and non-debtor Sequoia in the SVS Bankruptcy Case and thereby bring Plaintiffs' non-Bankruptcy Code claims against a non-debtor within the scope of the SVS Trustee's claims.  Defendants' Notice of Removal thus posits the existence of "arising in" jurisdiction on the basis of their hypothesis of what supposedly "**will**" happen "**if it is determined**" in the Colorado Action that, through substantive consolidation of SVS and Sequoia, the SVS has standing to bring fraudulent transfer claims related to Sequoia['s] assets."  Greene Decl. Ex. B, ¶ 18 (emphasis added).  Defendants ignore the rule that the existence of federal jurisdiction must be determined on the basis of the actual pleadings and the facts in existence at the time of removal, rather than conjecture about what might happen in another court in the

---

[6] The cases cited by Defendants in their Notice of Removal (Greene Decl. Ex. B) do not alter this conclusion.  In re DPH Holdings Corp., 448 Fed. App'x 134, 136 (2d Cir. 2011) (cited at ¶ 15) involved an adversary proceeding in which 16 of the 18 contracts at issue were "post-petition contracts" to which the debtors were parties and "which are part of the estate."  Here, in contrast, the only claims are fraudulent conveyance claims challenging contracts and transfers that were made pre-petition and, more importantly, were made exclusively by non-debtors and are not part of the SVS estate.  The remaining cases (cited at ¶¶ 17 through 19) all concerned claims by bankruptcy trustees pursuant to 11 U.S.C. § 544.  However, Plaintiffs are not pursuing any claims under that (or any other) provision of the Bankruptcy Code; they could not do so, as a matter of law, because Section 544 grants rights only to a bankruptcy trustee.

Defendants' demand for a jury trial (see Docket Entry No. 13) is also "probative of the non-core nature of these claims," Fairfield Sentry, 458 B.R. at 684; see also id. at 674 ("Core claims are those proceedings 'arising under title 11' and proceedings that 'arise in' cases under title 11.") (quoting 28 U.S.C. § 157(a)-(b)).

future.  See supra p. 14.  On the basis of the facts and claims as they actually exist, Defendants' argument for "arising in" jurisdiction is without merit.[7]

### D.   Plaintiffs' Claims Do Not "Relate To" a Case under Title 11

Equally unavailing is Defendants' assertion that Smartmatic's claims in this action are "related" to the SVS Bankruptcy Case.  See Greene Decl. Ex. B, ¶¶ 21-28.  Jurisdiction over non-core claims that are "related to cases under Title 11" exists if the outcome of such claims "might have any 'conceivable effect' on the bankrupt estate."  In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir. 1992).  Although this formulation is broad, the Supreme Court has cautioned that "'related to' jurisdiction cannot be limitless," Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995), and such jurisdiction "may extend more broadly in" Chapter 11 reorganization cases than in Chapter 7 liquidation cases.  Id. at 310.  In addition, "any contingencies cannot be too far removed; too many links in the chain of causation before the bankruptcy estate is affected may preclude 'related to' jurisdiction."  Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC, No. 11 Civ. 2232 (NRB), 2011 WL 4965150, at *3 (S.D.N.Y. Oct. 19, 2011).

Thus, for example, in Pacor, Inc. v. Higgins, 743 F.2d 984, 995 (3d Cir. 1984), overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995), the court affirmed an order remanding to a state court a state-law action between two non-debtors as not "related to" the debtor's bankruptcy estate.  The court reasoned that the action was "a mere precursor to the potential third party claim for indemnification" by the defendant against the debtor; "[s]ince the [debtor] is not a party to the [main] action, it could not be bound by res

---

[7] The Bankruptcy Court is hearing Defendants' motion to dismiss the Trustee's action on September 26, 2013, but that motion provides no occasion for the Bankruptcy Court to order substantive consolidation.  Rather, a decision **granting** that motion will put paid to Defendants' speculation that the SVS estate may be substantively consolidated with Sequoia, but a decision **denying** that motion would **not** determine whether such substantive consolidation should actually  occur.  In the latter event, the issue would then remain to be tried (no earlier than August 2014), see Greene Decl. ¶ 10, and Defendants presumably will continue to energetically oppose such consolidation.

judicata or collateral estoppel" and a judgment in the main action "could not give rise to any automatic liability on the part of the estate. . . . There would therefore be no effect on [the] administration of the estate, until such time as [defendant] may choose to pursue its third party claim" against the debtor.  Id.

In this case, too, there is no claim against the estate of a debtor in bankruptcy proceedings and judgment in this action will have no effect on administration of the SVS estate.  Neither a judgment for Plaintiffs nor a judgment for Defendants "would 'affect how much property is available for distribution to the creditors of a bankruptcy estate or the allocation of property available among such creditors'", nor could the outcome "alter the debtor's rights or liabilities." General Elec. Cap. Corp. v. Pro-Fac Coop., Inc., No. 01 Civ. 10215, 2002 WL 1300054, at *2 (S.D.N.Y. June 11, 2002) (citation omitted).  In General Elec. Cap., Judge Swain remanded an action to a New York state court for lack of such jurisdiction (and alternatively on abstention grounds).  Plaintiff, an equipment lessor, sued defendants for the unsatisfied obligations of the lessee, which was the debtor in a Chapter 7 proceeding.  Defendants were affiliates of the debtor – one was its corporate parent, the other a sister corporation – and plaintiff sought "to hold [them] liable on an alter ego basis for Debtor's" obligations.  Id. at *1.  Defendants removed the action to federal court and argued for "related to" jurisdiction because (1) defendants had filed contingent contribution and indemnity claims against the debtor in its bankruptcy case, seeking to recover from it for any liability arising in the case at bar; and (2) the debtor was supposedly an indispensable party to the action.  Id. at *2.  Judge Swain rejected these contentions, reasoning that "while the outcome of this litigation may have ramifications that could conceivably have an effect on estate administration (such as reduction of the amount of Plaintiff's claim against the bankruptcy estate in light of any recovery from Defendants, and/or ripening of Defendant's

18

contingent claims against the estate), such potential ramifications are insufficient to render the claims that have been asserted against the non-debtor Defendant[] 'related to' Debtor's bankruptcy proceeding." Id.  Resolving the Plaintiff's claims did "not require resolution . . . of any claims by Defendants against Debtor, and will have no direct effect on the bankruptcy estate." Id.

The same conclusion applies with equal, or even greater, force in this case.  Defendants do not even allege that they have any basis for (much less that they have filed) any contingent claims for contribution and indemnity against SVS's estate, arising out of any liability they may have to the case at bar.  Nor do – or can – they even claim that SVS is an indispensable party to this action.   The "remote and speculative" possibility of claims against a debtor's estate does not "support the exercise of 'related to' jurisdiction of [a] non-core state law fraud action." Sealink Funding Ltd. v. Bear Stearns & Co., No. 12 Civ. 1397 (LTS), 2012 WL 4794450, at *3 (S.D.N.Y. Oct. 9, 2012);  see also Allstate Ins. Co., 2011 WL 4965150, at *4-*5 (although defendants had contractual rights to indemnification from debtors, that "by itself [is not] the equivalent of an effect on [debtors'] bankruptcy proceedings"; there was no "related to" jurisdiction where defendants had not "asserted their claims against the bankruptcy estates"). The mere possibility that if the Bankruptcy Court grants substantive consolidation, over Defendants' objections,  a recovery by Plaintiffs from Defendants might indirectly affect the amount the SVS Trustee might recover from Defendants is "too remote and speculative,"  Sealink Funding, 2012 WL 4794450, at *3, to support "related to" jurisdiction.

Defendants alternatively argue that even if substantive consolidation is not granted, the SVS Trustee's pursuit of the claims in Counts IV and IX of his complaint in the Colorado Action – i.e., the claims he asserts solely on behalf of SVS qua creditor of Sequoia – suffices to render

19

this action "related to" the SVS Bankruptcy Case.  See Greene Decl. Ex. B, ¶¶ 25-27.  This argument is based principally on the theory that Plaintiffs and the SVS Trustee would then be competing against each other "for a limited potential recovery" from Sequoia, and that if the SVS Trustee's recovery from Sequoia is thereby "restricted," it "may . . . affect the amount potentially available for distribution to creditors of SVS through the SVS bankruptcy case."  Id. ¶ 26.  This convoluted theory founders on both the law and the facts.

Defendants' contention stretches the concept of "related to" jurisdiction beyond its breaking point.  In their Notice of Removal, Defendants cite no case supporting "related to" jurisdiction over a state law claim by one non-debtor against another non-debtor on the theory that a debtor's bankruptcy trustee, who was pursuing a claim against the same non-debtor, might recover less money from the non-debtor defendant merely because of the "competition" between the two claims.  Defendants' approach, if accepted, would burden federal courts with countless state-law claims against non-debtor affiliates of debtors that have no real effect on the administration of a bankruptcy estate.  It is also inconsistent with Judge Swain's holding that similarly indirect "potential ramifications are insufficient to render the claims that have been asserted against the non-debtor Defendant[] 'related to' Debtor's bankruptcy proceeding."  General Elec. Cap., 2002 WL 1300054, at *2.

In addition to its legal insufficiency, Defendants' theory also fails because the aggregate amount of Sequoia's alleged fraudulent transfers to Defendants was in the tens of millions of dollars (see Greene Decl. Ex. A, ¶¶ 18-21, 27-32), yet the maximum judgment the SVS Trustee seeks on Counts IV and IX in the Colorado Action is approximately $1.3 million, and Plaintiffs in the instant case seek to recover up to approximately $2.6 million.  See supra pp. 5-6, 10.  Defendants do not claim to be insolvent or unable to pay the sum of both potential judgments.

Accordingly, there is no basis for a finding that, even under Defendants' convoluted theory, the

SVS estate would be harmed by Plaintiffs' successful pursuit of its claims in this action.[8]

Further grasping at straws, Defendants argue that the possibility of duplication of efforts

or of inconsistent judgments supports a finding of "related to" jurisdiction, because the state law

claims in the Colorado Action and the claims in this action are "nearly identical."  Greene Decl.

Ex. B,  ¶ 26.  Again, both the law and the facts doom Defendants' contention.  As a matter of

law, the  "mere fact that there may be common issues of fact between a civil proceeding and a

controversy involving a bankruptcy estate does not bring the matter within the scope of" 28

U.S.C. § 1334(b).  Pacor, 743 F.2d at 994; see also New Horizon of NY LLC v. Jacobs, 231 F.3d

143, 151 (4th Cir. 2000); In re Canion, 196 F.3d 579, 585 (5th Cir. 1999).   Likewise, the

assertion of "related to" jurisdiction based on risk of inconsistent judgments "fails as it is not a

reason why this Court has subject matter jurisdiction."  In re Rhee, Adv. No. 11-03369, 2011

WL 5240152, at *2 (Bankr. S.D. Tex. 2011).  In any event, a court "cannot avoid addressing the

threshold question of jurisdiction simply because our finding that federal jurisdiction does not

exist threatens to prove burdensome and costly…."  Herrick Co. v. SCS Commc'ns, Inc., 251

F.3d 315, 322 (2d Cir. 2001).[9]  Nor can subject matter jurisdiction "arise from the circumstance

---

[8] The SVS Trustee, in a declaration submitted to this Court, has stated that he does not consider Plaintiffs' claims in this action to be in competition with Counts IV and IX in the Colorado Action.  Declaration of Tom H. Connolly, Chapter 7 Trustee, dated August 29, 2013 ("Connolly Decl.") ¶ 6. The SVS Trustee, moreover, does not oppose Plaintiffs' prosecution of this action  Id. ¶ 5.

[9] Although they are not relevant to the jurisdictional inquiry, the parties and the relevant courts can minimize the risks of duplication of efforts and potentially inconsistent judgments through cooperative case management techniques.  For example, following remand the State Court can coordinate discovery in this action with the Colorado Action; New York state courts are experienced in coordinating discovery with other courts, including in cases far more complex and demanding far greater coordination than these.  See, e.g., In re NYSE Euronext S'holders/ICE Litig., 965 N.Y.S.2d 278, 280-81 (Sup. Ct. N.Y. Cnty. 2013) ("the process of coordinated discovery appears to be moving along smoothly" where discovery was coordinated with a Delaware state action); In re MetLife Demutualization Litig., 689 F. Supp. 2d 297 (E.D.N.Y.2010); Fiala v. Met. Life Ins. Co., 899 N.Y.S.2d 531 (Sup. Ct. N.Y. Cnty. 2010) (coordinating class actions "affecting more than 10 million class members" arising out of an insurance company's conversion from a mutual insurance company to a stock corporation).  Upon remand to the State Court, Plaintiffs will work with Defendants and that court to coordinate discovery with the Colorado Action as

that the exercise of such judicial power is desirable or expedient."  United States v. Town of N.

Hempstead, 610 F.2d 1025, 1029 (2d Cir. 1979).

In sum, Defendants have not carried their burden of demonstrating the existence of

"related to" jurisdiction.  Jurisdiction under 28 U.S.C. § 1334(b) is entirely absent.[10]

## II.    EVEN IF "RELATED TO" JURISDICTION EXISTED, ABSTENTION IS MANDATORY PURSUANT TO 28 U.S.C. § 1334(c)(2)

Even if this Court had "related to" jurisdiction, it nevertheless must abstain from

exercising such jurisdiction under 28 U.S.C. § 1334(c)(2), which provides:

> Upon timely motion of a party in a proceeding based upon a State law
> claim or State law cause of action, related to a case under title 11 but not
> arising under title 11 or arising in a case under title 11, with respect to
> which an action could not have been commenced in a court of the United
> States absent jurisdiction under this section, the district court shall
> abstain from hearing such proceeding if an action is commenced, and can
> be timely adjudicated, in a State forum of appropriate jurisdiction.

Each of the elements for mandatory abstention under Section 1334(c)(2) exists here.[11]

First, Plaintiffs' motion, made 29 days after Defendants removed the action, is timely.

---

necessary, and the Trustee has represented that he intends to assist in coordination of discovery efforts in the
Colorado Action with discovery in this case so as to avoid duplication of efforts. Connolly Decl. ¶ 7.

[10] Defendants suggest that through this action Plaintiffs are attempting to "force[]" them "to defend against the same
claims twice and at the same time."  Greene Decl. Ex. C at 3.  That is false.  Plaintiffs' obvious reason for
commencing this action – on the eve of the expiration of  Colorado and Delaware law limitations period as to the
2009 Transfer (see supra p. 5) is a **defensive** one:  to protect their rights to avoid and recover, **for themselves as
creditors of Sequoia**, fraudulent transfers of which they were victims.  If it were beyond doubt that the SVS
Trustee's pursuit of the Colorado Action would preempt the rights of **Sequoia's** creditors, it would not have been
necessary for Plaintiffs to have commenced this action.  Defendants, however, have (in their own words)
"vehemently" opposed the SVS Trustee's efforts to accomplish this through substantive consolidation.  Greene
Decl. Ex. G at 2.  Accordingly, Plaintiffs had to commence this action to avert the risk of  losing valuable claims
against Sequoia.  Those claims, moreover, are **not** the "same claims" pursued by the SVS Trustee in the Colorado
Action, as Defendants now suggest; indeed, unless and until the Bankruptcy Court ultimately orders substantive
consolidation of the SVS estate with non-debtor Sequoia, over the "vehement" objection of Defendants, Plaintiffs'
claims in this action cannot and will not be "subsume[d]" or "preclude[d]" (Greene Decl. Ex. B at 2) by the claims
in the Colorado Action.  Of course, in the event that a final order consolidating Sequoia and the SVS estate is
entered over Defendants' opposition and is not subject to further appeal, Plaintiffs would be prepared to dismiss
their claims in this action in deference to the Colorado Action.

[11] The mandatory abstention provision applies fully to actions that were commenced in a state court but have been
removed to a federal district court.  See Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436, 446-47 (2d Cir. 2005).

Second, the only asserted basis for federal subject matter jurisdiction is 28 U.S.C. § 1334. Greene Decl. Ex. B.

Finally, Plaintiffs commenced this action in the State Court, where it can be "timely adjudicated."  In Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572 (2d Cir. 2011) ("Parmalat I"),  the Second Circuit identified four factors which the "timeliness" inquiry under 28 U.S.C. § 1334(c)(2) calls into play: "(1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong administration or liquidation of the estate."  Id. at 580.

The balance of the Parmalat factors strongly favors mandatory abstention here.  As to the first factor, the question is not whether adjudication would be quicker in the Bankruptcy Court than in the State Court, but merely whether the State Court could adjudicate it in a "timely" way. Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp., 671 F.3d 261, 267 (2d Cir. 2012) ("Parmalat II"). It cannot credibly be argued that the State Court is "backlogged." The most recent available statistics, from 2011, show that the Supreme Court, New York County, has a median time from request for judicial intervention to disposition of approximately ten months (314 days).  Greene Decl. Ex. I.  See BGC Partners, Inc. v. Avison Young (Canada), Inc., 919 F. Supp. 2d 310, 320 (S.D.N.Y. 2013) (no foreseeable significant difference existed between speed of adjudication in this Court and in the State Court; finding abstention mandatory); Post Investors LLC v. Gribble, No. 12 Civ. 4479 (ALC), 2012 WL 4466619, at *5-*6 (S.D.N.Y. Sept. 27, 2012) (same).[12]

---

[12] The fact that the SVS Bankruptcy Case is a liquidation, not a reorganization, case "makes the timeliness analysis less important," Fairfield Sentry, 458 B.R. at 691, as there is less "urgency" in liquidation proceedings. Id. (quoting In re Leco Enters., Inc., 144 B.R. 244, 252 (S.D.N.Y. 1992)).

Moreover, the first factor must be considered together with the second, "in light of the particular factual and procedural circumstances presented in the two courts being compared." Parmalat I, 671 F.3d at 580. The Second Circuit has also emphasized the importance of allowing state courts to address questions of state law. See Parmalat II, 671 F.3d at 268. In this case, Plaintiffs' claims present only issues of state law, and neither this action nor the Chapter 7 SVS Bankruptcy Case are particularly complex. Although "when the facts in a case are especially complex, the forum with greater familiarity with the record may . . . be expected to adjudicate the matter more quickly," Parmalat I, 639 F.3d at 581, this is obviously not such a case.[13] The State Court, which frequently adjudicates garden variety fraudulent transfer claims such as Plaintiffs', has ample "expertise," id. at 580, to try and determine this action. Taken together, the first and second factors support abstention and remand.

The third and fourth factors also strongly point the same way. The SVS Bankruptcy Case has recently been converted to a Chapter 7 case, and is largely inactive apart from the SVS Trustee's pursuit of the Colorado Action. That action is still at the pleading stage, with argument on an initial motion to dismiss scheduled for September 26, 2013 and trial not tentatively scheduled until August 2014. Greene Decl. ¶¶ 9, 10. The ability of the debtor (SVS) to pay creditors "does not depend on the resolution" of the state-law claims asserted by Plaintiffs. Parmalat II, 671 F.3d at 268. In addition, because SVS is in liquidation, permitting this action to proceed in the State Court would not prolong the administration of the estate. See id.

Accordingly, the criteria for mandatory abstention are all satisfied.

---

[13] In Parmalat II, the Second Circuit, while acknowledging the complexity of the facts of a matter involving a large, multinational fraud and insolvency matter, nevertheless ultimately held that the second factor "cuts in favor of remand" so that a state court could consider state law issues. 671 F.3d at 267.

**III.    IN THE ALTERNATIVE, THIS COURT SHOULD EXERCISE PERMISSIVE ABSTENTION OR REMAND THIS ACTION ON EQUITABLE GROUNDS**

Alternatively, the Court should permissively abstain under 28 U.S.C. § 1334(c)(1) or remand on equitable grounds under 28 U.S.C. § 1452(b).  The same criteria are used to determine both permissive abstention and equitable remand, see In re Riverside Nursing Home, 144 B.R. 951, 957 (S.D.N.Y. 1992), i.e.: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the action to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to any involuntarily removed defendants.  Sealink Funding, 2012 WL 4794450, at *4.

On balance, these factors support permissive abstention or equitable remand.  Resolution of this action in the State Court would not affect the administration of the SVS Bankruptcy Case. Indeed, unless and until substantive consolidation in granted, there is no connection between this action and the SVS Bankruptcy Case.  The first and fifth factors therefore favor abstention.  So, too, does the second factor, as this action involves only issues of state law.  The State Court is well situated to decide non-bankruptcy fraudulent transfer claims (third factor) and abstention and remand will promote comity (fourth factor).  The remaining factors are neutral.

## CONCLUSION

For the foregoing reasons, this action should be remanded to the State Court.

Dated: New York, New York
      August 30, 2013

Respectfully submitted,

**HOGAN LOVELLS US LLP**


By:＿＿＿/s Marc J. Gottridge＿＿＿＿＿＿＿
      Ira S. Greene
      Marc J. Gottridge
      David R. Michaeli
875 Third Avenue
New York, NY 10022
Tel:    (212) 918-3000
Fax:    (212) 918-3100
Email:  Ira.Greene@hoganlovells.com
        Marc. Gottridge@hoganlovells.com
        David.Michaeli@hoganlovells.com

*Counsel for Smartmatic USA Corporation,*
*Smartmatic International Corporation and*
*Smartmatic Services Corporation*